1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   MOE KESHAVARZI, Cal. Bar No. 223759
2  mkeshavarzi@smrh.com
   PAUL L. SEELEY, Cal. Bar No. 252318
3  pseeley@smrh.com
   333 South Hope Street, 43rd Floor
4  Los Angeles, California  90071-1422
   Telephone:  213.620.1780
5  Facsimile:  213.620.1398

6  Attorneys for Defendant
   J.C. PENNEY CORPORATION, INC.
7

8                  UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

10  CYNTHIA E. SPANN, Individually        Case No. SACV12-0215 JVS (RNBx)
    an On Behalf of Others Similarly
11  Situated,                             **CLASS ACTION**
                        Plaintiff,
12                                        **DEFENDANT J.C. PENNEY
                                          CORPORATION, INC.'S NOTICE OF
13            v.                          MOTION AND MOTION TO
                                          DISMISS PURSUANT TO FED. R.
14  J. C. PENNEY CORPORATION,             CIV. PROC. 12(b)(6);
    INC. a Delaware Corporation; and      MEMORANDUM OF POINTS AND
15  DOES 1 through 10, inclusive,         AUTHORITIES.**

                        Defendants.       Date:   July 16, 2012
16                                        Time:   1:30 p.m.
                                          Place:  Courtroom 10C
17                                                411 West Fourth St.
                                                  Santa Ana, CA 92701
18
                                          [Request for Judicial Notice Filed
19                                        Concurrently Herewith]
20
21
22                                        Complaint Filed: February 8, 2012
23
24
25
26
27
28

1              TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2

3              PLEASE TAKE NOTICE that on July 16, 2012, at 1:30 p.m., or as

4    soon thereafter as the matter may be heard in Courtroom 10C at 411 West Fourth

5    Street, Santa Ana, CA 92701-4516, Defendant J.C. Penney Corporation, Inc.

6    ("JCP") will, and hereby does, move this Court pursuant to Rule 12(b) of the Federal

7    Rules of Civil Procedure for an order dismissing the Second Amended Complaint of

8    Plaintiff Cynthia Spann ("Plaintiff").  This Motion is set for hearing on July 16,

9    2012, pursuant to this Court's *Order Granting Leave to File Second Amended*

10   *Complaint, Extending Time to Respond; Setting Briefing Schedule; and For Relief*

11   *From Local Rule 23-3* (D.I. 12), which set July 16, 2012 as the hearing date for

12   JCP's challenges to the SAC[1].

13

14             JCP moves to dismiss the SAC on the following grounds:

15

16             (1)    The SAC fails to state a claim because Plaintiff lacks standing to

17   pursue her claims under the Unfair Competition Law (the "UCL"), the False

18   Advertising Law (the "FAL") and the Consumer Legal Remedies Act (the "CLRA").

19   To have standing under the UCL and FAL, a plaintiff must show that she has "lost

20   money or property."  Likewise, to have standing under the CLRA a plaintiff must

21   show that she has suffered "damage."  Standing decisions in false advertising cases

22   based on misrepresentations uniformly hold that money or property has been lost

23   under the UCL and FAL, and a plaintiff has suffered damage under the CLRA, only

24   when the plaintiff can allege a difference between the composition, substance or

25   origin of the product as advertised and the product as purchased.  Here, there is no

26   ─────────────────────

27   [1] In accordance with this Court's *Initial Order Following Filing of Complaint Assigned to Judge Selna*, a true and correct copy of the SAC is attached hereto as **Exhibit A**.

28

1  difference whatsoever. Plaintiff thought she was buying East Fifth and Worthington

2  blouses and a Liz Claiborne clutch and purse, and that is exactly what she received.

3  No court has held that merely making a purchase, without more, constitutes "lost

4  money or property" under the UCL and FAL or "damage" under the CLRA.

5  Likewise, no case holds that a price discount's purported "value", or lack thereof,

6  constitutes economic injury. At least two courts (the Central District and the

7  Seventh Circuit), faced with virtually identical facts, held that the plaintiff lacked

8  standing when he or she alleged, as here, that the defendant misrepresented the

9  "former" or "original" prices of an item. This Court should do the same.

10

11        (2)    Even if Plaintiff has standing, the Court should dismiss her First,

12  Second, Third and Fourth causes of action for violations of the UCL and FAL

13  because she is not entitled to restitution, the only remedy she seeks. Where, as here,

14  a plaintiff claims violations of the UCL or FAL based on allegations that a

15  misrepresentation induced her to purchase a product, courts have uniformly held that

16  the proper measure of restitution is the difference between the payment and the

17  value received. Here, Plaintiff does not allege, nor can she, any difference between

18  what she paid and the value of what she received. As a result, she is not entitled to

19  restitution.

20

21        This Motion is based on this Notice, the accompanying Memorandum

22  of Points and Authorities, JCP's Request for Judicial Notice, all papers and

23  pleadings on file with the Court, all papers and pleadings of which this Court may

24  take judicial notice and such further evidence and argument which may be presented

25  to the Court.

26

27        This Motion is made following a conference of counsel pursuant to

28  Local Rule 7-3 which took place telephonically on April 18, 2012, due to Plaintiff's

-2-

counsel's location in San Diego, California, and through follow-up emails thereafter.  During that telephonic conference, JCP's counsel identified the deficiencies in the Second Amended Complaint and indicated that JCP would bring motions pursuant to Rule 12 of the Federal Rules of Civil Procedure.

Dated:  May 21, 2012

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
/s/ MOE KESHAVARZI
MOE KESHAVARZI
PAUL SEELEY
Attorneys for Defendant
J. C. PENNEY CORPORATION, INC.

WW02-WEST:1MMK1\405061777.4

JCP'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................. 1

II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS.................................. 3

III.  RULE 12(b)(6) STANDARD................................................................ 4

IV.   THE COURT SHOULD DISMISS THE ACTION BECAUSE
      PLAINTIFF LACKS STANDING ........................................................ 5

      A.    Plaintiff Lacks Standing to Pursue Her UCL and FAL Claims
            Because She Has Not Alleged that She "Lost Money or
            Property".................................................................................... 5

      B.    At Least Two Courts Addressing Identical Allegations Have
            Held That Plaintiffs Lacked Standing to Pursue Claims Based on
            Allegedly False Discounts from "Former" or "Original" Prices. ......... 10

      C.    Pre-*Kwikset* Cases Support the Conclusion that Plaintiff Lacks
            Standing. ................................................................................... 14

      D.    Plaintiff Lacks Standing Under the CLRA. ............................... 16

V.    EVEN IF PLAINTIFF HAS STANDING, THE COURT SHOULD
      DISMISS HER UCL AND FAL CLAIMS BECAUSE SHE IS NOT
      ENTITLED TO RESTITUTION, THE ONLY REMEDY SHE SEEKS...... 18

VI.   CONCLUSION................................................................................... 20

W02-WEST:1MMK1\405061777.4

JCP'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

Ashcroft v. Iqbal
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).................................. 4, 5

5

6

Baba v. Hewlett-Packard Co.
No. C 09-05946, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011)......................... 17

7

8

Chavez v. Blue Sky Natural Beverage Co.
503 F.Supp.2d 1370 (N.D. Cal. 2007), rev'd on other grounds ........................ 17

9

City & County of San Francisco v. Exxonmobil Oil Corp.
2009 U.S. Dist. LEXIS 37620 (N.D. Cal. 2009) ............................................... 10

10

11

Colgan v. Leatherman Tool Group, Inc.
135 Cal.App.4th 663, 38 Cal.Rptr.3d 36 (2006) ............................................... 19

12

13

Cortez v. Purolator Air Filtration Products Company
23 Cal.4th 163, 96 Cal.Rptr.2d 518 (2000) ...................................................... 19

14

15

Day v. AT &T, Corp.
63 Cal.App.4th 325, 74 Cal.Rptr.2d 55 (1998) ................................................ 19

16

17

Donohue v. Apple, Inc.
2012 U.S. Dist. LEXIS 65860 (N.D. Cal. 2012) ............................................... 15

18

19

Hall v. Time
158 Cal.App.4th 847, 70 Cal.Rptr.3d 466 (2008) ............................................. 14

20

21

Kim v. Carter's Inc.
598 F.3d 362 (7th Cir. 2010) .................................................................... 10, 13

22

23

Koh v. S.C. Johnson & Son, Inc.
No. C-09-0927, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. 2010)........................ 14

24

Korea Supply Co. v. Lockheed Martin Corp.
29 Cal.4th 1134, 131 Cal.Rptr.2d 29 (2003) .................................................... 18

25

26

Kwikset Corp. v. Super Ct.
51 Cal.4th 310, 20 Cal.Rptr.3d 741 (2011) .............................................. *passim*

27

28

-ii-

<u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>
  507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)....................................... 5

<u>Meyer v. Sprint Spectrum, L.P.</u>
  45 Cal.4th 634, 88 Cal.Rptr.3d 859 (2009) ..................................................... 16, 17

<u>Papasan v. Allain</u>
  478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)........................................ 5

<u>Peterson v. Cellco P'Ship</u>
  164 Cal.App.4th 1583, 80 Cal.Rptr.3d 316 (2008) ........................................... 14

<u>Shaw v. BAC Home Loan Servicing, L.P.</u>
  2011 U.S. Dist. LEXIS 19875 (S.D. Cal. 2011) ................................................ 15

<u>Sprewell v. Golden State Warriors</u>
  266 F.3d 979 (9th Cir. 2001) ............................................................................. 5

<u>In re Toyota Motor Corp.</u>
  790 F.Supp.2d 1152 (C.D. Cal. 2011) ..................................................... 8, 10, 15

<u>Troyk v. Farmers Group, Inc.</u>
  171 Cal.App.4th 1305, 90 Cal.Rptr.3d 589 (2009) ........................................... 6

<u>U.S. v. Alcan Elec. & Eng., Inc.</u>
  197 F.3d 1014 (9th Cir. 1989) .......................................................................... 10

<u>In re Vioxx Class Cases</u>
  180 Cal.App.4th 116, 103 Cal.Rptr.3d 83 (2009) ............................................ 19

<u>Von Koenig v. Snapple Beverage Corp.</u>
  713 F.Supp.2d 1066 (E.D. Cal. 2010) .............................................................. 17

**<u>Statutes and Rules</u>**

Cal. Bus. & Prof. Code § 17204 ........................................................................ 6

Cal. Bus. & Prof. Code § 17535 ........................................................................ 6

Cal. Civ. Code § 1780(a)............................................................................. 16, 17

Fed. R. Civ. P. 8(a)(2) ....................................................................................... 4

Fed. R. Civ. P. 12(b)(6)................................................................................. 4, 5

-iii-

Local Rule 7-3 ................................................................................................... 4

**Other Authorities**

Article III of the United States Constitution ........................................................ 6

JCP'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Second Amended Complaint should be dismissed because its allegations establish that Plaintiff, Cynthia Spann, lacks standing to prosecute the purported class action claims she has asserted against JCP under the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

Plaintiff bought eight blouses, one purse and one clutch "on sale" or "discounted" from a JCP store in Brea, California.  She claims she bought these items because placards placed near the items advertised them as on sale or discounted from "former" or "original" prices.  Plaintiff alleges that she subsequently learned that the "original" or "former" prices were false.  In her complaint under the UCL, FAL and CLRA, Plaintiff seeks restitution for herself and the putative class.  She does not seek injunctive relief.

Even if Plaintiff's allegations were true, her Second Amended Complaint should be dismissed because her allegations establish that she lacks standing.  Plaintiff has not alleged any "lost money or property," the prerequisite for standing under the UCL and FAL; nor has she alleged any "damage," as is required for CLRA standing.  California Supreme Court decisions establish that the "lost money or property" basis of UCL and FAL standing requires Plaintiff to allege "an economic injury," and the "damage" element of CLRA standing requires Plaintiff to allege "tangible increased cost or burden."  Plaintiff's allegations fail these standing tests as a matter of law.

-1-

1    Plaintiff claims she has standing because she did not receive the full

2    value of a discount.  This does not constitute "lost money or property" under the

3    UCL and FAL and does not constitute "damage" under CLRA.  Standing decisions

4    in false advertising class actions based on misrepresentations share a common

5    thread: money or property has been lost, and standing exists, only when the plaintiff

6    can allege a difference between the composition, substance or origin of the product

7    as advertised and the product as purchased.  Here, there is no difference whatsoever.

8

9    Plaintiff kept the items she purchased.  She does *not* allege that they are

10   worth less than what she paid for them, that they are unsatisfactory or defective, that

11   she has been unable to use them or that they were available for less elsewhere.  This

12   is also *not* a case about a label misrepresentation.  Plaintiff does *not* allege that a

13   label misled her into believing she was buying one thing but received another: she

14   thought she was buying East Fifth and Worthington blouses and a Liz Claiborne

15   clutch and purse, and that is exactly what she received.  Because there is no

16   difference between the products as advertised and the products received, Plaintiff

17   cannot allege that she "lost money or property", or suffered any damage.

18

19   No court has held that merely making a purchase, without more,

20   constitutes "lost money or property" under the UCL and FAL or "damage" under the

21   CLRA.  Likewise, no case holds that a price discount's purported "value", or lack

22   thereof, constitutes economic injury.

23

24   At least two courts (the Central District and the Seventh Circuit), faced

25   with virtually identical facts, held that the plaintiff lacked standing when he or she

26   alleged, as here, that the defendant misrepresented the "former" or "original" prices

27   of an item.  This Court should follow those decisions and hold that Plaintiff lacks

28   standing.

-2-

1         Even if Plaintiff has standing (which she does not), the Court should

2    dismiss her UCL and FAL claims because she is not entitled to restitution, the only

3    remedy she seeks.  Where, as here, a plaintiff claims violations of the UCL or FAL

4    based on allegations that a misrepresentation induced her to purchase a product,

5    courts have uniformly held that the proper measure of restitution is the difference

6    between the payment and the value received.  Here, Plaintiff does not allege, nor can

7    she, any difference between what she paid and the value of what she received.  As a

8    result, she is not entitled to restitution.

9

10        For the foregoing reasons, JCP respectfully asks this Court to dismiss

11   the Second Amended Complaint without leave to amend.

12

13                       **II.**

14        **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

15

16        On March 5, 2011, Plaintiff spent just over $200 to purchase ten items

17   from JCP's store in Brea.  (SAC, ¶¶ 17, 26).  She bought three East Fifth and five

18   Worthington blouses (East Fifth and Worthington are private JCP Brands), a Liz

19   Claiborne purse exclusively sold at JCP and a Liz Claiborne clutch.  (SAC, ¶¶ 27,

20   29, 31 and 33).  She alleges that "plastic placards above or below each product

21   offered for sale" represented that the items were discounted from "original" or

22   "regular" prices.  (SAC, ¶ 26).  In alleged reliance on the placards, Plaintiff claims

23   that she bought the items believing that they were discounted as represented.  (SAC,

24   ¶¶ 26, 27, 29, 31 and 33).  For example, she alleges that she bought the Worthington

25   blouses, for $15.01 each, because JCP falsely advertised that they were 50% off an

26   "original" $30.00 price.  (SAC, ¶ 29).

27

28

1    On behalf of herself and a purported class, Plaintiff asserts claims for

2    relief under the UCL, FAL and CLRA.  Although Plaintiff alleges exposure to and

3    reliance upon in-store advertising alone, and the purchase of only a few items of

4    women's apparel and accessories, she also challenges JCP's print and internet

5    advertising and its sales of men's and children's apparel and accessories.

6

7    Plaintiff filed the original complaint on February 12, 2012, and a First

8    Amended Complaint on March 19, 2012.  The amended pleading alleged the same

9    claims and purchases as the original complaint, and in addition, alleged that JCP

10   failed to respond within 30 days to a demand letter providing notice of the alleged

11   CLRA violations.

12

13   The original and First Amended Complaints sought restitution and

14   injunctive relief.  After the conference of counsel under Local Rule 7-3, Plaintiff

15   agreed to abandon her request for injunctive relief.  Per that agreement, on April 23,

16   2012, Plaintiff filed a Second Amended Complaint.

17

18                              **III.**

19                   **RULE 12(b)(6) STANDARD**

20

21   A defendant may move to dismiss when the plaintiff fails to state a

22   claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Although a

23   complaint need set forth only "a short and plain statement of the claim showing that

24   the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "a complaint that offers

25   'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

26   will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173

27   L.Ed.2d 868, 883 (2009).

28

-4-

1    Under Rule 12(b)(6), a district court accepts as true all non-conclusory
2 allegations, draws all reasonable inferences in favor of the plaintiff, <u>Leatherman v.</u>
3 <u>Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164, 113
4 S.Ct. 1160, 1161, 122 L.Ed.2d 517, 522 (1993), and then determines whether the
5 complaint alleges a *plausible* claim to relief.  <u>Iqbal</u>, *supra*, 556 U.S. at 665.  To
6 determine whether the alleged facts cross the threshold from the possible to the
7 plausible, the court draws "on its judicial experience and common sense."  <u>Id.</u>  Rule
8 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more
9 than conclusions."  <u>Id.</u>  The court is "not bound to accept as true a legal conclusion
10 couched as a factual allegation," <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct.
11 2932, 2944, 92 L.Ed.2d 209, 232 (1986), and should not infer or deduce facts that
12 are not expressly alleged in the complaint.  <u>Sprewell v. Golden State Warriors</u>, 266
13 F.3d 979, 988 (9th Cir. 2001).

14

15                                 **IV.**
16    **<u>THE COURT SHOULD DISMISS THE ACTION BECAUSE PLAINTIFF</u>**
17                        **<u>LACKS STANDING</u>**

18

19 **A.**    **<u>Plaintiff Lacks Standing to Pursue Her UCL and FAL Claims Because</u>**
20           **<u>She Has Not Alleged that She "Lost Money or Property".</u>**

21

22    On November 2, 2004, California voters adopted Proposition 64 and
23 "materially curtailed the universe of those who may enforce" the UCL and FAL.
24 <u>Kwikset Corp. v. Super Ct.</u>, 51 Cal.4th 310, 320, 120 Cal.Rptr.3d 741, 749 (2011).
25 Proposition 64 limited private standing under the UCL and FAL to any person "who

26

27

28

has suffered injury in fact[2] and has lost money or property" as a result of a statutory violation.  Cal. Bus. & Prof. Code §§ 17204, 17535.

"Lost money or property" means that a plaintiff must "demonstrate some form of economic injury." Kwikset Corp., 51 Cal.4th at 323.  Because economic injury "is one among many types of injury in fact, the Proposition 64 requirement that injury be economic renders standing under the [UCL and FAL] substantially narrower than federal standing under article III, section 2 of the United States Constitution, which may be predicated on a broader range of injuries." Id. at 324.  "Whereas a federal plaintiff's 'injury in fact' may be intangible and need not involve lost money or property, Proposition 64 effectively added a requirement that a UCL plaintiff's 'injury in fact' *specifically involve* 'lost money or property.'" Troyk v. Farmers Group, Inc., 171 Cal.App.4th 1305, 1348, n. 31, 90 Cal.Rptr.3d 589, 625, n. 31 (2009).

The Second Amended Complaint does not allege Plaintiff lost money or property.  She alleges only that she bought items in reliance on allegedly false representations about "former" or "original" prices.  (SAC, ¶¶ 26, 27, 29, 31 and 33). In essence, Plaintiff alleges that the mere spending of money to buy merchandise represents a loss of money or property, even though (a) the merchandise as advertised is exactly the same as the merchandise purchased, (b) Plaintiff kept the merchandise, (c) she does not claim that any of it is defective, (d) she does not claim that it is worth less than she paid, and (e) she does not allege that she could have purchased it elsewhere for less.

---

[2] "Injury in fact" has a well-settled meaning under Article III of the United States Constitution, and the drafters of Proposition 64 "intended to incorporate the established federal meaning." Kwikset, 51 Cal.4th at 322.

| JCP'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    No case holds that merely spending money in reliance on an alleged

2 misrepresentation, standing alone, constitutes "lost money or property" under the

3 UCL and FAL.  Likewise, no case holds that the value of a price discount

4 constitutes economic injury.  <u>Kwikset</u> confirms that allegations of mere expenditure

5 do not and cannot satisfy the "lost money or property" required to establish standing

6 under the UCL or FAL.

7

8    <u>Kwikset</u> involved a mislabeled product.  Plaintiff alleged that the

9 defendant labeled and sold, as "Made in U.S.A.," locksets that contained foreign-

10 made parts or were not made in the United States.  <u>Kwikset Corp.</u>, 51 Cal.4th at 317.

11 The plaintiff alleged that he bought the locks in reliance on the false "Made in

12 U.S.A." labels and would not have bought them but for the false labels.  <u>Id.</u>  Kwikset

13 argued that the plaintiff suffered no loss of money because he received a fully

14 functioning lock (although one not made in the United States) and could not allege

15 that the lock was worth less than the price paid.  <u>Id.</u>  Plaintiff urged the California

16 Supreme Court to adopt a rule that merely spending money, in reliance on false

17 labeling, is sufficient to meet the "lost money or property" standing requirements of

18 Proposition 64.  <u>Id.</u> at 317-20.

19

20    Although <u>Kwikset</u> found that the plaintiff had standing, the Court

21 declined to rule that a "mere expenditure" of money is sufficient to confer standing

22 under the UCL.  Rather, <u>Kwikset</u> found standing because the plaintiff bought a

23 <i>different</i> product than what the false label had led him to think he was buying:

24

25       Simply stated: labels matter.  The marketing industry is
26       based on the premise that labels matter—that consumers
         will choose one product over another similar product
27       based on its label and various tangible and intangible
         qualities they may associate with a particular
28       source. . . . To some consumers, processes and places of

-7-

1       origin matter. . . . In particular, to some consumers, the
"Made in U.S.A." label matters.  Id. at 328-30.

2

3       Under Kwikset, when a label representation induces a consumer to

4 purchase a product, and that label turns out to be false, the consumer has lost

5 "money or property" because labels have independent economic value.  That is,

6 because of the false labeling,

7

8       the consumer (allegedly) was made to part with *more
money* than he or she otherwise would have been willing

9       to expend, i.e., that the consumer paid *more* than he or she
actually valued the product. *That increment, the extra

10     money paid*, is economic injury and affords the consumer
standing to sue.

11

12 Id. at 330 (emphasis added).  As Kwikset makes clear, standing rests on the

13 consumer's payment of *more* money because of the product's label:

14

15     For each consumer who relies on the truth and accuracy of
a label and is deceived by misrepresentations into making

16     a purchase, the economic harm is the same: the consumer
has purchased a product that he or she *paid more for* than

17     he or she otherwise might have been willing to pay if the
product had been labeled accurately.

18

19 Id. at 329.

20

21       Thus, under Kwikset, a plaintiff suffers economic harm and has

22 standing to sue under the UCL and FAL only when he/she is induced by a label

23 misrepresentation to purchase a product *different* from the advertised product.  See

24 In re Toyota Motor Corp., 790 F.Supp.2d 1152, 1165, n. 11 (C.D. Cal. 2011) (Selna,

25 James V., Judge) ("[T]he Court agrees that *Kwikset* has some persuasive value.  It is

26 plausible that consumers suffer an economic loss by purchasing a product that is

27 different from the advertised product.")

28

-8-

1        <u>Kwikset</u> did not hold or even suggest that the difference between the

2    value of a discount a consumer believes he/she received and the discount actually

3    received can constitute "lost money or property".  In fact, no case has said so and the

4    examples the <u>Kwikset</u> Court gave to support its holding make clear that the

5    misrepresentation must relate to the "processes," "place of origin", composition and

6    substance of an advertised product:

7

8            A counterfeit Rolex might be proven to tell the time as

9            accurately as a genuine Rolex and in other ways be
     functionally equivalent, but we do not doubt the consumer

10           (as well as the company that was deprived of a sale) has
     been economically harmed by the substitution in a manner

11           sufficient to create standing to sue.  Two wines might to
     almost any palate taste indistinguishable—but to serious

12           oenophiles, the difference between one year and the next,
     between grapes from one valley and another nearby, might

13           be sufficient to carry with it real economic differences in
     how much they would pay.  Nonkosher meat might taste

14           and in every respect be nutritionally identical to kosher
     meat, but to an observant Jew who keeps kosher, the

15           former would be worthless.  <u>Kwikset Corp.</u>, 51 Cal.4th at
     329-30.

16

17       Under <u>Kwikset</u>, Plaintiff lacks standing because she has not lost any

18   "money or property".  Plaintiff does not allege that a label misrepresentation

19   induced her to purchase products different than advertised.  She does *not* allege that

20   she received merchandise different from what she thought she was buying, or that

21   the items she bought are worth less than what she paid.  She does not allege that she

22   "paid extra," or that JCP induced her to part with more money, because there is *no*

23   difference between the product she purchased "as labeled" and the product "as it

24   actually is".  Plaintiff alleges that she bought five Worthington blouses, three East

25   Fifth blouses and a Liz Claiborne purse and clutch, and that is exactly what she

26   received.  Where, as here, the plaintiff bought exactly what she thought she was

27   buying, there is no value "increment," and accordingly there is no "lost money."

28

JCP'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1    Conferring standing on Plaintiff merely because she spent money, on

2    merchandise not alleged to be worth less than the price paid, would require this

3    Court to adopt the "mere expenditure confers standing" position that Kwikset

4    declined to adopt.  Under Kwikset, mere expenditure is not enough to support

5    standing.  Id. at 328-30.  The California Supreme Court could have held that

6    purchasing a product in reliance on a misrepresentation, without more, is sufficient

7    to confer standing under the UCL and FAL.  But that is not what the Court did.

8    Instead, it limited its holding to circumstances where the product advertised is

9    different from the product purchased.

10

11   **B.    At Least Two Courts Addressing Identical Allegations Have Held That**

12   **Plaintiffs Lacked Standing to Pursue Claims Based on Allegedly False**

13   **Discounts from "Former" or "Original" Prices.**

14

15   Under facts virtually identical to those Plaintiff alleges here, at least

16   two courts have found that misrepresentations of "former" or "original" prices, or

17   the value of a discount, do not confer standing.  Hinojos v. Kohl's Corp., CV10-

18   07590 ODW (AGRx), 2010 U.S. Dist. LEXIS 130300 (C.D. Cal. 2010); Kim v.

19   Carter's Inc., 598 F.3d 362 (7th Cir. 2010).  These decisions are persuasive

20   authority.  U.S. v. Alcan Elec. & Eng., Inc., 197 F.3d 1014, 1018 (9th Cir. 1989);

21   City & County of San Francisco v. Exxonmobil Oil Corp., 2009 U.S. Dist. LEXIS

22   37620 *19 (N.D. Cal. 2009) (noting that decisions of other circuits and district

23   courts are persuasive authority).

24

25   In Hinojos, the same lawyers who represent Plaintiff here filed a "false

26   discount" class action complaint, for a different plaintiff, against Kohl's Department

27   Stores.  The Second Amended Complaint in this action is practically a carbon copy

28   of the pleadings against Kohl's.  (See RJN, Exh. 1).

-10-

1    The <u>Hinojos</u> plaintiff also asserted UCL, FAL and CLRA claims,

2  alleging that the defendant department store used "in-store display advertising,

3  internet advertising, and print advertising" to misrepresent "the nature and amount

4  of [the] product discounts" plaintiff received when he bought merchandise.  The

5  <u>Hinojos</u> plaintiff also alleged that Kohl's offered discounts from former "regular" or

6  "original" retail prices that he claimed were never the prevailing market retail prices.

7  2010 U.S. Dist. LEXIS at *2.  Kohl's moved to dismiss for lack of standing because

8  plaintiff had not "lost money or property."  <u>Id.</u>  The District Court (Honorable Otis

9  D. Wright II) agreed and granted Kohl's motion:

10

11    the gravamen of Plaintiff's complaint is that, due to
      Defendant's comparative marketing, he purchased
12    merchandise, yet never received the full value of price
      discounts associated with such merchandise. . . Plaintiff
13    did, however, receive the merchandise itself.  The facts in
      the instant case are similar to cases in which courts have
14    found that the plaintiffs did not lose money or property for
      purposes of the UCL or FAL because they received the
15    benefit of the bargain.

16
   <u>Id.</u> at *11; (RJN, Exh. 2, p. 4).
17

18    Judge Wright distinguished the cases cited by plaintiff:
19

20    [They] all concern alleged factual misrepresentations
      about the composition, effects, origin, and substance of the
21    advertised products.  None involve a price discount or
      other such value associated with the purchase of a product.
22    Indeed, Plaintiff does not cite to authority nor can this
      Court find authority supporting the proposition that the
23    value of a price discount constitutes a loss of money or
      property.
24

25
   <u>Id.</u>; (RJN, Exh. 2, p. 5).
26

27

28

-11-

1          Judge Wright granted Kohl's Motion to Dismiss on December 1, 2010,

2 less than two months before the California Supreme Court issued its decision in

3 Kwikset.  Following the Kwikset publication, the Hinojos plaintiff moved for

4 reconsideration, arguing that Kwikset changed California law and called Judge

5 Wright's decision into question.  Judge Wright denied the reconsideration motion,

6 finding that "while Kwikset identifies several ways in which a plaintiff might show

7 economic injury . . . the fact remains that a plaintiff must still actually identify some

8 form of 'lost money or property.'"  (RJN, Exh. 3, p. 3).  Judge Wright distinguished

9 the Hinojos allegations from Kwikset and other misrepresentation cases:

10

11          Courts that have discussed this concept, including the

12          *Kwikset* court, have found sufficient allegations of 'lost
money or property' in situations where a consumer relies
on misrepresentations concerning the actual characteristics

13          of the products.  Indeed, *Kwikset* discusses such product
characteristics, including: "processes and places of origin,"

14          food marketed as "kosher," the particular locale of wine,
whether diamonds are conflict-free, and whether food is

15          harvested by union workers.

16

17          . . .

18          All of those cases [cited in Judge Wright's December 1,
2010, Order] and *Kwikset* itself, involve alleged factual

19          misrepresentations about the composition, effects, origin,
and substance of advertised products.  None concern

20          misrepresentations of a price discount, as alleged in the
instant case.  Without contrary authority, the Court

21          declines to include the value of a price discount in the
categories of "economic injury" and "lost money or

22          property.

23 (RJN, Exh. 3, pp. 3-4).[3]  Judge Wright's reasoning in Hinojos applies with equal

24 force here.

25

26

27    [3] Kohl's Motion to Dismiss did not challenge the CLRA claim.  After Judge Wright

28 denied reconsideration, Kohl's filed a Motion for Judgment on the Pleadings arguing

1         At least one federal court of appeals has addressed allegations

2   essentially identical to those asserted here and in <u>Hinojos</u>, and reached the same

3   result. <u>Kim v. Carter's Inc.</u>, 598 F.3d 362 (7th Cir. 2010).  There, plaintiffs filed a

4   class action alleging that a children's clothing store induced consumers to purchase

5   products by advertising false discounts that only "recast its regular price as a

6   discount off some higher, made-up, 'suggested' price that no one ever pays." <u>Id.</u> at

7   363.  Plaintiffs alleged claims under the Illinois Consumer Fraud and Deceptive

8   Business Practices Act which, like the "lost money or property" requirement of

9   Proposition 64, requires a private plaintiff to show "actual damage". <u>Id.</u>  The

10   defendant moved to dismiss on the ground that plaintiffs had kept the items they

11   purchased and did not claim that they were defective or worth less than what they

12   paid for them.  The District Court agreed and dismissed the complaint.  The Seventh

13   Circuit affirmed, finding plaintiff had not suffered any damage:

14

15           The plaintiffs agreed to pay a certain price for Carter's
      clothing, which they do not allege was defective or worth

16           less than what they actually paid.  Nor have the plaintiffs
      alleged that, but for Carter's deception, they could have

17           shopped around and obtained a better price in the
      marketplace. . . . the plaintiffs in this case got the benefit

18           of their bargain and suffered no actual pecuniary harm. It
      follows that the plaintiffs' allegations fail to establish the

19           actual damages element of their ICFA claim. <u>Id.</u> at 365.

20         This Court should reach the same conclusion.  As in <u>Hinojos</u> and <u>Kim</u>,

21   Plaintiff kept the products she purchased, and does not allege any difference

22   between the composition, substance or origin of the products as advertised and as

23   purchased.  Thus, Plaintiff has not lost any "money or property" and lacks standing.

24

25

26   _____

27   that plaintiff lacked standing under the CLRA.  (RJN, Exh. 4).  Judge Wright
      agreed.  (<u>Id.</u>)  The plaintiff then appealed Judge Wright's Orders.  Briefing has been
      completed but the Ninth Circuit has not yet scheduled oral argument.

28

## C.  Pre-*Kwikset* Cases Support the Conclusion that Plaintiff Lacks Standing.

*Kwikset* confirmed prior federal and state decisions holding that allegations made here -- where plaintiff received the product advertised, kept it, does not claim it is defective and there is no difference between the product as advertised and as it actually is -- do not establish standing because the plaintiff has received the benefit of his/her bargain.  See, e.g., Peterson v. Cellco P'Ship, 164 Cal.App.4th 1583, 1592, 80 Cal.Rptr.3d 316, 322 (2008) (Plaintiffs lacked standing because "they received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price".  While, "[i]n plaintiffs' view, a person has lost money when the money is 'no longer in their possession' . . . this proposed definition encompasses every purchase or transaction where a person pays with money."); Koh v. S.C. Johnson & Son, Inc., No. C-09-0927, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. 2010) (Labels on bottles of Windex falsely represented that the product was environmentally friendly.  "[C]ourts have held that being induced to purchase a product one would not otherwise have purchased is not loss of money or property within the meaning of the statute as long as one still receives the benefit of the bargain . . . However, plaintiff has sufficiently alleged that he did not receive the benefit of the bargain in that Windex cost more than similar products without misleading labeling."); Hall v. Time, 158 Cal.App.4th 847, 854-55, 70 Cal.Rptr.3d 466, 470-71 (2008) (Plaintiff did not suffer injury because, although he expended money, "he received a book in exchange" and "did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it.")

*Kwikset* did *not* overturn or disapprove of these cases.  Moreover, it did not reject the "benefit of the bargain" test; it held that "whether or not a party who actually received the benefit of his or her bargain may lack standing, in *this case*,

-14-

under the *allegations of the complaint*, plaintiff did not." <u>Kwikset</u>, 51 Cal.4th at 332 (emphasis added).  The Court reasoned that "the plaintiff had bargained for locksets that were made in the United States; they got ones that were not." <u>Id.</u>  The Court explained that the same is true of situations where the product as advertised differs from the actual product:

> The observant Jew who purchases food represented to be, *but not in fact*, kosher; the Muslim who purchases food represented to be, *but not in fact*, halal; the parent who purchases food for his or her child represented to be, but *not in fact*, organic, has in each instance not received the benefit of his or her bargain.

<u>Id.</u>  (emphasis added).  The <u>Kwikset</u> Court's examples demonstrate the limits on its holding:  a consumer does not receive the benefit of his/her bargain ***when the merchandise advertised differs from the merchandise purchased***.  Here, in contrast to <u>Kwikset</u>, the Plaintiff has not alleged, nor can she, that she received merchandise different from or inferior to anything that JCP advertised.

Following <u>Kwikset</u>, courts have applied the benefit of the bargain test to determine whether a plaintiff has standing under Proposition 64.  <u>See</u> <u>In re Toyota Motor Corp.</u>, 790 F.Supp.2d at 1165, n. 10 ("Although there are meaningful differences between <u>Kwikset</u> and this case . . . at the end of the day both sets of plaintiffs plausibly allege an injury because they did not receive the product that they bargained for — a lock 'Made in U.S.A.' or a defect-free Toyota vehicle."); <u>Donohue v. Apple, Inc.</u>, 2012 U.S. Dist. LEXIS 65860 *11  (N.D. Cal. 2012) (A consumer "who unknowingly buys an iPhone with a defective signal meter" had standing because he or she did not receive the benefit of the bargain); <u>Shaw v. BAC Home Loan Servicing, L.P.</u>, 2011 U.S. Dist. LEXIS 19875 *6 (S.D. Cal. 2011) (Plaintiff had standing because he had been denied the benefit of his bargain).

-15-

1   Here, the Court need not consider whether Plaintiff received the benefit

2   of the bargain to decide the standing issue because, under <u>Kwikset</u>, Plaintiff must

3   show an "increment" or "extra money paid" to have standing and she cannot do so.

4   <u>Kwikset</u>, 51 Cal.4th at 330.  Nevertheless, Plaintiff clearly received the benefit of

5   her bargain with JCP.  She bargained for eight blouses, a purse and a clutch, and that

6   is exactly what she received.  Plaintiff does not allege that she thought she was

7   purchasing a Liz Claiborne purse but received a fake.  She does not allege that the

8   merchandise she bought is not what she believed she was purchasing or that it is

9   worth less than what she paid.  Thus, she received the benefit of her bargain and

10   lacks standing.

11

12   **D.      Plaintiff Lacks Standing Under the CLRA.**

13

14   Under section 1780(d) of the CLRA, "any consumer who suffers

15   damage as a result of . . . [a] practice declared to be unlawful under Section 1770

16   may bring an action." Cal. Civ. Code § 1780(a).  Thus, a plaintiff must "suffer

17   damage" to have CLRA standing.  <u>Meyer v. Sprint Spectrum, L.P.</u>, 45 Cal.4th 634,

18   641-45, 88 Cal.Rptr.3d 859, 864-68 (2009).

19

20   The <u>Meyer</u> plaintiffs alleged that terms in Sprint's customer service

21   agreement were unconscionable and violated the CLRA. <u>Id.</u> at 641-45.  Plaintiffs

22   sought an injunction to force Sprint to excise those terms from its service agreement

23   but did not allege that they had suffered injury as a result of the existence or

24   enforcement of any of the challenged terms. <u>Id.</u>  Instead, they argued the mere

25   existence of the offending terms was enough to confer CLRA standing. <u>Id.</u>  The

26

27

28

1  Supreme Court disagreed, holding that the statute clearly limits standing to plaintiffs
2  who can allege that they suffered "damage."[4]

3

4         The Meyer court explained that "damage," under Section 1780(a),
5  means "some kind of tangible increased cost or burden to the consumer" and that "a
6  consumer must experience some damage, some type of increased costs . . . in order
7  to have standing pursuant to section 1780(a)." Id. at 641, 643.

8

9         Several courts have held that the CLRA's standing limitation, to
10 plaintiffs who suffer "damage," is either equal to or more stringent than the UCL
11 "lost money or property" standard.  Baba v. Hewlett-Packard Co., No. C 09-05946,
12 2011 WL 317650 at *4 (N.D. Cal. Jan. 28, 2011) ("[T]he standing requirements
13 under the CLRA are more stringent than under the UCL. . . ."); Von Koenig v.
14 Snapple Beverage Corp., 713 F.Supp.2d 1066, 1078 (E.D. Cal. 2010); Chavez v.
15 Blue Sky Natural Beverage Co., 503 F.Supp.2d 1370, 1373 (N.D. Cal. 2007), rev'd
16 on other grounds at 340 Fed.Appx.359 (9th Cir. 2009).

17

18        In Kohl's (where the plaintiff made allegations identical to this case)
19 Judge Wright rejected the plaintiff's argument that he had satisfied CLRA's damage
20 requirement by alleging that he would not have purchased the items had he not
21 believed he was receiving the value of the discount:  "While Plaintiff's arguments
22 demonstrate exposure to alleged unlawful business practices, he has not
23 demonstrated how he suffered an increased cost or burden as the result of these
24 practices."  (RJN, Exh. 4, pp. 3-4).  Judge Wright also rejected plaintiff's claim that
25 not receiving the full value of a price discount constituted "damage" under the

26

_____

27 [4] Citing Meyer, the Kwikset court made clear that to have standing under the CLRA,
   a plaintiff must "be able to prove damages." Kwikset, 51 Cal.4th at 336, n. 22.
28

CLRA: "Plaintiff purchased merchandise listed at a specified price, and received the merchandise as described at that price. . . . Plaintiff's purchase did not subject him to any increased burdens or additional costs beyond what he presumed he was buying." (RJN, Exh. 4, p. 4).  Judge Wright then distinguished the facts before him from those cases cited by the plaintiff in which courts found that the consumer suffered damage by purchasing a product in reliance on a material misrepresentation:  "the cases to which Plaintiff refers concern misrepresentations regarding the actual composition or origin of the products, rather than the value associated with the purchase of the products."  (RJN, Exh. 4, p. 4).

Here, Plaintiff's failure to allege any "lost money or property" means, *a fortiori*, that she has not suffered "damage" under the CLRA.  Plaintiff does not allege that the product as advertised is different from the product as it actually is, and does not allege she overpaid for the products she purchased, that they are worth less than what she paid or that they are defective.  Plaintiff also does not allege that she has suffered "any tangible increased cost or burden."  As in <u>Kohl's</u>, Plaintiff has not suffered any "damage" under the CLRA.

## V.

## <u>EVEN IF PLAINTIFF HAS STANDING, THE COURT SHOULD DISMISS HER UCL AND FAL CLAIMS BECAUSE SHE IS NOT ENTITLED TO RESTITUTION, THE ONLY REMEDY SHE SEEKS</u>

Plaintiff does not seek injunctive relief.  She only seeks "restitutionary disgorgement of all profit." (SAC, p. 22).  Plaintiff is not entitled to disgorgement as a matter of law because "restitution is the only monetary remedy expressly authorized by" the UCL and FAL.  Restitutionary disgorgement" is simply a synonym for restitution.  <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal.4th

-18-

1134, 1144-48, 131 Cal.Rptr.2d 29, 37-42 (2003); Kwikset, 51 Cal. 4th at 337 ("Injunctions are the 'primary form of relief available under the UCL to protect consumers from unfair business practices,' while restitution is a form of 'ancillary relief.'").  The Kwikset court made clear that a plaintiff who has lost "money or property" and has standing under Proposition 64 does not automatically qualify for restitution.  Kwikset, 51 Cal.4th at 335-36 ("[T]he standards for establishing standing . . .  and eligibility for restitution . . . are wholly distinct.")[5]

The purpose of restitution is to restore to the plaintiff what has been acquired by the violations of the UCL or FAL.  Cortez v. Purolator Air Filtration Products Company, 23 Cal.4th 163, 177, 96 Cal.Rptr.2d 518, 528-29 (2000). Restitution "operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice." Day v. AT&T, Corp., 63 Cal.App.4th 325, 338-39, 74 Cal.Rptr.2d 55, 63-65 (1998).

Where, as here, the plaintiff claims that violations of the UCL or FAL are based on the allegations she was defrauded to purchase a product, courts have uniformly held that the proper measure of restitution is "the difference between what the plaintiff paid and the value of what the plaintiff received . . ." In re Vioxx Class Cases, 180 Cal.App.4th 116, 131, 103 Cal.Rptr.3d 83, 96 (2009) (citing Cortez v. Purolator, supra); Colgan v. Leatherman Tool Group, Inc., 135 Cal.App.4th 663, 697-98, 38 Cal.Rptr.3d 36, 60-62 (2006) (reversing trial court's order of restitution in lawsuit alleging violation of UCL/FAL and CLRA arising out of defendant's false advertising that its products were made in the United States; holding that restitution

---

[5] In contrast, under the CLRA a plaintiff has standing only if he/she is "able to prove damages." Kwikset, supra, 51 Cal.4th at 336, n. 22 (citing Cal. Civ. Code § 1780(a)).

1  "must be of a measureable amount to restore to the plaintiff what has been acquired

2  by violations of the" UCL/FAL and CLRA).

3

4          Here, Plaintiff does not allege that there is any difference in value

5  between what she purchased and what she received.  As a result, she is not entitled

6  to any restitution.

7

8                                      **VI.**

9                              <u>**CONCLUSION**</u>

10

11         For all of the foregoing reasons, JCP respectfully asks the Court to

12  dismiss the Second Amended Complaint without leave to amend.

13

14  Dated:  May 21, 2012

15                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

16

17                        By      _____
                                        */s/ MOE KESHAVARZI*

18                                     MOE KESHAVARZI
                                        PAUL SEELEY
19                                   Attorneys for Defendant
                              J. C. PENNEY CORPORATION, INC.
20

21

22

23

24

25

26

27

28

WW02-WEST:1MMK1\405061777.4                    JCP'S MOTION TO DISMISS SECOND AMENDED
                                                                                    COMPLAINT