FILED

2013 JUL 22  PM 12: 27

1  STANLEY • IOLA, LLP
2  MATTHEW J. ZEVIN, SBN: 170736
   225 Broadway, Suite 1350
3  San Diego, CA  92101
   Telephone:   (619) 235-5306
4  Facsimile:   (815) 377-8419
   e-mail:      mzevin@aol.com
5
6  EMGE & ASSOCIATES
   DEREK J. EMGE, SBN: 161105
7  225 Broadway, Suite 1350
   San Diego, CA  92101
8  Telephone:   (619) 595-1400
   Facsimile:   (619) 595-1480
9  e-mail:      derek@emgelawfirm.com
10
11 Attorneys for Plaintiff Cynthia E. Spann
   and Proposed Class Counsel
12 [Additional Counsel on Signature Page]

13          **IN THE UNITED STATES DISTRICT COURT**

14          **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15  CYNTHIA E. SPANN, on Behalf of Herself and All Others Similarly Situated,<br><br>16<br><br>17                 Plaintiff,<br><br>18<br><br>19  v.<br><br>20  J.C. PENNEY CORPORATION, INC., a Delaware Corporation; and DOES 1 through 10, Inclusive,<br><br>21<br><br>22<br><br>23                 Defendant. | Case No. SACV12 0215 FMO (RNBx)<br>**CLASS ACTION**<br><br>**THIRD AMENDED COMPLAINT FOR:**<br>1.     **Unfair Business Practices in Violation of California Business & Professions Code Sections 17200,** *et seq.*<br>2.     **Fraudulent Business Practices in Violation of California Business & Professions Code Sections 17200,** *et seq.*<br>3.     **Unlawful Business Practices in Violation of California Business & Professions Code Sections 17200,** *et seq.*<br>4.     **False Advertising in Violation of California Business & Professions Code Sections 17500,** *et seq.*<br>5.     **Violations of California Consumer Legal Remedies Act**<br>**JURY TRIAL DEMANDED**<br>JUDGE:    Honorable Fernando M. Olguin<br>CTRM:    22 – 5th Floor |

24
25
26
27
28

1  Plaintiff, Cynthia E. Spann, ("Plaintiff") by and through her attorneys, brings
2  this class action against Defendant J.C. Penney Corporation, Inc. ("J.C. Penney" or
3  "Defendant"), on her own behalf and on behalf of all others similarly situated, and
4  alleges as follows based upon personal knowledge and the investigation of her
5  counsel:

6  **NATURE OF THE ACTION**

7  1.  This is a class action against J.C. Penney for falsely advertising
8  "original" prices, "sale" prices and corresponding price discounts for its private
9  branded and exclusive branded apparel and accessories.  During the Class Period
10  (defined below), J.C. Penney advertised false former prices and false price
11  discounts for its private branded and exclusive branded apparel and accessories.

12  2.  During the Class Period, J.C. Penney misrepresented the existence,
13  nature and amount of price discounts by purporting to offer specific dollar discounts
14  from expressly referenced former retail prices, which were often misrepresented as
15  "*original*" or "regular" retail prices.  These purported discounts were false,
16  however, because the referenced former retail prices were fabricated and did not
17  represent J.C. Penney's true "original" retail prices for its private branded and
18  exclusive branded apparel and accessories.  Furthermore, the advertised "original"
19  prices for J.C. Penney's private branded and exclusive branded apparel and
20  accessories were not the prevailing market retail prices within three months next
21  immediately preceding the publication of the advertised former prices, as required
22  by California law.

23  3.  The Federal Trade Commission ("FTC") describes false former
24  pricing schemes, similar to J.C. Penney's in all material respects, as deceptive:

25  One of the most commonly used forms of bargain advertising is to
26  offer a reduction from the advertiser's own former price for an article.
27  If the former price is the actual, bona fide price at which the article
28  was offered to the public on a regular basis for a reasonably substantial

1

1  period of time, it provides a legitimate basis for the advertising of a
2  price comparison.  Where the former price is genuine, the bargain
3  being advertised is a true one.  If, on the other hand, the former price
4  being advertised is not bona fide but fictitious – for example, where an
5  artificial price, inflated price was established for the purpose of
6  enabling the subsequent offer of a large reduction – the "bargain"
7  being advertised is a false one; the purchaser is not receiving the
8  unusual value he expects.
9  16 C.F.R. § 233.1(a).
10     4.     California statutory and regulatory law expressly prohibits false
11  former pricing schemes.   Cal. Bus. & Prof. Code § 17501, entitled "*Value*
12  *determinations; Former price advertisements*," states:
13  For the purpose of this article the worth or value of any thing
14  advertised is the prevailing market price, wholesale if the offer is at
15  wholesale, retail if the offer is at retail, at the time of publication of
16  such advertisement in the locality wherein the advertisement is
17  published.
18  *No price shall be advertised as a former price of any advertised thing,*
19  *unless the alleged former price was the prevailing market price as*
20  *above defined within three months next immediately preceding the*
21  *publication of the advertisement* or unless the date when the alleged
22  former price did prevail is clearly, exactly and conspicuously stated in
23  the advertisement. [Emphasis added.]
24     5.     Upon information and belief, J.C. Penney's false price advertising
25  scheme, disseminated to California consumers via its in-store display advertising,
26  print advertising and Internet Web site (www.jcpenney.com), was rampant
27  throughout California as part of a massive, years-long, pervasive campaign and was
28  consistent across all of J.C. Penney's private branded and exclusive branded apparel

2

1  and accessories until February 1, 2012.  For example, J.C. Penney's in-store pricing

2  scheme was prominently displayed directly above the private branded and exclusive

3  branded apparel and accessories, with express references to former "*original*" retail

4  prices that never existed and/or did not constitute the prevailing market retail prices

5  for such products within the three months next immediately preceding the

6  publication of the advertisement.    Furthermore, upon check-out, J.C. Penney

7  provided California consumers, including Plaintiff, with sales receipts continuing

8  the misrepresentations regarding false price reductions.  For example, the stated

9  *discount* from the false former price was listed for each item purchased.  Below the

10  total amount purchased at the bottom of the sales receipt, J.C. Penney

11  misrepresented to consumers the total amount purportedly saved on the entire

12  purchase transaction with the words "*Your Total Savings Today*."[1]

13    6.    Upon information and belief, J.C. Penney stopped using false price

14  comparisons in or about February, 2012.  At that time, it began a new pricing

15  strategy known as "fair and square," by which it purported to offer products at

16  everyday low prices.  It has been widely reported in the press that the results of this

17  new pricing strategy were disastrous for J.C. Penney and that the Company suffered

18  significant reductions in its revenues and profits.  The widely reported failure of

19  J.C. Penney's switch to "fair and square" pricing demonstrates that J.C. Penney's

20  false and deceptive comparative pricing scheme was highly effective and enabled

21  J.C. Penney to receive profits and revenues from consumers that J.C. Penney would

22  not otherwise have received absent the false price comparisons.

23    7.    Upon information and belief, J.C. Penney recently abandoned its "fair

24  and square" pricing strategy and returned to its scheme of using false price

25  comparisons in order to again increase its revenues and profits.  Specifically, J.C.

26  Penney has begun marking up the prices of its private and exclusive branded

27  _____

28  [1]    *See* true and correct copy of Plaintiff's sales receipt, dated March 5, 2011,
   attached hereto as Exhibit A.

3

apparel and accessories above the "fair and square" prices without any good faith intention of selling such items (or any substantial quantity of such items) at those higher prices. Rather, the price mark ups are being made solely so that J.C. Penney can immediately (or almost immediately) thereafter offer to sell those products at purported reduced "sale" prices that are, in fact, illusory because the products never sold (at least not in any meaningful quantities) at the higher price.

8.      In fact, in many instances, the purported new "sale" prices are *higher* than the prior "fair and square" prices, which demonstrates that the false price comparisons are effective at getting consumers to pay *more* for products than they would otherwise have paid absent the false price comparisons. In other words, J.C. Penney's false price comparisons have the effect of increasing the prevailing retail market price for its products.

9.      Upon information and belief, hundreds of thousands of California consumers have been victims of J.C. Penney's deceptive, misleading and unlawful pricing scheme and hundreds or thousands more will be deceived if J.C. Penney's practices continue.

10.     J.C. Penney knew (and knows) that its comparative price advertising was (and is again) false, deceptive, misleading and unlawful under California law.

11.     J.C. Penney fraudulently concealed from and intentionally failed to disclose to Plaintiff and others similarly situated the truth about its advertised price discounts and former prices.

12.     At all relevant times, J.C. Penney was under a duty to Plaintiff and others similarly situated to disclose the truth about its "former" and "original" prices.

13.     The facts which J.C. Penney misrepresented and/or failed to disclose are material facts that a reasonable person would have considered material, i.e., facts which would contribute to a reasonable person's decision to purchase apparel and accessories. J.C. Penney's false representations of former "original" prices and

4

1  false representations of purported savings, discounts and bargains were objectively

2  material to the reasonable consumer, and therefore reliance upon such

3  representations may be presumed as a matter of law.

4      14.    Plaintiff relied upon such false representations of "original" prices and

5  discounts when purchasing private branded and exclusive branded apparel and

6  accessories at J.C. Penney. Plaintiff would not have made such purchases but for

7  J.C. Penney's false representations of "original" prices and price discounts.

8      15.    Plaintiff reasonably and justifiably acted and relied to her detriment

9  on J.C. Penney's false "original" price representations and failure to disclose, and

10  concealment of, the truth about J.C. Penney's false price-comparison advertising

11  scheme in purchasing private branded and exclusive branded apparel and

12  accessories at J.C. Penney.

13      16.    J.C. Penney intentionally concealed and failed to disclose the truth

14  about its misrepresentations and false former price advertising scheme for the

15  purpose of inducing Plaintiff and others similarly situated to purchase private

16  branded and exclusive branded apparel and accessories at J.C. Penney.

17      17.    Through its false and deceptive marketing, advertising and pricing

18  scheme, J.C. Penney violated (and continues to violate) California law prohibiting

19  advertising goods for sale as discounted from former prices which are false, and

20  prohibiting misleading statements about the existence and amount of price

21  reductions. Specifically, J.C. Penney violated (and continues to violate)

22  California's Business & Professions Code §§ 17200, *et seq.* (the "UCL"),

23  California's Business & Professions Code §§ 17500, *et seq.* (the "FAL"), as well as

24  the California Consumers' Legal Remedies Act, California Civil Code §§ 1750, *et*

25  *seq.* (the "CLRA").

26      18.    The claims and issues asserted herein are governed by California state

27  law. The State of California has the greatest interest in policing corporate conduct

28  occurring within the State that affects the rights and interests of its citizens.

5

19.     Plaintiff, individually and on behalf of all others similarly situated, seeks restitution and other equitable remedies under the UCL and FAL; and restitution and damages under the CLRA.

## PARTIES

20.     Plaintiff Cynthia E. Spann is a competent adult who resides in the County of Los Angeles County who, in reliance on Defendants' false and deceptive advertising, marketing and pricing schemes, purchased over $200.00 in private branded and exclusive branded apparel and accessories at J.C. Penney's Brea, California location on March 5, 2011, and was damaged thereby.

21.     Defendant J.C. Penney Corporation, Inc. is a publicly traded Delaware Corporation (NYSE: JCP) with its principal executive offices in Plano, Texas. According to its most recent Form 10-K for the fiscal year ending January 28, 2012, J.C. Penney "sell[s] family apparel and footwear, accessories, fine and fashion jewelry, beauty products through Sephora inside jcpenney and home furnishings." Plaintiff does not know the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and will amend this Complaint to set forth the true names and capacities of said defendants, along with the appropriate charging allegations when the same have been ascertained.

22.     Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of said defendants, along with the appropriate charging allegations when the same have been ascertained.

23.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, all defendants, and each of them, were acting as the agent and/or employee of each remaining co-defendant, and were acting with permission and consent of each other, and within the course and scope of said agency and/or

6

1 | employment.  Plaintiff is further informed and believes that each co-defendant, by
2 | and through its officers, directors or managing agents ratified, authorized and
3 | approved, expressly or implicitly, all of the conduct alleged herein.

4 | 24. When in this Complaint reference is made to any act of "J.C. Penney"
5 | or "Defendant," such shall be deemed to mean that officers, directors, agents,
6 | employees, or representatives of the Defendant named in this lawsuit committed or
7 | authorized such acts, or failed and omitted to adequately supervise or properly
8 | control or direct their employees while engaged in the management, direction,
9 | operation or control of the affairs of the Defendant and did so while acting within
10 | the scope of their employment or agency.

## JURISDICTION AND VENUE

12 | 25. Plaintiff realleges by reference, as if fully set forth herein, all of the
13 | above Paragraphs.

14 | 26. The Court has original jurisdiction over in this Action under the Class
15 | Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which:
16 | (1) at least some members of the proposed Class have a different citizenship from
17 | Defendant; and (2) the claims of the proposed Class members exceed $5,000,000.00
18 | (Five Million U.S. Dollars) in the aggregate.

19 | 27. The Central District of California has personal jurisdiction over the
20 | Defendant named in this action because Defendant is a corporation or other
21 | business entity authorized to do business in the State of California and registered
22 | with the California Secretary of State to do sufficient business with sufficient
23 | minimum contacts in California, and/or otherwise intentionally avails itself of the
24 | California market through the ownership and operation of approximately 80 retail
25 | stores within the State of California, to render the exercise of jurisdiction by the
26 | California courts consistent with traditional notions of fair play and substantial
27 | justice.

28 |

7

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because the Defendant named in this action resides, transacts business, or is found within this District, and a substantial part of the events giving rise to Plaintiff's claims arose here.  Plaintiff's claims arise out of her purchase of consumer products in the city of Brea, State of California.

## FACTUAL ALLEGATIONS

29.     On March 5, 2011, Plaintiff entered the J.C. Penney store at the Brea Mall in Brea, California.   She observed that J.C. Penney advertised price comparisons on plastic placards above or below each product offered for sale.  One column showed what was represented to be the "original" price for each product. The next column showed the "sale" price of each item.  Believing she was able to pay significantly less than what certain products were worth and normally sell for in the retail marketplace, Plaintiff was induced to purchase ten different items, all of which were offered at prices significantly lower than their stated original prices. Plaintiff purchased private branded apparel (manufactured by J.C. Penney) and exclusively branded accessories (manufactured by others solely for sale at J.C. Penney) after relying on J.C. Penney's false discounts and false "original" former prices for such products.

30.     Specifically, relying upon J.C. Penney's misrepresentations and false and deceptive advertising, Plaintiff purchased three East Fifth blouses, a private brand of J.C. Penney.  All three blouses contained labels representing them to have original prices of $30.00 and discounts of $12.01, leaving a purchase price or "deal" at $17.99.  Plaintiff believed and relied on the fact that she was obtaining these shirts at 40% off the original price and that they regularly sell in the retail marketplace for $30.00.  Upon information and belief, these purported "original" prices and corresponding price reductions and savings were false and deceptive, as the prevailing retail price for the East Fifth blouses during the three months immediately prior to Plaintiff's purchase of such item was no more than $17.99, and

8

1  not the $30.00 "original" price represented by J.C. Penney.  Plaintiff would not

2  have purchased the blouses in the absence of J.C. Penney's misrepresentations.  As

3  a result, Plaintiff has been personally victimized by and suffered economic injury as

4  a direct result of Defendant's unlawful, unfair and fraudulent conduct.

5       31.     Furthermore, upon check-out on March 5, 2011, J.C. Penney provided

6  Plaintiff with a sales receipt containing the same misrepresentations regarding false

7  original prices and price reductions on the East Fifth blouses.  The false "original"

8  price is set forth on each line item following the quantity count.  Below each

9  original price is a line with large, bold print stating "Total Discounts," followed by

10  the promised savings of $12.01.[2]

11       32.     Also relying upon J.C. Penney's misrepresentations and false and

12  deceptive advertising, Plaintiff purchased five Worthington blouses, another private

13  brand of J.C. Penney.  J.C. Penney advertised in the store that all five blouses had

14  "original" prices of $30.00 and discounts of $15.01, leaving purchase prices or

15  "deals" at $14.99.  Plaintiff believed that she was obtaining these shirts at 50% off

16  the original price and that they regularly sell in the retail marketplace for $30.00.

17  Upon information and belief, these purported price reductions and savings were

18  false and deceptive, as the prevailing retail price for the Worthington blouses during

19  the three months immediately prior to Plaintiff's purchase of such item was no more

20  than $14.99, and not the $30.00 "original" price represented by J.C. Penney.

21  Plaintiff would not have purchased the blouses in the absence of J.C. Penney's

22  misrepresentations.  As a result, Plaintiff has been personally victimized by and

23  suffered economic injury as a result of Defendant's unlawful, unfair and fraudulent

24  conduct.

25       33.     Furthermore, upon check-out on March 5, 2011, J.C. Penney provided

26  Plaintiff with a sales receipt containing the same misrepresentations regarding false

27

28  [2]  *See* Exhibit A to this Complaint.

9

1   original prices and price reductions on the Worthington blouses.   The false
2   "original" price is set forth on each line item following the quantity count.  Below
3   each original price is a line with large, bold print stating "Total Discounts,"
4   followed by the promised savings of $15.01.

5       34.      Also relying upon J.C. Penney's misrepresentations and false and
6   deceptive advertising, Plaintiff purchased a Liz Claiborne purse, which is an
7   exclusive brand at J.C. Penney.  The purse was advertised as having an "original"
8   price of $60.00 and a discount of $20.01, leaving a purchase price of $39.99.
9   Plaintiff believed that she was obtaining at least a $20.00 discount and purchasing a
10  purse that regularly sells in the retail marketplace for at least $60.00.   Upon
11  information and belief, this purported price reduction and savings was false and
12  deceptive, as the prevailing retail price for the Liz Claiborne brand purse during the
13  three months immediately prior to Plaintiff's purchase of such item was materially
14  lower than the $60.00 "original" price represented by J.C. Penney.  Plaintiff would
15  not have purchased the purse in the absence of J.C. Penney's misrepresentations.
16  As a result, Plaintiff has been personally victimized by and suffered economic
17  injury as a result of Defendant's unlawful, unfair and fraudulent conduct.

18      35.      Furthermore, upon check-out on March 5, 2011, J.C. Penney provided
19  Plaintiff with a sales receipt containing the same misrepresentation regarding the
20  false original price and price reduction on the purse.  The false "original" price is
21  set forth on the line item following the quantity count.  Below the original price is a
22  line with large, bold print stating "Total Discounts," followed by the promised
23  savings of $20.01.

24      36.      Also relying upon J.C. Penney's misrepresentations and false and
25  deceptive advertising, Plaintiff purchased a Liz Claiborne clutch.  The clutch was
26  advertised and labeled to represent an original price of $30.00 and a discount of
27  $10.01, leaving a purchase price or "deal" at $19.99.  Plaintiff believed that she was
28  purchasing a clutch that regularly sells in the retail marketplace for $30.00.  Upon

10

1  information and belief, this purported price reduction and savings was false and
2  deceptive, as the prevailing retail price of the clutch during the three months
3  immediately prior to Plaintiff's purchase of such item was no more than $19.99, and
4  not the $30.00 "original" price represented by J.C. Penney.   Plaintiff would not
5  have purchased the clutch in the absence of J.C. Penney's misrepresentations.  As a
6  result, Plaintiff has been personally victimized and suffered economic injury as a
7  result of Defendant's unlawful, unfair and fraudulent conduct.

8      37.      Furthermore, upon check-out on March 5, 2011, J.C. Penney provided
9  Plaintiff with a sales receipt containing the same misrepresentations regarding the
10  false original price and price reduction on the Liz Claiborne clutch.   The false
11  "original" price is set forth on the line item following the quantity count.  Below the
12  original price is a line with large, bold print stating "Total Discounts," followed by
13  the promised savings of $10.01.

14      38.      Plaintiff and class member reliance upon Defendant's false price
15  comparison advertising was not only reasonable, but entirely intended by J.C.
16  Penney.   Empirical marketing studies have provided an incentive for retailers to
17  engage in this false and fraudulent behavior:

18          [c]omparative price advertising offers consumers a basis for
19          comparing the relative value of the product offering by suggesting a
20          monetary worth of the product and any potential savings . . . . [A]
21          comparative price advertisement can be construed as deceptive if it
22          makes any representation, . . . . or involves any practice that may
23          materially mislead a reasonable consumer.

24  *Comparative Price Advertising: Informative or Deceptive*?, Dhruv Grewal and
25  Larry D. Compeau, *Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52
26  (Spring 1992).  In short

27          [b]y creating an impression of savings, the presence of a higher
28          reference price enhances subjects' perceived value and willingness to

11

1    buy the product. . . .   Thus, if the reference price is not truthful, a
2    consumer may be encouraged to purchase as a result of a false sense of
3    value.

4    *Id.* at 55, 56.

5        37.   In January, 2012, J.C. Penney's then-new (but recently departed)
6    CEO, Ron Johnson, admitted that, for years, J.C. Penney abused this phenomenon
7    of consumer behavior by engaging in a systematic program of false price
8    comparisons in which the regular retail prices had "no integrity":

9        . . . [I]t's been a decade of price increases.   And so what happens is
10       you lose track of the fact that we're slowly and slowly increasing
11       prices at a rate that there's no integrity.

12                                    * * *

13       And this is another last bit of data I want to share with you.   This
14       shows the last year for an entire year the average – the percentage of
15       goods bought at the various discount rates.   So you'll see here nothing
16       was bought at regular price, fewer than one out of 500 units.   One was
17       bought at 20% off.   Eight were bought at 30[% off] . . .

18                                    * * *

19       In fact, if you look at the total, 72% of the revenue, three –quarters of
20       everything sold in the store was at a 50% off or greater discount.
21       Now, that's got to be surprising.   That was surprising to me because I
22       knew when I was at Mervyns when I started we had rules.   You could
23       only [offer] sales one week out of the month because there was honor
24       to the regular retail [price]. . .

25   January 25, 2012/2:00PM, JCP – jcpenney Analyst Meeting Day 1, as reported in
26   Thomson Reuters Streetevents | www.streetevents.com.

27       39.       38.       Thereafter, Mr. Johnson led J.C. Penney down the path of a new
28   pricing strategy known as "fair and square" pricing.   Under this pricing strategy, J.C.

                                        12

1   Penney used three levels of pricing: everyday low prices (regular prices), best prices
2   (clearance items), and month-long values (where certain themed items were
3   discounted for a month).  At the same time, J.C. Penney stopped using comparative
4   sale prices by which a purported sale price was compared to an inflated regular or
5   original price.  It has widely been reported that the results of "fair and square"
6   pricing were disastrous for J.C. Penney, as the company's earnings and revenues
7   plummeted.  Consequently, much blame was placed on the Company's then-new
8   CEO, Ron Johnson, for abandoning its comparative pricing scheme.

9       40.      Upon information and belief, Mr. Johnson was recently removed as the
10  Company's CEO, and J.C. Penney has recently returned to its practice of using
11  comparative prices and fake "sales."  Specifically, J.C. Penney has started to mark-
12  up the ticketed prices of its private and exclusive branded apparel and accessories
13  just so that it can turn around and offer an immediate discount on those higher prices
14  in order to create the illusion of a "sale."  In fact, many of the new and purported
15  discounted "sale" prices are *higher* than the "regular" prices that were in place
16  during J.C. Penney's "fair and square" pricing.  J.C. Penney has no intention of
17  selling its products (or at least any significant quantity of those products) at the new,
18  marked-up prices.  Instead, it intends to sell most, if not all of the products at the
19  lower and supposedly discount prices, thereby making the higher prices false and
20  misleading.   In other words, J.C. Penney has gone back to its false price
21  comparisons which violate California law as pled herein.

22                          **CLASS ALLEGATIONS**

23      41.      Plaintiff realleges by reference, as if fully set forth herein, all of the
24  above Paragraphs.

25      42.      Plaintiff brings this action on her own behalf and on behalf of all other
26  persons similarly situated.  The class Plaintiff seeks to represent is defined as:

27          All persons who, while in the State of California and between
28          November 5, 2010 and the date of any Judgment in this case (the

1 "Class Period"),  purchased from JCP one or more private or exclusive

2 branded items of apparel or accessories at a discount of at least 30%

3 off of the stated "original" or "regular" price.  Excluded from the Class

4 are all current and past employees, officers and directors of JCP, and

5 any judge who exercises jurisdiction over this case.

6 Excluded from the Class are Defendant, as well as its officers, employees, agents or

7 affiliates, and any judge who presides over this action, as well as all past and

8 present employees, officers and directors of J.C. Penney.  Plaintiff reserves the right

9 to expand, limit, modify, or amend this class definition, including the addition of

10 one or more subclasses, in connection with her motion for class certification, or at

11 any other time, based upon, *inter alia*, changing circumstances and/or new facts

12 obtained during discovery.

13 43. *Numerosity*: Upon information and belief, the Class is composed of

14 hundreds of thousands of individuals, whose joinder of this action would be

15 impracticable.  The disposition of their claims through this class action will benefit

16 Class members, the parties, and the courts.

17 44. *Existence and Predominance of Common Questions of Fact and Law*:

18 There is a well-defined community of interest in questions of law and fact affecting

19 the Class.  These questions of law and fact predominate over individual questions

20 affecting individual Class members, including, but not limited to, the following:

21 (a) Whether, during the Class Period, J.C. Penney used false

22 "original" price labels and falsely advertised price discounts on its private branded

23 or exclusive branded apparel or accessories;

24 (b) Whether, during the Class Period, the "original" prices

25 advertised by J.C. Penney were the prevailing market prices for the respective

26 private branded or exclusive branded apparel or accessories sold by J.C. Penney

27 during the three month periods preceding the dissemination and/or publication of

28 the advertised former prices;

<div align="center">14</div>

(c)     Whether J.C. Penney's use of false or deceptive price advertising constituted false advertising under California law;

(d)     Whether J.C. Penney engaged in unfair, unlawful and/or fraudulent business practices under California law;

(e)     Whether J.C. Penney misrepresented and/or failed to disclose material facts about its product pricing and discounts;

(f)     Whether J.C. Penney has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(g)     Whether J.C. Penney's conduct, as alleged herein, was intentional and knowing;

(h)     Whether Class members are entitled to damages and/or restitution; and, if so, what is the amount of revenues and/or profits J.C. Penney received and/or was lost by Class members as a result of the conduct alleged herein; and

(i)     Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

45.     *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class members. Plaintiff and the Class she seeks to represent have all been deceived (or were likely to be deceived) by J.C. Penney's false former price advertising scheme, as alleged herein.

46.     *Adequacy*: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent. Plaintiff will fairly and adequately represent and protect the interest of the Class because she is not antagonistic to the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation.

47.     *Superiority*: A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and Class members' claims. Because of

15

1    the relatively modest size of individual Class members' claims, few, if any, Class

2    members could afford to seek legal redress of the wrongs complained of herein on

3    an individual basis.  Absent the class action, Class members and the general public

4    would not likely recover, or would not likely have the chance to recover, damages

5    or restitution, and J.C. Penney will be permitted to retain the proceeds of its

6    misdeeds.

7        48.     All Class members, including Plaintiff, were exposed to one or more

8    of J.C. Penney's misrepresentations or omissions of material fact claiming that

9    former "original" advertised prices were in existence.  Due to the scope and extent

10    of J.C. Penney's consistent false price advertising scheme, disseminated in a

11    massive, years-long campaign to California consumers via in-store display

12    advertising, Internet advertising and print advertising, it can be reasonably inferred

13    that such misrepresentations or omissions of material fact were uniformly made to

14    all members of the Class.  In addition, it can be reasonably presumed that all Class

15    members, including Plaintiff, affirmatively acted in response to the representations

16    contained in J.C. Penney's false advertising scheme when purchasing private

17    branded and exclusive branded apparel and accessories by J.C. Penney.

18    <center>**CAUSES OF ACTION**</center>

19    <center>**FIRST CAUSE OF ACTION**</center>

20    <center>**(Violation of the "Unfair" Prong of the UCL)**</center>

21        49.     Plaintiff realleges by reference, as if fully set forth herein, all of the

22    above Paragraphs.

23        50.     The UCL defines unfair business competition to include any

24    "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive,

25    untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

26        51.     A business act or practice is "unfair" under the UCL if the reasons,

27    justifications and motives of the alleged wrongdoer are outweighed by the gravity

28    of the harm to the alleged victims.

<center>16</center>

52.     J.C. Penney has violated the "unfair" prong of the UCL by representing a false "original" price and corresponding price discount for its private branded and exclusive branded apparel and accessories where J.C. Penney, in fact, inflated the purported "original" prices for such products such that the promised discount was false, misleading and deceptive.

53.     These acts and practices were unfair because they were likely to cause consumers to falsely believe that J.C. Penney is offering value, discounts or bargains from the prevailing market value or worth of the products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception has induced reasonable purchasers, including Plaintiff, to buy such products, which they otherwise would not have purchased.

54.     The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of J.C. Penney for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, J.C. Penney engaged in unfair business practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

55.     Through its unfair acts and practices, J.C. Penney has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this Court cause J.C. Penney to restore this money to Plaintiff and all Class members, and to enjoin J.C. Penney from continuing to violate the UCL as discussed herein. Otherwise, Plaintiff, the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SECOND CAUSE OF ACTION

### (Violation of the "Fraudulent" Prong of the UCL)

56.     Plaintiff realleges by reference, as if fully set forth herein, all of the above Paragraphs.

57.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

58.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

59.     J.C. Penney's marketing and advertising materials concerning false "original" former prices, including, but not limited to, its in-store advertising displays, print advertising, and internet website advertising were "fraudulent" within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the general public, into believing that J.C. Penney was offering value, discounts or bargains from the prevailing market value or worth of the products sold that did not, in fact, exist. As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid.  This perception induced reasonable purchasers, including Plaintiff, to buy such products from J.C. Penney, which they otherwise would not have purchased.

60.     J.C. Penney's acts and practices as described herein have deceived Plaintiff and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase private branded and exclusive branded apparel and accessories at J.C. Penney, Plaintiff relied on J.C. Penney's misleading and deceptive representations regarding its "original," and "sale" prices. Each of these factors played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those items in the absence of J.C. Penney's

18

1   misrepresentations.  Accordingly, Plaintiff suffered monetary loss as a direct result

2   of J.C. Penney's practices described herein.

3      61.      As a result of the conduct described above, J.C. Penney has been

4   unjustly enriched at the expense of Plaintiff and members of the proposed Class.

5   Specifically, J.C. Penney has been unjustly enriched by obtaining revenues and

6   profits that it would not otherwise have obtained absent its false, misleading and

7   deceptive conduct.

8      62.      Through its unfair acts and practices, J.C. Penney has improperly

9   obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this

10  Court cause J.C. Penney to restore this money to Plaintiff and all Class members,

11  and to enjoin J.C. Penney from continuing to violate the UCL as discussed herein.

12  Otherwise, Plaintiff, the Class and members of the general public may be

13  irreparably harmed and/or denied an effective and complete remedy if such an order

14  is not granted.

## THIRD CAUSE OF ACTION

### (Violation of the "Unlawful" Prong of the UCL)

17     63.      Plaintiff realleges by reference, as if fully set forth herein, all of the

18  above Paragraphs.

19     64.      The UCL defines unfair business competition to include any

20  "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive,

21  untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

22     65.      A business act or practice is "unlawful" under the UCL if it violates

23  any other law or regulation.

24     66.      The Federal Trade Commission (FTC) describes false former pricing

25  schemes, similar to J.C. Penney's in all material respects, as deceptive:

26     (a)      One of the most commonly used forms of bargain advertising is

27           to offer a reduction from the advertiser's own former price for an

28           article. If the former price is the actual, bona fide price at which the

19

1  article was offered to the public on a regular basis for a reasonably

2  substantial period of time, it provides a legitimate basis for the

3  advertising of a price comparison.  Where the former price is genuine,

4  the bargain being advertised is a true one.  If, on the other hand, the

5  former price being advertised is not bona fide but fictitious – for

6  example, where an artificial price, inflated price was established for

7  the purpose of enabling the subsequent offer of a large reduction – the

8  "bargain" being advertised is a false one; the purchaser is not receiving

9  the unusual value he expects.

10  (b)    A former price is not necessarily fictitious merely because no

11  sales at the advertised price were made.  The advertiser should be

12  especially careful, however, in such a case, that the price is one at

13  which the product was openly and actively offered for sale, for a

14  reasonably substantial period of time, in the recent, regular course of

15  her business, honestly and in good faith – and, of course, not for the

16  purpose of establishing a fictitious higher price on which a deceptive

17  comparison might be based.

18  16 C.F.R. § 233.1.

19  67.    California statutory and regulatory law also expressly prohibits false

20  former pricing schemes.    Cal. Bus. & Prof. Code § 17501, entitled "*Value*

21  *determinations; Former price advertisements*," states:

22  For the purpose of this article the worth or value of any thing

23  advertised is the prevailing market price, wholesale if the offer is at

24  wholesale, retail if the offer is at retail, at the time of publication of

25  such advertisement in the locality wherein the advertisement is

26  published.

27  *No price shall be advertised as a former price of any advertised thing,*

28  *unless the alleged former price was the prevailing market price as*

20

1     *above defined within three months next immediately preceding the*

2     *publication of the advertisement* or unless the date when the alleged

3     former price did prevail is clearly, exactly and conspicuously stated in

4     the advertisement. [Emphasis added.]

5     68.    As detailed in Plaintiff's Fifth Cause of Action below, Cal. Civ. Code

6 § 1770, subsection (a)(9), prohibits a business from "[a]dvertising goods or services

7 with intent not to sell them as advertised," and subsection (a)(13) prohibits a

8 business from "[m]aking false or misleading statements of fact concerning reasons

9 for, existence of, or amounts of price reductions."

10     69.    J.C. Penney's use of and reference to a materially false "original"

11 price, or purported discounts of "__% off," in connection with its marketing and

12 advertisements concerning its private branded and exclusive branded apparel and

13 accessories violated Title 16, Code of Federal Regulations, Section 233, Cal. Bus.

14 & Prof. Code § 17501, and Cal. Civ. Code § 1770, sections (a)(9) and (a)(13) by

15 advertising false discounts from purported former prices that were, in fact, not the

16 prevailing market prices within three months next preceding the publication and

17 dissemination of advertisements containing the false former prices.

18     70.    As a result of the conduct described above, J.C. Penney has been

19 unjustly enriched at the expense of Plaintiff and members of the proposed Class.

20 Specifically, J.C. Penney has been unjustly enriched by obtaining revenues and

21 profits that it would not otherwise have obtained absent its false, misleading and

22 deceptive conduct.

23     71.    Through its unfair acts and practices, J.C. Penney has improperly

24 obtained money from Plaintiff and the Class. As such, Plaintiff requests that this

25 Court cause J.C. Penney to restore this money to Plaintiff and all Class members,

26 and to enjoin J.C. Penney from continuing to violate the UCL as discussed herein.

27 Otherwise, Plaintiff, the Class and members of the general public may be

28 irreparably harmed and/or denied an effective and complete remedy if such an order

1   is not granted.

2   ### FOURTH CAUSE OF ACTION

3   **(Violation of the California False Advertising Law,
4   California Business & Professions Code Sections 17500, *et seq.*)**

5   72.     Plaintiff realleges by reference, as if fully set forth herein, all of the
6   above Paragraphs.

7   73.     The California False Advertising Law prohibits unfair, deceptive,
8   untrue, or misleading advertising, including, but not limited to, false statements as
9   to worth, value and former price.

10   74.     J.C. Penney's practice of advertising "original" sales prices associated
11   with private branded and exclusive branded apparel and accessories, which were
12   materially greater than the true prevailing prices of those products was an unfair,
13   deceptive and misleading advertising practice because it gave the false impression
14   that the products sold by J.C. Penney regularly sold in the retail marketplace at
15   substantially higher prices (and were, therefore, worth more) than they actually
16   were.  In fact, the private branded and exclusive branded apparel and accessories
17   sold at J.C. Penney did not have a prevailing market price anywhere close to the
18   "original" price advertised.

19   75.     Through its unfair acts and practices, J.C. Penney has improperly
20   obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this
21   Court cause J.C. Penney to restore this money to Plaintiff and all Class members,
22   and to enjoin J.C. Penney from continuing to violate the False Advertising Law as
23   discussed herein.  Otherwise, Plaintiff, the Class and members of the general public
24   may be irreparably harmed and/or denied an effective and complete remedy if such
25   an order is not granted.

26

27

28

22

## FIFTH CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code Sections 1750, *et seq.*: Injunctive Relief)**

76.     Plaintiff realleges by reference, as if fully set forth herein, all of the above Paragraphs.

77.     This cause of action is brought pursuant to the CLRA.

78.     Plaintiff and each member of the proposed Class are "consumers" within the meaning of California Civil Code § 1761(d).

79.     J.C. Penney's sale of private branded and exclusive branded apparel and accessories to Plaintiff and the Class were "transactions" within the meaning of California Civil Code § 1761(e).  The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

80.     As described herein, J.C. Penney violated the CLRA by falsely representing the nature, existence and amount of price discounts from referenced "original" sales prices of its private branded and exclusive branded apparel and accessories where J.C. Penney inflated the purported "original" prices such that the promised discount, value and bargain were false, in violation of Cal. Civ. Code § 1770, subsection (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

81.     Plaintiff relied on J.C. Penney's false representations in deciding to purchase private branded and exclusive branded apparel and accessories from J.C. Penney.   Plaintiff would not have purchased such items absent J.C. Penney's unlawful conduct.  As a result of these acts and practices, Plaintiff suffered damage in that she spent money at J.C. Penney that she would not have otherwise spent absent J.C. Penney's unlawful and misleading acts and practices.

82.     Pursuant to Section 1782(a) of the CLRA, on February 7, 2012,

23

1    Plaintiff's counsel, on behalf of Plaintiff Spann, served Defendant by United States
2    certified mail, return receipt requested, with notice of Defendant's particular
3    violations of the CLRA and requested that Defendant identify victims, notify
4    victims and remedy its illegal conduct within 30 days.

5        83.    More than 30 days have passed, and Defendant has failed to respond
6    to, or comply with, Plaintiff's demand. Accordingly, on behalf of herself and the
7    Class, Plaintiff seeks damages and/or restitution from Defendant. Plaintiff also
8    requests that this Court enjoin J.C. Penney from continuing to violate the CLRA as
9    discussed herein. Otherwise, Plaintiff, the Class and members of the general public
10   may be irreparably harmed and/or denied an effective and complete remedy if such
11   an order is not granted.

12                       **PRAYER FOR RELIEF**

13       WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other
14   members of the Class, requests that this Court award relief as follows:

15       A.    An order certifying that this action may be maintained as a class
16   action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be
17   appointed Class Counsel;

18       B.    Pursuant to Plaintiff's first four causes of action, a judgment awarding
19   Plaintiff and all members of the Class restitution and/or other equitable relief,
20   including, without limitation, restitutionary disgorgement of all profits and unjust
21   enrichment that J.C. Penney obtained from Plaintiff and the Class as a result of its
22   unlawful, unfair and fraudulent business practices described herein;

23       C.    Pursuant to Plaintiff's fifth cause of action, damages and/or
24   restitution;

25       D.    An order enjoining Defendant from continuing to violate the UCL,
26   False Advertising Law and CLRA as described herein;

27       E.    A judgment awarding Plaintiff her costs of suit; including reasonable
28   attorneys' fees pursuant to California Civil Code § 1780(d), Code of Civil

1    Procedure § 1021.5 and as otherwise permitted by statute; and pre and post-

2    judgment interest; and

3        F.      Such other and further relief as may be deemed necessary or

4    appropriate.

5                     **<u>DEMAND FOR JURY TRIAL</u>**

6       Plaintiff hereby demands a trial by jury for all claims so triable.

7    DATED: _____         STANLEY • IOLA, LLP

8                            MATTHEW J. ZEVIN

9

10                           MATTHEW J. ZEVIN

11

12                           225 Broadway, Suite 1350

13                           San Diego, CA 92101
Telephone: (619) 235-5306

14                           Facsimile: (815) 377-8419

15                           EMGE & ASSOCIATES

16                           DEREK J. EMGE
225 Broadway, Suite 1350

17                           San Diego, CA 92101

18                           Telephone: (619) 595-1400
Facsimile: (619) 595-1480

19

20                           Attorneys for Plaintiff Cynthia E. Spann and
Proposed Class Counsel

21

22                           LAW OFFICES OF DAVID A HUCH
DAVID A. HUCH, SBN: 222892

23                           337 North Vineyard Avenue, 4th Floor

24                           Ontario, CA 91764
Telephone: (909) 259-9909

25                           Facsimile: (909) 614-7008

26                           e-mail: david.a.huch@gmail.com

27                           Attorneys for Plaintiff Cynthia E. Spann

28

SACV12 0215 FMO (RNBx)

## PROOF OF SERVICE
*Spann v. J.C. Penney, et al.*
CASE NO: SACV12 0215 FMO (RNBx)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 225 Broadway, Suite 1350, San Diego, CA 92101.

That on July 22, 2013, I served the following document(s) entitled: **THIRD AMENDED COMPLAINT FOR: 1. Unfair Business Practices in Violation of California Business & Professions Code Sections 17200, et seq.; 2. Fraudulent Business Practices in Violation of California Business & Professions Code Sections 17200, et seq.; 3. Unlawful Business Practices in Violation of California Business & Professions Code Sections 17200, et seq.; 4. False Advertising in Violation of California Business & Professions Code Sections 17500, et seq.; 5. Violations of California Consumer Legal Remedies Act; JURY TRIAL DEMANDED** on ALL INTERESTED PARTIES in this action:

☐ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY ELECTRONIC MAIL:** I caused transmission of a PDF copy of the foregoing document(s) this date via electronic mail, to the following parties: mkeshavarzi@sheppardmullin.com.

☐ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be contained in an overnight envelope and to be deposited in a **Federal Express/Overnite Express** box located at 225 Broadway, San Diego, California, for delivery to the above address(es).

I declare under penalty of perjury under the laws of the United States of America and State of California that the foregoing is true and correct. Executed on July 22, 2013, at San Diego, California.

*Anita Villanueva*
ANITA VILLANUEVA