1  STANLEY • IOLA, LLP
   MATTHEW J. ZEVIN, SBN: 170736
2  225 Broadway, Suite 1350
3  San Diego, CA  92101
   Telephone:  (619) 235-5306
4  Facsimile:   (815) 377-8419
   e-mail:       mzevin@aol.com
5
6  EMGE & ASSOCIATES
   DEREK J. EMGE, SBN: 161105
7  225 Broadway, Suite 1350
   San Diego, CA  92101
8  Telephone:  (619) 595-1400
   Facsimile:   (619) 595-1480
9  e-mail:       derek@emgelawfirm.com
10
   Attorneys for Plaintiff Cynthia E. Spann
11 and Proposed Class Counsel
   [Additional Counsel on Signature Page]
12
13                **IN THE UNITED STATES DISTRICT COURT**
14                   **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15  CYNTHIA E. SPANN, on Behalf of Herself and All Others Similarly Situated,<br>16<br>17           Plaintiff,<br>18<br>19  v.<br>20  J.C. PENNEY CORPORATION, INC., a Delaware Corporation; and DOES 1 through 10, Inclusive,<br>21<br>22<br>23           Defendant. | Case No. SACV12 0215 FMO (RNBx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO J.C. PENNEY CORPORATION, INC.'S MOTION TO DISMISS, OR ALTERNATIVELY STRIKE CERTAIN ALLEGATIONS IN, THE THIRD AMENDED COMPLAINT**<br><br>DATE:   September 12, 2013<br>TIME:   10:00 a.m.<br>JUDGE:  Honorable Fernando M. Olguin<br>CTRM:   22 – 5th Floor |

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 1

II.  SUMMARY OF RELEVANT ALLEGATIONS ............................................. 2

III. ARGUMENT ......................................................................................................... 2

    A.  Standards on a Motion to Dismiss ........................................................ 2

    B.  The TAC Adequately States a Claim Under Federal Rule 8(a) Based on JCP's Post-February 2012 Conduct ........................................ 3

    C.  The TAC Satisfies Rule 9(b) .................................................................. 6

    D.  Plaintiff Has Standing to Assert Claims Based on JCP's Pre- and Post-February, 2012 Conduct .................................................................. 8

IV. CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Jamba Juice Co.*,
   888 F. Supp. 2d 1000 (N.D. Cal. 2012) .................................................................. 12

*Arevalo v. Bank of America Corp.*,
   850 F. Supp. 2d 1008 (N.D. Cal. 2011) .................................................................. 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................................. 2, 3

*Brazil v. Dell Inc.*,
   No. C07-01700 RMW, 2008 WL 4912050 (N.D. Cal. Nov. 14, 2008) ............. 12

*In re Daou Systems, Inc.*,
   411 F.3d 1006 (9th Cir. 2005) .................................................................................. 3

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................. 8, 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*,
   528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ...................................... 8

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) .................................................................................... 3

*In re Grand Theft Auto Video Game Consumer Litig.*,
   No. 06-1739, 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) .............................. 10

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) .................................................................................. 9

*Kohler v. Big 5 Corp.*,
   No. 2:12-cv-00500, 2012 WL 11511748 (C.D. Cal. Apr. 30, 2012) ................... 3

*Lanovaz v. Twinnings North America, Inc.*,
   No. C-12-02646, 2013 WL 2285221 (N.D. Cal. May 23, 2013) ..................... 8, 9

*Route v. Mead Johnson Nutrition Co.*,
   No. CV 12-7350-GW(JEMx), 2013 WL 658251
   (C.D. Cal. Feb. 21, 2013) ................................................................................ 11, 12

*Shurkin v. Golden State Vinters Inc.*,
   471 F. Supp. 2d 998 (N.D. Cal. 2006) ............................................................ 10, 11

*Shwarz v. United States*,
   234 F.3d 428 (9th Cir. 2000) ................................................................................. 3

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ................................................................. 3

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. 2010) ................................................................. 11

**<u>Statutes, Rules & Regulations</u>**

15 U.S.C.
   § 45 ........................................................................................................................ 1
   § 78u-4(b) ............................................................................................................ 10

Federal Rules of Civil Procedure
   Rule 8(a) ............................................................................................................ 3, 8
   Rule 8(a)(2) ........................................................................................................... 3
   Rule 9(b) ...................................................................................................... 6, 8, 10
   Rule 12(b)(6) ...................................................................................................... 2, 3
   Rule 12(f) .............................................................................................................. 3
   Rule 30(b)(6) ..................................................................................................... 7, 8

Federal Trade Commission Act
   § 5 .......................................................................................................................... 1

California Business & Professions Code
   § 17200 .................................................................................................................. 1
   § 17501 .................................................................................................................. 1

California Civil Code
   § 1770 .................................................................................................................... 1

1  Plaintiff, Cynthia E. Spann ("Plaintiff") respectfully responds to Defendant J.C. Penney Corporation, Inc.'s ("JCP" or the "Company") Motion to Dismiss, or Alternatively Strike Certain Allegations in, the Third Amended Complaint ("Motion") as follows:

## I. INTRODUCTION

This case involves JCP's rampant use of false price comparisons in violation of both state and federal law. Plaintiff alleges that JCP uses artificially inflated "regular" prices that are designed to create the false illusion of a price discount for its private and exclusive branded apparel and accessories. In fact, JCP never (or virtually never) offers those products at the higher "regular" prices, and it has no bona fide intention of ever selling them (or any meaningful quantity of them) at the higher "regular" prices. The higher regular prices are, therefore, fictitious.

The Third Amended Complaint ("TAC") contains specific examples of this conduct which represents a *per se* violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17501 ("FAL"), as well as a *prima facie* violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") and California's Consumers' Legal Remedies Act, Cal. Civ. Code §§ 1770, *et seq.* ("CLRA"). It also represents a violation of the Federal Trade Commission Act, § 5, 15 USC § 45, as well as its implementing regulations, 16 C.F.R. § 233.1 ("FTCA") which are incorporated under Plaintiff's claim under the "unlawful" prong of the UCL.

Through its Motion, JCP seeks to dismiss or strike Plaintiff's claims only to the extent that they pertain to JCP's post-February 2012 conduct. JCP's Memorandum of Points and Authorities [Dkt. No. 103-1] at 2. The Motion must be denied because there is no basis to distinguish the Company's illegal conduct that occurred *before* February 2012 from the Company's illegal conduct that has occurred *since* February 2012. Simply put, Plaintiff alleges that JCP has "returned" to the exact same false price comparison activities that it engaged in prior to

February, 2012. The fact that there was a period of time during which JCP purportedly "stopped" using its false price comparisons does not immunize JCP from its subsequent but identical illegal behavior.

## II. SUMMARY OF RELEVANT ALLEGATIONS

Plaintiff alleges that JCP advertises false price comparisons with respect to its private and exclusive branded apparel and accessories. Specifically, she alleges that JCP uses false and inflated "original" or "regular" price tags that do not represent JCP's actual regular prices for those products and which are not the prevailing market price of those products during the preceding 90 days. *See generally*, TAC ¶¶ 1-2, 37, at 12.[1] Plaintiff also alleges that, in March, 2011, she saw and relied on JCP's false price comparisons when she purchased ten items from JCP, and she alleges that she would not have purchased those items from JCP had she known that the price comparisons were false. TAC ¶¶ 14-15, 29-37, at 8-11.

While the TAC alleges that JCP stopped using its false price comparisons in or about February, 2012, (TAC ¶¶ 6, 38, at 12-13), this was only a temporary departure from JCP's illegal conduct and resulted in significant declines in the Company's revenues and earnings. *Id*. Accordingly, in order to stem the Company's losses, JCP recently *returned* to the same false and illegal price comparison practices which are once again deceiving consumers. TAC ¶¶ 7-10, 40.

## III. ARGUMENT

### A. Standards on a Motion to Dismiss

The rules governing motions to dismiss are well established. Fed. R. Civ. P. 12(b)(6) permits dismissal only if a challenged pleading fails to "state a claim upon which relief can be granted." To satisfy this liberal pleading standard, a complaint "does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). Rather, the complaint's allegations

---

[1] The TAC contains a formatting error, with two paragraphs numbered 37 and two paragraphs numbered 38. *See* TAC at 11-12.

2

need only "be enough to raise a right to relief above the speculative level." *Id*.

When considering a Rule 12(b)(6) motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all well pleaded facts are taken as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Motions to dismiss are generally viewed with disfavor and are rarely granted. *See, e.g., Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *See, e.g., In re Daou Systems, Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005).

Similarly, "Courts generally disfavor and rarely grant motions to strike, since they impose a drastic and extreme remedy." *Kohler v. Big 5 Corp.*, No. 2:12-cv-00500, 2012 WL 11511748, at *2 (C.D. Cal. Apr. 30, 2012). A motion to strike may only be used to challenge "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of the motion is to "'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1170 (C.D. Cal. 2011) (citation omitted).

**B. The TAC Adequately States a Claim Under Federal Rule 8(a) Based on JCP's Post-February 2012 Conduct**

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. Proc. 8(a)(2). In its Motion, JCP does not dispute that Plaintiff adequately pleads a claim based on JCP's conduct prior to February 2012. Rather, it only contends that Plaintiff's allegations based on JCP's post-February 2012 conduct "fail to show any actual UCL, FAL or CLRA violation." Motion at 4. This argument is without merit because the TAC sufficiently pleads that JCP has returned to the same illegal conduct that it was engaging in prior to February 2012,

and Plaintiff's allegations concerning JCP's pre-February 2012 conduct adequately support her allegations concerning JCP's post-February 2012 conduct.

The TAC plainly alleges that JCP engaged in an illegal false price comparison scheme before February, 2012. It specifically describes JCP's illegal conduct, including the details of Plaintiff's transaction in March, 2011 and the admissions of JCP's former CEO, Ron Johnson. *See* TAC ¶¶ 1-5, 29-39. Notably, JCP does not suggest that these allegations are insufficient for Plaintiff to state a claim based on JCP's conduct at *any time before* February, 2012, regardless of whether such conduct occurred a day, a week, or even a year before her specific transaction in March, 2011. Nor does JCP suggest that Plaintiff's allegations are deficient with respect to JCP's conduct during the eleven-month time period *after* her transaction, but before February, 2012.

JCP's arguments that the TAC fails to allege "facts showing an actual post-February 2012, violation" of law (Motion at 5), or any "post-February 2012 overt act by JCP beyond preparation" (Motion at 6) are based on an unduly restrictive and, indeed, unnatural reading of the TAC. Plaintiff has not alleged "[t]hreadbare recitals of the elements of her causes of action." Motion at 6 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). She has specifically detailed her particular transaction, and she has generally alleged how JCP engaged in false advertising for an expanded time period both prior to February 2012, and after February 2012.

While the TAC pleads that JCP temporarily stopped using false price comparisons in or about February, 2012, it explicitly alleges and details how JCP has since "returned" to the same false price comparison scheme that it engaged in prior to February 2012. It alleges that JCP is, once again, "marking up the prices of its private and exclusive branded apparel and accessories above the 'fair and square' prices without any good faith intention of selling such items (or any substantial quantity of such items) at those higher prices," and that the "price mark ups are being made solely so that [JCP] can immediately (or almost immediately)

4

thereafter offer to sell those products at purported reduced 'sale' prices that are, in fact, illusory because the products never sold (at least not in any meaningful quantities) at the higher price." TAC ¶ 7. *See also* TAC ¶ 40 (detailing how JCP has "returned" to its practice of using comparative prices and "fake 'sales'"). The TAC also specifically pleads that JCP "continues to violate" California law (TAC ¶ 17), and that its renewed false price comparisons are *currently* effective at getting consumers to "pay more for products than they would otherwise have paid absent the false price comparisons." TAC ¶ 8. It also pleads that "hundreds of thousands of California consumers *have been victims*" of JCP's illegal conduct. TAC ¶ 9 (emphasis added).

When read in context and taken in their entirety, Plaintiff's post-February 2012 allegations do much more than suggest that JCP is now only planning to deceive consumers, or that JCP has only "attempted" to violate the law. Motion at 6-7. They allege that JCP is in fact, and once again, actively engaging in the exact same illegal conduct that it is alleged to have engaged in prior to February, 2012. Given the liberal Federal pleading standards, nothing more is required to state a claim.

The fact that JCP took a temporary break from its illegal price comparisons does not make it necessary for Plaintiff to detail a new and separate specific example of consumer deception after February 2012. Motion at 6. Rather, just as Plaintiff's specific allegations of deception are sufficient to support her claim based on JCP's conduct prior to February 2012, they are equally sufficient to support her claim based on JCP's identical post-February 2012 conduct. None of the cases cited by JCP holds differently.[2]

---

[2] Under JCP's logic, a company that has been sued for false advertising could simply stop engaging in the challenged practice for any period of time, say a week, or even a day, and then start up again without exposure for its renewed conduct under the original lawsuit. There is absolutely no authority to support this proposition.

5

### C. The TAC Satisfies Rule 9(b)

While the parties could debate whether Rule 9(b) applies to this case, it is of no consequence because the TAC satisfies those heightened pleading standards. JCP's arguments to the contrary are both misplaced and disingenuous.

JCP does not argue that the complaint fails to satisfy Rule 9(b) with respect to allegations concerning JCP's pre-February 2012 conduct. Thus, JCP concedes that Plaintiff has adequately alleged the "who, what, when, where and how" of JCP's misconduct prior to February 2012. Motion at 7 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). Instead, JCP argues only that Plaintiff fails to satisfy the heightened pleadings standards with respect to its post-February 2012 conduct. For the reasons stated above, JCP is mistaken. If Plaintiff's facts are sufficient to state a claim based on JCP's conduct prior to February 2012, then those same facts are sufficient to satisfy the pleading standards with respect to JCP's post-February 2012 conduct.

To the extent that JCP demands *more* detailed facts, such as the exact date that it returned to its false price comparisons, or more details concerning specific transactions, JCP's position is highly disingenuous because it has gone out of its way to actively *prevent* Plaintiff from obtaining such details. In this regard, it is important to understand some of the history of this case.

Plaintiff's original Complaint and her First Amended Complaint both alleged that JCP engaged in a continuing practice of false price comparisons, and Plaintiff sought an injunction to prevent JCP from continuing such conduct. [Dkt. Nos. 1 and 9]. However, on April 13, 2012, JCP presented Plaintiff's counsel with a sworn declaration from a corporate representative who declared, under oath, that JCP had stopped using price comparisons as a result of its conversion to "fair and square" pricing. Declaration of Adam C. Tarczynski, dated April 13, 2012, attached as Exhibit A to the accompanying Declaration of Matthew J. Zevin in Support of Plaintiff's Opposition to JCP's Motion to Dismiss ("Zevin Decl.").

After receiving that sworn declaration, Plaintiff agreed to file a Second Amended Complaint ("SAC") in which she removed her claim for injunctive relief as well as her allegations suggesting that JCP's illegal conduct was ongoing. [Dkt. No. 13].

During the course of this litigation, however, it became apparent that JCP was slowly returning to its use of price comparisons. For example, on January 28, 2013, the Associated Press issued an article entitled "*JCPenney will begin adding some of the hundreds of sales it ditched in 2012.*" Zevin Decl., Ex. B. Thereafter, in March 2013, Plaintiff's counsel deposed a JCP Rule 30(b)(6) witness, Lorraine Hitch, and asked her about JCP's current pricing practices, as well as another news article suggesting that JCP's price comparisons were once again *false*. Zevin Decl., ¶ 5 and Ex. C. JCP's counsel objected to such questions involving JCP's current pricing practices, and Ms. Hitch was unable to testify in any detail about the Company's pricing practices on a going forward basis. *Id*. at ¶ 5.

On May 2, 2013, an article was published on Time's website, www.business.time.com, entitled "*JC Penney Reintroduces Fake Prices (and Lots of Coupons Too, Of Course)*, which insinuated that JCP had returned to false price comparisons. Zevin Decl., Ex. D. Thereafter, several additional media reports strongly suggested that JCP was, once again, actively engaging in false price comparisons. Zevin Decl., Exs. E-G.

On April 11, 2013, Plaintiff filed her original motion for class certification. [Dkt. No. 47]. In her supporting memorandum, Plaintiff stated that she was seeking to certify a class period that ended on February 1, 2012, but that she reserved her right to expand the class period beyond that date based on future discovery, including discovery showing that JCP had returned to its false price comparisons practices. [Dkt. No. 55 at 2, n1.]. However, JCP prevented Plaintiff from obtaining such discovery.

For example, on July 3, 2013, Plaintiff's counsel deposed two JCP managers who submitted declarations in opposition to Plaintiff's original Motion for Class

Certification.  Zevin Decl., ¶ 10.  During each of those depositions, JCP's counsel not only objected to all questions concerning JCP's current pricing practices, but also instructed the witnesses not to answer any such questions based solely on his objection that the issues were "irrelevant."  *Id*. at ¶¶ 10-12, Exs. H and I.[3]

In sum, JCP has gone back and forth with its pricing practices, convinced Plaintiff to remove her claim for an injunction based on its temporary departure from false price comparisons, and inappropriately thwarted Plaintiff's efforts to obtain more detailed facts concerning JCP's recent return to false price comparisons.  In light of JCP's "cat and mouse" behavior and "hide the ball" discovery tactics, JCP should not now be in a position to complain that Plaintiff lacks more particular factual details concerning JCP's current pricing practices.

**D.   Plaintiff Has Standing to Assert Claims Based on JCP's Pre- and Post-February, 2012 Conduct**

In order to show standing, Plaintiff must demonstrate "(1) an injury in fact that is (2) fairly traceable to the defendant's allegedly wrongful conduct and (3) is likely to be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).  In the context of a class action, the Ninth Circuit "has held that courts should not be too rigid in applying standing requirements to proposed classes."  *Lanovaz v. Twinings North America, Inc.*, No. C-12-02646, 2013 WL 2285221 (N.D. Cal. May 23, 2013) (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir.2001) *abrogated on other grounds by Johnson v. California*, 543 U.S. 499,

---

[3] JCP has since agreed to produce a new Rule 30(b)(6) witness designated to testify about JCP's current pricing practices.  Zevin Decl., ¶ 13.  That deposition is schedule to occur at JCP's headquarters in Dallas on Monday, August 26, 2013, which is four days after the deadline to file this opposition.  *Id*.  Accordingly, if the Court finds that Plaintiff's allegations concerning JCP's post-February 2012 pricing practices are insufficiently pled under either Federal Rule 8(a) or Rule 9(b), Plaintiff respectfully requests leave to amend based on any new facts obtained during that deposition.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment).

504-05, 125 S. Ct. 1141, 160 L.Ed.2d 949 (2005)).[4]

Here, JCP previously challenged Plaintiff's standing based on its argument that she did not suffer any economic injury resulting from JCP's conduct. [Dkt. No. 14]. It also filed a motion to strike certain allegations and some of Plaintiff's class description, based on its argument that Plaintiff could not represent putative class members who purchased items in reliance on print or internet advertising because Plaintiff, herself, purportedly relied only on in-store advertising. [Dkt. No. 15].

On July 16, 2012, the Court, the Honorable James V. Selna presiding, denied both motions. The Court held that Plaintiff adequately alleged an injury in fact, and that JCP's arguments concerning the scope of the proposed class should be addressed in connection with a motion for class certification rather than in connection with a challenge to the pleadings. [Dkt. No. 24]. Thereafter, in a virtually identical case against a different retailer, the Ninth Circuit confirmed that the Court's order denying JCP's motion to dismiss was correct. *See generally, Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013).

As stated in *Hinojos*:

> There is no difficulty in this case regarding Article III injury in fact, and neither party suggests otherwise. We have explained that when, as here, "Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so" they have suffered an Article III injury in fact.

*Hinojos*, 718 F.3d at 1104, n3 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)).

---

[4] *Lanovaz* also notes that the Supreme Court has "recognized the 'flexible character' of Article III and held that an action did not become moot when the named plaintiff's claim expired." *Id.* (quoting *United States Parole Commission v. Geraghty*, 445 U.S. 388, 400, 100 S. Ct. 1202, 63 L.Ed.2d 479 (1980)).

9

1      Presumably for this reason, JCP does not currently dispute that Plaintiff has
Article III standing with respect to JCP's pre-February 2012 conduct.  Instead, it
only challenges Plaintiff's standing to assert class claims based on JCP's post-February 2012 conduct because she does not allege that she personally purchased
any items from JCP after that time period.  This argument is without legal support
and, like JCP's arguments concerning print and internet advertising, it should be
addressed (if at all) in connection with Plaintiff's imminent motion for class
certification rather than in the context of a motion to dismiss or strike.  *See In re
Grand Theft Auto Video Game Consumer Litig.*, No. 06-1739, 2006 WL 3039993,
at *3 (S.D.N.Y. Oct. 25, 2006) ("Defendants do not challenge the Named Plaintiffs'
standing to bring claims against Defendants . . . .  The relevant question, therefore,
is not whether the Named Plaintiffs have standing to sue Defendants – they most
certainly do – but whether their injuries are sufficiently similar to those of the
purported Class to justify the prosecution of a nationwide class action.").[5]

   Crucially, JCP does not dispute that Plaintiff has standing to assert class
claims based on JCP's conduct one day, one week or even one *year before* she
purchased items from JCP in March, 2011.  Nor does it argue that Plaintiff lacks
standing to assert class claims based on JCP's conduct *after* her purchase on
March 5, 2011, but before February, 2012.  None of JCP's authorities mandate a
different result with respect to JCP's post-February 2012 conduct which is, for all
intents and purposes, identical to its pre-February 2012 conduct.

   JCP's reliance on *Shurkin v. Golden State Vinters Inc.*, 471 F. Supp. 2d 998,
1012-13 (N.D. Cal. 2006) is misplaced.  *Shurkin* was a securities fraud case subject
to the heightened pleading standards of the Private Securities Litigation Reform
Act, 15 U.S.C. § 78u-4(b) ("PSLRA"), which are even higher than Federal Rule
9(b).  *Id*.  That case, therefore, involves considerations unique to securities fraud

---

[5] Pursuant to the Court's July 15, 2013 Order [Dkt. No. 92], Plaintiff will file a renewed Motion for Class Certification on September 6, 2013.

actions, including the requirement that any fraudulent conduct underlying such a claim "must occur *before* the purchase or sale of securities." *Id*. at 1022 (citing cases, emphasis added). Here, Plaintiff has not brought a securities fraud case, and her claims are not subject to the PSLRA. The analysis and holding in *Shurkin* are therefore irrelevant to the question of Plaintiff's standing in this case.[6]

Equally distinguishable is *Arevalo v. Bank of America Corp.*, 850 F. Supp. 2d 1008 (N.D. Cal. 2011). In that case, the plaintiff sought to represent two distinctly different classes of people with completely different factual scenarios. The first group included people, like the named plaintiffs, who were automatically enrolled in the bank's credit protection program. 850 F. Supp. 2d at 1015. The second group, which did not include the named plaintiffs, consisted of persons who signed up for the credit protection program but who could not use it due to exclusions. *Id*. Based on these "intra-class differences," the court held that the named plaintiffs lacked standing to represent the second group because they could not advance those claims individually. *Id*. at 1017-18.

Here, in contrast, there are no such intra-class differences. The class claims stemming from JCP's post-February 2012 conduct are the same as Plaintiff's claims stemming from JCP's pre-February 2012 conduct.[7]

*Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 WL 658251 (C.D. Cal. Feb. 21, 2013) is also distinguishable, as it was based on misrepresentations concerning the ingredients in various baby formula. Although the court held that the plaintiff could not represent class members who purchased three baby food products that she did not purchase, it acknowledged that there could be a basis in which the named Plaintiff could have standing for all four products,

---

[6] The holding in the other securities fraud case cited by JCP, *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958 (N.D. Cal. 2010), is distinguishable for the same reasons.

[7] *Arevalo* also notes that these issues are usually better addressed in connection with a class certification motion. *Id*. at 1017 (citing cases).

11

even though she only purchased one.  Specifically, if all four products "(1) contained the same controverted ingredient in the same amount, (2) were subject to the same advertisement campaign and same representations, and (3) the only differences between the products were not germane to Plaintiff's claims . . . then an argument could be made that the four products were identical for purposes of this lawsuit." *Id*. at *3, n.4.  *See also Anderson v. Jamba Juice Co*., 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) (holding purchaser of certain smoothie kits had standing as to purchasers of other kits because they contained the same alleged misrepresentation); *Brazil v. Dell Inc.*, No. C07-01700 RMW, 2008 WL 4912050, at *5 (N.D. Cal. Nov. 14, 2008) (holding that named plaintiffs who alleged injuries relating to the purchase of two computer models had standing to assert claims on behalf of class members who purchased computers across the product line and alleged different kinds of harms).

Here, Plaintiff's claims are not based on misrepresentations concerning the particular characteristics or ingredients of any particular product.  They are based instead on a common false pricing scheme that applies equally to all products sold by JCP both before and after February, 2012.[8]  Plaintiff's claim based on JCP's earlier conduct is the same as the claims of class members who were subject to JCP's illegal conduct after February 2012.  The mere passage of time, and the apparent break that JCP took from its illegal behavior, should not eliminate Plaintiff's standing based on JCP's recent return to the same false pricing practices.  None of JCP's authorities hold otherwise.

---

[8] JCP's assertion that the TAC does not set forth facts showing that JCP "now has in place the same or similar representations that it had in place" prior to February 2012 (Motion at 10) simply ignores the allegations in the TAC. As discussed above, the TAC more than sufficiently details JCP's illegal conduct before February, 2012, and it alleges that JCP has "returned" to that same conduct. TAC ¶¶ 7, 40.

12

IV. **CONCLUSION**

    For the reasons discussed herein, JCP's Motion should be denied.

DATED: August 22, 2013        STANLEY • IOLA, LLP
                                        MATTHEW J. ZEVIN


                                        */s/ Matthew J. Zevin*
                                        MATTHEW J. ZEVIN

                                        225 Broadway, Suite 1350
                                        San Diego, CA  92101
                                        Telephone:  (619) 235-5306
                                        Facsimile:    (815) 377-8419

                                        EMGE & ASSOCIATES
                                        DEREK J. EMGE
                                        225 Broadway, Suite 1350
                                        San Diego, CA  92101
                                        Telephone:  (619) 595-1400
                                        Facsimile:    (619) 595-1480

                                        Attorneys for Plaintiff Cynthia E. Spann and Proposed Class Counsel

                                        LAW OFFICES OF DAVID A HUCH
                                        DAVID A. HUCH, SBN: 222892
                                        337 North Vineyard Avenue, 4th Floor
                                        Ontario, CA  91764
                                        Telephone:  (909) 259-9909
                                        Facsimile:    (909) 614-7008
                                        e-mail: david.a.huch@gmail.com

                                        Attorneys for Plaintiff Cynthia E. Spann

**PROOF OF SERVICE**

*Spann v. J.C. Penney, et al.*
CASE NO: SACV12 0215 FMO (RNBx)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 225 Broadway, Suite 1350, San Diego, CA 92101.

That on August 22, 2013, I served the following document(s) entitled: **PLAINTIFF'S OPPOSITION TO J.C. PENNEY CORPORATION, INC.'S MOTION TO DISMISS, OR ALTERNATIVELY STRIKE CERTAIN ALLEGATIONS IN, THE THIRD AMENDED COMPLAINT** on ALL INTERESTED PARTIES in this action:

☐ **BY MAIL**: By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY CM/ECF Electronic Service:** I caused such document to be served via the Court's (NEF) electronic filing system on all registered parties.

I declare under penalty of perjury under the laws of the United States of America and State of California that the foregoing is true and correct. Executed on August 22, 2013, at San Diego, California.

 */s/ Matthew J. Zevin*
MATTHEW J. ZEVIN

SACV12 0215 JVS (RNBx)