1  STANLEY LAW GROUP
2  MATTHEW J. ZEVIN, SBN: 170736
   225 Broadway, Suite 1350
3  San Diego, CA  92101
   Telephone:   (619) 235-5306
4  Facsimile:   (815) 377-8419
   e-mail:       mzevin@aol.com
5
6  EMGE & ASSOCIATES
   DEREK J. EMGE, SBN: 161105
7  225 Broadway, Suite 1350
   San Diego, CA  92101
8  Telephone:   (619) 595-1400
   Facsimile:   (619) 595-1480
9  e-mail:       derek@emgelawfirm.com

10
   Attorneys for Plaintiff Cynthia E. Spann
11 and Proposed Class Counsel
   [Additional Counsel on Signature Page]
12
13         **IN THE UNITED STATES DISTRICT COURT**

14         **CENTRAL DISTRICT OF CALIFORNIA**

15 CYNTHIA E. SPANN, on Behalf         Case No. SACV12-0215 FMO (RNBx)
   of Herself and All Others
16 Similarly Situated,                 <u>**CLASS ACTION**</u>

17                 Plaintiff,          **FOURTH AMENDED COMPLAINT
                                       FOR:**
18                                     **1.     Unfair Business Practices in Violation
   v.                                  of California Business & Professions Code
19                                     Sections 17200, _et seq._**
                                       **2.     Fraudulent Business Practices in
20 J.C. PENNEY CORPORATION,            Violation of California Business &
                                       Professions Code Sections 17200, _et seq._**
21 INC., a Delaware Corporation,       **3.     Unlawful Business Practices in
                                       Violation of California Business &
22                 Defendant.          Professions Code Sections 17200, _et seq._**
                                       **4.     False Advertising in Violation of
23                                     California Business & Professions Code
                                       Sections 17500, _et seq._**
24                                     **5.     Violations of California Consumer
                                       Legal Remedies Act**
25
26                                     <u>**JURY TRIAL DEMANDED**</u>

27                                     JUDGE:    Honorable Fernando M. Olguin
                                       CTRM:     F – 9th Floor
28

Plaintiff, Cynthia E. Spann, ("Plaintiff") by and through her attorneys, brings this class action against Defendant J.C. Penney Corporation, Inc. ("J.C. Penney" or "Defendant"), on her own behalf and on behalf of all others similarly situated, and alleges as follows based upon personal knowledge, information and belief, and the investigation of her counsel:

## **NATURE OF THE ACTION**

1.      This is a class action against J.C. Penney for falsely advertising "original" prices, "sale" prices and corresponding price discounts for its private branded and exclusive branded apparel and accessories.  During the Class Period (defined below), J.C. Penney advertised false former prices and false price discounts for its private branded and exclusive branded apparel and accessories.

2.      During the Class Period, J.C. Penney misrepresented the existence, nature and amount of price discounts by purporting to offer specific dollar discounts from expressly referenced former retail prices, which were misrepresented as "original" or "regular" retail prices.   These purported discounts were false, however, because the referenced former retail prices were fabricated and did not represent J.C. Penney's true "original" retail prices for its private branded and exclusive branded apparel and accessories.  Furthermore, the advertised "original" prices for J.C. Penney's private branded and exclusive branded apparel and accessories were not the prevailing market retail prices within three months next immediately preceding the publication of the advertised former prices, as required by California law.

3.      The Federal Trade Commission ("FTC") describes false former pricing schemes, similar to J.C. Penney's in all material respects, as deceptive:

One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial

1

1    period of time, it provides a legitimate basis for the advertising of a
2    price comparison.  Where the former price is genuine, the bargain
3    being advertised is a true one.  If, on the other hand, the former price
4    being advertised is not bona fide but fictitious – for example, where an
5    artificial price, inflated price was established for the purpose of
6    enabling the subsequent offer of a large reduction – the "bargain"
7    being advertised is a false one; the purchaser is not receiving the
8    unusual value he expects.

9    16 C.F.R. § 233.1(a).

10        4.      California statutory and regulatory law expressly prohibits false
11   former pricing schemes.   Cal. Bus. & Prof. Code § 17501, entitled "*Value*
12   *determinations; Former price advertisements*," states:

13        For the purpose of this article the worth or value of any thing
14        advertised is the prevailing market price, wholesale if the offer is at
15        wholesale, retail if the offer is at retail, at the time of publication of
16        such advertisement in the locality wherein the advertisement is
17        published.

18        *No price shall be advertised as a former price of any advertised thing,*
19        *unless the alleged former price was the prevailing market price as*
20        *above defined within three months next immediately preceding the*
21        *publication of the advertisement* or unless the date when the alleged
22        former price did prevail is clearly, exactly and conspicuously stated in
23        the advertisement.  [Emphasis added.]

24        5.      Upon information and belief, J.C. Penney's false price advertising
25   scheme, disseminated to California consumers via its in-store display advertising,
26   print advertising and Internet Web site (www.jcpenney.com), was rampant
27   throughout California as part of a massive, years-long, pervasive campaign and was
28   consistent across all of J.C. Penney's private branded and exclusive branded apparel

2

and accessories until February 1, 2012.  For example, J.C. Penney's in-store pricing scheme was prominently displayed directly above the private branded and exclusive branded apparel and accessories, with express references to former "*original*" or "regular" retail prices that never existed and/or did not constitute the prevailing market retail prices for such products within the three months next immediately preceding the publication of the advertisement.  Furthermore, upon check-out, J.C. Penney provided California consumers, including Plaintiff, with sales receipts continuing the misrepresentations regarding false price reductions.  For example, the stated discount from the false former price was listed for each item purchased. Below the total amount purchased at the bottom of the sales receipt, J.C. Penney misrepresented to consumers the total amount purportedly saved on the entire purchase transaction with the words "*Your Total Savings Today*."[1]

6.      Upon information and belief, J.C. Penney temporarily stopped using price comparisons in or about February, 2012.  At that time, it began a new pricing strategy known as "fair and square," by which it purported to offer products at everyday low prices.  Thereafter, it was widely reported in the press that the results of this new pricing strategy were disastrous for J.C. Penney and that the Company suffered significant reductions in its revenues and profits.  The widely reported failure of J.C. Penney's switch to "fair and square" pricing demonstrates that J.C. Penney's false and deceptive comparative pricing scheme was highly effective and enabled J.C. Penney to receive profits and revenues from consumers that J.C. Penney would not otherwise have received absent the false price comparisons.

7.      Upon information and belief, J.C. Penney largely abandoned its "fair and square" pricing strategy in early 2013.  Since then, it has experimented with a variety of pricing practices, including a return to false comparative price advertising.  Specifically, J.C. Penney has marked up (and continues to mark up)the

---

[1] *See* true and correct copy of Plaintiff's sales receipt, dated March 5, 2011, attached hereto as Exhibit A.

prices of many of its private and exclusive branded apparel and accessories, well above the former "fair and square" prices and well above the prevailing market price for such items, without any good faith intention of selling such items (or any substantial quantity of such items) at those higher prices.  Rather, the price mark ups were (and are) made solely so that J.C. Penney could (and can) immediately (or almost immediately) thereafter sell those products at purported reduced "sale" prices that are, in fact, illusory because the products never sold (at least not in any meaningful quantities) at the higher price.

8.      Upon information and belief, hundreds of thousands of California consumers were victims of J.C. Penney's deceptive, misleading and unlawful pricing scheme prior to February 1, 2012, hundreds or thousands more have been victimized as a result of J.C. Penney's recent return to such practices, and hundreds or thousands more will be deceived if J.C. Penney's practices continue.

9.      J.C. Penney knew (and knows) that its comparative price advertising was (and is again) false, deceptive, misleading and unlawful under California law.

10.      J.C. Penney fraudulently concealed from and intentionally failed to disclose to Plaintiff and others similarly situated the truth about its advertised price discounts and former prices.

11.      At all relevant times, J.C. Penney has been under a duty to Plaintiff and others similarly situated to disclose the truth about its "regular" and "original" prices.

12.      The facts which J.C. Penney misrepresented and/or failed to disclose (and which J.C. Penney continues to misrepresent and/or fail to disclose) are material facts that a reasonable person would consider material, i.e., facts which would contribute to a reasonable person's decision to purchase apparel and accessories.  J.C. Penney's false representations of "regular" and "original" prices and false representations of purported savings, discounts and bargains are objectively material to the reasonable consumer, and therefore reliance upon such

4

1    representations may be presumed as a matter of law.

2        13.    Plaintiff relied upon such false representations of "original" prices and
3    discounts when purchasing private branded and exclusive branded apparel and
4    accessories at J.C. Penney.  Plaintiff would not have made such purchases but for
5    J.C. Penney's false representations of "original" prices and price discounts.

6        14.    Plaintiff reasonably and justifiably acted and relied to her detriment
7    on J.C. Penney's false "original" price representations and failure to disclose, and
8    concealment of, the truth about J.C. Penney's false price-comparison advertising
9    scheme in purchasing private branded and exclusive branded apparel and
10   accessories at J.C. Penney.

11       15.    J.C. Penney intentionally concealed and failed to disclose the truth
12   about its misrepresentations and false former price advertising scheme for the
13   purpose of inducing Plaintiff and others similarly situated to purchase private
14   branded and exclusive branded apparel and accessories at J.C. Penney.

15       16.    Through its false and deceptive marketing, advertising and pricing
16   scheme, J.C. Penney violated (and continues to violate) California law prohibiting
17   advertising goods for sale as discounted from former prices which are false, and
18   prohibiting misleading statements about the existence and amount of price
19   reductions.   Specifically, J.C. Penney violated (and continues to violate)
20   California's Business & Professions Code §§ 17200, *et seq*. (the "UCL"),
21   California's Business & Professions Code §§ 17500, *et seq*. (the "FAL"), the
22   California Consumers' Legal Remedies Act, California Civil Code §§ 1750, *et seq*.
23   (the "CLRA"); and the Federal Trade Commission Act ("FTCA"), which prohibits
24   "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C.
25   § 45(a)(1)) and specifically prohibits false advertisements.  15 U.S.C. § 52(a)).

26       17.    Plaintiff, individually and on behalf of all others similarly situated,
27   seeks restitution and other equitable remedies, including an injunction under the
28   UCL and FAL; and restitution, damages and an injunction under the CLRA.

5

**PARTIES**

18.      Plaintiff Cynthia E. Spann is a competent adult who resides in the County of Los Angeles County who, in reliance on Defendants' false and deceptive advertising, marketing and pricing schemes, purchased over $200.00 in private branded and exclusive branded apparel and accessories at J.C. Penney's Brea, California location on March 5, 2011, and was damaged thereby.

19.      Defendant J.C. Penney Corporation, Inc. is a publicly traded Delaware Corporation (NYSE: JCP) with its principal executive offices in Plano, Texas. According to its Form 10-K for the fiscal year ending January 28, 2012, J.C. Penney "sell[s] family apparel and footwear, accessories, fine and fashion jewelry, beauty products through Sephora inside jcpenney and home furnishings." J.C. Penney sells national brands, as well as private and exclusive branded products that it promotes as being available "only at" J.C. Penney.

20.      Plaintiff is informed and believes that each co-defendant, by and through its officers, directors or managing agents ratified, authorized and approved, expressly or implicitly, all of the conduct alleged herein.

21.      When in this Complaint reference is made to any act of "J.C. Penney" or "Defendant," such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

**JURISDICTION AND VENUE**

22.      Plaintiff realleges by reference, as if fully set forth herein, all of the above Paragraphs.

23.      The Court has original jurisdiction over this Action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which:

6

1    (1) at least some members of the proposed Class have a different citizenship from

2    Defendant; and (2) the claims of the proposed Class members exceed $5,000,000.00

3    (Five Million U.S. Dollars) in the aggregate.

4        24.    The Central District of California has personal jurisdiction over the

5    Defendant named in this action because Defendant is a corporation or other

6    business entity authorized to do business in the State of California and registered

7    with the California Secretary of State to do sufficient business with sufficient

8    minimum contacts in California, and/or otherwise intentionally avails itself of the

9    California market through the ownership and operation of approximately 80 retail

10   stores within the State of California, to render the exercise of jurisdiction by the

11   California courts consistent with traditional notions of fair play and substantial

12   justice.

13       25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because

14   the Defendant named in this action resides, transacts business, or is found within

15   this District, and a substantial part of the events giving rise to Plaintiff's claims

16   arose here.  Plaintiff's claims arise out of her purchase of consumer products in the

17   city of Brea, State of California.

18                              **FACTUAL ALLEGATIONS**

19   **Plaintiff and Other Class Members Were Victimized by J.C. Penney's**
20   **Deceptive Price Comparisons**

21       26.    On March 5, 2011, Plaintiff entered the J.C. Penney store at the Brea

22   Mall in Brea, California.   She observed that J.C. Penney advertised price

23   comparisons on plastic placards above or below each product offered for sale.  One

24   column showed what was represented to be the "original" price for each product.

25   The next column showed the "sale" price of each item.  Believing she was able to

26   pay significantly less than what certain products were worth and normally sell for in

27   the retail marketplace, Plaintiff was induced to purchase ten different items, all of

28   which were offered at prices significantly lower than their stated original prices.

Plaintiff purchased private branded apparel (manufactured by J.C. Penney) and exclusively branded accessories (manufactured by others solely for sale at J.C. Penney) after relying on J.C. Penney's false discounts and false "original" former prices for such products.

27.     Specifically, relying upon J.C. Penney's misrepresentations and false and deceptive advertising, Plaintiff purchased three East Fifth blouses, a private brand of J.C. Penney.  All three blouses contained labels representing them to have original prices of $30.00 and discounts of $12.01, leaving a purchase price or "deal" at $17.99.  Plaintiff believed and relied on the fact that she was obtaining these shirts at 40% off the original price and that they regularly sell in the retail marketplace for $30.00.  Upon information and belief, these purported "original" prices and corresponding price reductions and savings were false and deceptive, as the prevailing retail price for the East Fifth blouses during the three months immediately prior to Plaintiff's purchase of such item was no more than $17.99, and not the $30.00 "original" price represented by J.C. Penney.  Plaintiff would not have purchased the blouses in the absence of J.C. Penney's misrepresentations.  As a result, Plaintiff has been personally victimized by and suffered economic injury as a direct result of Defendant's unlawful, unfair and fraudulent conduct.

28.     Furthermore, upon check-out on March 5, 2011, J.C. Penney provided Plaintiff with a sales receipt containing the same misrepresentations regarding false original prices and price reductions on the East Fifth blouses.  The false "original" price is set forth on each line item following the quantity count.  Below each original price is a line with large, bold print stating "Total Discounts," followed by the promised savings of $12.01.[2]

29.     Also relying upon J.C. Penney's misrepresentations and false and deceptive advertising, Plaintiff purchased five Worthington blouses, another private

---

[2] *See* Exhibit A to this Complaint.

brand of J.C. Penney.  J.C. Penney advertised in the store that all five blouses had "original" prices of $30.00 and discounts of $15.01, leaving purchase prices or "deals" at $14.99.  Plaintiff believed that she was obtaining these shirts at 50% off the original price and that they regularly sell in the retail marketplace for $30.00.  Upon information and belief, these purported price reductions and savings were false and deceptive, as the prevailing retail price for the Worthington blouses during the three months immediately prior to Plaintiff's purchase of such item was no more than $14.99, and not the $30.00 "original" price represented by J.C. Penney.  Plaintiff would not have purchased the blouses in the absence of J.C. Penney's misrepresentations.  As a result, Plaintiff has been personally victimized by and suffered economic injury as a result of Defendant's unlawful, unfair and fraudulent conduct.

30.     Furthermore, upon check-out on March 5, 2011, J.C. Penney provided Plaintiff with a sales receipt containing the same misrepresentations regarding false original prices and price reductions on the Worthington blouses.  The false "original" price is set forth on each line item following the quantity count.  Below each original price is a line with large, bold print stating "Total Discounts," followed by the promised savings of $15.01.

31.     Also relying upon J.C. Penney's misrepresentations and false and deceptive advertising, Plaintiff purchased a Liz Claiborne purse, which is an exclusive brand at J.C. Penney.  The purse was advertised as having an "original" price of $60.00 and a discount of $20.01, leaving a purchase price of $39.99.  Plaintiff believed that she was obtaining at least a $20.00 discount and purchasing a purse that regularly sells in the retail marketplace for at least $60.00.  Upon information and belief, this purported price reduction and savings was false and deceptive, as the prevailing retail price for the Liz Claiborne brand purse during the three months immediately prior to Plaintiff's purchase of such item was materially lower than the $60.00 "original" price represented by J.C. Penney.  Plaintiff would

1  not have purchased the purse in the absence of J.C. Penney's misrepresentations.

2  As a result, Plaintiff has been personally victimized by and suffered economic

3  injury as a result of Defendant's unlawful, unfair and fraudulent conduct.

4      32.      Furthermore, upon check-out on March 5, 2011, J.C. Penney provided

5  Plaintiff with a sales receipt containing the same misrepresentation regarding the

6  false original price and price reduction on the purse.  The false "original" price is

7  set forth on the line item following the quantity count.  Below the original price is a

8  line with large, bold print stating "Total Discounts," followed by the promised

9  savings of $20.01.

10     33.      Also relying upon J.C. Penney's misrepresentations and false and

11 deceptive advertising, Plaintiff purchased a Liz Claiborne clutch.  The clutch was

12 advertised and labeled to represent an original price of $30.00 and a discount of

13 $10.01, leaving a purchase price or "deal" at $19.99.  Plaintiff believed that she was

14 purchasing a clutch that regularly sells in the retail marketplace for $30.00.  Upon

15 information and belief, this purported price reduction and savings was false and

16 deceptive, as the prevailing retail price of the clutch during the three months

17 immediately prior to Plaintiff's purchase of such item was no more than $19.99, and

18 not the $30.00 "original" price represented by J.C. Penney.  Plaintiff would not

19 have purchased the clutch in the absence of J.C. Penney's misrepresentations.  As a

20 result, Plaintiff has been personally victimized and suffered economic injury as a

21 result of Defendant's unlawful, unfair and fraudulent conduct.

22     34.      Furthermore, upon check-out on March 5, 2011, J.C. Penney provided

23 Plaintiff with a sales receipt containing the same misrepresentations regarding the

24 false original price and price reduction on the Liz Claiborne clutch.  The false

25 "original" price is set forth on the line item following the quantity count.  Below the

26 original price is a line with large, bold print stating "Total Discounts," followed by

27 the promised savings of $10.01.

28     35.      Plaintiff and class member reliance upon Defendant's false price

10

comparison advertising was not only reasonable, but entirely intended by J.C. Penney.  Empirical marketing studies have provided an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings . . . . [A] comparative price advertisement can be construed as deceptive if it makes any representation, . . . . or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive*?, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52 (Spring 1992).  In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product. . . .  Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id*. at 55, 56.

37.   In January, 2012, J.C. Penney's then-new (but recently departed) CEO, Ron Johnson, admitted that, for years, J.C. Penney abused this phenomenon of consumer behavior by engaging in a systematic program of false price comparisons in which the regular retail prices had "no integrity":

> . . . [I]t's been a decade of price increases.  And so what happens is you lose track of the fact that we're slowly and slowly increasing prices at a rate that there's no integrity.
>
> * * *
>
> And this is another last bit of data I want to share with you.  This shows the last year for an entire year the average – the percentage of

11

goods bought at the various discount rates.  So you'll see here nothing was bought at regular price, fewer than one out of 500 units.  One was bought at 20% off.  Eight were bought at 30[% off] . . .

\* \* \*

In fact, if you look at the total, 72% of the revenue, three – quarters of everything sold in the store was at a 50% off or greater discount. Now, that's got to be surprising.  That was surprising to me because I knew when I was at Mervyns when I started we had rules.  You could only [offer] sales one week out of the month because there was honor to the regular retail [price]. . .

January 25, 2012/2:00PM, JCP – jcpenney Analyst Meeting Day 1, as reported in Thomson Reuters Streetevents | www.streetevents.com.

**J.C. Penney Temporarily Stopped Using Price-Comparison Advertising**

38.      Thereafter, Mr. Johnson led J.C. Penney down the path of a new pricing strategy known as "fair and square" pricing.  Under this pricing strategy, J.C. Penney used three levels of pricing: everyday low prices (regular prices), best prices (clearance items), and month-long values (where certain themed items were discounted for a month).  At the same time, J.C. Penney stopped using comparative sale prices by which a purported sale price was compared to an inflated regular or original price.

39.      In the Spring of 2012, while J.C. Penney was still using its "fair and square" pricing, Plaintiff shopped at J.C. Penney again and purchased at least one item.

**Injunctive Relief is Necessary and Appropriate Because J.C. Penney Has Returned To Using Illegal Price Comparisons**

40.      It has widely been reported that the results of "fair and square" pricing were disastrous for J.C. Penney, as the company's earnings and revenues plummeted.  Consequently, much blame was placed on the Company's then-new CEO, Ron Johnson, for abandoning its comparative pricing scheme.

12

41.     Upon information and belief, Mr. Johnson was removed as the Company's CEO, and J.C. Penney has since returned to its pre-February 2012 practice of using comparative prices and fake "sales" with respect to at least some of its private and exclusive branded products.  As it did prior to February 1, 2012, J.C. Penney has once again marked up the ticketed prices of those items just so that it can immediately turn around and sell them at a discount in order to create the illusion of a "sale."  In fact, many of the new and purported discounted "sale" prices are *higher* than the "regular" prices that were in place for the same items during J.C. Penney's "fair and square" pricing.  J.C. Penney has no intention of selling such products (or at least any significant quantity of those products) at the new marked-up prices, as it has either failed to offer the products at those higher prices at all or, if it did offer them at the higher prices, it did so for an unreasonably short period of time and/or in connection with other discounts, such as "Buy One Get One at 50% Off" promotions.  J.C. Penney intends to sell, and has sold, most, if not all of those products at the lower and supposedly discounted prices, thereby making the higher prices false and misleading.  In other words, for at least some private and exclusive branded products, J.C. Penney is now using the exact same (or at least materially indistinguishable) false, misleading and illegal comparative pricing practices that it used prior to February 1, 2012.

42.     For example, on every day between May 28, 2013 and August 31, 2013, J.C. Penney advertised its Worthington Ruched-Neck Blouse, a private or exclusive branded item of apparel, as having an "original" price of $20.00 and a discounted "sale" price of either $14.99 or $11.99.   Thus, for over ninety consecutive days the item was offered only at a deeply discounted sale price and *not* at the $20 "original" price, thereby making it impossible for the "original" price to equal the prevailing market price during the preceding ninety days.   Upon information and belief, during that same ninety-day time period, thousands of California consumers were exposed to comparative price advertisements for the

13

Worthington Ruched-Neck Blouse, and numerous quantities of that product were purchased by California consumers at the discounted sale prices, while none were sold at the higher "original" price.  Accordingly, the advertised "original" price did not equal, and could not have equaled, the prevailing market price during at least some, if not all of the previous ninety days.  Upon information and belief, J.C. Penney had no bona fide intention of selling a reasonable quantity of the product at the advertised "original" price during that same ninety-day period.

43.     Similarly, on every day between May 28, 2013 and August 31, 2013, J.C. Penney advertised its a.n.a. Denim 5 Pocket Shorts, a private or exclusive branded item of apparel, as having an "original" price of $24.00 and a discounted "sale" price of either $14.99 or $11.99.  Thus, for over ninety consecutive days the item was offered only at a deeply discounted sale price and *not* at the $24 "original" price.  Upon information and belief, during that same ninety-day time period, thousands of California consumers were exposed to comparative price advertisements for the a.n.a. Denim 5 Pocket Shorts, and numerous quantities of that product were purchased by California consumers at the discounted sale prices, while none were sold at the higher "original" price.  Accordingly, the advertised "original" price did not equal, and could not have equaled, the prevailing market price during at least some, if not all of the previous ninety days.  Upon information and belief, J.C. Penney had no bona fide intention of selling a reasonable quantity of that product at the advertised "original" price during that ninety-day period.

44.     J.C. Penney's current price-comparison practices are the exact same as (or at least materially indistinguishable from) its false, misleading and illegal practices that were utilized prior to February 1, 2012 and which violated the law and resulted in Plaintiff's injuries as alleged herein.

45.     Upon information and belief, since January, 2013, J.C. Penney has used identical false and deceptive price-comparison tactics with respect to dozens, if not hundreds of other private and exclusive branded items of apparel and

14

accessories and, upon information and belief, hundreds, if not thousands of California consumers have been exposed to such advertisements, purchased such products and, therefore, been victimized by J.C. Penney's return to false price comparison advertisements.

46.     Plaintiff would like to shop at J.C. Penney again, but cannot trust J.C. Penney's current price-comparison advertisements.  Without tracking J.C. Penney's advertisements on a daily basis for each and every item, Plaintiff and all other California consumers have no realistic way to know which of J.C. Penney's current or future price comparisons are false or deceptive.   In fact, J.C. Penney has publically admitted that consumers, like Plaintiff, are likely to be confused by its numerous pricing policy changes.  If the Court were to issue an injunction ordering J.C. Penney to comply with California's comparative price advertising laws, and prohibiting J.C. Penney's use of the deceptive practices discussed herein, Plaintiff would likely shop at J.C. Penney again in the near future.

## CLASS ALLEGATIONS

47.     Plaintiff realleges by reference, as if fully set forth herein, all of the above Paragraphs.

48.     Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated.  The class Plaintiff seeks to represent is defined as:

> All persons who, while in the State of California and between November 5, 2010 and January 31, 2012 (the "Class Period"), purchased from JCP one or more private or exclusive branded items of apparel or accessories at a discount of at least 30% off of the stated "original" or "regular" price, and who have not received a refund or credit for their purchase(s).

Excluded from the Class are Defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of J.C. Penney.  Plaintiff reserves the right

15

1   to expand, limit, modify, or amend this class definition, including the addition of
2   one or more subclasses, in connection with her motion for class certification, or at
3   any other time, based upon, *inter alia*, changing circumstances and/or new facts
4   obtained during discovery.

5      49.      *Numerosity*: Upon information and belief, the Class is composed of
6   hundreds of thousands of individuals, whose joinder of this action would be
7   impracticable.  The disposition of their claims through this class action will benefit
8   Class members, the parties, and the courts.

9      50.      *Existence and Predominance of Common Questions of Fact and Law*:
10  There is a well-defined community of interest in questions of law and fact affecting
11  the Class.  These questions of law and fact predominate over individual questions
12  affecting individual Class members, including, but not limited to, the following:

13      (a)    Whether, during the Class Period, J.C. Penney used false
14  "regular" or "original" price labels and falsely advertised price discounts on its
15  private branded or exclusive branded apparel or accessories;

16      (b)    Whether, during the Class Period, the "original" prices
17  advertised by J.C. Penney were the prevailing market prices for the respective
18  private branded or exclusive branded apparel or accessories sold by J.C. Penney
19  during the three month periods preceding the dissemination and/or publication of
20  the advertised former prices;

21      (c)    Whether J.C. Penney's use of false or deceptive price
22  advertising constituted false advertising under California law;

23      (d)    Whether J.C. Penney engaged in unfair, unlawful and/or
24  fraudulent business practices under California law;

25      (e)    Whether J.C. Penney misrepresented and/or failed to disclose
26  material facts about its product pricing and discounts;

27      (f)    Whether J.C. Penney has made false or misleading statements
28  of fact concerning the reasons for, existence of, or amounts of price reductions;

16

(g) Whether J.C. Penney's conduct, as alleged herein, was intentional and knowing;

(h) Whether Class members are entitled to damages and/or restitution; and, if so, what is the amount of revenues and/or profits J.C. Penney received and/or was lost by Class members as a result of the conduct alleged herein;

(i) Whether J.C. Penney is likely to return, or has returned, to using false, misleading or illegal price comparisons such that an injunction is necessary; and

(j) Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

51.    *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class members. Plaintiff and the Class she seeks to represent have all been deceived (or were likely to be deceived) by J.C. Penney's false former price advertising scheme, as alleged herein.

52.    *Adequacy*: Plaintiff is an adequate representative of the Class because she is a member of the class and her interests do not conflict with the interests of the Class members she seeks to represent. Plaintiff will fairly and adequately represent and protect the interest of the Class because she is not antagonistic to the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation.

53.    *Superiority*: A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and Class members' claims. Because of the relatively modest size of individual Class members' claims, few, if any, Class members could afford to seek legal redress of the wrongs complained of herein on an individual basis. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and J.C. Penney will be permitted to retain the proceeds of its misdeeds.

54.     All Class members, including Plaintiff, were exposed to one or more of J.C. Penney's misrepresentations or omissions of material fact claiming that former "original" advertised prices were in existence.  Due to the scope and extent of J.C. Penney's consistent false price advertising scheme, disseminated in a massive, years-long campaign to California consumers via in-store display advertising, Internet advertising and print advertising, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class.  In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in J.C. Penney's false advertising scheme when purchasing private branded and exclusive branded apparel and accessories by J.C. Penney.

55.     J.C. Penney keeps extensive computerized records of its customers through, inter alia, customer loyalty programs, co-branded credit cards and general marketing programs.  J.C. Penney has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Violation of the "Unfair" Prong of the UCL)

56.     Plaintiff realleges by reference, as if fully set forth herein, all of the above Paragraphs.

57.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

58.     A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity

18

of the harm to the alleged victims.

59.      J.C. Penney has violated the "unfair" prong of the UCL by representing a false "original" price and corresponding price discount for its private branded and exclusive branded apparel and accessories where J.C. Penney, in fact, inflated the purported "original" prices for such products such that the promised discount was false, misleading and deceptive.

60.      These acts and practices were unfair because they caused Plaintiff, and were likely to cause consumers, to falsely believe that J.C. Penney is offering value, discounts or bargains from the prevailing market value or worth of the products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid.  This perception has induced reasonable purchasers, including Plaintiff, to buy such products, which they otherwise would not have purchased.

61.      The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of J.C. Penney for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, J.C. Penney engaged in unfair business practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

62.      Through its unfair acts and practices, J.C. Penney has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this Court cause J.C. Penney to restore this money to Plaintiff and all Class members, and to enjoin J.C. Penney from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff, the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

19

## SECOND CAUSE OF ACTION

## (Violation of the "Fraudulent" Prong of the UCL)

63.     Plaintiff realleges by reference, as if fully set forth herein, all of the above Paragraphs.

64.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

65.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

66.     J.C. Penney's marketing and advertising materials concerning false "original" former prices, including, but not limited to, its in-store advertising displays, print advertising, and internet website advertising were "fraudulent" within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the class, into believing that J.C. Penney was offering value, discounts or bargains from the prevailing market value or worth of the products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid.  This perception induced reasonable purchasers, including Plaintiff, to buy such products from J.C. Penney, which they otherwise would not have purchased.

67.     J.C. Penney's acts and practices as described herein have deceived Plaintiff and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase private branded and exclusive branded apparel and accessories at J.C. Penney, Plaintiff relied on J.C. Penney's misleading and deceptive representations regarding its "original," and "sale" prices.  Each of these factors played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those items in the absence of J.C. Penney's

20

1   misrepresentations.  Accordingly, Plaintiff suffered monetary loss as a direct result

2   of J.C. Penney's practices described herein.

3       68.     As a result of the conduct described above, J.C. Penney has been

4   unjustly enriched at the expense of Plaintiff and members of the proposed Class.

5   Specifically, J.C. Penney has been unjustly enriched by obtaining revenues and

6   profits that it would not otherwise have obtained absent its false, misleading and

7   deceptive conduct.

8       69.     Through its unfair acts and practices, J.C. Penney has improperly

9   obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this

10   Court cause J.C. Penney to restore this money to Plaintiff and all Class members,

11   and to enjoin J.C. Penney from continuing to violate the UCL as discussed herein

12   and/or from violating the UCL in the future.  Otherwise, Plaintiff, the Class and

13   members of the general public may be irreparably harmed and/or denied an

14   effective and complete remedy if such an order is not granted.

15   **THIRD CAUSE OF ACTION**

16   **(Violation of the "Unlawful" Prong of the UCL)**

17       70.     Plaintiff realleges by reference, as if fully set forth herein, all of the

18   above Paragraphs.

19       71.     The UCL defines unfair business competition to include any

20   "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive,

21   untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

22       72.     A business act or practice is "unlawful" under the UCL if it violates

23   any other law or regulation.

24       73.     The FTCA prohibits "unfair or deceptive acts or practices in or

25   affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false

26   advertisements.  15 U.S.C. § 52(a)).  The FTC has established Guidelines that

27   describe false former pricing schemes, similar to J.C. Penney's in all material

28   respects, as deceptive practices that would violate the FTCA:

(a)     One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b)     A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1.

74.     California statutory and regulatory law also expressly prohibits false former pricing schemes.   Cal. Bus. & Prof. Code § 17501, entitled "*Value determinations; Former price advertisements*," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is

22

published.

*No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.  [Emphasis added.]

75.      As detailed in Plaintiff's Fifth Cause of Action below, Cal. Civ. Code § 1770, subsection (a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

76.      J.C. Penney's use of and reference to a materially false "original" price, or purported discounts of "__% off," in connection with its marketing and advertisements concerning its private branded and exclusive branded apparel and accessories violated and continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at Title 16, Code of Federal Regulations, Section 233.  It also violated and continues to violate Cal. Bus. & Prof. Code § 17501, and Cal. Civ. Code § 1770, sections (a)(9) and (a)(13) by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

77.      As a result of the conduct described above, J.C. Penney has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, J.C. Penney has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

78.      Through its unfair acts and practices, J.C. Penney has improperly

23

obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this Court cause J.C. Penney to restore this money to Plaintiff and all Class members, and to enjoin J.C. Penney from continuing to violate the UCL, and/or from violating the UCL in the future.  Otherwise, Plaintiff, the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FOURTH CAUSE OF ACTION

**(Violation of the California False Advertising Law,
California Business & Professions Code Sections 17500, *et seq.*)**

79.      Plaintiff realleges by reference, as if fully set forth herein, all of the above Paragraphs.

80.      The California False Advertising Law prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value and former price.

81.      J.C. Penney's practice of advertising "original" sales prices associated with private branded and exclusive branded apparel and accessories, which were materially greater than the true prevailing prices of those products was an unfair, deceptive and misleading advertising practice because it gave the false impression that the products sold by J.C. Penney regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than they actually were.  In fact, the private branded and exclusive branded apparel and accessories sold at J.C. Penney did not have a prevailing market price anywhere close to the "original" price advertised.

82.      Through its unfair acts and practices, J.C. Penney has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this Court cause J.C. Penney to restore this money to Plaintiff and all Class members, and to enjoin J.C. Penney from continuing to violate the False Advertising Law as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff,

24

the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FIFTH CAUSE OF ACTION

### (Violation of the Consumers Legal Remedies Act, California Civil Code Sections 1750, *et seq.*: Injunctive Relief)

83.     Plaintiff realleges by reference, as if fully set forth herein, all of the above Paragraphs.

84.     This cause of action is brought pursuant to the CLRA.

85.     Plaintiff and each member of the proposed Class are "consumers" within the meaning of California Civil Code § 1761(d).

86.     J.C. Penney's sale of private branded and exclusive branded apparel and accessories to Plaintiff and the Class were "transactions" within the meaning of California Civil Code § 1761(e).  The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

87.     As described herein, J.C. Penney violated the CLRA by falsely representing the nature, existence and amount of price discounts from referenced "original" sales prices of its private branded and exclusive branded apparel and accessories where J.C. Penney inflated the purported "original" prices such that the promised discount, value and bargain were false, in violation of Cal. Civ. Code § 1770, subsection (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

88.     Plaintiff relied on J.C. Penney's false representations in deciding to purchase private branded and exclusive branded apparel and accessories from J.C. Penney.   Plaintiff would not have purchased such items absent J.C. Penney's unlawful conduct.  As a result of these acts and practices, Plaintiff suffered damage in that she spent money at J.C. Penney that she would not have otherwise spent

25

1    absent J.C. Penney's unlawful and misleading acts and practices.

2        89.        Pursuant to Section 1782(a) of the CLRA, on February 7, 2012,

3    Plaintiff's counsel, on behalf of Plaintiff Spann, served Defendant by United States

4    certified mail, return receipt requested, with notice of Defendant's particular

5    violations of the CLRA and requested that Defendant identify victims, notify

6    victims and remedy its illegal conduct within 30 days.

7        90.        More than 30 days have passed, and Defendant has failed to respond

8    to, or comply with, Plaintiff's demand.  Accordingly, on behalf of herself and the

9    Class, Plaintiff seeks damages and/or restitution from Defendant.  Plaintiff also

10   requests that this Court enjoin J.C. Penney from continuing to violate the CLRA as

11   discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff,

12   the Class and members of the general public may be irreparably harmed and/or

13   denied an effective and complete remedy if such an order is not granted.

14                                **PRAYER FOR RELIEF**

15       WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other

16   members of the Class, requests that this Court award relief as follows:

17       A.        An order certifying that this action may be maintained as a class

18   action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be

19   appointed Class Counsel;

20       B.        Pursuant to Plaintiff's first four causes of action, a judgment awarding

21   Plaintiff and all members of the Class restitution and/or other equitable relief,

22   including, without limitation, restitutionary disgorgement of all profits and unjust

23   enrichment that J.C. Penney obtained from Plaintiff and the Class as a result of its

24   unlawful, unfair and fraudulent business practices described herein;

25       C.        Pursuant to Plaintiff's fifth cause of action, damages and/or

26   restitution;

27       D.        An order enjoining Defendant from continuing to violate the UCL,

28   False Advertising Law and CLRA as described herein, and/or an order enjoying

                                        26

1  Defendant from violating the UCL, False Advertising Law and CLRA in the future;

2      E.    A judgment awarding Plaintiff her costs of suit; including reasonable

3  attorneys' fees pursuant to California Civil Code § 1780(d), Code of Civil

4  Procedure § 1021.5 and as otherwise permitted by statute; and pre and post-

5  judgment interest; and

6      F.    Such other and further relief as may be deemed necessary or

7  appropriate.

8                   **DEMAND FOR JURY TRIAL**

9      Plaintiff hereby demands a trial by jury for all claims so triable.

10  DATED: March 5, 2014         STANLEY LAW GROUP

11                             MATTHEW J. ZEVIN

12

13

14                           */s/ Matthew J. Zevin*
MATTHEW J. ZEVIN

15                           225 Broadway, Suite 1350

16                           San Diego, CA 92101

17                           Telephone: (619) 235-5306
Facsimile: (815) 377-8419

18

19                           EMGE & ASSOCIATES
DEREK J. EMGE

20                           225 Broadway, Suite 1350

21                           San Diego, CA 92101

22                           Telephone: (619) 595-1400
Facsimile: (619) 595-1480

23

24                           Attorneys for Plaintiff Cynthia E. Spann and
Proposed Class Counsel

25

26

27

28

                                 27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHIFFMAN & HUCH, LLP
DAVID A. HUCH, SBN: 222892
8105 Irvine Center Dr., Suite 900
Irvine, CA  92618
Telephone:   (949) 936-2564
Facsimile:    (949) 682-4881
e-mail: david.a.huch@gmail.com

Attorneys for Plaintiff Cynthia E. Spann

28

**PROOF OF SERVICE**

*Spann v. J.C. Penney, et al.*

CASE NO: SACV12 0215 FMO (RNBx)

     I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 225 Broadway, Suite 1350, San Diego, CA 92101.

     That on March 5, 2014, I served the following document(s) entitled: **FOURTH AMENDED COMPLAINT FOR: 1. Unfair Business Practices in Violation of California Business & Professions Code Sections 17200, et seq.; 2. Fraudulent Business Practices in Violation of California Business & Professions Code Sections 17200, et seq.; 3. Unlawful Business Practices in Violation of California Business & Professions Code Sections 17200, et seq.; 4. False Advertising in Violation of California Business & Professions Code Sections 17500, et seq.; 5. Violations of California Consumer Legal Remedies Act** on ALL INTERESTED PARTIES in this action:

☐    **BY MAIL**: By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    **BY CM/ECF Electronic Service:** I caused such document to be served via the Court's (NEF) electronic filing system on all registered parties.

     I declare under penalty of perjury under the laws of the United States of America and State of California that the foregoing is true and correct. Executed on March 5, 2014, at San Diego, California.

     */s/ Matthew J. Zevin*

MATTHEW J. ZEVIN