1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2     Including Professional Corporations
   MOE KESHAVARZI, Cal. Bar No. 223759
3     mkeshavarzi@sheppardmullin.com
   JOHN LANDRY, Cal. Bar No. 194374
4     jlandry@sheppardmullin.com
   PAUL L. SEELEY, Cal. Bar No. 252318
5     pseeley@sheppardmullin.com
   333 South Hope Street, 43rd Floor
6  Los Angeles, California  90071-1422
   Telephone:  213.620.1780
7  Facsimile:   213.620.1398

8

9  ADDITIONAL COUNSEL LISTED
   ON SIGNATURE PAGE
10

11 Attorneys for Defendant
   J.C. PENNEY CORPORATION, INC.

12                    UNITED STATES DISTRICT COURT

13       CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

14

| | |
|---|---|
| 15 CYNTHIA E. SPANN, Individually and On Behalf of Others Similarly Situated, | Case No. SACV12-0215 FMO (RNBx) |
| 16 | **CLASS ACTION** |
| 17            Plaintiff, | **DEFENDANT J. C. PENNEY CORPORATION, INC.'S MOTION TO DISMISS, OR ALTERNATIVELY STRIKE CERTAIN ALLEGATIONS IN, THE FOURTH AMENDED COMPLAINT** |
| 18        v. | |
| 19 J. C. PENNEY CORPORATION, INC. a Delaware Corporation; and | |
| 20 DOES 1 through 10, inclusive, | |
| 21            Defendants. | Date:   April 24, 2014 Time:  10:00 a.m. Place:  Courtroom 22 |
| 22 |        312 North Spring Street |
| 23 |        Los Angeles, CA 90012 |
| 24 | |
| 25 | Complaint Filed: February 8, 2012 |

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ................................................................................1

II.  SUMMARY OF RELEVANT ALLEGATIONS AND BACKGROUND ...............................................................................3

    A.  Ms. Spann Proceeds Through Most of This Action Seeking Only Restitution but Amends Her Complaint Upon Receiving JCPenney's Opposition to Her Class Certification Motion. ...................3

    B.  The TAC...............................................................................4

    C.  JCPenney's Motion to Dismiss the TAC and This Court's Order Granting the Motion. .......................................................5

    D.  The FAC Identifies Only Two Instances of Alleged Post-February 2012 False Comparative Price Advertising. ...........................5

III.  THE POST-FEBRUARY 2012 ALLEGATIONS FAIL TO STATE A CLAIM AND MS. SPANN LACKS STANDING TO CHALLENGE ALLEGED POST-FEBRUARY 2012 CONDUCT.........................................7

    A.  The New Allegations Make No Entitlement-to-Relief Showing Under Rule 8(a)(2). ................................................................7

    B.  Ms. Spann Lacks Constitutional Standing to Assert Claims Based on Post-February 2012 Conduct..............................................10

    C.  The Post-February 2012 Allegations Are Immaterial and Should be Stricken...........................................................13

IV.  CONCLUSION ................................................................................14

JCPENNEY'S MOTION TO DISMISS, OR ALTERNATIVELY STRIKE CERTAIN ALLEGATIONS IN. THE FAC

1

## TABLE OF AUTHORITIES

2

Page(s)

3

<u>Cases</u>

4
<u>Arevalo v. Bank of America Corp.</u>
    850 F.Supp.2d 1008 (N.D. Cal. 2011) .......................................................... 11, 12

5

6
<u>Ashcroft v. Iqbal</u>
    556 U.S. 662 (2009)............................................................................ 7, 8, 9, 10

7

8
<u>Bell Atl. Corp. v. Twombly</u>
    550 U.S. 544 (2007)................................................................................ 7, 8, 10

9

10
<u>In re Century Aluminum Co. Securities Litig.</u>
    729 F.3d 1104 (9th Cir. 2013) ........................................................................ 10

11

12
<u>City of Westland Police and Fire Retirement System v. Sonic Solutions</u>
    2009 U.S. Dist. LEXIS 33339 (N.D. Cal. Apr. 6, 2009)..................................... 9

13

14
<u>DaimlerChrysler Corp. v. Cuno</u>
    547 U.S. 332 (2006).......................................................................................... 11

15

16
<u>Lanovaz v. Twinings North America</u>
    2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ................................................... 13

17

18
<u>Lujan v. Defenders of Wildlife</u>
    504 U.S. 555 (1992).......................................................................................... 11

19

20
<u>Route v. Mead Johnson Nutrition Co.</u>
    2013 U.S. Dist. LEXIS 35069 (C.D. Cal. Feb. 21, 2013)................................ 10

21
<u>Schiff v. Barrett</u>
    2011 U.S. Dist. LEXIS 14731 (N.D. Cal. Feb. 14, 2011)................................ 13

22

23
<u>Shurkin v. Golden State Vintners Inc.</u>
    471 F.Supp.2d 998 (N.D. Cal. 2006) <i>aff'd</i>, 303 F.App'x 431 (9th Cir.
    2008) ................................................................................................................ 10

24

25
<u>Vasili v. Residential Asset Securitization Trust</u>
    697 F. Supp.2d 546 (S.D.N.Y. 2010) ................................................................ 9

26

27
<u>Warth v. Seldin</u>
    422 U.S. 490 (1975).......................................................................................... 11

28

-1

<u>In re Wells Fargo Mortgage-Backed Certificates Litig.</u>
    712 F.Supp.2d 958 (N.D. Cal. 2010)................................................................. 11

<u>Other Authorities</u>

Fed. R. Civ. Proc. 8(a)(2) ...................................................................... 1, 7, 8

Fed. R. Civ. Proc. 9(b) ................................................................................ 5

Fed. R. Civ. Proc. 12(f)............................................................................. 13

Fed. R. Civ. Proc. 23(b)(2) ......................................................................... 2

Fed. R. Civ. Proc. 23(b)(3) ..................................................................... 2, 3

SMRH:418574327.4

JCPENNEY'S MOTION TO DISMISS, OR ALTERNATIVELY
STRIKE CERTAIN ALLEGATIONS IN THE FAC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

New allegations in the Fourth Amended Complaint ("FAC") do not state claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and Consumers Legal Remedies Act ("CLRA"). In addition, Ms. Spann lacks constitutional standing to assert claims based on these new allegations.

The FAC, like the Third Amended Complaint ("TAC") before it, attempts to expand this putative class action to include injunctive relief. It does so by asserting JCPenney has now "returned" to the false comparative price advertising "scheme" or "campaign" that allegedly (a) injured Ms. Spann in 2011 and (b) ceased in February 2012. JCPenney moved to dismiss the TAC arguing, in part, the TAC contained no factual allegations showing JCPenney's "return" to the alleged pre-February 2012 "scheme." This Court granted that motion, dismissing "claims stated in the Third Amended Complaint . . . to the extent they rel[ied] on defendant's post-February 2012 conduct." ((In Chambers) Order Re: Pending Motions, dated Feb. 21, 2014, at 6).

The FAC's new allegations fail to cure the defects in the TAC. From the admittedly thousands of items JCPenney has advertised since February 2012, the FAC musters just two instances of purported false comparative price advertising. Two instances do not create a reasonable inference that JCPenney has "returned" to the alleged "scheme" that injured Ms. Spann in 2011, or to any other so-called "scheme." Accordingly, the new allegations of post-February 2012 conduct fail to show Ms. Spann's entitlement to injunctive relief under Federal Rule of Civil Procedure 8(a)(2).

Moreover, even assuming the FAC stated claims based on the new FAC allegations, Ms. Spann would still lack Article III standing to assert them. She does not allege that she suffered any harm that is traceable to post-February 2012 conduct. She makes no allegations which factually link this later conduct to the earlier "scheme" that allegedly injured her. Indeed, to the extent the FAC refers to any post-February 2012 false comparative price advertising, it portrays it as far narrower in scope. As alleged, this later advertising conduct differs from, rather than aligns with, the alleged pre-February 2012 "scheme." Ms. Spann, who claimed to have purchased falsely advertised items from JCPenney only during the earlier period, lacks Article III standing to assert post-February 2012 false advertising claims.

There is a reason why Ms. Spann insists on trying to add a request for injunctive relief, even though she was neither exposed to nor harmed by JCPenney's post-February 2012 advertising: In her Second Amended Complaint, Ms. Spann dropped her request for injunctive relief, acknowledging that JCPenney, in February 2012, had stopped engaging in the alleged false advertising "scheme." Thus, in that Second Amended Complaint, Ms. Spann sought only restitution and class certification under Rule 23(b)(3). Only when JCPenney demonstrated in its opposition to class certification that Ms. Spann failed to present a viable restitution measure, and determining any entitlement to restitution would require highly individualized factual inquiries inimical to class certification, did Ms. Spann conveniently discover that JCPenney had "returned" to the alleged false advertising "scheme," and sought leave to file a TAC seeking injunctive relief and certification under Rule 23(b)(2).

This Court should dismiss the FAC's UCL, FAL and CLRA claims to the extent they rely on post-February 2012 conduct.

-2-

## II.

## SUMMARY OF RELEVANT ALLEGATIONS AND BACKGROUND

**A.**    **Ms. Spann Proceeds Through Most of This Action Seeking Only Restitution but Amends Her Complaint Upon Receiving JCPenney's Opposition to Her Class Certification Motion.**

Ms. Spann commenced this action on February 8, 2012 and filed a First Amended Complaint on March 19, 2012.  Both complaints sought injunctive relief. On April 23, 2012, pursuant to the parties' stipulation, Ms. Spann filed a Second Amended Complaint, in which she deleted all allegations that JCPenney was continuing to engage in false advertising and abandoned her request for injunctive relief.  (Second Amended Complaint, p. 16).

A year later, on April 11, 2013, Ms. Spann filed her class certification motion which sought to certify a restitution-only class under Rule 23(b)(3).  On June 25, 2013, after JCPenney filed its opposition to Ms. Spann's class certification motion, but before the hearing on that motion, Ms. Spann filed an *ex parte* application asking the Court to delay ruling on the class certification motion.  Ms. Spann argued that she planned to file a motion for leave to amend her complaint to add a request for injunctive relief which could change the class certification standards.  (Docket No. 71-1, pp. 7-8).  On June 27, 2013, Ms. Spann filed her motion for leave to file the TAC.

On July 15, the Court granted Ms. Spann's motion for leave and denied her class certification motion without prejudice.  Ms. Spann filed the TAC on July 22, 2013.

SMRH:418574327.4

**B.     The TAC.**

The TAC, like the prior complaints, alleged that sometime before March 5, 2011 JCPenney started a "false price advertising scheme" and "campaign." (TAC, ¶ 5). This "campaign" consisted of misrepresentations of "the existence, nature and amount of price discounts" on private branded and exclusive branded apparel and accessories "by purporting to offer specific dollar discounts from expressly referenced former retail prices, which were often misrepresented as 'original' or 'regular' retail prices." (Id., ¶¶ 1, 2). Ms. Spann described this alleged "campaign" or "scheme" as "rampant . . . massive, years-long, [and] pervasive" and "consistent across all of J.C. Penney's private branded and exclusive branded apparel and accessories." (Id., ¶ 5).

During the "campaign," on March 5, 2011, Ms. Spann shopped at a JCPenney store in Brea, California and bought three East Fifth and five Worthington blouses (East Fifth and Worthington are private JCPenney Brands), a Liz Claiborne purse and a clutch. (Id., ¶¶ 29, 30, 32, 34 and 36). She alleges that "plastic placards above or below each product offered for sale" represented that the items were discounted from "original" or "regular" prices. (Id., ¶ 29). In alleged reliance on the placards, Ms. Spann bought the items believing that they were discounted as represented. (Id., ¶¶ 29, 30, 32, 34 and 36). For example, she alleges that she bought the Worthington blouses for $15.01 each, because JCPenney falsely advertised that they were 50% off an "original" $30.00 price. (Id., ¶ 32).

The TAC attempted to expand the requested relief to include broad injunctive relief. It alleged JCPenney abandoned its false comparative price advertising campaign in February 2012 when it "began a new pricing strategy known as 'fair and square,' by which it purported to offer products at everyday low prices." (Id., ¶¶ 6, 39). It also claimed JCPenney, at some unspecified point after February 2012,

-4-

1   "returned to its scheme of using false price comparisons." (Id., ¶¶ 7, 40). It further

2   alleged JCPenney's intent and preparation to do so. (Id.) But it did not set forth

3   factual allegations showing JCPenney's actual "return" to the alleged pre-February

4   2012 "scheme."

5

6   **C.    JCPenney's Motion to Dismiss the TAC and This Court's Order**

7   **        Granting the Motion.**

8        JCPenney moved to dismiss the TAC for failing to satisfy the Rule 8(a)(2)

9   and Rule 9(b) pleading requirements. JCPenney also contended Ms. Spann lacked

10  Article III standing to assert post-February 2012 false advertising claims. This

11  Court ruled Ms. Spann failed to meet Rule 8 and 9(b)'s pleading requirements. It

12  did not reach JCPenney's standing challenge. It dismissed Ms. Spann's UCL, FAL

13  and CLRA claims "to the extent they rel[ied] on defendant's post-February 2012

14  conduct," with leave to amend.

15

16  **D.    The FAC Identifies Only Two Instances of Alleged Post-February 2012**

17  **        False Comparative Price Advertising.**

18        Like the TAC, the FAC alleges that JCPenney stopped using false price

19  comparison advertising when it adopted "fair and square" pricing in February 2012.

20  (FAC, ¶¶ 6, 38). According to the FAC, "fair and square" pricing  remained in

21  effect as late as "Spring of 2012." (Id., ¶ 39). Like the TAC, the FAC asserts, upon

22  information and belief, JCPenney's preparation to return to the earlier scheme. (Id.,

23  ¶¶ 7, 41) ("As it did prior to February 1, 2012, J.C. Penney has once again marked

24  up the ticketed prices of those items just so that it can immediately turn around and

25  sell them at a discount in order to create the illusion of a "sale."). It also alleges

26  JCPenney's intent. (Id., ¶ 41) ("J.C. Penney has no intention of selling such

27  products (or at least any significant quantity of those products) at the new marked-

28  up prices . . .").

1    According to new allegations in the FAC, JCPenney, post-February 2012,

2  purportedly "sold" newly marked-up items "at the lower and supposedly discounted

3  prices, thereby making the higher prices false and misleading." (Id.) "J.C. Penney

4  is now using the exact same (or at least materially indistinguishable) false,

5  misleading and illegal comparative pricing practices that it used prior to February 1,

6  2012." (Id., ¶¶ 43, 44). Ms. Spann apparently rests this assertion on her analysis of

7  two JCPenney apparel items — "Worthington Ruched-Neck Blouse" and "a.n.a.

8  Denim 5 Pocket Shorts"— advertised during a three-month period in 2013. (Id., ¶¶

9  42, 43).

10

11    Between May 28, 2013 and August 31, 2013, JCPenney advertised its

12  Worthington Ruched-Neck Blouse as having an "original" price of $20.00 and a

13  discounted "sale" price of either $14.99 or $11.99. (Id., ¶ 42). According to Ms.

14  Spann, during this "ninety consecutive day"-period, JCPenney never offered the

15  item at the "original" price. (Id.) Based on these observations, according to her, the

16  advertised $20 "original" price did not equal the "prevailing market price," as

17  purportedly required by law. (Id.)

18

19    During the same period, JCPenney allegedly advertised its a.n.a. Denim 5

20  Pocket Shorts as having an "original" price of $24.00 and a discounted "sale" price

21  of either $14.99 or $11.99. (Id., ¶ 43). According to Ms. Spann, during this "ninety

22  consecutive day"-period, JCPenney never offered the item at the  advertised

23  "original" price. (Id.) According to her, based on these observations, the advertised

24  $24 "original" price did not equal the "prevailing market price," as purportedly

25  required by law. (Id.)

26

27

28

-6-

1    The FAC does not allege that Ms. Spann was exposed to any post-February
2    2012 false advertising or purchased any JCPenney items as a result of such
3    advertising.
4
5                                        **III.**
6    **THE POST-FEBRUARY 2012 ALLEGATIONS FAIL TO STATE A CLAIM**
7    **AND MS. SPANN LACKS STANDING TO CHALLENGE ALLEGED POST-**
8                        **FEBRUARY 2012 CONDUCT**
9        The FAC's new allegations fail to satisfy the requirements of Rule 8(a)(2) or
10   establish Ms. Spann's Article III standing to assert claims based on post-February
11   2012 conduct.
12
13   **A.**    **The New Allegations Make No Entitlement-to-Relief Showing Under**
14            **Rule 8(a)(2).**
15        Ms. Spann cannot meet Rule 8(a)(2)'s plausibility standard.  Ms. Spann
16   alleges she purchased items from JCPenney in 2011 based on a false comparative
17   price advertising "scheme" that ended in February 2012.  Yet, by her new
18   allegations, she seeks sweeping, across-the-board injunctive relief against
19   JCPenney.  (FAC, p. 12 ("Injunctive Relief is Necessary and Appropriate Because
20   J.C. Penney Has Returned to Using Illegal Price Comparisons"), pp. 26-27 (Prayer
21   for Relief, Section D); see also ¶¶ 46, 50(i), 62, 69, 78, 89).  The right to such relief,
22   if any, rests on Ms. Spann's ability to state claims based on JCPenney's alleged
23   "return" to its pre-February 2012 pricing "scheme."
24
25        A complaint must "show[ ] that the pleader is entitled to relief."  Fed. R. Civ.
26   P. 8(a)(2).  This "showing" occurs when "sufficient factual matter accepted as true
27   . . . 'state[s] a claim for relief that is plausible on its face.''  Ashcroft v. Iqbal, 556
28   U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

                                        -7-

1   (2007)).  A claim is facially plausible when it "allows the court to draw the

2   reasonable inference that the defendant is liable for the misconduct alleged."  Id. at

3   678.  "Where a complaint pleads facts that are 'merely consistent with' a

4   defendant's liability, it 'stops short of the line between possibility and plausibility of

5   entitlement to relief.'"  Id. at 557 (quoting Twombly, 550 U.S. at 557).

6

7        The FAC rehashes the TAC's broad, conclusory assertions regarding

8   JCPenney's "return" to its earlier fraudulent "scheme."  (See e.g., FAC ¶¶ 6, 7, 41).

9   It also attempts cosmetic changes.  For example, it alleges JCPenney's pre-February

10  2012 "scheme" only "temporarily" stopped in February 2012.  These non-factual

11  assertions are properly set aside.  See Iqbal, 556 U.S. at 678 (identifying the

12  rejection of labels and conclusory allegations as the first step in a Rule 8(a)(2)

13  analysis).  The FAC also retains the same reed-thin assertions that JCPenney intends

14  and is preparing to "return" to its former scheme.  (FAC ¶ 41).[1]  Significantly,

15  however, out of thousands of JCPenney-advertised items, Ms. Spann manages to

16  identify *only two* alleged instances of comparative price advertising since February

17  2012 that she claims failed to comply with legal requirements.  (Id. ¶¶ 42, 43)

18  (alleging JCPenney falsely advertised comparative prices for its "Worthington

19  Ruched-Neck Blouse" and the "a.n.a. Denim 5 Pocket Shorts").

20

21       The FAC does not allege Ms. Spann relied on or was exposed to any instances

22  of alleged false advertising as an actual JCPenney customer post-February 2012.

23  Rather, the two cited instances of non-compliance (which the FAC calls

24  "examples") are the product of Ms. Spann's counsel's investigation and analysis and

25

26  [1] These allegations, which Ms. Spann pleads on information and belief, also fail to
    satisfy Rule 9(b) because she never identifies the source of her "information and
    belief."  Neubronner v. Milken, 6 F.3d 666, 672  (9th Cir. 1993); Tuchman v. DSC

27  Communications Corp., 14 F.3d 1061, 1068  (5th Cir. 1994); New England Data
    Services, Inc. v. Becher, 829 F.2d 286, 288  (1st Cir. 1987).

28

1   purport to be representative of JCPenney's post-February 2012 comparative price

2   advertising generally.  (Keshavarzi Decl., Exh. 3, Meet and Confer Transcript, at p.

3   6:12-11:17).  But given the scale of JCPenney's private label and exclusive branded

4   advertising, the limited size of this sample cannot raise a reasonable inference that

5   JCPenney has "returned" to a false comparative price advertising "scheme."  City of

6   Westland Police and Fire Retirement System v. Sonic Solutions, 2009 U.S. Dist.

7   LEXIS 33339, at *19-21 (N.D. Cal. Apr. 6, 2009) (treating 14 stock option grants

8   identified as improperly backdated in complaint as "small unrepresentative sample"

9   given the thousands of grants made by defendant during the class period, and so

10  sample provided insufficient basis to reasonably infer scienter); Vasili v. Residential

11  Asset Securitization Trust, 697 F. Supp.2d 546, 547 (S.D.N.Y. 2010) (finding no

12  "plausible" inference of bank's non-compliance with collateral-appraisal standards

13  based on alleged inspection of 22 out of 63,935 loans at issue).

14

15          Depending on the survey or selection method, a small subset may sufficiently

16  reflect the larger set from which it is drawn, but the FAC provides no basis to

17  assume that is the case here.  It provides no information on the method or process

18  Ms. Spann's counsel used to identify—randomly or otherwise—the two instances of

19  alleged non-compliance.  Westland Police, 2009 U.S. Dist. LEXIS 33339, at *21

20  (requiring plaintiffs to explain how they selected subset of stock option grants

21  identified as backdated before drawing requisite inference); Iqbal, 556 U.S. at 679.

22  ("[D]etermining whether a complaint states a claim for relief [is] a context specific

23  task[.]").

24

25          Without this information, JCPenney's purported "return" to false comparative

26  price advertising serves as a possible—but not *plausible*—explanation for the

27  alleged non-compliance.  See Iqbal, 556 U.S. at 678.  The two instances of non-

28  compliance, even when accepted as true, can alternatively be explained as

-9-

1  aberrational departures from JCPenney's otherwise legally compliant pricing

2  practices.  As the Ninth Circuit, interpreting <u>Iqbal</u>, recently instructed:  "When faced

3  with two possible explanations, only one of which can be true and only one of which

4  results in liability, plaintiffs cannot offer allegations that are "merely consistent

5  with" their favored explanation but are also consistent with the alternative

6  explanation."  <u>In re Century Aluminum Co. Securities Litig.</u>, 729 F.3d 1104, 1108

7  (9th Cir. 2013) (citing <u>Iqbal</u>, 556 U.S. at 678).  To render her explanation plausible,

8  Ms. Spann must do more than merely allege facts consistent with her explanation

9  and a competing explanation.  <u>Id.</u>  She has not done that here.

10

11      The FAC fails to allege facts sufficient to take the allegation that JCPenney

12  has "returned" to its pre-February 2012 "scheme" "beyond the speculative level."

13  <u>Twombly</u>, 550 U.S. at 555.  Accordingly, this Court should dismiss the FAC to the

14  extent it relies on post-February 2012 conduct.

15

16  **B.      <u>Ms. Spann Lacks Constitutional Standing to Assert Claims Based on</u>**

17  **<u>Post-February 2012 Conduct.</u>**

18      Assuming the FAC states UCL, FAL and CLRA claims based on JCPenney's

19  alleged post-February 2012 advertising conduct, Ms. Spann does not allege she

20  purchased items from JCPenney as a result of any false comparative price

21  advertising after February 2012.  As a result, she lacks Article III standing to assert

22  claims based on post-February 2012 conduct.  <u>Shurkin v. Golden State Vintners</u>

23  <u>Inc.</u>, 471 F.Supp.2d 998, 1024 (N.D. Cal. 2006*) <u>aff'd</u>, 303 F.App'x 431 (9th Cir.

24  2008) (holding that investors who owned shares during portion of period of alleged

25  wrongdoing lacked Article III standing to pursue claims arising from conduct

26  occurring during portion in which they did not own shares); <u>Route v. Mead Johnson</u>

27  <u>Nutrition Co.</u>, 2013 U.S. Dist. LEXIS 35069 (C.D. Cal. Feb. 21, 2013) (where

28  plaintiffs purchased only one of four challenged baby food products, dismissing, on

-10-

constitutional standing grounds, UCL, FAL and CLRA claims to the extent they concerned labels and advertising related to the three products plaintiffs did not purchase); Arevalo v. Bank of America Corp., 850 F.Supp.2d 1008, 1016-17 (N.D. Cal. 2011) (where bank allegedly involuntarily enrolled plaintiffs in credit protection program, dismissing on standing grounds portion of UCL, FAL and CLRA claims that also challenged the value of bank's advertised credit protection program).

To establish standing, a plaintiff must plead facts showing an actual, personal injury "fairly traceable" to the challenged actions of the defendant and likely redressed by a decision in the plaintiff's favor. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). The party asserting federal jurisdiction carries the burden of establishing Article III standing. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006).

Here, Ms. Spann purchased her items from JCPenney on March 5, 2011. This purchase allegedly occurred during a false advertising "campaign" which admittedly "stopped" on or about February 2012. (FAC, ¶¶ 6, 38). She alleges no personal injury "fairly traceable" to JCPenney's alleged post-February 2012 conduct. Lujan, 504 U.S. at 560-61 (1992); In re Wells Fargo Mortgage-Backed Certificates Litig., 712 F.Supp.2d 958, 965 (N.D. Cal. 2010) (holding that named plaintiffs, who had constitutional standing to sue based on misstatements or omissions in securities offerings through which they actually purchased securities, did not have standing to sue based on similar allegations relating to offerings through which they did not purchase securities).

-11-

Ms. Spann claims no injury arising from post-February 2012 false advertising conduct.  Hence, she must allege facts connecting the two pre- and post-February 2012 periods.  But she does not.  Although she asserts that JCPenney has "returned" to false price comparisons and that "J.C. Penney's current price-comparison practices are the exact same as (or at least materially indistinguishable from) [those] prior to February 1, 2012," nothing factually ties the two periods together.  She cannot overcome her own alleged bright-line separation:  In February 2012, JCPenney "stopped" its pre-February 2012 false advertising "scheme."  (FAC, ¶¶ 6, 38).  No alleged "omnibus" scheme spans both pre- and post-February 2012 periods. Arevalo, 850 F.Supp.2d at 1016-17 (dismissing complaint on standing grounds in part based on plaintiffs' failure to allege an "omnibus scheme" connecting disparate conduct).

Indeed, the few scattered conclusory references in the FAC to JCPenney's alleged post-February 2012 price-comparisons practices show they differ in scope from, and are not part of or related to, its alleged pre-February 2012 "scheme." According to the FAC, JCPenney's pre-February 2012 "scheme" was "massive," "pervasive" and "consistent across all of J.C. Penney's private branded and exclusive branded apparel and accessories until February 1, 2012." (FAC, ¶ 5).  In contrast, "[s]ince [February 2012], [JCPenney] has experimented with a variety of pricing practices, *including* a return to false comparative price advertising." (Id., ¶ 7) (emphasis added).  JCPenney has, post-February 2012, used false comparative pricing only "for *at least some* private and exclusive branded products." (Id., ¶ 41) (emphasis added).  Consistent with this alleged dissimilarity, the FAC amends the alleged consumer class period (allegedly starting on November 5, 2012) to now end on "January 31, 2012," rather than "the date of any Judgment." (Id., ¶ 48).  In limiting the alleged class period in a manner that corresponds with the alleged pre-February 2012 "scheme," Ms. Spann herself acknowledges the absence of continuity

-12-

1  between the alleged "'scheme" under which her claims arose and JCPenney's

2  alleged post-February 2012 conduct.

3

4        Accordingly, Ms. Spann lacks constitutional standing to pursue claims based

5  on post-February 2012 conduct.  This Court should dismiss the FAC to the extent it

6  purports to advance such claims.

7

8  **C.**     **The Post-February 2012 Allegations Are Immaterial and Should be**

9      **Stricken.**

10        Alternatively, the Court has the authority to strike the FAC's post-

11  February 2012 advertising allegations as immaterial.  Fed. R. Civ. Proc. 12(f) ("The

12  court may strike from a pleading . . . any . . . immaterial . . . matter."); <u>see</u>  <u>Lanovaz</u>

13  <u>v. Twinings North America</u>, 2013 WL 675929, at *2 (N.D. Cal. Feb. 25, 2013) (in

14  UCL, FAL and CLRA action, granting motion to strike allegations of

15  advertisements other than those for products plaintiff purchased); <u>Schiff v. Barrett</u>,

16  2011 U.S. Dist. LEXIS 14731 (N.D. Cal. Feb. 14, 2011) (striking as immaterial

17  allegations challenging the conduct of a police commission hearing because the

18  court had previously ruled any claim related to such conduct was barred for failure

19  to exhaust judicial remedies, and thus allegations could not support discrimination,

20  retaliation and harassment claims).

21        As demonstrated above, the post-February 2012 allegations presented

22  in the FAC fail to state claims for relief, and advance claims which Ms. Spann has

23  no standing to pursue.  <u>See</u> Sections III.A. and III.B., <u>supra</u>.  These allegations are

24  thus immaterial and should be stricken.  <u>See</u> <u>e.g.</u>,  <u>Lanovaz</u>, 2013 WL 675929, at *2

25  (striking as immaterial allegations that could not serve as the basis for plaintiff's

26  UCL, FAL and CLRA claims).

27

28

-13-

1

## IV.

## CONCLUSION

For all of the foregoing reasons, JCPenney respectfully asks the Court to dismiss the FAC to the extent it fails to state claims for relief or advances claims that Ms. Spann lacks standing to assert.  Alternatively, JCPenney asks that the Court strike the FAC's post-February 2012 allegations as immaterial.

Dated:  March 20, 2014

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
MOE KESHAVARZI, Cal. Bar No. 223759
mkeshavarzi@sheppardmullin.com
JOHN LANDRY, Cal. Bar No. 194374
jlandry@sheppardmullin.com
PAUL L. SEELEY, Cal. Bar No. 252318
pseeley@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398


By            /s/ MOE KESHAVARZI
MOE KESHAVARZI
Attorneys for Defendant
J. C. PENNEY CORPORATION, INC.

-14-

1 | Dated:  March 20, 2014

2

3 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
RAOUL D. KENNEDY, Cal. Bar. No. 40892

4 | raoul.kennedy@skadden.com
JAMES P. SCHAEFER, Cal. Bar No. 250417

5 | james.schaefer@skadden.com
525 University Avenue

6 | Palo Alto, CA 94301
Telephone:  650.470.4500

7 | Facsimile:  650.470.4570

8

9 | By _____ /s/ RAOUL D. KENNEDY

10 | RAOUL D. KENNEDY
Attorneys for Defendant

11 | J. C. PENNEY CORPORATION, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-