1   STANLEY LAW GROUP
2   MATTHEW J. ZEVIN, SBN: 170736
    225 Broadway, Suite 1350
3   San Diego, CA  92101
    Telephone:    (619) 235-5306
4   Facsimile:    (815) 377-8419
    e-mail:        mzevin@aol.com
5
6   EMGE & ASSOCIATES
    DEREK J. EMGE, SBN: 161105
7   225 Broadway, Suite 1350
    San Diego, CA  92101
8   Telephone:    (619) 595-1400
    Facsimile:    (619) 595-1480
9   e-mail:        derek@emgelawfirm.com
10
    Attorneys for Plaintiff Cynthia E. Spann
11  and Proposed Class Counsel
    [Additional Counsel on Signature Page]
12
13              IN THE UNITED STATES DISTRICT COURT
14              CENTRAL DISTRICT OF CALIFORNIA

15  CYNTHIA E. SPANN, on Behalf        Case No. SACV12-0215 FMO (RNBx)
    of Herself and All Others          **CLASS ACTION**
16  Similarly Situated,
                                       **PLAINTIFF'S MEMORANDUM IN**
17                Plaintiff,           **OPPOSITION TO DEFENDANT J.C.**
                                       **PENNEY CORPORATION, INC.'S**
18  v.                                 **MOTION TO DISMISS, OR**
                                       **ALTERNATIVELY STRIKE CERTAIN**
19                                     **ALLEGATIONS IN, THE FOURTH**
20  J.C. PENNEY CORPORATION,           **AMENDED COMPLAINT**
    INC., a Delaware Corporation,
21
22                Defendant.           DATE:      April 24, 2014
                                       TIME:      10:00 a.m.
23                                     JUDGE:     Honorable Fernando M. Olguin
                                       CTRM:      22 – 5th Floor
24
25
26
27
28

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................ 1

II.  RELEVANT PROCEDURAL BACKGROUND ..................................... 3

   A.   Plaintiff Has Amended Her Pleadings and Renewed Her Request for Injunctive Relief in Order to Keep Pace with JCP's Flip-Flopping from Illegal Price Comparisons, to Fair and Square Pricing, and Now Back to Illegal Price Comparisons .............. 3

   B.   The Court Dismissed the Third Amended Complaint to the Extent that it Was Based on JCP's Conduct After February 1, 2012, But Gave Plaintiff Leave to Amend ............................................. 4

   C.   The Fourth Amended Complaint Cures the Deficiencies of the Third Amended Complaint ................................................................... 4

III. ARGUMENT ............................................................................................. 6

   A.   Standards on a Motion to Dismiss .................................................. 6

   B.   Plaintiff's "Information and Belief" Allegations Satisfy Rule 9(b) ................................................................................................... 7

   C.   Plaintiff's Allegations Concerning JCP's Post-February 2012 Conduct Satisfy Rule 8(a)(2) .......................................................... 9

   D.   Plaintiff Has Standing to Seek an Injunction .............................. 13

      1.   Issues Related to Injunctive Relief and Standing Are Intermingled with Issues of Class Certification and Should Not Be Decided on a Motion to Dismiss or Strike ...... 13

      2.   Plaintiff Has Standing to Seek an Injunction Based on Her Transactions During the Class Period, as Well as Her Well-Pled Allegations that JCP Has Returned to Using False Price Comparisons ........................................................ 14

   E.   There is No Basis to Strike Allegations in the FAC ........................... 18

IV.  CONCLUSION ....................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Arevalo v. Bank of America Corp.*,
　850 F. Supp. 2d 1008 (N.D. Cal. 2011)................................................................17

*Armstrong v. Davis*,
　275 F.3d 849 (9th Cir. 2001) ...............................................................................13

*Ashcroft v. Iqbal*,
　566 U.S. 662 (2009) .............................................................................................12

*Bates v. United Parcel Service, Inc.*,
　511 F.3d 974 (9th Cir. 2007)................................................................................14

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................6, 12

*City of Los Angeles v. Lyons*,
　461 U.S. 95, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983) .....................................14

*City of Westland Police and Fire Retirement System v. Sonic Solutions*,
　2009 WL 942182 (N.D. Cal. 2009).....................................................................12

*Fidelity National Title Ins. Co.*, v. *Castle*,
　No. C 11-00896 SI, 2011 WL 6141310 (N.D. Cal. 2011) ...............................7, 9

*Gilligan v. Jamco Dev. Corp.*,
　108 F.3d 246 (9th Cir. 1997) .................................................................................6

*Henderson v. Gruma Corp.*,
　No. CV 10-04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..........15

*In re Daou Systems, Inc.*,
　411 F.3d 1006 (9th Cir. 2005)................................................................................6

*In re Tobacco II Cases*,
　46 Cal. 4th 298 (2009).............................................................................................9

*In re Toyota Motor Corp.*,
　790 F. Supp. 2d 1152 (C.D. Cal. 2011).................................................................6

ii

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. 2010)................................................................16

*Kohler v. Big 5 Corp.*,
   No. 2:12-cv-00500, 2012 WL 11511748 (C.D. Cal. Apr. 30, 2012) ..................6

*Lanovaz v. Twinnings North America, Inc.*,
   No. C-12-02646, 2013 WL 2285221 (N.D. Cal. May 23, 2013).......................14

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130 (1992) ..............................................................17

*Madrid v. Perot Systems Corp.*,
   130 Cal. App. 4th 440 (2005).................................................................9, 10, 17

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ..........................................................................................11

*Ortega v. Natural Balance Inc.*,
   No. CV 13-05942 ABC (Ex), 2013 WL 6596792
   (C.D. Cal. Dec. 16, 2013)..................................................................................15

*Parents Involved in Community Schools v. Seattle School Dist. No. 1*,
   551 U.S. 701, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007) ...............................11

*People v. Toomey*,
   157 Cal. App. 3d 1 (1984).............................................................9, 10, 11, 17

*Richardson v. L'Oreal USA, Inc.*,
   No. 13-508(JDB), 2013 WL 5941486 (D.D.C. Nov. 6, 2013)..........................14

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) .....................................................................15

*Route v. Mead Johnson Nutrition Co.*,
   No. CV 12-7350-GW(JEMx), 2013 WL 658251
   (C.D. Cal. Feb. 21, 2013) ............................................................................17, 18

*Shurkin v. Golden State Vinters Inc.*,
   471 F. Supp. 2d 998 (N.D. Cal. 2006)..............................................................16

*Shwarz v. United States*,
   234 F.3d 428 (9th Cir. 2000) ..............................................................................6

iii

*Swift & Co. v. United States*,
  276 U.S. 311 (1928) ......................................................................... 9

*Tsereteli v. Residential Asset Securitization Trust*,
  697 F. Supp. 2d 546 (S.D.N.Y. 2010) .................................................. 12

*United States v. Oregon State Medical Society*,
  343 U.S. 326, 72 S. Ct. 690, 96 L. Ed. 978 (1952) ............................. 11

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953) ......................................................................... 11

**<u>Statutes, Rules & Regulations</u>**

California Business & Professions Code
  § 17501 ...................................................................................... 2, 4, 5

Federal Rules of Civil Procedure
  Rule 8(a)(2)................................................................................... 9, 12
  Rule 9(b)......................................................................................... 7, 9
  Rule 12(b)(6) ....................................................................................... 6
  Rule 12(f)............................................................................................. 6

iv

Plaintiff Cynthia Spann ("Plaintiff") respectfully submits the following memorandum of points and authorities in opposition to Defendant J.C. Penney Corporation, Inc.'s Motion to Dismiss, or Alternatively Strike Certain Allegations in, the Fourth Amended Complaint ("Motion").

## I.    INTRODUCTION

In her Fourth Amended Complaint ("FAC"), Plaintiff alleges that, between November 5, 2010 and January 21, 2012 (the "Class Period"), Defendant J.C. Penney Corporation, Inc. ("JCP" or the "Company") engaged in a wide-ranging false price comparison scheme for its private and exclusive branded items of apparel and accessories.  In fact, the Company's former CEO publicly *admitted* that JCP's price comparisons lacked "integrity" because less than 0.5 percent of its products actually sold at their stated "regular" price.

In its Motion, JCP does not dispute these facts.  Nor does it dispute that Plaintiff has standing and adequately states a claim for monetary relief under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and Consumers Legal Remedies Act ("CLRA") with respect to its conduct during the Class Period.  Instead, it asks the Court to summarily dismiss Plaintiff's request for injunctive relief, *a remedy*, and to strike all factual allegations concerning JCP's conduct after the Class Period.

JCP's Motion should be denied.  An injunction is the primary form of relief under Plaintiff's claims and is warranted so long as there is a reasonable basis to find that JCP's illegal conduct is ongoing or likely to recur in the future.   An injunction is both necessary and appropriate in this case because JCP has flip-flopped from using admittedly deceptive price comparisons during the Class Period, to its widely publicized and disastrous experiment with "fair and square pricing," and now back again to using price comparisons, at least some of which are illegal. In fact, Plaintiff alleges two specific examples where JCP has recently advertised private or exclusive branded products at a substantial discount from a stated

1

1    "original" price for *90 consecutive days*.  These facts demonstrate a per se violation

2    of the FAL, which prohibits the use of a "regular" price that is not the prevailing

3    market price of the product during the three months immediately preceding the

4    advertisement.  Cal. Bus. & Prof Code § 17501.

5         Contrary to JCP's arguments, Plaintiff does not need to demonstrate that its

6    current use of illegal price comparisons is widespread or uniform.  Plaintiff does not

7    make claims for monetary relief after February 2012, as her claims are based

8    exclusively on JCP's conduct during the Class Period.  Her allegations concerning

9    JCP's conduct after February 2012 are pled only to demonstrate the need for

10   injunctive relief, which is available if JCP's conduct is ongoing or likely to recur in

11   the future.  The allegations in the FAC are more than adequate to support such relief.

12        Moreover, the questions of whether an injunction should issue and whether

13   Plaintiff has standing to seek an injunction are factual and intermingled with

14   questions related to class certification and summary judgment.  They are, therefore,

15   inappropriate for resolution at the pleading stage.  Indeed, the parties have already

16   briefed and submitted substantial *evidence* in motions for class certification and

17   summary judgment concerning JCP's conduct after the Class Period, as well as

18   issues related to Plaintiff's standing, thereby demonstrating the impropriety of

19   resolving these issues in connection with a motion to dismiss.

20        Finally, JCP's Motion is based entirely on irrelevant legal authority.  It fails

21   to cite to even one case that supports the summary dismissal of a *remedy* –

22   injunctive relief – based on allegations that a defendant has returned (or will return)

23   to illegal practices that it does not dispute occurred earlier.  In fact, there is

24   absolutely no authority that supports such relief, as *all* of the relevant case law

25   dictates that JCP cannot avoid an injunction just because it temporarily stopped its

26   illicit behavior.  For these reasons, and those discussed herein, JCP's Motion should

27   be denied in its entirety.

28

2

## II.    RELEVANT PROCEDURAL BACKGROUND

### A.    Plaintiff Has Amended Her Pleadings and Renewed Her Request for Injunctive Relief in Order to Keep Pace with JCP's Flip-Flopping from Illegal Price Comparisons, to Fair and Square Pricing, and Now Back to Illegal Price Comparisons

JCP's suggestion that Plaintiff amended her complaint and renewed her request for injunctive relief out of concern for arguments it made in opposition to class certification is pure and absurd fantasy.  There was *zero correlation* between Plaintiff's amendments and JCP's arguments in opposition to class certification.

The reasons for Plaintiff's amendments and renewed request for injunctive relief were set forth in Plaintiff's Motion to File Third Amended Complaint ("Motion to Amend") [Dkt. No. 73].  Therein, Plaintiff chronicled JCP's pricing policies: from its deceptive price comparisons that lacked "integrity" during the Class Period, to its experiment with "Fair and Square" pricing that had no price comparisons but which led the Company to the brink of financial ruin and the firing of its CEO, and then back again to comparative price advertising, at least some of which is, once again, in violation of law.  *See, e.g.,* Declaration of Matthew J. Zevin in Support of Plaintiff's Motion to File Third Amended Complaint [Dkt. No. 73-2] at ¶¶ 3-11, and Exhibits attached thereto (detailing the history and *evidentiary basis* for Plaintiff's amendments, including the evolution of JCP's pricing practices).  *See also* Joint Statement of Uncontroverted Facts [Dkt. No. 151] (filed under seal) at Undisputed Facts P2-P24 and P26-P41 (and evidence cited therein) (documenting the evolution of JCP's pricing policies both during and after the Class Period).

There is no basis to support JCP's claim that Plaintiff amended her pleadings and renewed her request for injunctive relief in response to its arguments in opposition to class certification.  Rather, the record makes clear that these actions were taken solely in order to keep pace with JCP's alternating pricing policies and to protect consumers from JCP's renewed use of illegal price comparisons.

3

**B.**      **The Court Dismissed the Third Amended Complaint to the Extent that it Was Based on JCP's Conduct After February 1, 2012, But Gave Plaintiff Leave to Amend**

In its February 21, 2014 Order granting JCP's Motion to Dismiss, or Alternatively Strike Certain Allegations in Plaintiff's Third Amended Complaint [Dkt. No. 158], the Court dismissed Plaintiff's claims "to the extent they rely on defendant's post-February 2012 conduct." Dkt. No. 158 at 6.

The Court held that the Third Amended Complaint "is devoid of any factual allegations showing that defendant actually used or advertised false comparative prices, or placed for sale or sold products based on a fraudulent advertising scheme after February 2012." *Id.* at 4. The Court further held that the allegations concerning JCP's post-February 2012 conduct "are speculative and, at most, contend that [JCP] either intends to again engage in an unlawful advertising practice, or has commenced the commission of the unlawful act, but has not completed it." *Id.* (citing Third Amended Complaint at ¶ 40).

The Court granted Plaintiff leave to file a Fourth Amended Complaint in order to allege facts that "'give the defendant[] fair notice of what' post-February 2012 conduct consists of '[a]dvertising goods or services' in an unlawful manner . . . ." *Id.* at 5.

**C.**      **The Fourth Amended Complaint Cures the Deficiencies of the Third Amended Complaint**

The FAC does exactly what the Court required in its February 21, 2014 Order. Like the Third Amended Complaint, it details JCP's deceptive and *admittedly* illegal price comparisons prior to February 1, 2012, including admissions by the Company's former CEO that JCP's "regular" prices had "no integrity" and that "fewer than one out of 500 units" sold at the "regular" price during the Class Period. *E.g.,* FAC ¶¶ 26-37. Notably, JCP continues not to challenge the accuracy or sufficiency of those allegations, and it continues not to challenge Plaintiff's standing or request for monetary relief based on those allegations.

4

1    The FAC also details JCP's brief and woefully unsuccessful stint with "fair

2    and square" pricing during which time the Company did not use any comparative

3    price advertising (FAC ¶¶ 38-40) and, like the Third Amended Complaint, it alleges

4    that JCP has recently abandoned its fair and square policies and returned to using

5    comparative price advertising.  *See generally* FAC ¶¶ 40-46.  However, the FAC

6    differs from the Third Amended Complaint in two important ways.

7    First, it proposes a shorter "Class Period" of November 5, 2010 through

8    January 31, 2012 (FAC ¶ 48), whereas the Third Amended Complaint proposed a

9    class period that extended from November 5, 2010 through "the date of any

10    Judgment in this case."  Dkt. No. 98 at ¶ 42.  This is significant because it limits

11    Plaintiff's underlying claims for monetary relief to JCP's conduct and transactions

12    that took place *prior* to February 1, 2012.  Accordingly, Plaintiff no longer seeks to

13    recover damages based on transactions, or JCP's conduct, after February 1, 2012.

14    Second, and unlike the Third Amended Complaint, the FAC affirmatively

15    alleges that JCP is *currently using* illegal price comparisons (rather than alleging

16    that JCP has prepared to return or intends to return to such practices).  FAC ¶¶ 40-

17    46. *See also id.* at ¶¶ 6-8.

18    Crucially, the FAC gives two specific examples where JCP has recently used

19    illegal comparative price advertising.   It identifies two private and exclusive

20    products that JCP recently advertised for more than ninety consecutive days at a

21    substantial discount from their stated "original" prices.  FAC ¶¶ 42-43.  Since it

22    would be impossible for the 90-day prevailing market price to equal or exceed the

23    stated "original" price of those items if they were offered and sold exclusively at a

24    substantial discount from the "original" price for ninety consecutive days, these

25    allegations are sufficient to demonstrate a *per se* violation of the FAL, which

26    requires that an "original" price equal the prevailing market price for the item

27    during the preceding ninety days.  Cal. Bus. & Prof. Code § 17501.  Accordingly,

28    the FAC cures the deficiencies of the Third Amended Complaint because it gives

5

1 JCP "'fair notice of what' post-February 2012 conduct consists of '[a]dvertising
2 goods or services' in an unlawful manner." Dkt. No. 158 at 5.

3 **III.   ARGUMENT**

4 **A.     Standards on a Motion to Dismiss**

5        The rules governing motions to dismiss are well established.  Fed. R. Civ. P.
6 12(b)(6) permits dismissal only if a challenged pleading fails to "state a claim upon
7 which relief can be granted."  To satisfy this liberal pleading standard, a complaint
8 "does not need detailed factual allegations."  *Bell Atlantic Corp. v. Twombly*, 550
9 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).  Rather, the complaint's allegations
10 need only "be enough to raise a right to relief above the speculative level."  *Id.*[1]

11       When considering a motion to dismiss, the complaint is construed in the light
12 most favorable to the plaintiff, and all well pleaded facts are taken as true.  *Shwarz
13 v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Motions to dismiss are
14 generally viewed with disfavor and are rarely granted.  *See, e.g., Gilligan v. Jamco
15 Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  If dismissal of the complaint is
16 warranted, it is generally without prejudice, unless it is clear that the complaint
17 cannot be saved by any amendment.  *See, e.g., In re Daou Systems, Inc.*, 411 F.3d
18 1006, 1013 (9th Cir. 2005).

19       Similarly, "Courts generally disfavor and rarely grant motions to strike, since
20 they impose a drastic and extreme remedy."  *Kohler v. Big 5 Corp.*, No. 2:12-cv-
21 00500, 2012 WL 11511748, at *2 (C.D. Cal. Apr. 30, 2012).  A motion to strike may
22 only be used to challenge "an insufficient defense or any redundant, immaterial,
23 impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The purpose of the motion
24 is to "'avoid the expenditure of time and money that must arise from litigating
25 spurious issues by dispensing with those issues prior to trial.'"  *In re Toyota Motor
26 Corp.*, 790 F. Supp. 2d 1152, 1170 (C.D. Cal. 2011) (citation omitted).

27
28
---
[1]  Although styled as a motion to dismiss for failure to state a claim, JCP's Motion does not even mention Federal Rule 12(b)(6).

### B.    Plaintiff's "Information and Belief" Allegations Satisfy Rule 9(b)

JCP previously argued that the Third Amended Complaint failed to satisfy Rule 9(b) because it did not adequately allege the "who, what, when, where and how" of its illegal conduct after February 2012, and JCP initially stated its intention to make the same argument concerning the FAC.  *See* Declaration of Moe Keshavarzi in Support of Defendant J.C. Penney Corporation, Inc.'s Motion to Dismiss, or Alternatively Strike Certain Allegations in, the Fourth Amended Complaint ("Keshavarzi Decl.") [Dkt. No. 161-2] at ¶ 3 and Exhibit 2 attached thereto.

However, the parties discussed this issue at length in connection with their meet and confer obligations (*id.* at ¶ 4 and Exhibit 3 attached thereto), and JCP apparently now agrees that the FAC adequately alleges the "who, what, when, where and how" concerning its post-February 2012 conduct because it does not make any argument to the contrary in its Motion.

Instead, JCP relegates its entire Rule 9(b) argument to a one-sentence footnote in which it contends that Plaintiff's "information and belief" allegations fail because she does not identify the source of her information and belief.  Motion at 8, n.1 (citing cases).  This argument is ill-conceived because Plaintiff does not need to identify the source of "information and belief" allegations that are based on reasonable inferences drawn from other, specific factual allegations.  *Fidelity National Title Ins. Co.*, v. *Castle*, No. C 11-00896 SI, 2011 WL 6141310, at *7 (N.D. Cal. 2011).

The only "information and belief" allegations that JCP references in its Motion are those in paragraphs 6, 7 and 41 of the FAC.  Motion at 8.  However, the only "information and belief" allegations in paragraphs 6 and 7 are that JCP temporarily stopped using price comparisons in February 2012 (FAC ¶ 6), a fact that JCP does not dispute, and that JCP has "largely abandoned" its "fair and square" pricing strategy (FAC ¶ 7).  Meanwhile, the only allegations made on

7

1  information in belief in Paragraph 41, are that JCP's former CEO, Ron Johnson,

2  was removed from office (another fact that JCP does not dispute), and that JCP has

3  since returned to using "fake" sales with respect to at least some of its private and

4  exclusive branded products.   FAC ¶ 41.   The rest of the allegations in these

5  paragraphs, such as the allegation that J.C. Penney has once again marked up its

6  ticketed prices, the allegation that many of the purported "sale" prices are *higher*

7  than the "regular" prices used during fair and square, and the allegation that JCP is

8  now using the exact same (or at least materially indistinguishable) illegal

9  comparative pricing practices that it used prior to February 1, 2012, are not pled on

10 information and belief.   Accordingly, Plaintiff has no obligation to identify the

11 source or basis of such allegations.

12     Regardless, during the parties' meet and confer discussions, Plaintiff's

13 counsel specifically identified some of the *evidence* upon which these allegations

14 are made, including the deposition testimony of JCP's buyer, Caroline Bearden,

15 who could not identify any differences between the comparative pricing practices

16 she uses today, and those that she used during the Class Period.   *See, e.g.,*

17 Keshavarzi Decl., Ex. 3 at 18-19, 22, 24-25, 27 (explaining some of the evidentiary

18 "bases" for Plaintiff's allegations, including "an exhaustive amount of deposition

19 testimony" such as the testimony of Caroline Bearden).[2]

20     Moreover, Plaintiff's "information and belief" allegations are sufficient

21 because they are supported by reasonable inferences drawn from other factual

22 allegations that are not pled on information and belief, including the two specific

23 _____

24 [2]   These allegations are also supported by evidence previously submitted in
connection with JCP's Motion for Summary Judgment. *See, e.g.,* Joint Statement of

25 Uncontroverted Facts [Dkt. No. 151] (filed under seal) at Undisputed Facts P33-P41
(detailing the factual and evidentiary basis for allegations concerning JCP's pricing

26 practices after February 2012, including news reports, admissions by JCP executives
and public filings that detail the Company's current practice of marking up "original"

27 and "regular" prices above the former "fair and square" prices).  To be sure, Plaintiff

28 has a solid *evidentiary* basis to allege that JCP has returned to its old practices.

examples of illegal price comparisons detailed in Paragraphs 42 and 43 of the FAC. Accordingly, Plaintiff's "information and belief" allegations satisfy Rule 9(b). *Fidelity National Title Ins. Co.*, 2011 WL 6141310, at *7.

**C.     Plaintiff's Allegations Concerning JCP's Post-February 2012 Conduct Satisfy Rule 8(a)(2)**

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). JCP does not dispute that Plaintiff meets this standard (as well as the heightened pleading standards of Rule 9(b)) with respect to her claims for monetary relief based on its widespread use of false price comparisons prior to February 1, 2012.

Instead, JCP argues that Plaintiff's "right" to obtain injunctive relief "rests on [her] ability to state claims based on [JCP's] alleged 'return' to its pre-February 2012 pricing 'scheme.'" Motion at 7. But this overstates Plaintiff's burden. Plaintiff's legal claims for monetary damages are based on JCP's conduct during the Class Period, which ends on January 31, 2012. Her allegations concerning JCP's post-February 2012 conduct are pled simply to show the basis for seeking an injunction, which is the "primary form of relief available" under the consumer protection statutes at issue in this case. *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009). Plaintiff's burden for pleading entitlement to such relief is not nearly as onerous as JCP pretends.

The purpose of injunction is to prevent future violations of the law. *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928). However, when a defendant voluntarily stops engaging in illicit behavior (as JCP is alleged to have done in February 2012), injunctive relief is still appropriate if the alleged wrongful conduct is likely to recur. *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 464-65 (2005) (citing *Gafcon, Inc. v Ponsor & Assoc.*, 98 Cal. App. 4th 1388, 1403 (2002)). *See also People v. Toomey*, 157 Cal. App. 3d 1, 20 (1984) (holding that an injunction is appropriate when there is a "showing that past violations will probably

9

1   recur.").  Accordingly, Plaintiff need only allege enough facts to show, beyond the

2   speculative level, that JCP is currently using false price comparisons or that such

3   wrongful conduct is likely to recur.  The FAC clearly meets this standard.

4        In support of her request for injunctive relief, Plaintiff pleads that JCPenney

5   has recently returned to using price comparison advertising in general, and she

6   alleges that, at least with respect to some products, it is once again using the same

7   illegal price comparison practices that it used during the Class Period.  FAC ¶¶ 40-

8   46.  In support of those allegations, Plaintiff identifies two concrete examples where

9   JCP has recently used comparative prices that violate California law.  FAC ¶¶ 42-43.

10       Specifically, Plaintiff alleges that between May 28, 2013 and August 31,

11   2013, JCP offered for sale two private or exclusive branded products at a significant

12   discount from their stated "original" prices.  FAC ¶¶ 42-43.  Thus, for over ninety

13   consecutive days, the items were offered only at a deep discount, and not at the

14   stated "original" prices, thereby making it impossible for the "original" prices to

15   have equaled or exceeded the prevailing market prices for those items during the

16   preceding ninety days.  *Id.*  These allegations demonstrate a *per se* violation of the

17   FAL and, therefore, satisfy Plaintiff's burden of alleging facts showing that JCP is,

18   once again, engaging in illegal price comparisons and that, absent an injunction,

19   such conduct is likely to recur.  *Madrid*, 130 Cal. App. 4th at 464-65; *Toomey*, 157

20   Cal. App. 3d at 20.

21       While JCP quibbles that Plaintiff has "only" identified two instances of false

22   comparative prices since February 2012, and argues that Plaintiff fails to explain

23   the method or process used to identify those examples (Motion at 8-9), there is no

24   requirement that she allege more instances of false price comparisons or further

25   explain the basis for her factual allegations.  Nor must she allege that she was

26   personally exposed or victimized by JCP's practices after the Class Period.

27       In fact, Plaintiff can seek injunctive relief without *any* evidence that JCP is

28   currently engaging in false price comparisons, so long as there is a sufficient basis

10

to show that JCP is "likely" to return to such illegal practices in the future. *Toomey*, 157 Cal. App. 3d at 20. *See also United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct."). Plaintiff's allegations in the FAC are more than sufficient to meet that standard.

Indeed, given the history of JCP's alternating pricing policies, from its admittedly deceptive practices prior to February 2012 (FAC ¶¶ 26-37), to its failed experiment with fair and square pricing, which led the Company to the brink of financial ruin and the firing of its CEO (FAC ¶¶ 38-41), to its recent return to price comparisons, including specific examples of two illegal price comparisons (FAC ¶¶ 41-46), Plaintiff has established more than a plausible and non-speculative basis to show that JCP has returned, or is likely to return, to using false price comparisons. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (noting that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury"); *see also Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007) ("Voluntary cessation does not moot a case or controversy unless subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.") (internal quotation marks and alterations omitted); *W.T. Grant Co.*, 345 U.S. at 632-34 (noting that the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. . . . The defendant is free to return to his old ways."); *United States v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S. Ct. 690, 695, 96 L. Ed. 978 (1952) ("It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.").

JCP ignores this case law and offers its own authority that is entirely off point

11

and irrelevant.  In *City of Westland Police and Fire Retirement System v. Sonic Solutions*, 2009 WL 942182, *5-*7 (N.D. Cal. 2009), the court found that the plaintiff's allegations concerning the backdating of a "small unrepresentative sample" of options was insufficient to demonstrate "a strong inference of scienter" as required under the federal securities laws, and in *Tsereteli v. Residential Asset Securitization Trust*, 697 F. Supp. 2d 546, 547 (S.D.N.Y. 2010), the court found that allegations concerning a small number of non-complying loan appraisals were not representative of the defendant bank's practices with respect to a large number of different loan appraisals at issue in the litigation.  Neither of these cases even mention the relevant pleading standards for seeking prospective injunctive relief based on a defendant's likely return to wrongful conduct and they, therefore, have absolutely no bearing on, or relationship to, Plaintiff's burden for pleading a request for such relief based upon JCP's return or likely return to using false price comparisons in this case.

JCP's arguments concerning plausibility and speculation are similarly misguided.  Motion at 9-10 (citing *Ashcroft v. Iqbal*, 566 U.S. 662 (2009) and *Twombly*, 550 U.S. at 555).  JCP does not dispute that Plaintiff has satisfied the relevant pleading standards discussed in *Iqbal* or *Twombly* with respect to its conduct during the Class Period, and her allegations concerning JCP's current use of false price comparisons are equally plausible and concrete because they are based, at least in part, on JCP's prior conduct as well as two specific examples of recent price comparisons that violate California law.  Nothing more is required at the pleading stage.

In sum, the FAC satisfies Rule 8(a)(2) because it alleges enough plausible facts to demonstrate that JCP has returned, or is likely to return, to using false price comparisons, and it therefore provides a sufficient basis for Plaintiff to pursue injunctive relief.

12

1

### D.     Plaintiff Has Standing to Seek an Injunction

2

  **1.     Issues Related to Injunctive Relief and Standing Are Intermingled with Issues of Class Certification and Should Not Be Decided on a Motion to Dismiss or Strike**

3

4

Initially, it must be noted that "the issues of standing, class certification, and

5

the propriety and scope of [injunctive] relief are often intermingled," making them

6

inappropriate for resolution at the pleading stage. *Armstrong v. Davis*, 275 F.3d

7

849, 860-61 (9th Cir. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111,

8

75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983)). "As a result, the district court's findings

9

of fact and rulings of law with regard to one aspect of the litigation will often

10

buttress or make unnecessary further findings or rulings on another issue." *Id.* "For

11

example, . . . determinations relevant to standing, or to class certification, will also

12

be relevant to the grant of injunctive relief; and . . . determinations made with

13

respect to class certification may also be relevant to the standing inquiry." *Id.*

14

(citing *LaDuke v. Nelson*, 762 F.2d 1318, 1326 (9th Cir. 1985) (other internal

15

citations omitted)). "Similarly, because the court may reconsider whether the

16

plaintiffs have standing or have been appropriately certified as a class at the trial

17

stage of the litigation, the court's findings at trial may be bolstered by its rulings at

18

earlier stages of the litigation." *Id.* (internal citation omitted).

19

Here, the Court has yet to determine whether a class will be certified, let

20

alone the scope of any such class,[3] and the parties have previously submitted

21

substantial evidence relevant to both class certification and summary judgment.

22

Accordingly, it would be inappropriate to determine whether Plaintiff has standing

23

to seek an injunction based solely on the pleadings.

24

25

[3]   The Court's February 21, 2014 Order denied Plaintiffs' Motion for Class

26

Certification without prejudice, but Plaintiff has recently filed a Motion for

27

Reconsideration of that portion of the Order.  Dkt. No. 162.  Alternatively, the Court's order states that it will issue a new briefing schedule for class certification

28

such that another ruling on class certification is imminent.

2.   **Plaintiff Has Standing to Seek an Injunction Based on Her Transactions During the Class Period, as Well as Her Well-Pled Allegations that JCP Has Returned to Using False Price Comparisons**

To establish standing for prospective injunctive relief, Plaintiff must demonstrate that she "has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that [she] will again be wronged in a similar way.'" *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lyons*, 461 U.S. at 111).  Her standing "depend[s] on whether [she is] likely to suffer future injury" from the challenged conduct. *Lyons*, 461 U.S. at 102, 105 ("injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical'").  However, in the context of a class action, the Ninth Circuit "has held that courts should not be too rigid in applying standing requirements to proposed classes." *Lanovaz v. Twinnings North America, Inc.*, No. C-12-02646, 2013 WL 2285221 (N.D. Cal. May 23, 2013) (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir.2001) *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05, 125 S. Ct. 1141, 160 L.Ed.2d 949 (2005)).

Here, there is no dispute that Plaintiff suffered harm from JCP's illegal price comparisons during the Class Period, and she has adequately alleged a likelihood of future injury based on the fact that she shopped at JCPenney after it switched to fair and square pricing (FAC ¶ 39), and the fact that she would likely return to JCPenney again but is hesitant to do so until she knows that she can trust its pricing advertisements.   FAC ¶ 46.   Indeed, JCPenney has publically admitted that consumers, like Plaintiff, may be confused by its numerous pricing policy changes. *Id.*  These allegations coupled with allegations showing that JCP is currently using false price comparisons demonstrate Plaintiff's standing to seek injunctive relief. *E.g., Richardson v. L'Oreal USA, Inc.*, No. 13-508(JDB), 2013 WL 5941486, *5-*6 (D.D.C. Nov. 6, 2013) (finding standing to seek an injunction where a consumer

14

1    might reasonably purchase the products again); *Ries v. Arizona Beverages USA*
2    *LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (holding that plaintiff had standing to
3    seek an injunction because if the plaintiff encountered the allegedly false "All
4    Natural" representation "at the grocery store today, they could not rely on that
5    representation with any confidence."). *See also Henderson v. Gruma Corp.*,
6    No. CV 10-04173 AHM (AJWx), 2011 WL 1362188 at *7 (C.D. Cal. Apr. 11,
7    2011) (holding that it would "surely thwart the objective of California's consumer
8    protection laws" to deny a consumer previously deceived standing to seek an
9    injunction); *Ortega v. Natural Balance Inc.*, No. CV 13-05942 ABC (Ex), 2013 WL
10   6596792, at *5 (C.D. Cal. Dec. 16, 2013) (approving of the holdings and rationale
11   in *Henderson* and *Ries*).[4]

12        Rather than address this or any other relevant authority (including the
13   authority discussed above in Section III.C., *supra*), JCP argues that Plaintiff lacks
14   standing because she was not personally victimized by any false price comparisons
15   after February 1, 2012, and because she does not allege an "omnibus" scheme that
16   ties together JCP's conduct during and after the Class Period.  Motion at 10-12.
17   However, JCP does not dispute that Plaintiff has standing based on conduct that
18   occurred during the Class Period, and it does not cite to even one case that states
19   that she must be victimized again, let alone each and every day that a defendant
20   violates the law in order to pursue the remedy of an injunction.   Rather, as
21   demonstrated above, Plaintiff may seek an injunction so long as she can

---

27   [4]  Curiously, JCP previously addressed some of this authority in connection with its
28   Motion for Summary Judgment, but it completely ignores such authority in connection with this Motion.

1  demonstrate that JCP's illegal conduct is ongoing or likely to recur.[5]

2  JCP's authority is, again, off-point and irrelevant.  In *Shurkin v. Golden State*
3  *Vinters Inc.*, 471 F. Supp. 2d 998, 1012-13 (N.D. Cal. 2006), the plaintiff sought to
4  advance claims on behalf of a class of persons who bought stock in the defendant's
5  company between December 23, 2003 and April 23, 2004, based on a series of
6  allegedly false and misleading statements issued throughout that time period.  *Id.* at
7  1002, 1005-07.  However, the plaintiff sold his stock prior to the dissemination of
8  some of the allegedly misleading statements, and the court held that he lacked
9  standing to assert claims on behalf of investors who purchased stock based on
10 misrepresentations that he did not personally rely on and which were disseminated
11 after he had already sold his stock.  *Id.* at 1022-24.

12 Here, Plaintiff has ended her Class Period on January 31, 2012, and she does
13 not purport to state "claims" for monetary relief on behalf of persons who have
14 been victimized by JCP's false price comparisons after that date.  Rather, she seeks
15 only prospective injunctive relief to protect herself and other consumers from JCP's
16 illegal practices that are currently ongoing or likely to recur in the future.  Her
17 standing to seek such relief is based on her transactions and JCP's conduct that took
18 place during the Class Period.  *Shurkin* does not even remotely address such a
19 scenario and is, therefore, irrelevant.[6]

20

21 [5]  Contrary to JCP's suggestion, Plaintiff does tie JCP's current illegal price
22 comparison practices to its illegal price comparisons during the Class Period.  *E.g.,*
23 FAC ¶ 41 (alleging that JCP's current practices are "the exact same [as] (or at least
   materially indistinguishable)" from its illegal price comparison practices during the
24 Class Period); ¶¶ 42-43 (citing examples of current practices that are identical to its
25 prior practices).  *See also* Keshavarzi Decl., Ex. 3 at 18-19, 22, 24-25, 27
   (explaining some of the evidentiary "bases" for Plaintiff's allegations, including the
26 testimony of Caroline Bearden who could not identify any differences between her
27 pricing practices prior to February 1, 2012 and her pricing practices today).

28 [6]  *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965
   (N.D. Cal. 2010) is distinguishable and irrelevant for the exact same reasons.

16

Equally irrelevant is *Arevalo v. Bank of America Corp.*, 850 F. Supp. 2d 1008 (N.D. Cal. 2011), in which the plaintiffs sought to represent two distinctly different classes of people with completely different factual scenarios.  The first group included people, like the named plaintiffs, who were automatically enrolled in the defendant bank's credit protection program.  850 F. Supp. 2d at 1015.  The second group, of which the named plaintiffs were not members, consisted of persons who signed up for the credit protection program but who could not use it due to exclusions.  *Id.*  Based on these "intra-class differences," the court held that the named plaintiffs lacked standing to represent the second group because they lacked standing to advance such claims individually.  *Id.* at 1017-18.

Here, there are no such intra-class differences.  The class claims end on January 31, 2012, and Plaintiff does not seek to represent or state claims on behalf of consumers who engaged in transactions after that date.  But, this does not prevent her from seeking prospective injunctive relief, the primary form of relief available under her claims, in order to protect herself and other consumers from JCP's illegal conduct that is ongoing or likely to recur in the future.  *Madrid*, 130 Cal. App. 4th at 464-65; *Toomey*, 157 Cal. App. 3d at 20.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992) is also distinguishable.  In that case, the plaintiffs did not have standing at all because they were unable to show that they suffered any injury that was "fairly traceable" to the defendant's conduct.  *Lujan*, 504 U.S. at 560-61.  Here, in contrast, it is undisputed that Plaintiff has suffered injury, and it is undisputed that she has standing to assert each of her legal claims based on her transactions with JCP during the Class Period.  There is nothing in *Lujan* that suggests Plaintiff cannot pursue prospective injunctive relief once she has demonstrated standing in the first instance.[7]

---

[7]   *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 WL 658251 (C.D. Cal. Feb. 21, 2013) is completely off base.  There, the court held that the named plaintiff could not represent class members who purchased three baby

17

1    In sum, JCP fails to cite any authority that addresses the relevant standards for

2    establishing standing to seek injunctive relief, let alone any authority involving a

3    situation where, as here, a plaintiff undisputedly has standing to assert claims based

4    on conduct that occurred during the Class Period, and who seeks prospective

5    injunctive relief in order to protect consumers based on allegations that the defendant

6    continues to use, or is likely to return to using, deceptive and illegal advertising.  In

7    fact, there is no authority that supports JCP's request for such a preemptive strike and

8    the elimination of an entire remedy – injunctive relief – particularly at the pleading

9    stage.  JCP's Motion to dismiss should therefore be denied.

10   **E.    There is No Basis to Strike Allegations in the FAC**

11   As demonstrated above, Plaintiff does not purport or need to independently

12   "state claims for relief" based on JCP's post-February 2012 conduct.  Her claims

13   are based on JCP's conduct during the Class Period, but she is entitled to seek

14   prospective injunctive relief so long as there is a legitimate threat that JCP's illegal

15   conduct is ongoing or likely to recur in the future.  Section III.C., *supra.*  For the

16   reasons stated above, Plaintiff's allegations concerning JCP's post-February 2012

17   conduct provide a basis for such relief and are, therefore, material and relevant.

18   Accordingly, these allegations are necessary, rather than immaterial, and they

19   should not be stricken.

20   **IV.   CONCLUSION**

21   For the reasons stated above, JCP's Motion should be denied in its entirety.

22   DATED: April 3, 2014                    STANLEY LAW GROUP

23

24                                  */s/ Matthew J. Zevin*

25                                  MATTHEW J. ZEVIN

26   food products that she did not purchase, but acknowledged that there could
     potentially exist a basis for her to have standing to represent purchasers of all four

27   products, even though she only purchased one.  *Id.* at *3, n.4.  This inquiry and
     analysis has absolutely nothing to do with the question of whether Plaintiff has

28   standing to pursue prospective injunctive relief and is, therefore, irrelevant.

18

1

2     225 Broadway, Suite 1350
      San Diego, CA  92101
3     Telephone:   (619) 235-5306
      Facsimile:    (815) 377-8419
4

5     EMGE & ASSOCIATES
      DEREK J. EMGE
6     225 Broadway, Suite 1350
      San Diego, CA  92101
7     Telephone:   (619) 595-1400
      Facsimile:    (619) 595-1480
8

9

10    Attorneys for Plaintiff Cynthia E. Spann and
      Proposed Class Counsel
11

12    SCHIFFMAN & HUCH, LLP
      DAVID A. HUCH, SBN: 222892
13    8105 Irvine Center Dr., Suite 900
      Irvine, CA  92618
14    Telephone:   (949) 936-2564
      Facsimile:    (949) 682-4881
15    e-mail: david.a.huch@gmail.com
16

17    Attorneys for Plaintiff Cynthia E. Spann

18

19

20

21

22

23

24

25

26

27

28

19

<table>
<tr><td>1</td><td></td></tr>
</table>

**PROOF OF SERVICE**

*Spann v. J.C. Penney, et al.*

CASE NO: SACV12 0215 FMO (RNBx)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 225 Broadway, Suite 1350, San Diego, CA 92101.

That on April 3, 2014, I served the following document(s) entitled: **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT J.C. PENNEY CORPORATION, INC.'S MOTION TO DISMISS, OR ALTERNATIVELY STRIKE CERTAIN ALLEGATIONS IN, THE FOURTH AMENDED COMPLAINT** on ALL INTERESTED PARTIES in this action:

☐    **BY MAIL**: By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    **BY CM/ECF Electronic Service:** I caused such document to be served via the Court's (NEF) electronic filing system on all registered parties.

I declare under penalty of perjury under the laws of the United States of America and State of California that the foregoing is true and correct. Executed on April 3, 2014, at San Diego, California.

 */s/ Matthew J. Zevin*
MATTHEW J. ZEVIN