# Exhibit 1

2015 WL 1056178
Only the Westlaw citation is currently available.
United States District Court,
N.D. California,
San Jose Division.

I.B., by and through his guardian ad litem Glynnis Bohannon, et al., Plaintiffs,
v.
Facebook, Inc., Defendant.

Case No. 12–cv–01894–BLF | Signed March 10, 2015

**Attorneys and Law Firms**

John R. Parker, Jr., Curtis Brooks Cutter, Kershaw Cutter & Ratinoff, LLP, Sacramento, CA, Daniel B. Edelman, Katz, Marshall and Banks LLP, Washington, DC, Benjamin Gordon Edelman, Attorney of the Law, Brookline, MA, for Plaintiffs.

Whitty Somvichian, Benjamin Hansel Kleine, Kristine Anne Forderer, Michael G. Rhodes, Cooley LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

[Re: ECF 82]

BETH LABSON FREEMAN, United States District Judge

*1 As teenagers' use of online social media has become ubiquitous, juvenile behaviors that previously occurred offline have migrated onto the Internet. One such behavior—a minor spending a parent's money without permission—gives rise to this case.

Defendant Facebook, like many Internet companies, permits its users, including minors, to make purchases through its website. The named minor Plaintiffs in this case, I.B. and J.W., both spent a parent's money without permission over Facebook, in slightly different ways: I.B. asked his mother for $20 to make purchases in a game called "Ninja Saga," but then spent more than he was permitted; while J.W. took his parent's debit card without permission and began making purchases. As parents across the United States know all too well, such situations are not unique to purchases made over the Internet.

Now, these two minors seek to invoke the protections of century-old protections enshrined in California law, which recognize that minors will occasionally use their lack of judgment to enter into contractual relationships and later assert the right to walk away from the contract. The named Plaintiffs contend that Facebook's policy of representing that purchases made through its website are final, or otherwise non-refundable, violates Section 6701(c) of the California Family Code, which states that a contract is void if the minor "make[s] a contract relating to any personal property not in the immediate control of the minor." In the alternative, the named Plaintiffs contend that Facebook's policy violates Family Code Section 6710, which permits a minor to disaffirm *any* contract "before majority or within a reasonable time afterwards."

I.B. and J.W., each through a parent as guardian ad litem, presently move the Court to certify the following class and subclass under Federal Rule of Civil Procedure 23(b)(2):

> All Facebook users who are or were minor children according to Facebook's own records for the four years preceding the date on which the original complaint was filed through the date on which a class is certified ("the Minor Class"). Within the Minor Class is a subclass of Minors from whose Facebook accounts Facebook Credits were purchased. ("the Minor Purchasing Subclass").

Third Amended Complaint ("TAC") ¶ 36.

The parties appeared for oral argument on December 18, 2014. The Court then requested supplemental briefing on the question of whether it could certify a nationwide class of minors pursuant to the California Family Code, which the parties provided on January 9, 2015. Having reviewed the briefing and oral argument of the parties, and for the reasons outlined below, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for class certification.

## I. BACKGROUND

### A. Factual Background and Class Allegations

In October 2011, Plaintiff I.B., a minor, asked his mother Glynnis Bohannon for permission to spend $20 on his Facebook account to purchase Facebook Credits to use in a game called Ninja Saga.[1] I.B. gave his mother $20, and used her Wells Fargo MasterCard to purchase Facebook Credits. I.B. claims he was unaware that Facebook would store this credit card information, and thereafter continued to make in-game purchases in Ninja Saga. I.B. believed these purchases were being made with virtual currency, and that his mother's credit card was not being charged for these purchases. Glynnis Bohannon's card was ultimately charged several hundred dollars. Ms. Bohannon sought a refund from Facebook, but was not provided one until after this action was filed. *See* TAC ¶ 28; Second Amended Compl., ECF 18 at ¶ 28 ("Since being served with the initial complaint in this action, Facebook has apparently provided a 'courtesy' refund to Ms. Bohannon."). I.B. is a resident of Arizona. TAC ¶ 8.

**\*2** In December 2011, Plaintiff J.W., a minor, took his parents' debit card without their permission and began to make a series of charges on Facebook through the use of Facebook Credits. These charges totaled over $1,000. Unlike I.B., J.W. did not have his parents' initial permission to make charges on Facebook. Upon learning of J.W.'s actions, his father, Steven Wright, contacted Facebook to dispute the charges and request a refund. In this interaction with Facebook, Mr. Wright stated that neither he nor his wife had authorized the use of their debit card. Facebook provided Mr. Wright with a partial refund of $59.90, despite a Facebook representative telling him that he had "refunded the charges to your funding instrument." TAC ¶ 33. At the time the TAC was filed, the Wrights had not been refunded the remaining $999.30 spent by J.W. without their permission. *See* TAC ¶¶ 31–33. J.W. is a resident of California. TAC ¶ 9.

Both Plaintiffs contend that Facebook misinforms its users, including minors, that "all sales are final." TAC ¶ 4; *see also* Parker Decl. Exh. B. at 1 (stating under "Payment Terms," revised on June 3, 2009, that "[p]urchases of credits are non-refundable"); Parker Decl. Exh. D at 32:4–16 (testimony by Bill Richardson stating that, as of 2012, Facebook's refund policies for individuals between 13 and 17 were the same as its policies for adults, but that policies for minors under 13 were different). Plaintiffs contend that under its policies, Facebook "routinely refuses requests by children and their parents and legal guardians to provide refunds for transactions that are subject to disaffirmance under California law." TAC ¶ 16.

Plaintiffs seek declaratory relief under 28 U.S.C. § 2201, requesting a determination by the Court that purchases made by minors through their Facebook accounts are void or voidable. *See* TAC ¶ 68. Plaintiffs also seek individualized restitution. *See* TAC at p. 20.

### B. Procedural Background

Plaintiffs first filed this putative class action on April 17, 2012. The case has been subject to several rounds of motions to dismiss. Prior orders by Judge Claudia Wilken, to whom this case was assigned prior to being reassigned to the undersigned, eliminated a number of claims that the Plaintiffs sought to assert—notably, dismissing all claims by the parents of the minor children, and dismissing all of the minor children's claims except those brought pursuant to Family Code Sections 6701(c) and 6710. *See* ECF 44, 58. Defendant ultimately answered Plaintiffs' TAC on January 20, 2014. *See* ECF 62. This motion for class certification followed.[2]

### II. LEGAL STANDARD

Recognizing that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,"Federal Rule of Civil Procedure 23 demands that two requirements be met before a court certifies a class. *Comcast Corp. v. Behrend,* ––– U.S. ––––, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013).

**\*3** A party must first meet the requirements of Rule 23(a), which demands that the party "prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." *Behrend,* at 1432. If a party meets Rule 23(a)'s requirements, the proposed class must also satisfy at least one of the requirements of Rule 23(b). Here, Plaintiffs invoke Rule 23(b)(2), which demands that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The party seeking class certification bears the burden of showing affirmative compliance with Rule 23. *See, e.g., Wal–Mart Stores, Inc. v. Dukes,* ––– U.S. ––––, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). A court's analysis of class

certification "may entail some overlap with the merits of the plaintiff's underlying claim[s],"*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* ——U.S. ——, 133 S.Ct. 1184, 1194, 185 L.Ed.2d 308 (2013), though the merits can be considered only to the extent they are "relevant to determining whether the Rule 23 prerequisites to class certification are satisfied." *Id.* at 1195. Within Rule 23's framework, the district court maintains broad discretion over whether to certify a class or subclass. *See, e.g.,Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1186 (9th Cir.2001).

### III. DISCUSSION

#### A. Preliminary Issues

Before reaching the question of whether a class should be certified under Rule 23, the Court is faced with three preliminary issues: (1) whether sections 6701(c) and 6710 of the California Family Code may be invoked by minors who reside outside of California; (2) whether the named Plaintiffs have standing to bring suit for injunctive relief; and (3) the extent to which Judge Wilken's orders on Defendant's two motions to dismiss limit the circumstances in which Plaintiffs can seek disaffirmance—Defendant contends the orders limit Plaintiffs to seek disaffirmance only where the minor purchaser used money outside of his or her control, while Plaintiffs contend that they may assert claims for disaffirmance of any purchase made by a minor over his or her Facebook account. The Court deals with each of these issues in turn.

#### 1. The Extraterritorial Applicability of Sections 6701 and 6710

At the class certification hearing, the Court raised the issue whether Sections 6701 and 6710 could be invoked by minors, including named Plaintiff I.B., who are not residents of California, and requested further briefing. *See* ECF 123 at 40.

In California, state statutes are presumed not to have extraterritorial effect. *See, e.g.,N. Alaska Salmon Co. v. Pillsbury,* 174 Cal. 1, 4–6, 162 P. 93 (1916). This presumption can be rebutted where "a contrary intent is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject-matter, or history." *Cotter v. Lyft,* ——F.Supp.3d ——, ——, 2014 WL 3884416, at *2 (N.D.Cal. Aug. 7, 2014) (citing *Pillsbury,* 174 Cal. 1, 4, 162 P. 93). A number of courts have confronted this extraterritoriality question in the context of the California Labor Code and the UCL, and have determined that laws passed to protect California workers do not apply to conduct that takes place outside of California. *See, e.g.,O'Connor v. Uber Techs.,* —— F.Supp.3d ——, ——, 2014 WL 4382880, at *11 (N.D.Cal. Sept. 4, 2014) (compiling cases).

In order to determine the applicability of Family Code sections 6701(c) and 6710, the Court must determine whether the parties anticipated application of California law, and whether the statutes were intended to protect transactions between out-of-state minors and a California corporation.

*4 Clearly, Facebook intended California law to control. Facebook's Statement of Rights and Responsibilities ("SRR"),[3] which must be accepted by all individuals prior to joining Facebook or making any purchases through Facebook, contains within it a choice of law clause which states that "[t]he laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions." TAC ¶ 51. The SRR thus contains a clear and unambiguous election of California law to govern the relationship, and disputes, between the parties. The question is thus whether California law contemplates the claimed protections extending to minors who live outside its borders, but who contract with a California company pursuant to an express choice of law provision that elects California law to govern disputes between the parties.

The history of the Family Code provisions at issue shows that the statutes have the dual purpose of protecting children and proscribing adult conduct when contracting with children. California has made certain contracts entered into by minors void or voidable since at least 1874, when Sections 33 and 34 of the California Civil Code were amended to state that:

> A minor cannot give a delegation of power, nor under the age of eighteen, make a contract relating to real property, or any interest therein, or relating to any personal property not in his immediate possession or control.
>
> ...
>
> A minor may make any other contract ... in the same manner as an adult, subject only to his power of disaffirmance.

*Hakes Inv. Co. v. Lyons,* 166 Cal. 557, 559, 137 P. 911 (1913). These two predecessor statutes are nearly identical in

language to Sections 6701(c) and 6710 of the Family Code, respectively.

California courts interpreting these statutes have stated, in broad terms, that they reflect both a strong public policy in favor of protecting minors, and, even more so, of discouraging adults from contracting with minors. *See, e.g.,Flittner v. Equitable Life Assur. Soc. of the United States,* 30 Cal.App. 209, 216, 157 P. 630 (1916) ("The law in its wisdom shields minors from their lack of judgment and experience.... This position may seem, under all the circumstances of the case, to be a hardship on the defendant, but 'the right of an infant to avoid his contracts is one conferred by law for his protection against his own improvidence and the designs of others.' "); *see alsoBurnand v. Irigoyen,* 30 Cal.2d 861, 866, 186 P.2d 417 (1947) ("One deals with infants at his peril.... *The policy of the law is to discourage adults from contracting with an infant* and they cannot complain if as a consequence of violating the rule they are injured by the exercise of the right of disaffirmance vested in the infant.") (emphasis added).

**\*5** It was Facebook that selected California law to apply to interactions between itself and its users, and thus it should come as no surprise that Facebook's own conduct would also be considered through the lens of California law. In this case, a valid choice of law provision exists in the SRR, which means that minors can invoke Sections 6701(c) and 6710 regardless of their own state of residence. Application of Facebook's SRR in such a manner is consistent with the purpose, dating to the 1870s, of California's laws regarding the power of minors to contract—laws that were designed as much to prevent California adults from contracting with minors as they were to protect minors who entered into contracts.

When parties enter into a valid choice of law provision,[4] California law "reflect[s] a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 464–65, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992). When the contracting parties elect a state's law to govern the contract, the Court must apply that law unless either:

> (a) [T]he chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental public policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and ... would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* (citing Restatement (Second) Conflicts of Laws § 187, subd. 2).

Here, California clearly has a substantial relationship to the transaction between the parties, as Defendant is located here. Further, though Defendant points in its supplemental briefing to several states that more strictly limit the manner in which minors can disaffirm contracts, including Minnesota and Arizona, it fails to articulate how application of California law would run contrary to those states' fundamental public policies, how any of those states have a materially greater interest than California in determination of this suit, or how those state laws would govern the dispute absent the parties' choice of California law. Thus, the Court concludes that Family Code sections 6701(c) and 6710 apply to all minors in the proposed class, not just those minors who reside in California.

### 2. Standing

Defendant argues that I.B. and J.W. lack standing to pursue claims for injunctive relief because both Plaintiffs have stated in interrogatory responses that they "do[ ] not intend to make any future purchases on Facebook before turning 18 years of age." Def.'s Opp. at 23 (citing Somvichian Decl. Exhs. F, J (responses to Def.'s Inter. No. 14)).

Plaintiffs seeking injunctive relief must show a "real and immediate threat of repeated injury ... [and] a sufficient likelihood that [they] will be wronged again in a similar way." *Ervine v. Desert View Reg'l Med. Cntr. Holdings, LLC,* 753 F.3d 862, 867–68 (9th Cir.2014). The named Plaintiffs state in evidence submitted with their Reply that they both would again make purchases through Facebook *if* Defendant's alleged unlawful practices are corrected through the relief sought. *See* Parker Supp. Decl. Exh. ZZ at ¶ 5 ("Once Facebook complies with the law, I intend to make further purchases through Facebook before I turn 18.... I answered [the deposition questions and interrogatories]

based on the assumption that the questions referred to making further purchases while Facebook is in violation of the law."); *see also id.* Exh. AAA at ¶ 5.[5] Though these new statements in Plaintiffs' Reply evidence could be construed as running counter to Plaintiffs' previous interrogatory responses, in which the named Plaintiffs stated that they did "not intend to make any future purchases on Facebook before" turning 18, *see* Somvichian Decl. Exhs. F, J, the named Plaintiffs' explanations are persuasive given the context of the interrogatory in question. Defendant's interrogatories to I.B. and J.W. both asked the following:

> *6 State whether (1) YOU intend to make any future purchases through the FACEBOOK website or on any FACEBOOK mobile application, prior to reaching the age of majority (18 years) and (2) whether YOU contend that any such future purchases would be void or voidable.

*Seeid.* Exh. F at 10; *see alsoid.* Exh. J at 9 (same question).

Because the second portion of this interrogatory asked I.B. and J.W. whether any purchase they made would be void or voidable, it is reasonable to believe their later testimony, which explains that they believed Defendant was asking them about purchases made under Facebook's *current* policy, which the named Plaintiffs are challenging as failing to recognize that such contracts are void or voidable.

Defendant relies in part on *Schulken v. Washington Mutual Bank,* in which the court found that the named plaintiffs lacked standing to bring suit regarding unfair lending policies on home equity lines of credit (or HELOCs) because the plaintiffs no longer had a HELOC with the bank being sued, Chase. *See* 2012 WL 28099, at *5 (N.D.Cal. Jan. 5, 2012). The court found unpersuasive the plaintiffs' argument that they "plan[ned] to return to Chase as HELOC customers" because "[t]he likelihood that [plaintiffs] will obtain another Chase HELOC is highly speculative at best." *See id.* Here, in contrast, the named Plaintiffs point to definitive testimony that they would attempt to make future purchases over Facebook if Facebook changed its policy. The named Plaintiffs have therefore shown a real threat of future injury, and therefore have standing to bring suit for injunctive relief. *See, e.g.,Ervine,* 753 F.3d at 867.

### 3. Claims Remaining Following Judge Wilken's Dismissal Orders

The parties dispute what claims have survived Judge Wilken's prior orders on the motions to dismiss, and whether the TAC and Plaintiffs' briefing permits Plaintiffs to assert certain claims. *See, e.g.,* ECF 123 at 34–36. Defendant contends that the only claims that have survived the motions to dismiss are circumstances where the minor used another person's money without the person's consent, and now seeks to void or disaffirm that contract. Plaintiffs insisted at oral argument, however, that they were seeking also to assert claims for disaffirmance when any minor made a purchase over his or her Facebook profile—even when the purchase was not made using another person's money without consent—and that such claims would fall within the Minor Purchasing Subclass. *Seeid.* at 35; *see also* Mot. at 17.[6]

*7 After reviewing Judge Wilken's dismissal orders, the Court finds that neither order expressly limits Plaintiffs' claims to those circumstances where the minor used parental funds without the parent's consent. Rather, the dismissal orders discussed the minors' legal right to "disaffirm their purchases of Facebook Credits." *See* ECF 44 at 23; *see alsoid.* at 39 (denying the first motion to dismiss with regard to "declaratory relief claims brought by the minor Plaintiffs to disaffirm their contracts pursuant to California Family Code section 6701(c) and 6710"). Plaintiffs may proceed on both claims.

Having made these initial determinations, the Court now turns to whether the named Plaintiffs can certify a nationwide class of minors to bring suit to void or disaffirm contracts pursuant to California Family Code Sections 6701(c) and 6710.

### B. Class Certification

Plaintiffs seek certification of the following class and subclass under Family Code Sections 6701(c) and 6710,[7] pursuant to Rule 23(b)(2):

> All Facebook users who are or were minor children according to Facebook's own records for the four years preceding the date on which the original complaint was filed through the date on which a class is certified ("the Minor Class"). Within the Minor

Class is a subclass of Minors from whose Facebook accounts Facebook Credits were purchased. ("the Minor Purchasing Subclass").

TAC ¶ 36. On behalf of the class, named Plaintiffs assert claims for injunctive and declaratory relief, as well as restitution for class members whose contracts are voided or disaffirmed. *See, e.g.*, Mot. at 17 ("Certification of Plaintiffs' claim for restitution is also appropriate under Rule 23(b)(2) because the amount to be paid for each class member is ascertainable formulaically without fact finding by the Court.").

Class certification requires the Court engage in a two-step analysis. Initially, four requirements of Rule 23(a) must be established: "(1) numerosity, (2) common questions of law or fact, (3) typicality, and (4) adequate representation." *DuFour v. Be LLC*, 291 F.R.D. 413, 417 (N.D.Cal.2013); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 974 (9th Cir.2011) (stating that a court must engage in a "rigorous analysis" in determining whether Rule 23(a)'s requirements have been met). After plaintiffs satisfy the four elements of Rule 23(a), they must also satisfy at least one of Rule 23(b)'s provisions. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir.2011); *see also Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 468 (N.D.Cal.2014) (stating that Rule 23(b)(2) must be "satisfied through evidentiary proof"). Here, Plaintiffs invoke Rule 23(b)(2), expressly stating in their motion for class certification and at oral argument that they were not seeking to certify a class pursuant to Rule 23(b)(3).[8] Thus, all of Plaintiffs claims, including their restitution claims, are analyzed under Rule 23(b)(2). In reviewing the motion, the Court is mindful that although claims for monetary damages may be certified under Rule 23(b)(2), such certification is proper only where the monetary relief is "incidental to the primary claim for injunctive relief." *Zinser*, 253 F.3d 1180, 1195; *see also Dukes*, 131 S.Ct. 2541, 2557 ("[We previously] expressed serious doubt about whether claims for monetary relief may be certified under [Rule 23(b)(2) ]. We now hold that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief.").

*8 Much of Defendant's opposition to class certification focuses on Plaintiffs' claims for restitution and monetary relief. *See* Def.'s Opp. at 8–21. Because the Court finds in Part III.B.2 below that Plaintiffs' restitution claims, which focus on class members being refunded the amount of money spent on any transaction voided or disaffirmed, *see, e.g.*, TAC at p. 20, are neither ascertainable formulaically nor incidental to the declaratory or injunctive relief sought, and thus cannot be certified under Rule 23(b)(2) after *Dukes*, the Court focuses its Rule 23(a) analysis on Plaintiffs' claims for injunctive and declaratory relief.

### 1. Rule 23(a)

#### a. Ascertainability/Definiteness

Though not one of the explicit requirements of Rule 23(a), courts recognize that "the class sought to be represented must be adequately defined and clearly ascertainable." *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D.Cal.2012) ("A class definition is sufficient if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member."). The class definition must be "clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss." *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089 (N.D.Cal.2011). Defendant contends that the class and subclass are both impermissibly overbroad because they "sweep into the litigation minors with no right of recovery under the Family Code."Def.'s Opp. at 15.

In determining whether a class definition is overbroad, the appropriate inquiry is whether the description of the class (or subclass) is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Vietnam Veterans*, 288 F.R.D. 192, 211 (N.D.Cal.2012) (citing *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998)). "When rejecting class certification based on overbreadth ... the problem lies in the court's ability to ascertain the class, not whether the putative class members have each been aggrieved." *Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698, at *5 (N.D.Cal. Aug. 30, 2007).

Here, both the class and subclass, as defined, are readily ascertainable by the Court: the first includes all minors who used Facebook during a certain time period, according to Facebook's own records; the second includes all minors during that same time period who purchased Facebook Credits through their accounts, again utilizing Facebook's records. Though Facebook claims that it cannot determine whether or not the minor had consent to make a given

purchase, *see* Def.'s Opp. at 13, it does not contend that it cannot ascertain, through its records, whether a purchase was made from the minor's account, or whether an account was registered to a minor at the time the purchase was made. As such, the class is not overbroad such that it is unascertainable.

### b. Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Courts have repeatedly held that classes comprised of "more than forty" members presumptively satisfy the numerosity requirement. *See, e.g.,DuFour v. Be LLC,* 291 F.R.D. 413, 417 (N.D.Cal.2013).

Here there can be no real dispute over Plaintiffs' satisfaction of the numerosity requirement, and Defendant does not challenge the purported class on numerosity grounds. Plaintiffs' class would include all Facebook users who are minors, according to Facebook's own records, which likely number in the millions. Further, Plaintiffs point to Defendant's discovery responses, which show that during one three-month period, from October 12, 2010 through January 12, 2011, over 87,400 minor users made purchases through the use of Facebook Credits, *see* Parker Decl. Exh. G at 2, making the proposed subclass similarly sufficiently numerous.

### c. Commonality

*9 Rule 23(a)(2) demands that "there are questions of law or fact common to the class." The Supreme Court has stated that the mere raising of common questions by plaintiffs is insufficient for purposes of class certification, and instead that the "common contention [ ] must be of such a nature that it is capable of classwide resolution." *Wal–Mart Stores, Inc. v. Dukes,* ——U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L.Rev. 97, 131–32 (2009) ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (emphasis in original)).

Defendant argues that Plaintiffs' proposed injunctive relief fails to address a common injury suffered by the class as a whole, *seeid.* at 23,[9] contending that the proposed injunctive relief is "aimed exclusively at users who are currently minors" and would be "pointless" for those class members who are now adults. *See* Def.'s Opp. at 24. It further claims the injunctive relief "does not even provide a broadly applicable benefit for class members who are still minors" because it would force Facebook to obtain informed consent from the parents of Facebook users who are minors. *See id.* These arguments are unpersuasive, for several reasons.

First, Plaintiffs' proposed injunctive relief would not necessarily benefit only minors. If certain contracts are found void under 6701(c), the contracts would be rendered a nullity regardless of whether the minor has since reached the age of majority. *See, e.g.,Burnand v. Irigoyen,* 30 Cal.2d 861, 865, 186 P.2d 417 (1947) ("A contract relating to ... personal property not in his immediate possession or control, entered into by a minor under 18 years is void and requires no act of disaffirmance."). Further, section 6710 permits disaffirmance by "the minor before majority *or within a reasonable time afterwards.*" Cal. Fam.Code § 6710 (emphasis added). This necessarily contemplates the ability to disaffirm contracts by individuals who have reached the age of majority, and Defendant makes no argument that certain members of the class will be *per se* precluded from seeking to disaffirm because too much time has elapsed since reaching majority that they failed to disaffirm within a reasonable time.

Additionally, Defendant misstates Plaintiffs' argument regarding obtaining informed consent by the purchaser. In their brief in support of class certification, Plaintiffs outline possible orders the Court could render that would provide relief to the class, *see* Mot. at 17–18, including "to allow a sale to a minor user only upon the manifestation of express and informed consent by the payment-vehicle owner." *Id.* at 17. Defendant claims that this would serve no purpose for those minors who "already comply with Facebook's terms by getting permission to use their parents' funds ... [or] who make purchases using their own funds." Def.'s Opp. at 24.

*10 But a case relied on by Defendant, *Cholakyan v. Mercedes–Benz, USA,* is instructive. In *Cholakyan,* plaintiffs sought to certify a class under Rule 23(b)(2) for violations of California's consumer protection statutes regarding purchases of defendant's vehicles. *See*281 F.R.D. 534, 558–60 (C.D.Cal.2012). The proposed class, however, included former owners and lessees of vehicles who could not benefit from the relief sought. The court therefore denied certification under Rule 23(b)(2), finding that "none of the

remedies Cholakyan seeks will result in classwide relief. Plaintiff cannot seek certification under Rule 23(b)(2) by combining an array of remedies, some of which will benefit only certain subsets of the class ...Rule 23(b)(2) demands that plaintiff seek 'an indivisible injunction benefiting all its members at once.' " *Id.* at 559.

Defendant extrapolates the court's holding in *Cholakyan* to the present case, where the class undoubtedly now includes some Facebook users who have reached the age of majority. But the injunctive and declaratory relief sought by Plaintiffs in this case—to conform Facebook's practices of transacting with minors to the relevant California laws—could still provide benefits to all class members, because the proposed class includes individuals who made purchases over Facebook while a minor, not just those who made purchases over Facebook and are still minors. See TAC ¶ 36. This is because such conformance would permit disaffirmance, or void the contracts, by individuals who are now minors *and* by individuals who were minors and now have reached majority. This is therefore not a case where the class definition expressly includes individuals who could undoubtedly receive no benefit from the relief sought.

Plaintiffs raise common questions which lend themselves to resolution through common answers, and the injunctive and declaratory relief sought by Plaintiffs could benefit the class as a whole, including those who have reached the age of majority but transacted with Facebook whilst minors. Plaintiffs have thus met the commonality requirement of Rule 23(a).

### d. Typicality

A class representative must have claims that are "typical of the claims" of the other members of the class, in order to ensure that "the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. Sw. v. Falcon,* 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (citing Rule 23(a)(3)). Typicality is "directed to ensuring that plaintiffs are proper parties to proceed with the suit." *Ries v. Arizona Beverages USA,* 287 F.R.D. 523, 539 (N.D.Cal.2012). The standard for determining typicality, however, is a permissive one, *seeid.* and asks only whether the claims of the class representatives are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998).

Defendant contends that the named Plaintiffs' demands conflict with the interests of the class because "they seek injunctive relief that many class members would undoubtedly find objectionable." Def.'s Opp. at 29. Defendant argues that I.B. and J.W. seek relief that would "demand that Facebook cease selling Facebook Credits or similar virtual currency to accounts that belong to minors." *Id.* (citing TAC at p. 20). Defendant points to an expert report by Adrian Crook, a "game design consultant" who has "produced and designed over three dozen products across a variety of platforms," Somvichian Decl. Exh. P at ¶ 4, which states that "millions of users, including minors, make in-app purchases to enhance their game play,"*id.* at ¶ 42, and thus that "many minors in the proposed class would likely object to the demand" that Facebook stop selling in-app purchases to accounts held by minors. *Id.* at ¶ 43.

**\*11** Plaintiffs argue in response that the goal of their proposed injunctive relief is for Defendant to amend its practices to conform to California law, and that Defendant wholly ignores the second part of the injunctive relief sought: "An injunction that either requires Facebook to either (sic) cease selling Facebook Credits or similar virtual currency to minors *or substantially change its practices regarding Facebook Credit Transactions with minors, and to otherwise conform its practices with California ... law.*" *See* Reply at 11 (citing TAC at p. 20) (emphasis in original). Plaintiffs contend that the crux of their suit is "focused on requiring a change in Facebook's practices" to conform their refund policy to California law, not ending sales to minors. *Id.* at 12.

The Court finds Plaintiffs' argument persuasive. I.B. and J.W. have stated that they intend to make future purchases if Facebook conforms its policy to the law—indicating that their desired outcome would be for Facebook to change its practices rather than cease engaging in transactions with minors. *See* Parker Supp. Decl. Exhs. ZZ at ¶ 5, AAA at ¶ 5. The named Plaintiffs contend that they are harmed by Defendant's refusal through its refund policy to recognize that contracts with minors are void or voidable under certain circumstances, harms that are typical to the class as a whole. In *Mayfield v. Dalton* and *Valley Drug Co. v. Geneva Pharmaceuticals,* both cited by Defendant, courts denied class certification on grounds of typicality because Plaintiffs sought to represent a class that included many members who approved of the conduct at issue and undoubtedly

wished it to continue. *See Mayfield v. Dalton,* 109 F.3d 1423, 1426–27 (9th Cir.1997); *Valley Drug Co. v. Geneva Pharmaceuticals,* 350 F.3d 1181, 1189–90 (11th Cir.2003). Here, in contrast, injunctive or declaratory relief that demands Facebook comply with the Family Code to permit minors to disaffirm their contracts would not adversely impact those minors who do not wish to disaffirm their contracts and are happy to continue engaging in monetary transactions through Facebook. Though this relief, as Plaintiffs argue, could render contracts void when a minor used money outside of his or her control, and though some minors undoubtedly may wish to continue making purchases through credit or debit cards they do not have permission to use, such a desire cannot prevent the named Plaintiffs from bringing suit to demand that Facebook's policies comply with the law.

The Court finds that I.B. and J.W.'s claims are reasonably co-extensive with the claims of the non-named class members, and that they have satisfied Rule 23(a)'s typicality requirement.

### e. Adequacy

The final requirement of Rule 23(a) is that the named Plaintiffs "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy inquiry requires the Court to make two determinations: (1) whether the named plaintiffs and class counsel have any conflicts of interest with other class members;[10] and (2) whether counsel and the class representatives will "vigorously prosecute the action on behalf of the class." *Ries,* 287 F.R.D. 523, 540 (citing *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir.2011)). The Court has an obligation to "ensure that the litigation is brought by a named Plaintiff who understands and controls the major decisions of the case." *Sanchez v. Wal–Mart Stores, Inc.,* 2009 WL 1514435, at *3 (E.D.Cal. May 28, 2009).

*12 Defendant calls into question the adequacy of both named Plaintiffs and their guardians ad litem, contending that they lack a basic understanding of the litigation that would permit them to exercise oversight over class counsel. *See* Def.'s Opp. at 27 ("Plaintiffs are ill-equipped to meet these fundamental obligations of class representatives, given their near total ignorance of the most basic aspects of the case.... Worse, Plaintiffs' parents—who bear legal responsibility as guardians ad litem to help Plaintiffs supervise this litigation —appear to know little more about this case than their children.").

"A party who is not familiar with the basic elements of its claim is not considered to be an adequate representative for the class because there is no sense that there is an actual party behind counsel's prosecution of the action." *Burkhalter Travel Agency v. MacFarms Int'l, Inc.,* 141 F.R.D. 144, 153 (N.D.Cal.1991). However, courts in this district have held that "[t]he threshold of knowledge required to qualify a class representative is low," *Moeller v. Taco Bell Corp.,* 220 F.R.D. 604, 611 (N.D.Cal.2004), and that "it is enough that the representative understand the gravamen of the claim." *Id.* (citing *In re Worlds of Wonder Securities Litig.,* 1990 WL 61951 at *3 (N.D.Cal. Mar. 23, 1990)). Here, the depositions of both I.B. and J.W. show that they are minors who have been kept abreast of the litigation by their parents and guardians ad litem, *see, e.g.,* Parker Supp. Decl. Exh. UU at 16:8– 17:3, and that they understand that the gravamen of the class action is to seek redress for minors who have made purchases over Facebook, *see, e.g.,* Parker Supp. Decl. Exh. VV at 72:17–73:23. This, coupled with the demonstrated knowledge of Glynnis Bohannon, I.B.'s guardian ad litem, and Steven Wright, J.W.'s guardian ad litem, of the nature of the litigation, is more than sufficient to show that the named Plaintiffs will be adequate representatives. *See* Parker Supp. Decl. Exh. WW at 99:4–109:25 (Steven Wright's deposition testimony, stating that he knows this is a class action, has discussed the claims of the class action with his son, and acknowledging that the role of the class representative is to "speak[ ] on behalf of others that are in a situation like ours"); *see also* Parker Supp. Decl. Exh. YY at 43:4–50:25 (Glynnis Bohannon's deposition testimony, stating that she discussed the action with her son, sought to bring an action on behalf of others who had similar experiences with Facebook, and knows that her son, as class representative, "would have to participate [in the litigation], see it through to the end, and look out for the group as a whole, not just individually").

The named Plaintiffs and their guardians ad litem therefore have the requisite knowledge of the case necessary to adequately serve as class representatives pursuant to Rule 23(a)(4), and have therefore made the necessary showing for all four elements of Rule 23(a).

### 2. Rule 23(b)(2)

Rule 23(b)(2) demands a court find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respective the class as a whole." Fed.R.Civ.P. 23(b)(2). Certification under Rule 23(b)(2) is appropriate where the "primary relief sought is declaratory or injunctive." *Ellis,* 657 F.3d 970, 986 (citing *Zinser v. Accufix Res. Inst., Inc.,* 253 F.3d 1180, 1195 (9th Cir.2001)). Certification under Rule 23(b)(2)"does not require [the Court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes,* 591 F.3d 1105, 1125 (9th Cir.2009) ("It is sufficient ... that class members complain of a pattern or practice that is generally applicable to the class as a whole.").

### a. *Injunctive and Declaratory Relief Claims*

*13 Plaintiffs' injunctive and declaratory relief claims readily meet the requirements of Rule 23(b)(2). Plaintiffs contend that Facebook has acted on grounds that apply generally to the class—refusing to refund purchases that are void or voidable under California law. They point to Facebook's Customer Assistance Policy ("CAP"), which includes no language setting forth a policy for refunding void or voidable purchases made by minors. *See, e.g.,* Parker Decl. Exh. E. Specifically, the CAP outlines a number of criteria for determining whether a refund would be issued, none of which includes the age of the purchaser, and which explicitly states that "refunds shall be issued on a case-by-case basis." *See id.* at FB–IB–99. Further, Defendant has testified that minors aged 13 to 17 were treated the same as adults for purposes of Facebook's refund policy in 2012. *See* Parker Decl. Exh. D at 32:4–33:14; *see also* Hearing Transcript, ECF 123 at 18.

Defendant claims that Plaintiffs cannot point to any minor who was misled or confused by the statement that "all sales are final," *see* Def.'s Opp. at 25, but this obscures the relevant inquiry: the minors' contention that they are prevented from exercising their rights under California law to void or disaffirm certain contracts, and that Facebook's refusal to act in conformance with this policy causes harm. That minors may not have been confused by the statement that "all sales are final" is irrelevant to the question of whether Facebook *acted* on grounds that apply to the class as a whole through a policy that issues refunds on a case-by-case basis and has not permitted minors to void or disaffirm certain contracts pursuant to the laws of California.

Finally, Defendant argues that Plaintiffs' injunctive and declaratory relief claims are actually disguised claims for monetary relief, and thus inappropriate for certification under Rule 23(b)(2). *See, e.g.,* Def.'s Opp. at 26. Facebook argues that it currently has policies and procedures for refunding "unauthorized purchases by minors," and that "[i]f Plaintiffs are demanding that Facebook apply a new policy that permits minors to receive a refund for all transactions in all circumstances—simply because they are minors—that purported 'injunctive' demand is simply a repackaging of Plaintiffs' monetary claims and cannot be certified under (b)(2)." *Id.* Defendant is incorrect. First, Plaintiffs have not requested that minors receive refunds for all transactions in all circumstances. *See generally* TAC. Second, Defendant's policy regarding "unauthorized" transactions does not solve the entirety of the purported problem outlined by Plaintiffs, as a policy that permits refunds of unauthorized purchases by minors does not address their disaffirmance claims for purchases made under Section 6710. Third, the fact that the injunctive or declaratory relief sought could result in Facebook crafting a new policy that permits minors to void or disaffirm certain contracts, a remedy that would likely result in refunds from Facebook to those minors, does not defeat certification of the injunctive or declaratory relief remedy. *Cf., e.g.,In re Flash Memory Antitrust Litig.,* 2011 WL 1301527, at *7 (N.D.Cal. Mar. 31, 2011) (denying certification under Rule 23(b)(2) because "[t]his is not a straightforward case in which a *single entity* overcharged for a particular product purchase *by a homogenous group of consumers* ") (emphasis added).

### b. *Restitution Claims*

In addition to declaratory and injunctive relief, Plaintiffs seek certification of claims for restitution, *see* TAC at p. 20, which would involve refunding the money spent by any class member who made a transaction over Facebook if that transaction was ultimately found to be void or voidable. Defendant contends throughout its briefing that Plaintiffs' restitution claims cannot be certified pursuant to Rule 23(b)(2) after the Supreme Court's decision in *Dukes,* which held that claims for monetary relief cannot be certified under Rule 23(b)(2) when "the monetary relief is not incidental to the injunctive or declaratory relief." *Dukes,* at 2557. In their Reply brief, Plaintiffs ask the Court to "certify the class for determination of liability ... and defer for later consideration whether restitution can be determined on a class-wide basis," contending that individualized determinations may not be

necessary for the restitution claims, and further arguing that a claims process or special master could be utilized to assess individual claims. *See* Reply at 15.

*14 The Court, however, agrees with Defendant that Plaintiffs' restitution claims cannot be certified pursuant to Rule 23(b)(2). First, Plaintiffs have not shown how the monetary relief sought would be incidental to the injunctive or declaratory relief. Myriad claims for restitution, even if the monetary amounts sought were relatively small, would overwhelm the claims for injunctive or declaratory relief. *SeeRies*, 287 F.R.D. at 541 ("[A]though the monetary amount sought may be small per class member, in the aggregate they can hardly be said to be incidental to the injunctive relief sought."). Second, the amount of monetary damages due each class member, if any, would be dependent on the individual circumstances of each class member, and thus cannot be determined formulaically. *Dukes* therefore precludes these restitution claims from being certified under (b)(2). *SeeDukes*, at 2557; *see alsoRies*, at 541–42,.

In *Ries*, the court contemplated a similar situation as the undersigned faces here: plaintiffs sought to certify a class for injunctive and declaratory relief, as well as restitution and monetary damages, in a consumer class action challenging the labeling of certain Arizona Beverages products as "All Natural." The court there held that though the monetary relief sought could not be certified under Rule 23(b)(2), the case "exemplifie[d] the kind of action the may be appropriate for certification under Rule 23(b)(2), at least insofar as plaintiffs request [ ] declaratory relief that the alleged practices are unlawful, and [ ] injunctive relief prohibiting defendants from continuing them." *Ries*, at 541,. The named Plaintiffs here seek similar remedies as did the plaintiffs in *Ries*:

declaratory relief that Facebook's practices are unlawful, an injunction requiring Facebook to change its practices regarding transactions with minors, and restitution. *See* TAC at p. 20. Like in *Ries*, this Court denies certification of Plaintiffs' restitution claims, but that denial does not preclude it from granting certification of Plaintiffs' injunctive and declaratory relief claims.

## IV. ORDER

For the foregoing reasons, the Court GRANTS Plaintiffs motion to certify the following class and subclass for claims for declaratory and injunctive relief under Rule 23(b)(2):

> All Facebook users who are or were minor children according to Facebook's own records for the four years preceding the date on which the original complaint was filed through the date on which a class is certified ("the Minor Class"). Within the Minor Class is a subclass of Minors from whose Facebook accounts Facebook Credits were purchased. ("the Minor Purchasing Subclass").

Plaintiffs' motion to certify this same class and subclass for restitution or other monetary relief under Rule 23(b)(2) is DENIED, without prejudice. Inasmuch as Plaintiffs seek to certify this class and subclass under Rule 23(b)(3), that motion is also DENIED, without prejudice.

**IT IS SO ORDERED.**

## Footnotes

1   Facebook Credits were developed by Facebook as a virtual currency payment system. A user who wanted to make a purchase within Facebook would buy Facebook Credits, which could then be redeemed for various items or applications on Facebook. In 2013, Facebook Credits were discontinued and replaced with a system called Facebook Payments.

2   Plaintiffs ask the Court to take judicial notice of three documents, *see* ECF 82-4:(1) an electronic brochure entitled Clawback Management Guidelines for Visa Merchants, taken from the website visa.com; (2) a complaint filed in the Western District of Washington in *FTC v. Amazon.com, Inc.*, 2:14–cv–01038; and (3) a Federal Trade Commission complaint filed in *In the Matter of Apple Inc., a Corporation*, No. C–4444. Defendant has not opposed Plaintiffs' request. The Court takes judicial notice of the Clawback Guidelines document because it is "factual information found on the world-wide web," the authenticity of which is not disputed by either party. *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir.2007). The Court takes judicial notice of the complaints in *Amazon* and *Apple* because both are court filings. *See, e.g.,Porter v. Ollison*, 620 F.3d 952, 955 n. 1 (9th Cir.2010). Though the Court takes judicial notice of these documents, it has not considered the information included in any of these three documents for the truth of the statements contained therein.

3   Defendant argues that Plaintiffs cannot rely on the choice of law clause in the SRR.

Facebook points to an argument Plaintiffs previously made before Judge Wilken regarding the second motion to dismiss. Plaintiffs wish to be able to pursue their claims for disaffirmance or voiding the contracts, but also want to continue to be able to use Facebook. Therefore, Plaintiffs argued that the SRR and the individual purchase transactions, such as I.B.'s purchase of credits in Ninja Saga, should be considered two separate transactions. *See* ECF 58 at 11. Defendant argues that Plaintiffs cannot now rely on the SRR's choice of law provision because they previously argued the transactions were distinct. *See* Def.'s Supp. Br., ECF 127 at 2–3.

This argument is unpersuasive, however. Plaintiffs essentially argue that a minor purchaser makes two agreements with Facebook: (1) signing the SRR, which acts as an umbrella agreement governing his or her relationship with Facebook, and (2) making a purchase over Facebook, where money is exchanged for a good or service. *Cf., e.g.,* Mot. at 4 (citing Parker Decl. Exh. D at 27:332:22). It is therefore not inconsistent to argue that the terms of the SRR *also* govern the subsequent purchase transactions, since the SRR governs all actions the minor takes while using Facebook.

4   Defendant's reliance on *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir.2012), is inapposite because the choice of law provision in the SRR is valid. *Mazza* states that, in the absence of a valid choice of law provision, California law cannot be used on a classwide basis if "the interests of other states are not found to outweigh California's interest in having its law applied." *Id.* at 590.

5   Defendant moves to strike these declarations, along with exhibits BBB and CCC to the Parker Supplemental Declaration, contending they are "new" evidence submitted with the Reply Brief. *See* ECF 117 (citing Civil L.R. 7-3(c)). Plaintiffs are correct, however, that the Court can consider the supplemental declaration provided in the Reply when the Defendant has been given the opportunity to respond to the new evidence. *See Armstrong v. Brown*, 857 F.Supp.2d 919, 931 (N.D.Cal.2012). Defendant had the opportunity to respond to this evidence at the motion hearing, *see* Hearing Transcript, ECF 123 at 33, and declined the Court's offer to further depose the two named Plaintiffs. As such, the Court DENIES Defendant's motion to strike.

6   As these purchases by their very nature would not implicate the use of money outside of the minor's control, they could only be brought pursuant to Section 6710 and cannot be asserted under Section 6701(c).

7   Defendant contended at the motion hearing that this Court would be the first to certify a class under either of these Family Code statutes. *See* Hearing Transcript, ECF 123 at 30. This is not, however, a persuasive reason to deny certifying a class seeking redress under these statutes when the requirements of Rule 23 have otherwise been met.

8   At oral argument, Plaintiffs' counsel seemingly disavowed any claims under Rule 23(b)(3), which permits certification only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," stating in response to a question posed by the Court that "we are seeking 23(b)(2) certification and we are not seeking damages at this point." ECF 123 at 6:22–24.

Defendant contends that Plaintiffs' claims for classwide restitution must satisfy Rule 23(b)(3)'s requirements, and argues that Plaintiffs cannot do so because a class action would not serve as a "superior method of adjudicating" the claims of the individual members. See Def.'s Opp. at 21–22. Defendant is correct that Plaintiffs have made no effort to satisfy the requirements of Rule 23(b)(3), including predominance and superiority. *See, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). As discussed below, the Court finds that absent a showing under Rule 23(b)(3), Plaintiffs' restitution claims are not amenable to class certification.

9   Defendant also argues that Plaintiffs cannot show commonality because Plaintiffs' restitution claims would require the Court to make "individualized assessments of the equitable circumstances relevant to each transaction" in order to determine both whether an individual is entitled to monetary relief and the amount of monetary relief to which he or she is entitled. Def.'s Opp. at 15–16. Because the Court finds below that Plaintiffs' restitution claims cannot be certified as a class pursuant to Rule 23(b)(2), this argument is not relevant to the question of commonality regarding whether injunctive or declaratory relief is appropriate to the class as a whole. The Court must determine whether certain contracts between minors and Facebook are void or voidable under the relevant Family Code sections. This does not require the Court to make equitable determinations about individual transactions.

10   Defendant's argument regarding the conflict between the named Plaintiffs' proposed injunctive relief and the desires of the non-named class members was framed as one of both typicality and adequacy. *See* Def.'s Opp. at 29 ("Plaintiffs are inadequate and atypical because they seek injunctive relief that many class members would undoubtedly find objectionable."). The Court finds, for the same reasons articulated above, that the relief sought by the named Plaintiffs does not conflict with the interests of other class members, because, for example, an injunction that demands Facebook's compliance with the Family Code would *permit* minors to disaffirm certain contracts with Facebook, but would not demand they do so. *See* Cal. Fam.Code § 6710.

---

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.