**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CYNTHIA E. SPANN, on behalf of herself and others similarly situated, | Case No. SA CV 12-0215 FMO (RNBx) |
| Plaintiffs, | |
| v. | **ORDER RE: MOTION FOR SUMMARY JUDGMENT** |
| J.C. PENNEY CORPORATION, a Delaware Corporation, et al., | |
| Defendants. | |

Having reviewed and considered all the briefing[1] filed with respect to J.C. Penney Corporation, Inc.'s ("defendant" or "JCPenney") Renewed Motion for Summary Judgment ("Motion"), the court concludes that oral argument is not necessary to resolve the motion. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## INTRODUCTION

Plaintiff initiated this action on February 8, 2012, by filing a complaint in this court against JCPenney for violations of California's: (1) Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200 et seq.; (2) False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; and

---

[1] The parties raised arguments relevant to the court's ruling on this Motion in their briefing (including supplemental memoranda) regarding plaintiff's Renewed Motion for Class Certification, which the court has also taken into consideration.

1   (3) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq. (See Complaint

2   at ¶¶ 46-81). Plaintiff has since filed a Fourth Amended Complaint ("4AC"), alleging violations of

3   the same statutes. (See 4AC at ¶¶ 56-90). Plaintiff seeks "restitution and other equitable

4   remedies, including an injunction[,]" under the UCL and FAL, and "restitution, damages, and an

5   injunction" under the CLRA.[2] (See id. at ¶ 17).

6        Defendant asserts that even if plaintiff can establish liability under the UCL, FAL, and

7   CLRA, "she cannot establish a necessary element of each of her claims – entitlement to a

8   remedy." (See Joint Briefing Re: JCPenney's Renewed Motion for Summary Judgment ("Joint

9   Brief") at 1). Defendant argues that plaintiff is entitled neither to the restitution nor the injunctive

10  relief she requests in her 4AC. (See id.).

11                                **STATEMENT OF FACTS**[3]

12       The court finds the following facts to be undisputed and/or to contain disputes that are not

13  material.[4]

14       On March 5, 2011, plaintiff visited a JCPenney Store in Brea, California. (See Joint

15  Evidentiary Appendix ("Joint App'x"), Exhibit ("Exh.") A-1 (Deposition of Cynthia Spann ("Spann

16  Depo.") at 10[5]). She walked around the store looking for a sale and shopped at the sales racks.

17  (See id. at 21-22). Based on the tags on top of the racks, (see id. at 23), she "thought [she] was

18  getting [items] that [were] on sale." (Id. at 26).

19       The receipt from plaintiff's purchases lists ten items, each of which has a price listed just

20  below the description of the item. (See Joint App'x, Exh. B-4) ("Receipt") at 354). Below that

21  _____

22   [2] Plaintiff also seeks an order certifying "that this action may be maintained as a class action,

23  that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class

     Counsel[.]" (See 4AC at 26, Prayer for Relief).

24

25   [3] Defendant's Motion is based solely on its argument that even if liability were established,

     plaintiff is not entitled to a remedy. (See Joint Brief at 1). Thus, to the extent possible, the court

26  will limit its discussion of the facts to issues relating to plaintiff's potential remedies.

27   [4] To the extent that the court relies on any objected-to evidence, the relevant evidentiary
     objections are overruled.

28

     [5] Page numbers refer to the stamped numbers on the lower right hand corner of the exhibits.

number is a line that reads, "Total Discounts," with a negative number, and below that, a "Discounted Price" (the price minus the "Total Discounts").  (See id.).  All of the items plaintiff purchased have a "Total Discounts" and "Discounted Price" listed.  (See id.).  The bottom of the receipt reads, "Your Total Savings Today: 135.10[.]"  (Id.).  Plaintiff's decision to purchase these items was based, at least in part, upon her understanding that they were on sale:

> Q    Okay.  And if there was – if you picked – if the shirt didn't say it was on sale, but it was 17.99 would you have brought [sic] it?
>
> A    No.
>
> Q    Why not?
>
> A    I would have waited for a sale.
>
> Q    Okay.  And you bought it because it said it was formerly $30 and now it's 17.99?
>
> A    That is correct. . . .
>
> Q    Did the size of the sale matter to you, the size of the discount?
>
> A    Yes.
>
> Q    Okay.  So at one point – at some point the discount would be high enough for you to say I'm getting a good deal and I want to buy it; correct?
>
> A    Correct.

(See Spann Depo. at 27-29).  Plaintiff alleges that the price comparisons for the items she purchased were false, in violation of the UCL, FAL, and CLRA.  (See 4AC at ¶¶ 56-90).

Plaintiff shopped at JCPenney again in the Spring of 2012 and purchased a necklace.  (See Spann Depo. at 11).  Plaintiff "would like to visit" defendant's stores again but does not "feel like [she] can trust [JCPenney.]"  (See Joint App'x, Exh. C (Declaration of Cynthia E. Spann in Opposition to J.C. Penney Corporation's Motion for Summary Judgment ("Spann Decl.")  at ¶ 3).  "If the Court issues an injunction ordering [JCPenney] to comply with California's comparative price advertising law, [she] would likely shop at [JCPenney] again in the near future."  (Id.).

/ / /

/ / /

**LEGAL STANDARD**

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict."  Id.

The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).  If the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  However, "[w]here the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010); see Celotex, 477 U.S. at 325, 106 S.Ct. at 2554 (clarifying that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.").

If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested.  Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Anderson, 477 U.S. at 256, 106 S.Ct. at 2514 (A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial.").[6]  A factual dispute is material only if it affects the outcome of the litigation

---

[6]    "In determining any motion for summary judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion."  Local Rule 56-3.

and requires a trial to resolve the parties' differing versions of the truth.  <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322, 106 S.Ct. at 2552; <u>see also</u> <u>Anderson</u>, 477 U.S. at 252, 106 S.Ct. at 2512 (parties bear the same substantive burden of proof as would apply at a trial on the merits).

In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party.  <u>Barlow v. Ground</u>, 943 F.2d 1132, 1134 (9th Cir. 1991), <u>cert. denied</u>, 505 U.S. 1206, 112 S.Ct. 2995 (1992).  However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit."  <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (more than a "metaphysical doubt" is required to establish a genuine issue of material fact).  "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252, 106 S.Ct. at 2512.  Moreover, it is not the court's task "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted).  Rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." <u>Id.</u> (internal quotation marks omitted).

With these standards in mind, the court turns to the arguments raised by defendant in its Motion.

## **DISCUSSION**

Defendant moves for summary judgment on several grounds.  First, defendant asserts that plaintiff cannot establish entitlement to restitution under the UCL and FAL, nor can she establish entitlement to restitution or restoration under the CLRA.  (<u>See</u> Joint Brief at 10).  In addition, defendant argues that plaintiff lacks standing to seek injunctive relief.  (<u>See</u> <u>id.</u> at 32).  As set forth below, defendant is not entitled to summary judgment on any of these grounds.

I.    RESTITUTION UNDER UCL, FAL, AND CLRA.

    A.    Plaintiff's Entitlement to Restitution.

    The UCL, FAL, and CLRA "authorize a trial court to grant restitution to private litigants asserting claims under those statutes[,]" and courts treat the restitution remedies provided under all three statutes similarly.  See Colgan v. Leatherman Tool Grp., Inc., 135 Cal.App.4th 663, 694-696 (2006).  Courts are specifically authorized to make "such orders or judgments . . . as may be necessary to restore any person . . . any money or property . . . which may have been acquired by means of such unfair competition."  Cal. Bus. & Prof. Code § 17203; see also id. at § 17535 (authorizing courts to make orders which "may be necessary to restore to any person in interest any money or property . . . which may have been acquired by means of any practice in this chapter declared to be unlawful.").  The California Supreme Court has given these provisions a broad, liberal reading.  See Fletcher v. Security Pac. Nat'l Bank, 23 Cal.3d 442, 449 (1979) (holding that the "general equitable principles underlying [these provisions] as well as [their] express language arm the trial court with the cleansing power to order restitution to effect complete justice."); Cortez v. Purolator Air Filtration Prods. Co., 23 Cal.4th 163, 179 (2000) (discussing the court's broad powers to fashion appropriate relief).

    The court's discretion is not entirely unbounded, however, because "restitution under [the UCL, FAL, and CLRA] must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence."  Colgan, 135 Cal.App.4th at 698.  Although the California Supreme Court's discussion of restitution in Fletcher is broadly framed, the Court did not suggest that "the statutory language requires no evidentiary showing as to the amount that should be returned to the victims. . . . That the trial court may have discretion as to whether to order restitution as a remedy does not mean that when it does, it may select an amount unsupported by evidence."  Id. (citation omitted) (emphasis in original).

    Here, defendant asserts that not only must the amount of restitution be measurable and supported by evidence, but the amount "must also account for any benefit the plaintiff received during the transaction."  (Joint Brief at 10).  In support of this assertion, defendant cites In re

6

1   Google Adwords Litigation, 2012 WL 28068, *15 (N.D. Cal.  2012), which states that "[s]ince the

2   purpose of restitution is to return class members to status quo, the amount of restitution due must

3   account for the benefits received[.]"[7]  The court declines to follow the reasoning in that case, first

4   because it is specifically limited to its "parties and facts," which are very different from those in this

5   case.  (See id.).  Second, the sentence upon which defendant relies does not contain a citation

6   to any authority.  (See, generally, id.).  Indeed, the sentence appears to be contrary to the weight

7   of California authority on the issue.

8          In any event, although California case law makes clear that repayment of the difference

9   between what the plaintiff paid and the value of what the plaintiff received can be a measure of

10  restitution, see, e.g., In re Vioxx Class Cases, 180 Cal.App.4th 116, 131 (2009), defendant has

11  not cited, nor has the court found, any authority indicating that is the only way restitution can be

12  calculated.  See Johns v. Bayer Corp., 2012 WL 1520030, *5 (S.D. Cal. 2012) (stating that neither

13  Vioxx, Cortez, "nor any other case . . . suggest[s] that the difference in price paid and value

14  received is the only proper measure of restitution.") (emphasis in original).  The state appellate

15  court suggested precisely the opposite in Colgan, when it stated that plaintiffs had not provided

16  enough evidence to support the court's calculation of restitution:

17              There was expert testimony that [the advertising methods at issue] have a

18              significant positive impact on consumers and that [defendant] realized a

19              substantial advantage by using a [false] representation; however, the expert

20

21          [7] Defendant also cites Cortez, 23 Cal.4th at 176 (see Joint Brief at 10), but the court is unable

22  to locate language that supports defendant's position on page 176 or otherwise.  Later in the Joint
    Brief, defendant quotes page 174, in which the California Supreme Court discusses the "return

23  of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received."
    (Joint Brief at 13).  However, the quoted sentence is irrelevant to restitution, as the court was

24  analyzing California Civil Code § 3343, see Cortez, 23 Cal.4th at 174, which limits damages in
    fraud actions, not the availability of equitable remedies.  See Cal. Civ. Code § 3343(b)(2).

25          Cortez generally discusses restitutionary disgorgement and finds that payment of wages
    unlawfully withheld from an employee is a proper method of restitution under the UCL.  23 Cal.4th

26  at 177.  Much of the reasoning in Cortez suggests that defendant's reading of restitution is too
    narrow.  See 23 Cal.4th at 176-78 (in prior cases, it has approved "the return of money acquired

27  from an individual to that individual[,] and that "a court of equity may exercise its full range of
    powers in order to accomplish complete justice between the parties, restoring if necessary the

28  status quo ante as nearly as may be achieved.") (internal quotation marks omitted).

7

did not attempt to quantify either the dollar value of the consumer impact or
the advantage realized by [defendant].  The record therefore contains no
evidence concerning the amount of restitution necessary to restore
purchasers to the status quo ante.

135 Cal.App.4th at 700 (internal quotation marks and emphasis omitted).  By stating that evidence
of either the dollar value of the consumer impact or the advantage realized by defendant could
have provided the foundation for an award of restitution, the court implicitly recognized that a
value-paid-minus-value-received approach is not the only one permitted.

Defendant also cites Day v. AT&T Corp., 63 Cal.App.4th 325, 339 (1998), for the
proposition that plaintiff must establish that she paid more than the value of what she received.
(See Joint Brief at 12).  Defendant's parenthetical cite quotes the following: "in the absence of a
measurable loss the [UCL] does not allow the imposition of a monetary sanction."  (See id.).
Defendant's reliance on this language is misleading; the complete sentence from which defendant
selected the quote reads: "[w]hile it may be that an order of restitution will also serve to deter
future improper conduct, in the absence of a measurable loss the section does not allow the
imposition of a monetary sanction merely to achieve this deterrent effect."  Day, 63 Cal.App.4th
at 339.  Day further states that in other cases, "the amount being restored has been objectively
measurable as that amount which the defendant would not have received but for the unfairly
competitive practice."  Id. (also stating that the UCL's definition of restitution "operates only to
return to a person those measurable amounts which are wrongfully taken by means of an unfair
business practice.") (emphasis in original)).  Thus, contrary to defendant's assertion, (see Joint
Brief at 12), the Day decision does not require a plaintiff to establish that she paid more than the
value of what she received.  The Day court's finding is simply that restitution must be based on
an amount that is measurable, not that restitution can only be based on the amount paid minus
the value received.  See 63 Cal.App.4th at 339.  Indeed, the Day court explicitly recognized that
in some cases, the amount the defendant received (if measurable) can provide a basis for a
restitution award.  See id.

1      In short, even if the court found that plaintiff had not presented evidence "that she paid

2   more than the items she received were worth," (see Joint Brief at 11), plaintiff would still be entitled

3   to present alternative methods – if measurable and supported by evidence – by which the court

4   could order restitution.  See Colgan, 135 Cal.App.4th at 698.

5         B.    Plaintiff's Proposed Measurements of Restitution.

6      Plaintiff proposes three alternatives for calculating restitution in this case: (1) "complete

7   restitution, measured by the full purchase price paid," (Joint Brief at 19); (2) "restitution based on

8   the false 'transaction value' promised by JCPenney," (id.); or (3) "restitution measured by the net

9   profits that JCPenney received from sales of its products based on deceptive price comparisons[.]"

10  (Id.).  Defendant argues that all three proposed methods fail as a matter of law.  (See id. at 12-16).

11        1.    **"Complete Restitution."**

12     Plaintiff argues that "[t]he most simple and straightforward method to award restitution in

13  this case would be for the Court to issue an order . . . requiring JCPenney to offer her . . . the

14  opportunity to rescind . . . her transaction[], return the products purchased, and obtain a full

15  refund."  (Joint Brief at 23-24).

16     Rescission with complete restitution can be an appropriate remedy under the laws at issue

17  in this case.  In one FAL case, the California Supreme Court held that given the circumstances,

18  "the opportunity to rescind [a] contract, return the products, and obtain a refund" would be an

19  "appropriate" remedy.  People v. Superior Court (Jayhill), 9 Cal.3d 283, 286 (1973).[8]  Further, the

20  California Supreme Court cited Jayhill with approval in Cortez.  See Cortez, 23 Cal.4th at 177

21  (stating that the court has equitable power to approve "the return or money acquired from an

22  individual to that individual[,]" as in Jayhill, where "the Attorney General sought an order that

23

24  _____

25      [8]  Although Jayhill was decided before Cal. Bus. & Prof. Code § 17535 was amended to
    provide that a court could order restitution, the court found that "[i]n the absence of [a restriction
26  on the court's ability to award restitution] a court of equity may exercise the full range of its
    inherent powers . . . to accomplish complete justice between the parties[.]" Jayhill, 9 Cal.3d at 286.
27  That the statutes now contain explicit language permitting orders of restitution, see Cal. Bus. &
    Prof. Code §§ 17203 & 17535, does not change the court's reasoning regarding the breadth of the
28  court's equitable powers.

1    customers who were victims of a fraudulent sales presentation be afforded the opportunity to

2    rescind an ensuing contract and obtain a refund.").

3    　　　　Defendant points to a more recent case decided by the California Court of Appeal, Nelson

4    v. Pearson Ford, 186 Cal.App.4th 983 (2010), to argue that "rescission is not an available remedy

5    in a UCL action[.]"  (See Joint Brief at 12).  However, assuming, arguendo, that the court is bound

6    by Nelson's interpretation,[9] see West v. American Telephone & Telegraph Co., 311 U.S. 223, 237,

7    61 S.Ct. 179, 183 (1940) (a federal court may disregard a state appellate court interpretation of

8    state law if it is "convinced by other persuasive data that the highest court of the court of the state

9    would decide otherwise."), Nelson does not support defendant's broad assertion.  In Nelson, the

10   defendant's unfair practice of adding an insurance premium to the price of purchased vehicles

11   increased the cost of cars sold by approximately $30.  See 186 Cal.App.4th at 1018.  The trial

12   court's restitution order, however, awarded the members of the class all the money they had paid

13   for their vehicles.  See id.  The Nelson court found that "[t]his is not appropriate restitutionary relief

14   under the UCL as it does not accomplish the statutory objective of restoring to the victims sums

15   acquired through [defendant's] unfair practices."  Id.

16   　　　　The Nelson court's finding that complete rescission was inappropriate in that case – where

17   the unfair practice resulted in an increased cost of $30 in the context of a much larger purchase

18   – does not mean that rescission is inappropriate in this case or other UCL cases.  As the Nelson

19   court itself notes, the statutory objective is to "restor[e] to the victims sums acquired through

20   [defendant's] unfair practices."  186 Cal.App.4th at 1018.  Here, plaintiff has presented evidence

21   that every dollar she spent was as a result of JCPenney's alleged false advertising, (see, e.g.,

22   Spann Depo. at 27-29; Receipt), and defendant cites no evidence to the contrary or any evidence

23   to demonstrate that a full refund would not be proper under the facts of this case.  (See, generally,

24   Joint Brief).

25

26   _____

27   　　[9]    As defendant points out, the Nelson court stated, "[w]e have found no authority supporting the remedy of rescission in a UCL action."  Nelson, 186 Cal.App.4th at 1018.  The court is

28   persuaded that Jayhill and Cortez do support such remedies in UCL actions, and because those are decisions of the California Supreme Court, the court applies those cases here.

2.     **"False Discount" or "Transaction Value."**

Plaintiff alternatively argues that the court could order "restitution to Plaintiff and the class in an amount that equals the transaction value or the difference between their expected and received value." (Joint Brief at 25) (internal quotation marks omitted).  Using this method, plaintiff would calculate the difference between the amount that plaintiff actually paid to defendant and the amount that plaintiff would have paid had defendant "advertised a truthful discount from the real 'regular' price as required by statute."[10]  (See id.).  Plaintiff asserts that a refund of the difference would be a refund of the "excess amount that [plaintiff] paid as a result of [defendant's] deceptive practice."  (See id. at 26).

Defendant argues that this method of restitution would require payment of the expected value of what defendant  purportedly promised, and that an expectation interest is not a valid interest for purposes of UCL restitution.  (See Joint Brief at 14).  The court finds this argument unpersuasive.

Defendant is correct that Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1149 (2003), states that an expectation interest is not a "vested interest" for purposes of UCL restitution.  In that case, however, plaintiff sought recovery of the commission it expected to receive if a certain contract was awarded.  See id. (stating that "plaintiff is not seeking the return of money or property that was once in its possession. . . .  Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff.").  Defendant's argument conflates plaintiff's method of measuring the amount of restitution owed – based on her expectation of a discount – with the wholly distinct nature of plaintiff's interest in the money she seeks to have restored.  Here, defendant accepted plaintiff's money in exchange for clothing items.  (See Receipt).  Thus,

---

[10] For example, if plaintiff purchased an item at a purported "sale" price of $39.99, which defendant stated had an "original" price of $60.00, defendant represented that plaintiff saved approximately 33% off the original price.  (See Joint Brief at 25-26).  Thirty-three percent (33%) would be the "transaction value."  (See id.).  If, in reality, the prevailing market price for the product at the time was only $39.99, then plaintiff could receive as restitution the transaction value that was promised, i.e., 33% off the prevailing market price of $39.99, or approximately $13.34.  (See id.).

1  plaintiff's interest in the money is not merely an expectation interest.  See, e.g., Shersher v.

2  Superior Court, 154 Cal.App.4th 1491, 1499 (2007) ("Here, plaintiff and the putative class

3  members clearly had an ownership interest in the restitutionary relief sought because they

4  purchased [defendant's] product.").

5      Defendant separately argues that this approach is "nonsensical[,]" asserting that it would

6  be illogical for a customer who buys a blouse for its original (pre-markdown) price of $40.00 to

7  suffer no injury, and yet if JCPenney discounts the blouse by 33%, customers who buy the blouse

8  at the lower price of $26.67 have been harmed.  (See Joint Brief at 14-15).  According to

9  defendant, the bigger the markdown and the lower the price, the more the plaintiff would receive

10  in restitution.  (See id. at 15).  It refers to this as "the more you save, the more you are harmed"

11  approach.  (Id.) (capitalization omitted).

12      Defendant's argument appears deliberately to ignore the crux of this case: plaintiff alleges

13  that defendant's discounts were false, and that customers did not actually save any money at all.

14  What plaintiff proposes, therefore, is "the more you think you save, the more you are harmed."

15  Or, as plaintiff puts it, "the bigger the lie, the more restitution JCPenney should owe."  (See id. at

16  28).  The amount plaintiff thought she was saving was a factor in her purchase decisions.  (See

17  Spann Depo. at 27-29).  Moreover, plaintiff's expert, Brian J. Bergmark ("Mr. Bergmark"), explains

18  that, for at least some of plaintiff's purchases, she paid more than the average price or the

19  prevailing market price for each item.[11]  (See Joint App'x, Exh. A-2 (Declaration of Brian J.

20  Bergmark in Support of Plaintiff's Motion for Class Certification ("Bergmark Decl.") at ¶¶ 15, 19 &

21  Exh. D).  Defendant's assertion that "Mr. Bergmark's analysis fails to account for coupons and

22  discretionary discounts, and is irrelevant[,]" (see Statement of Uncontroverted Facts at 32-34),

23  does nothing more than raise a number of material questions of fact, including:  whether plaintiff

24  paid more than the average price for each item;  whether plaintiff paid more than the prevailing

25  market price for each item;  at what point(s) should the item's prices be measured;  and whether

26  _____

27  [11] Defendant's Objection to Declaration of Brian J. Bergmark is overruled with respect to the instant Motion.  The court does not rely on the accuracy or methodology of Mr. Bergmark's analysis here and merely uses it as an example of some of the questions of fact that remain in this case.

28

1   those prices should take into account coupons and discretionary discounts.  In short, this method

2   of restitution does not fail as a matter of law.  Plaintiff is entitled to argue that payment of the

3   "transaction value," if measurable and supported by evidence, would restore sums acquired

4   through defendant's allegedly unfair pricing practices.

5            3.    **Defendant's Net Profits.**

6            Plaintiff's third alternative proposes ordering restitution based on the net profits defendant

7   obtained "through its deceptive price comparison scheme."  (See Joint Brief at 28-29).  Using this

8   methodology, the court would calculate defendant's "net profits (revenue minus cost) for each item

9   sold through its deceptive price comparison scheme and order [defendant] to restore such amount

10  to Plaintiff[.]"  (See id.).

11           Defendant asserts that a monetary award "must account for the benefits received[,]" and

12  if it does not, then it is not "restorative[,]" or restitutionary.  (See id. at 13) (internal quotation marks

13  omitted).   Therefore, it argues, this method is unavailable because courts do not "permit a

14  monetary award of disgorgement of profits or receipts that [i]s not restitutionary in nature."  (See

15  id. at 14) (quoting Colgan, 135 Cal.App.4th at 696-97).

16           Disgorgement takes two forms – restitutionary and non-restitutionary – the latter of which

17  is not available to plaintiff.[12]  See, e.g., Kraus v. Trinity Mgmt. Servs. Inc., 23 Cal.4th 116, 126-27

18  (2000) (stating that non-restitutionary disgorgement is not available under the UCL and FAL),

19  superseded on other grounds, as recognized in Arias v. Superior Court, 46 Cal.4th 969 (2009).

20  The California Supreme Court explained the distinction between the two concepts in Kraus:

21                [W]hen we refer to orders for restitution, we mean orders compelling a UCL

22                defendant to return money obtained through an unfair business practice to

23                those persons in interest from whom the property was taken. . . .  An order

24                that a defendant disgorge money obtained through an unfair business

25                practice may include a restitutionary element, but it is not so limited. . . .

26                [S]uch orders may compel a defendant to surrender all money obtained

27  _____

28           [12]  The court has already determined that failure to account for the benefit received does not necessarily render a monetary award non-restitutionary.  See supra at § I.A.

1    through an unfair business practice even though not all is to be restored to

2    the persons from whom it was obtained or those claiming under those

3    persons.  It has also been used to refer to surrender of all profits earned as

4    a result of an unfair business practice regardless of whether those profits

5    represent money taken directly from persons who were victims of the unfair

6    practice.

7   23 Cal.4th at 126-7.  The Kraus Court makes clear that the distinction between restitutionary and

8   non-restitutionary disgorgement turns on whether the money plaintiff seeks was obtained by the

9   defendant from the plaintiff in the first place.  If so, disgorgement is restitutionary.  See id.; see

10  also Park v. Cytodyne Technologies, Inc., 2003 WL 21283814, *23 (Cal. Super. Ct. 2003) ("In [the]

11  nonrestitutionary sense, disgorgement requires the surrender of all profits earned as a result of

12  an unlawful practice regardless of whether those profits represent money taken directly from

13  persons who were victims of the unfair practice.").

14        In cases of disgorgement, the "measure is based upon defendant's benefit and not plaintiff's

15  losses . . . [and] involve[s] a return of what defendant gained in the transaction."  Park, 2003 WL

16  2128314 at *24.  Here, plaintiff has presented evidence that this amount is measurable.  (See

17  Bergmark Decl. at ¶ 20) (Bergmark stating that he has examined the cost basis for the products

18  plaintiff purchased, and he can perform the necessary calculations for putative class members).

19  As a result, she is entitled to argue that this method would yield a proper measure of restitution

20  in this case.

21  II.   CLRA RESTORATION.

22        Plaintiff alleges that defendant violated the CLRA  by "[a]dvertising goods or services with

23  intent not to sell them as advertised," Cal. Civ. Code § 1770 (a)(9), and by "[m]aking false or

24  misleading statements of fact concerning reasons for, existence of, or amounts of price

25  reductions."  Id. at § 1770(a)(13); (see 4AC at ¶ 87).  These claims sound in fraud.[13]  See Kearns,

26

27        [13]   In California, the elements of fraud are "(a) misrepresentation (false representation,
concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to
28  induce reliance; (d) justifiable reliance; and (e) resulting damage."  Kearns v. Ford Motor Co., 567

567 F.3d at 1125 (finding that while fraud is not a necessary element under the CLRA, a plaintiff may allege that the defendant engaged in fraudulent conduct).  In fraud-based actions involving "the purchase, sale or exchange of property," California law states that a plaintiff is "entitled to recover the difference between the actual value of that with which [she] parted and the actual value of that which [she] received[.]"  Cal. Civ. Code §3343(a).  Defendant asserts that "[b]ecause there is no evidence of such damages in this case," it is entitled to summary judgment on plaintiff's claim for CLRA damages.  (See Joint Brief at 18).  Defendant's assertion is unpersuasive.[14]

There are material questions of fact with respect to this issue.  Plaintiff asserts that "[w]hen measured against all transactions during the class period, Plaintiff paid more than the average price, and more than the most prevalent price for the majority of products that she purchased."  (See Statement of Uncontroverted Facts at 32-33) (emphasis in original).  Defendant asserts in response that plaintiff's expert's "analysis fails to account for coupons and discretionary discounts[.]"  (See id.).  At the very least, because the "average price" and "most prevalent price" calculations yield different numbers, there is a material question of fact as to which of the two – or some other calculation altogether – is the "actual value" of those products.  See Cal. Civ. Code 3343(a).  Then, it can be determined whether plaintiff paid a greater amount, and whether she is entitled to damages based on the difference between the two.

III.   INJUNCTIVE RELIEF.

The UCL provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."  Cal. Bus. & Prof. Code § 17203.  An injunction is "the primary form of relief available . . . to protect consumers from

_____

F.3d 1120, 1126 (9th Cir. 2009) (internal quotation marks omitted).

[14]  Defendant's assertion that plaintiff's "transaction value" measure of restitution is barred by this provision, (see Joint Brief at 18), is also unpersuasive.  That measure was proposed as a method by which to calculate restitution under the UCL, FAL, and CLRA. (See id. at 25-27).  Plaintiff does not propose a "transaction value" measure for CLRA damages.  (See, e.g., Joint Brief at 23 ("Plaintiff has Proposed Three Viable and Alternative Methods for Calculating Restitution") (emphasis added)).  Further, subsection (b)(2) provides that the court shall not "[d]eny . . . any legal or equitable remedies to which [a plaintiff] may be entitled."  Cal. Civ. Code § 3343(b).

1   unfair business practices[.]" In re Tobacco II Cases, 46 Cal.4th 298, 319 (2009).  To have standing

2   to seek such relief, the "threatened injury must be certainly impending to constitute injury in fact,"

3   or there must be a "substantial risk" that the harm will occur.  See Clapper v.  Amnesty Int'l USA,

4   133 S.Ct.  1138, 1147 & 1150 n.  5 (2013); Bates v. United Parcel Service, Inc., 511 F.3d 974, 985

5   (9th Cir. 2007) (internal quotation marks omitted) ("The plaintiff must demonstrate that he has

6   suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient

7   likelihood that he will again be wronged in a similar way.").

8        Defendant claims that plaintiff does not have standing to seek injunctive relief because

9   there is no threat of future injury.  (See Joint Brief at 32-33).  Specifically, defendant asserts that

10  plaintiff "has not alleged or testified that she has concrete and specific plans to shop at JCPenney,

11  much less that she intends to do so in the near future[,]" and that "she still could not establish the

12  requisite threat of future injury because she undisputedly knows of JCPenney's allegedly

13  deceptive pricing."  (Id. at 33).  Defendant's assertions run counter to the Ninth Circuit's warning

14  that "[w]hen determining what constitutes the same type of relief or the same kind of injury, [courts]

15  must be careful not to employ too narrow or technical an approach . . . [and] must reject the

16  temptation to parse too finely[.]"  Armstrong v.  Davis, 275 F.3d 849, 867 (9th Cir.  2001), cert.

17  denied, 537 U.S. 812 (2002), abrogated on other grounds by Johnson v. California, 543 U.S. 499

18  125 S.Ct. 1141 (2005).

19       In Armstrong, a class of disabled prisoners and parolees obtained a system-wide injunction

20  affecting virtually every kind of parole-related hearing and every aspect of hearing operations,

21  including physical access to hearings, provision of accommodations and services, use of certain

22  forms and procedures, and other related matters.  See 275 F.3d at 857-59.  California challenged

23  the injunction's scope, arguing that the named plaintiffs lacked standing for each type of relief

24  sought.  Id.  at 867.  The Ninth Circuit rejected the State's argument.  See id.  It concluded that

25  "where the defendants have repeatedly engaged in the injurious acts in the past, there is a

26  sufficient possibility that they will engage in them in the near future to satisfy the 'realistic

27  repetition' requirement."  Id. at 861 (referring to City of Los Angeles v. Lyons, 461 U.S. 95, 111,

28  103 S.Ct. 1660 (1983) (holding that the plaintiff must demonstrate "that he is realistically

1  threatened by a repetition of the violation.") (emphasis in original in Armstrong)).  Accordingly,

2  "[w]hen a named plaintiff asserts injuries that have been inflicted upon a class of plaintiffs, [courts]

3  may consider those injuries in the context of the harm asserted by the class as a whole, to

4  determine whether a credible threat that the named plaintiff's injury will recur has been

5  established." Id.

6       The same principles should govern here.[15]  All putative class members, including the

7  named plaintiff, allegedly suffered the same injury arising from these violations during the Class

8  Period: they paid a price for a good that was false and deceptive.  (See 4AC at ¶ 8).  Generally

9  speaking, all putative class members, including plaintiff, seek the same remedy – to undo the

10 injuries caused by defendant's alleged illegal pricing practices in ways that best suit each class

11 member's needs.  See Armstrong, 275 F.3d at 864 ("Class membership may also be relevant to

12 show an immediate likelihood of future injury.  Where a named plaintiff is a member of a plaintiff

13 class, and members of the class have repeatedly suffered personal injuries in the past that can

14 fairly be traced to the [defendant's] standard . . . practices, the defendant's treatment of the class

15 as a whole must be considered to determine whether the individual plaintiff ha[s] been and will

16 continue to be aggrieved by the defendants' [illegal] pattern of conduct.") (internal quotation marks

17 omitted; brackets in original).

18       Plaintiff and the purported class allege that they were deceived by defendant's in-store

19 pricing scheme for its private and exclusive branded apparel during the Class Period.  (See 4AC

20 at ¶ 5).  They also allege that the scheme temporarily stopped in or about February, 2012. (See

21 id. at ¶ 6).  However, this is not a case where the chain of events are too attenuated for the

22 threatened injury to be sufficiently likely or to present a substantial risk of its occurrence.  Cf.

23 _____

24    [15] Although defendant bases its Motion on standing for the named plaintiff only, (see Joint Brief
   at 1), issues of standing (for the named plaintiff and class members), class certification and the
25 propriety and scope of relief are often interrelated. "As a result, the district court's findings of facts
   and rulings of law with regard to one aspect of litigation will often buttress or make unnecessary
26 further findings or rulings on another issue."  Armstrong, 275 F.3d at 860; see also Gladstone
   Realtors v. Village of Bellwood, 441 U.S. 91, 115, 99 S.Ct. 1601, 1615-16 (1979) (defendant may
27 contest standing at trial); Truth v. Kent Sch. Dist., 542 F.3d 634, 642 (9th Cir. 2008), overruled on
   other grounds by LA Cnty v. Humphries, 131 S.Ct. 447 (2010) (finding a genuine issue of material
28 fact on standing issue).

Lyons, 461 U.S. at 108-109, 103 S.Ct. at 1668 (holding there was an insufficient showing that plaintiff would be harmed again).  Indeed, plaintiff has alleged that defendant has, since 2013, "experimented with a variety of pricing practices, including a return to false comparative price advertising."  (See 4AC at ¶ 7).  It is undisputed that defendant is "still formulating its official rules for its current comparative pricing strategy," but that in 2013 it "began the process of returning the majority of [its] business to a promotional model."  (See Statement of Uncontroverted Facts at 39-40).  Moreover, defendant has "restore[d] initial markups . . . to support the return to a promotional department strategy and that means initially marking up its goods to sufficient levels to protect margins when the discount or sale is applied."  (See id. at 41).

In addition, the evidence is disputed as to whether plaintiff plans to return to defendant's store.  (See Spann Depo. at 10-11; Spann Decl. at ¶ 3).  For example, plaintiff states that "if the Court issues an injunction . . . [she] would likely shop at [JCPenney] again in the near future." (Spann Decl. at ¶ 3).  While defendant offers one interpretation of the testimony (that she will not return unless the court issues an injunction), another interpretation is simply that an injunction might encourage plaintiff to return to the store sooner than she otherwise would.  This is further supported by the fact that plaintiff has returned to the store and purchased an item since she filed the instant lawsuit.  (See Spann Depo. at 10-11).

Further, the court is not persuaded by defendant's contention that even if plaintiff had concrete plans to return to JCPenney, "she still could not establish the requisite threat of future injury because she undisputedly knows of JCPenney's allegedly deceptive pricing."  (See Joint Brief at 33).  There is a split in the Ninth Circuit on this issue.  In some cases, courts have denied standing to seek an injunction for consumers who have been deceived by false advertising based on the notion that the consumer's knowledge makes it unlikely that they will be deceived again. See, e.g., Castagnola v. Hewlett-Packard Co., 2012 WL 2159385, *6 (N.D. Cal. 2012) (plaintiffs lacked standing because they "now have knowledge of the terms and conditions of the program."); Laster v. T-Mobile USA, Inc., 2009 WL 4842801, *3-4 (S.D. Cal. 2009) (plaintiffs lacked standing because they "now know Defendants will seek sales tax reimbursement on any bundled wireless

1  phone purchase . . . Plaintiffs' knowledge precludes them from showing likelihood of future

2  injury.").

3     In other cases, such as Henderson v. Gruma Corp., 2011 WL 1362188 (C.D. Cal. 2011),

4  courts have found standing because it would prevent federal courts from enjoining false

5  advertising under California's consumer protection laws:

6           If the Court were to construe Article III standing for FAL and UCL claims as

7           narrowly as the Defendant advocates, federal courts would be precluded

8           from enjoining false advertising under California consumer protection laws

9           because a plaintiff who had been injured would always be deemed to avoid

10          the cause of the injury thereafter ("once bitten, twice shy") and would never

11          have Article III standing. . . . While plaintiffs may not purchase the same

12          Gruma products as they purchased during the class period, because they are

13          now aware of the true content of the products, to prevent them from bringing

14          suit on behalf of a class in federal court would surely thwart the objective of

15          California's consumer protection laws.

16 Id. at *7-8.  Similarly, in Koehler v. Litehouse, Inc., 2012 WL 6217635 (N.D. Cal. 2012), the court

17 found that "[t]o do otherwise would eviscerate the intent of the California legislature in creating

18 consumer protection statutes because it would effectively bar any consumer who avoids the

19 offending product from seeking injunctive relief."[16] Id. at *6.  Indeed, some courts have been more

20 likely to find standing in cases where, as here, there is evidence that a plaintiff is still interested

21 in purchasing products despite knowledge of an alleged misrepresentation, as opposed to those

22 involving products that do not work.  See, e.g., Mason v. Nature's Innovation, Inc., 2013 WL

23 1969957, *4 (S.D. Cal. 2013) ("There are cases where a consumer would still be interested in

24 _____

25    [16]  Courts that follow this line of cases often point to Americans with Disabilities Act of 1990
   ("ADA"), 42 U.S.C. §§ 12101 et. seq., enforcement cases, which follow similar logic.  See, e.g.,
26 Fortyune v. American Multi-Cinema, Inc., 2002 WL 32985838, *7 (C.D. Cal. 2002) ("If this Court
   [does not find standing], like defendants would always be able to avoid enforcement of the ADA.
27 This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to
   evade the court's jurisdiction so long as he does not injure the same person twice.") (internal
28 quotation marks omitted).

1  purchasing the product if it were labeled properly . . . Indeed, in <u>Ries</u>, the plaintiffs stated that they

2  intended to purchase the [item] in the future.  In these types of cases that do not involve claims

3  that a product does not work or perform as advertised, injunctive relief may still be available.")

4  (citing <u>Ries v. Arizona Beverages USA LLC</u>, 287 F.R.D. 523, 533 (N.D. Cal. 2012)).

5  　　　The court finds the reasoning of <u>Henderson</u>, <u>Koehler</u>, and <u>Ries</u> to be more persuasive.  The

6  parties agree that the items plaintiff purchased were not deficient, and plaintiff has shopped at

7  JCPenney since she filed this lawsuit.  (<u>See</u> Spann Depo. at 10-11).  Her declaration makes clear

8  that she is interested in buying from the store again.  (<u>See</u> Spann Decl. at ¶ 410).  Further,

9  JCPenney acknowledges that its repeated adjustments to its pricing strategies may create

10  confusion among customers.  (<u>See</u> Joint App'x., Exh. B-2 at 344).  Plaintiff also alleges that

11  JCPenney briefly stopped, but has now returned, to its strategy of false comparative price

12  advertising.  (<u>See</u> 4AC at ¶ 8).  Whether the new practices are similar, or identical, to the policies

13  that allegedly harmed plaintiff during the Class Period involves disputed questions of fact, (<u>see</u>

14  Statement of Uncontroverted Facts at 39-41), and such facts may support a threat of harm for

15  which an injunction may be appropriate.  <u>See Ries</u>, 287 F.R.D. at 533 ("Should plaintiffs encounter

16  the denomination "All Natural" on an AriZona beverage . . . today, they could not rely on that

17  representation with any confidence.  This is the harm California's consumer protection statutes

18  are designed to redress.").

19  　　　　　　　　　　　　　　　　　**CONCLUSION**

20  　　　Based on the foregoing, IT IS ORDERED THAT defendant's Renewed Motion for Summary

21  Judgment **(Document No. 173)** is **denied**.

22  Dated this 23rd day of March, 2015.

23

24  　　　　　　　　　　　　　　　　　/s/

25  　　　　　　　　　　　　　　　Fernando M. Olguin
　　　　　　　　　　　　　　　United States District Judge

26

27

28