Steven F. Helfand, SBN 206667
HELFAND LAW OFFICES
910 West Avenue, Unit 438
Miami Beach, FL 33139

Telephone:    415.596.5611
Email:        sh4078@gmail.com

Attorneys for absent class member
Walter F. Ellingwood, III

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA E. SPANN, *et al.* <br><br> Plaintiff, <br><br> vs. <br><br> J.C. PENNY CORPORATION, INC. *et al.*, <br><br> Defendant. | Case No.: 12-CV-0215 FMO <br><br> **OBJECTION AND NOTICE OF INTENT TO APPEAR** |

Consideration of fee petitions submitted by counsel representing a plaintiff class requires the utmost judicial scrutiny and discretion. Here, class counsel seeks an excessive windfall to the detriment of the class. The requested multiplier is far too high. Not chagrined by such a large multiplier request, class counsel even exceeds the benchmark set by the Ninth Circuit. Careful scrutiny is required with regard to the fee petition. It is at this stage that counsel for the class is transformed from the champion of the class to a competing claimant against the fund intended to recompense the wrong suffered by the class. REPORT OF THE THIRD CIRCUIT TASK

FORCE, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 251 (Oct. 8, 1985) (hereinafter "*Task Force Report*").

In essence, the district court assumes the fiduciary role for the class that its counsel filed during the litigation, but vacated upon submission of the fee petition. *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977) ("*Grinnell II*"); *Task Force Report* at 255. Because objections by class members are rare and defendants, having made their contribution to the settlement, are uninterested in the distribution, the district court must act with moderation and a jealous regard for the rights of the class members in determining a reasonable attorney fee. *See, e.g., Rothfarb v. Hambrecht*, 649 F. Supp. 183, 237 (N.D. Cal. 1986) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) ("*Grinnell I*")); Deborah A. Klar, *Attorney's Fees in Securities Class Actions: Recent Developments Under the Common Fund Doctrine*, SECURITIES LITIGATION (1991); *Task Force Report* at 251; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1325 (C.D. Cal. 1977) (not only must the courts avoid awarding windfall fees, but they must avoid every appearance of having done so).

1. **The need to cross-check a contingent fee against counsel's lodestar is particularly important in a "mega-fund" case such as the one at bar.**

The fee sought by lead counsel far exceeds what is customarily awarded when applying the "percentage of fund" method in cases of this magnitude.

**2. It is not an abuse of discretion for this Court to apply the lodestar method simply because class counsel prefer that the Court follow the percentage of recovery approach.**

The only fee award that could be considered reasonable under the circumstances is one that compensates class counsel for work that benefited the class without negating such benefit in the process or creating a windfall for counsel. *Detroit v. Grinnell Corp*, 560 F.2d 1093, 1098 (2nd Cir. 1977) ("Courts and commentators have repeatedly warned that too little judicial regard for the interests of the benefited class can easily result in lesser recoveries for intended beneficiaries because of massive fees for enterprising attorneys."); *In re Superior Beverage/Glass Container*, 133 F.R.D. 119, 126 (N.D. Ill. 1990) (in no case should a fee award consume an untoward portion of the class recovery; what is left for the class after fees have been awarded is always of paramount consideration) ("*Superior Beverage*"); *see also Grunin v. Intl. House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) (the primary concern is to ensure that such awards reasonably compensate the attorneys for their services, and are not excessive, arbitrary or detrimental to the class).

**3. Even if the Court employs the percentage of recovery method to compute fees, it should cross check the reasonableness of such an award under the lodestar/multiplier method.**

To avoid a several million-dollar windfall to counsel and confirm the overall reasonableness of any percentage of recovery award, the court must necessarily employ the lodestar approach to determine attorney fees. Indeed, "District Courts often use the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result. *See, e.g., Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1301 (W.D. Wash. 2001). *See also Coordinated Pretrial,* 109 F.3d at 607; *Fischel v. Equitable Life Assurance Society*, 307 F.3d 997, 1007 (9th Cir. 2002). In order to ensure that all necessary data is before the court, attorneys are generally required to submit detailed affidavits which itemize and explain their fee claims. Also, many courts have required that an evidentiary hearing be held at which each claimant is subject to cross-examination. *Grunin v. Intl. House of Pancakes,* 513 F.2d 114, 127 (8th Cir. 1975). This Court should apply such scrutiny to this case in order to ensure that the compensation of damaged class members is not improperly reduced by an unreasonable windfall for class counsel. <u>Attorneys' fees are excessive</u> – Class counsel in this case anticipate applying for fees in the proximity of 30%. Attorneys fees in this type of case is not intended to

be a boon to class counsel. The class members are the ones who are to benefit from a class action.

Although courts generally apply a percentage method in class action settlements, many courts have suggested that the commonly-used 25% fee is only a "benchmark" for an award of fees in class action cases, since in some events such is not appropriate as it would amount to a windfall to counsel. Many courts have now become accustomed to using a sliding scale with the percentage decreasing as the magnitude of the fund increases.

The Manual of Complex Litigation, 3rd, speaks to this issue:

An award of attorneys' fees in a common fund case is committed to the sound discretion of the trial court, considering the unique factors in the case. The court awarding such a fee should articulate reasons for the selection of the given percentage sufficient to enable a reviewing court to determine whether the percentage selected is reasonable. The factors used in making the award will vary, but may include one or more of the following:

- the size of the fund created and the number of persons benefited;
- the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
- the skill and efficiency of the attorneys involved;
- the complexity and duration of the litigation;

- the risk of non-payment

- the amount of time devoted to the case by plaintiffs' counsel; and

- the awards in similar cases.

While the trend has been toward the percentage method, courts continue to award attorneys' fees in some common fund cases based on the lodestar or a combination of the two methods. **Use of the lodestar may be more appropriate than the percentage of the fund method where the fund is extraordinarily large.** As with percentage fees, an award of attorneys' fees under the lodestar method should fairly compensate the attorney for the reasonable value of the services beneficially rendered, based on the circumstances of the particular case, (emphasis added) Manual for Complex Litigation, 3rd, pp. 197-201, §24.121 & §24.122.

Thus, there is sound basis for awarding class counsels' fee based purely on counsels' lodestar. Regardless, should the Court be inclined to award fees based on the percentage approach, counsel should at the least be required to fully substantiate their fees by reference to the above factors listed in the Manual for Complex Litigation.

Also on point is *In re: NASDAQ Market – Makers Antitrust Litigation*, U.S.D.C., So. Dist. NY, 187 F.R.D. 465; 1998 U.S. Dist. LEXIS 17557; 1998-2 Trade Cas. (CCH) P72, 337 (Decided 11/9/98) – In this landmark case, U.S. District Judge Robert W. Sweet did an exhaustive analysis of attorneys' fees in

mega-fund cases. The Court reasoned that the beginning point in any class action settlement is assessing fees from a common fund is to determine the true value of the settlement, and then it stated, "25% . . . is not the benchmark for circumstances, the percentage will decrease as the size of the fund increases." *NASDAQ* at p. 21.

The *NASDAQ* Court went on to state, "where the fund is unusually large, some Courts have used a 'sliding scale, with the percentage decreasing as the magnitude of the fund increased . . . ' citing <u>Manual for Complex Litigation</u>, 3rd, §24.12 at 189, Fed. Jud. Ctr. (1995) (citations omitted); *See, e.g., Branch v. FDIC,* 1998 U.S. Dist. LEXIS 7815, 1998 WL 151249 (March 23, 1998) (applying 14% to \$22 million; 12% of the next \$10 million, and 5% over and above \$32 million)."

The *NASDAQ* Court continued, "this sliding scale is explained in part by economics of scale . . . it is generally not 150 times more difficult to prepare, try and settle a \$150 million case than it is to try a \$1 million case. As noted in *In re: First Fidelity Securities Litigation,* 750 F. Supp. 160 (D.N.J. 1990), 'there is considerable merit to reducing the percentage as the size of the fund increases. In many instances, the increase is merely a factor of the size of the class and has no direct relationship to the efforts of counsel, ' *Id.*, at 164 n.1."

This procedure was adopted in the Third Circuit in <u>*In re: Prudential Insurance Company America Sales Practice Litigation Agent Actions; et al.*</u> U.S. Ct. App., 3rd Cir., 148 F. 3d 283; 1998 U.S. App. LEXIS 17057; 41 Fed. R. Serv. 3d

(Callaghan) 596 (1998); Cert. Den. 1/1999, where the court, in a mega-fund case awarded a fee of 6.7%.

The fee request by class counsel in the present case represents an extraordinary windfall to class counsel. The Court is urged to scrutinize the fee application of class counsel and, applying sound judgment, disallow such a large fee award and instead carve out a substantial portion of the fee request and add it to the benefits accruing to the class.

Respectfully submitted:

June 30, 2016                                    /s/

                                    Steven Franklyn Helfand

3085300000000

# CLAIM FORM

## SECTION I- CONTACT INFORMATION

If you received a notice via email or postcard, please provide your Unique Customer ID found on the notice you received (if you did not receive such a notice, leave this blank):

Unique Customer ID: 30853

**Name:** WALTER     F     ELLINGWOOD, III
First Name     MI   Last Name

**Name at the time of your purchase(s):** SAME
First Name     MI   Last Name

9/0  West Ave, Unit 438
Street Address

Miami Beach     FL     33139  .
City     State   Zip Code     Zip4 (optional)

**Telephone Number:** ( 4/5 , 304 - 1895
(Primary)

**Email Address:** walter.ellingwood     @ gmail.com

## SECTION II: AWARD SELECTION

Please tell us whether you prefer to receive an electronic store credit or a cash payment. You may not request both. If you are requesting a cash payment, you must also provide the last four digits of your social security number. You can give your store credit to someone else but it cannot be resold.

☑ **Electronic Store credit**
☐ **Cash Payment**

Last Four Digits of your Social Security Number *(for cash payment only)*: X X X – X X-

## SECTION III: AFFIRMATION

I hereby affirm, under penalty of perjury, that the information I have provided in this Claim Form is true and correct to the best of my knowledge and this is the only JCPenney Claim Form that I have submitted. I further understand, acknowledge, and agree that I am eligible to receive only **ONE** payment from this Settlement based on all my purchases from JCPenney. I further understand, acknowledge, and agree that the amount I will receive shall be calculated according to the terms of the Settlement Agreement and subject to the terms of the Settlement Agreement, including the release of claims.

Date:   6 , 30 , 2016     Signature: X


