STANLEY LAW GROUP
MATTHEW J. ZEVIN, SBN: 170736
10021 Willow Creek Road, Suite 200
San Diego, CA 92131
Telephone: (619) 235-5306
Facsimile: (815) 377-8419
e-mail: mzevin@aol.com

THE EMGE FIRM, LLP
DEREK J. EMGE, SBN: 161105
501 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (619) 595-1400
Facsimile: (619) 595-1480
e-mail: derek@emgelawfirm.com

Attorneys for Plaintiff Cynthia E. Spann
and Class Counsel

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA E. SPANN, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC., a Delaware Corporation; and DOES 1 through 10, Inclusive,<br><br>Defendant. | Case No. SACV12 0215 FMO (KESx)<br><br>**CLASS ACTION**<br><br>**NOTICE OF RECEIPT OF OBJECTION**<br><br>JUDGE: Honorable Fernando M. Olguin<br>CTRM: 22 – 5th Floor<br>Date: August 25, 2016<br>Time: 10:00 a.m. |

462600.02-PALSR01A - MSW

TO THE COURT, THE PARTIES AND THEIR COUNSEL, please take notice that the Claims Administrator received an objection to the parties' Settlement in this matter from Jeanelle Branch, postmarked June 30, 2016, a true and correct copy of which is attached hereto as Exhibit "A."

DATED: July 22, 2016                    The Emge Firm, LLP

                                        By:  /s/ Derek J. Emge
                                             Derek J. Emge
                                             501 W. Broadway, Suite 1760
                                             San Diego, CA 92101

                                             Attorneys for Plaintiff Cynthia
                                             E. Spann and Class Counsel

# EXHIBIT A

30853 010641

Steven F. Helfand (SBN 206667)
Sh4078@gmail.com
HELFAND LAW OFFICES
1400 SW 137th Avenue, Unit F112
Hollywood, FL 33027
Phone: (415) 596-5611

Attorney for Objector Jeanelle Branch

# UNITED STATES DISTRICT COURT
# CENTRAL DISRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA E. SPANN, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 8:12-cv-00215-FMO-KES<br><br>OBJECTIONS OF JEANELLE BRANCH TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR |

## I. INTRODUCTION

Jeanelle Branch objects to the settlement, timely filed a request form and objection to the settlement and was provided the following ID number: 30853K0G97F7S. Ms. Branch resides in San Diego and can be reached through her attorney.

///

1

### A. Summary of the Settlement

The claims against JC Penney were initially made February 2, 2012 alleging various violations including unfair business practices, false advertisements, and violations of California Consumer Legal Remedies Act. JC Penney retains its own brand of in-store clothing and accessories. Plaintiff discovered that the value JC Penney assigned to their own brand was completely fabricated, had no correlation with prevailing market value, accordingly not representing the actual retail price. Plaintiff alleged that any sale prices or discounts stemming from the "original" retail price listed by JC Penney were false advertisements.

Pre-litigation retention of experts, four years of litigation, four attempts at certifying this case as a class action, four amended complaints, and two summary judgment motions with Plaintiff's class counsel claiming 6,654.27 hours of work, or 6.9 hours a day for four (4) years. A settlement was reached in September 10, 2015 for $50,000,000.00. In an unopposed Motion for Fees, Plaintiff's counsel is seeking $13.5 million equating to 27% of the total award.

The Settlement consists of cash reimbursements or store credit calculated from actual purchase values equating to points that will be divided by the total points of all Claimants and the percentage will determine the cash allocation or store credit.

Any checks to Claimants not cashed within 180 days from the date of issuance will be earmarked for a Cy Pres distribution to the National Consumer Law Center ("NCLC"), "or another Cy Pres recipient agreed to by the Parties and approved by the Court.

### B. The Standard for Approving a Proposed Class Action Settlement

In reviewing the settlement, the district court has the duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2)

2

Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions".... and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

The Court must be protective of unnamed Class Members. "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that "settlement is fair and not a product of collusion, and that the Class Members' interests were represented adequately."" *Grant*, citing *In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986). *See also Silber v. Mahon*, 957 F. 2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent Class Members.")

Courts also may refuse to approve a settlement if insufficient notice is provided to Class Members to protect their due process rights. Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all Class Members who would be bound by the proposal."

Recent Ninth Circuit case law has established certain additional guidelines for considering the fairness of class action settlements. In *In re Bluetooth Headset Products Liability Litig.*, 654 F. 3d 935 (2011), the court noted that "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Such agreements must withstand

3

an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.*, at 946, *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Circ. 1998), *et al.* The court observed, "Collusion may not always be evident on the face of the settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* (citations omitted) The court noted that the following may be signs of such impropriety," (2) "when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.*, at 947.

## II.   ARGUMENT AND OBJECTIONS

### A. THE SETTLEMENT CONSIDERATION IS ILLUSORY

#### 1. The Fee Request Must Be Scrutinized and Reduced.

Once Class Counsel seeks fees from a common fund, Class Counsel, "otherwise a fiduciary for the class,... become[s] a claimant against the fund created for the benefit of the class." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Circ. 1994) ("WPPSSS"). This places Class Counsel at odds with the rest of the Class Members, which has resulted in court stressing that in the fee-setting stage, "the court must assume the role of fiduciary for the class plaintiffs." *Id.*

When a common fund is created for the class, district courts in the Ninth Circuit have the discretion to use a lodestar method or the percentage of the fund approach. *In re Bluetooth headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Whichever option the court chooses, however, discretion must be used to arrive at a reasonable result. *Id.* Professional class counsel like to tout cases

4

referring to a "benchmark" of 25% is a reasonable starting place. See *In re Infospace Inc.*, 330 F. Supp. 2d 1203, 1210 (W.D. Wash. 2004)("There is nothing inherently reasonable about a 25 percent recovery, and the courts applying this method have failed to explain the basis for the idea that a benchmark fee of 25 percent is logical or reasonable."); ("WPPSSS 19 f.3D at 1291) ("[T]here is no necessary correlation between any particular percentage and a reasonable fee."). Nonetheless, it is a time honored notion that "a fee award should be assessed based on scrutiny of the unique circumstances of each case," and should be viewed with "a jealous regard to the rights of those who are interested in the fund." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53 (2d Cir. 2000).

The Court should find this questionable without supportive billing records reflecting how Class Counsel actually reached their lodestar calculation with a high multiplier of 3.25. Regardless of the lodestar, the fees actually being sought are still 27% of the total Settlement Fund seem excessive given this type of case. Additionally, problematic is the unopposed request by Defendants to Plaintiff's class counsel's fee request.

### 2. Unopposed Attorney's Fees are a warning sign of an unfair deal – a "clear sailing" agreement.

This type of '"clear sailing" agreement' is a red herring for an unfair deal. A clear sailing clause stipulates that attorney awards will not be contested by opposing parties *In re Bluetooth headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

"Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 518, 525; *Childs v. United Life Ins. Co.*, No. 10-cv-23-PJC, 2012 U.S. Dist. LEXIS 70113, at *13-*14

5

& n.6 (N.D. Okla. May 21, 2012). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger*, 925 F2d at 524; accord *Bluetooth*, 654 F.3d at 948. *Gooch v. Life Investors Ins. Co. of Am.* Found that a clear-sailing agreement that awarded class counsel disproportionate fees could be evidence of settlement unfairness. 672 F.3d 402, 425 (6th Cir. 2012) (finding potentially problematic clear-sailing clause acceptable because class counsel received only 2.3% of settlement value; reversing on other grounds). Here, the court has a heightened duty to scrutinize the request for attorney's fees.

It is hereby requested that the Court to consider requiring Class Counsel to produce accurate and detailed contemporaneous billing records for verification and comparison to the Declarations submitted in support of the Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards. It is also requested that the Court appoint an independent agency or person to review such records to verify the validity and analyze for a variety of claims including, but not limited to, duplication and miscalculation of the lodestar.

### B. CY PRES RECIPIENTS MUST HAVE A NEXUS TO THE CLASS AND BE CHOSEN AND DISCLOSED TO THE CLASS IN ADVANCE OF THE FINAL APPROVAL HEARING

The legal construct of *cy pres* (from the French "*cy pres* comme possible"—"as near as possible") has its origins in trust law as a vehicle to realize the intent of a settlor whose trust cannot be implemented according to its literal terms. It is the "next best" option, and should not be a substitute for the best option, compensating the class directly. The 2002 amendments to Calif. Code Civ. Proc. § 384 clarified the legislature's objectives regarding use of *cy pres*. The revised statute makes it more difficult for courts to approve using *cy pres* funds for general charitable contributions. C.C.P. § 384 suggests that *cy pres* distributions are appropriate for

6

*residual amounts* remaining from class action settlements *after* distributions to class members. C.C.P. § 384 (b) provides:

> Except as provided in subdivision (c), prior to the entry of any judgment in a class action established pursuant to Section 382, the court shall determine the total amount that will be payable to all class members – if all class members are paid the amount to which they are entitled pursuant to the judgment. The court shall also set a date when the parties shall report to the court the total amount that was actually paid to the class members. After the report is received, the court shall amend the judgment to direct the defendant to pay the sum of the unpaid residue, plus interest on that sum at the legal rate of interest from the date of entry of the initial judgment, to nonprofit organizations or foundations to support projects that will benefit the class or similarly situated persons, or that promote the law consistent with the objectives and purposes of the underlying cause of action, to child advocacy programs, or to nonprofit organizations providing civil legal services to the indigent. The court shall ensure that the distribution of any unpaid residual derived from multistate or national cases brought under California law shall provide substantial or commensurate benefit to California consumers. –

C.C.P. § 384 (b).

Assuming the designated *cy pres* beneficiary may be appropriate, that this *cy pres* distribution is being made in lieu of cash compensation to class members is inappropriate. *Cy pres* is improper when it is feasible to make further distributions to class members, particularly where there is no other compelling reason for preferring non-class members. This "last-resort rule" is a well-recognized principle of law. In 2010, the American Law Institute issued its final official Principles of the Law of Aggregate Litigation. Section 3.07(a) states: "If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement

7

CASE NO. 8:12-cv-00215-FMO-KES
OBJECTIONS OF JEANELLE BRANCH TO CLASS SETTLEMENT AND
NOTICE OF INTENT TO APPEAR

proceeds should be distributed directly to individual class members." Here the class members are known and easily identifiable, and they are being offered precious little in the way of real compensation. The *cy pres* provision is not aimed at solving a problem of settlement administration and is an affront to class members.

Furthermore, there must be a nexus between the *cy pres* award and the class. In *Kellogg*, the Ninth Circuit reversed an order granting approval to a class action settlement because the *cy pres* award was "divorced from the concerns" of the laws under which the lawsuit was brought." *See Dennis v. Kellogg*, 697 F.3d 858, 866 (9th Cir. 2012). The court held that, "[t]o avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there be a 'driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Id* at 865. A "driving nexus" requires that there actually be a connection between the *cy pres* recipient and the claims brought in the lawsuit. *See Nachshin*, 663 F.3d at 1036 ("Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statute, and the interests of the silent class members, including their geographic diversity.")

Here, the settlement terms designate uncashed checks from the settlement to be distributed to the National Consumer Law Center ("NCLC") or another recipient agreed to by the parties and approved by the Court. It is unclear whether or not the Parties approved of the NCLC in the first place. *Kellogg* solidifies the rule in the Ninth Circuit that a *cy pres* award "must qualify as the 'next best distribution' to giving funds directly to class members" to ensure the unclaimed funds are used to "serve the goals of the statute and protect the interests of the silent class members." *Id* at 865. Using this standard, choosing an appropriate *cy pres* beneficiary takes thought, planning and leaves room for debate.

///

8

This court should allocate unused funds to the members of the class over *cy pres* funds being distributed to NCLC or any other organization that brings no benefit to the class.

### III. JOINDER IN OTHER OBJECTIONS

Objector joins in, adopts and incorporates by reference as though fully stated herein each objection by other class members, which are not inconsistent with these objections.

### IV. CONCLUSION

For the foregoing reasons and all others to be presented at oral argument, this objector requests that the court sustain her objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

HELFAND LAW OFFICES

Dated: June 30, 2016

By: /s/ Steven F. Helfand
Steven F. Helfand
Attorney for Objector Jeanelle Branch

9

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2016, a copy of the foregoing was mailed via US Postal Service, First Class mail, postage prepaid, to:

JCPenney Settlement - Objections
c/o Heffler Claims Group
P.O. Box 0509
Philadelphia, PA 19105-0509

                              /s/ Steven F. Helfand
                              Steven F. Helfand
                              Attorney for Objector

