# EXHIBIT A



1   STANLEY LAW GROUP
2   MATTHEW J. ZEVIN, SBN: 170736
    10021 Willow Creek Rd. Suite 200
3   San Diego, CA 92131
    Telephone:   (619) 235-5306
4   Facsimile:   (815) 377-8419
    e-mail:mzevin@stanleylawgroup.com
5
6   THE EMGE FIRM, LLP
    DEREK J. EMGE, SBN: 161105
7   501 W. Broadway, Suite 1760
    San Diego, CA 92101
8   Telephone:   (619) 595-1400
    Facsimile:   (619) 595-1480
9   e-mail:       derek@emgelawfirm.com
10
    Attorneys for Plaintiff Cynthia E. Spann
11  and the Class
12
13            IN THE UNITED STATES DISTRICT COURT
14          CENTRAL DISTRICT OF CALIFORNIA
15  CYNTHIA E. SPANN, on Behalf of        Case No. SACV12 0215 FMO (KESx)
    Herself and All Others Similarly
16  Situated,                             **CLASS ACTION**
17                                        **SETTLEMENT AGREEMENT**
                     Plaintiff,
18
19  v.
20  J.C. PENNEY CORPORATION,
21  INC., a Delaware Corporation; and
    DOES 1 through 10, Inclusive,
22
23                   Defendant.
24
25
26
27
28

SMRH:473367441.2

# 1.    Preamble

1.1    This Settlement Agreement amends and supersedes the Memorandum of Settlement entered into on September 10 and 11, 2015, on behalf of the Named Plaintiff and Class Representative, the Settlement Class Members, and JCPenney Corporation, Inc. ("JCPenney" or "Defendant"), as further defined below.

# 2.    Definitions

2.1    The term "Agreement" as used herein means this Settlement Agreement.

2.2    The term "Attorneys' Fees and Costs" as used herein  means the attorneys' fees and costs to be requested by Class Counsel subject to Court approval in accordance with Section 6.1.1.1 of this Agreement

2.3    The term " Cash Component" as used herein means the portion of the Class Settlement Amount to be paid in cash in accordance with Section 6.1.1 of this Agreement

2.4    The term "Claim" as used herein means a Claim submitted by way of a Claim Form in accordance with this Agreement.

2.5    The term "Claim Form" as used herein means the Claim Form for the Settlement Class attached hereto as Exhibit "1" which is agreed to by the Parties subject to Court approval as the method by which a Class Member may submit a Claim. Only those Settlement Class Members who submit a Claim Form, in the manner set forth in this Agreement, shall be eligible to recover a share of the Settlement proceeds.

2.6    The term "Claimant" as used herein means any Settlement Class Member who submits a Claim Form.

2.7    The term "Claims Administrator" as used herein means Heffler Claims Group, or another entity subsequently selected, which, subject to Court approval, shall perform the duties of, among other things:  (i) providing Notice, Claim Forms and Opt-Out Request Forms to Settlement Class Members; (ii) publishing the

1  Publication Notice; (iii) providing notice as required by the Class Action Fairness

2  Act, 28 U.S.C. § 1715; (iv) tracking returned Claim Forms and Opt-Out Requests;

3  (v) notifying the Parties of determinations regarding submitted Claim Forms and

4  Opt-Out Requests consistent with this Agreement; (vi) distributing settlement

5  checks and Store Credits; and (vii) other notice and administration duties in

6  accordance with this Agreement and the District Court's orders.

7    2.8    The term "Class Allocation" as used herein means the amount in

8  addition to the Cash Component up to the Class Settlement Amount which

9  JCPenney agrees to pay in accordance with Section 6.1.2 of this Agreement.

10    2.9    The term "Class Counsel" as used herein means the following counsel

11  who have appeared on behalf of the Named Plaintiff and who have been appointed

12  by the Court as Class Counsel: Stanley Law Group and The Emge Firm, LLP.

13    2.10    The term "Class List" as used herein means the sales and transaction

14  data for all private and exclusive branded products of apparel or accessories

15  purchased at a discount of at least 30% by consumers in California during the

16  Settlement Class Period.

17    2.11    The term "Class Representative" as used herein means Cynthia E.

18  Spann, whom the District Court has appointed as Class Representative.

19    2.12    The term "Class Representative Enhancement Payment" as used herein

20  means the amount Class Counsel shall request be paid in accordance with Section

21  6.1.1.2 of this Agreement.

22    2.13    The term "Class Settlement Amount" as used herein means

23  $50,000,000 to be made available by JCPenney pursuant to this Settlement, which

24  represents JCPenney's total liability under this Agreement.

25    2.14    All dates for events provided herein based on a number of calendar

26  days (unless the date is expressed in terms of "business days") shall be calculated

27  using the same approach as calculating days under the Federal Rules of Civil

28  Procedure.

2.15   The term "District Court" as used herein means the United States District Court for the Central District of California and any appellate court which may review any orders related to this Settlement.

2.16   The term "Execution" as used herein refers to the signing of this Agreement by all signatories hereto.

2.17   The term "Final Judgment" as used herein refers to the Final Judgement and Order approving the Settlement and dismissing the Litigation with prejudice as against JCPenney, substantially in the form of the proposed Final Judgment attached hereto as Exhibit "5," which this Settlement contemplates will be entered and approved by the District Court.

2.18   The term "Litigation" means the underlying litigation between the Parties, *Spann v. J.C. Penney Corporation, Inc.*, Case No. SACV12-0215 FMO (KESx), pending in the District Court.

2.19   The term "Named Plaintiff" as used herein means the named plaintiff, Cynthia E. Spann.

2.20   The term "Notice" as used herein means a document substantially in the form of the Notice of Proposed Class Action Settlement Between Plaintiff and JCPenney attached hereto as Exhibit "2," which has been agreed to by the Parties subject to Court approval and which the Claims Administrator will send to each Settlement Class Member, or make available through the Settlement Website, explaining the terms of the Settlement and the Claims, Opt-Out, and objection processes.

2.21   The term "Notice and Administration Costs" as used herein means the costs to send Notice and administer the Settlement as contemplated by this Agreement.

2.22   The term "Parties" as used herein means the Named Plaintiff, the Settlement Class Members, and JCPenney.

2.23    The term "Post-Card Notice" as used herein means a Notice substantially in the form of the summary notice attached hereto as Exhibit "3," and which directs Settlement Class Members to the Settlement Website.

2.24    The term "Preliminary Approval," shall mean the Court's entry of an order pursuant to Rule 23e and the Court's Rules or Standings Orders.

2.25    The term "Publication Notice" as used herein means a summary Notice substantially in the form of the summary notice attached hereto as Exhibit 4 and which, subject to Court approval, shall be used for publication purposes.

2.26    The terms "Qualified Settlement Fund" or "QSF" as used herein means the Qualified Settlement Fund to be set up in accordance with Section 12 of this Agreement.

2.27    The term "Releasing Settlement Class Members" as used herein means the Named Plaintiff and all Settlement Class Members, other than those who submit Opt-Out Requests.

2.28    The term "Request to Opt Out" as used herein means the request for Opt Out to be sent by any Settlement Class Member not wishing to remain in the Settlement Class.

2.29    The term "Opt-Out Request Form" as used herein means a form that will be available for download on the Settlement Website which can be used by Settlement Class Members to Request to Opt Out.  Settlement Class Members are not required to use the Opt-Out Request Form in order to communicate their desire to opt out of the Settlement.

2.30    The term "Settlement" as used herein means the compromise and settlement of the Litigation as contemplated by this Agreement.

2.31    The term "Settlement Class" as used herein means all persons who, while in the State of California and between November 5, 2010 and January 31, 2012, and between January 1, 2013 through December 31, 2014, purchased from JCPenney one or more private or exclusive branded items of apparel or accessories

at a discount of at least 30% off of the stated "original" or "regular" price, and who have not received a full refund or credit for their purchases. Excluded from the Settlement Class are Defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of JCPenney.

2.32    The term "Settlement Class Member Released Claims" as used herein means the claims, rights, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, or liabilities that are released, acquitted and discharged pursuant to Section 13 of this Agreement.

2.33    The term "Settlement Class Members" as used herein means the Named Plaintiff and all members of the Settlement Class.

2.34    The term "Settlement Class Period" as used herein means the period of time from November 5, 2010 to January 31, 2012, and January 1, 2013 through December 31, 2014.

2.35    The term "Settlement Effective Date" as used herein means the first day following the last of the following occurrences:

2.35.1 The date the time to appeal or seek permission to appeal or seek other judicial review of the entry of the Final Judgment approving the Settlement and dismissing this Litigation with prejudice as to JCPenney has expired with no appeal or other judicial review having been taken or sought; or

2.35.2 If an appeal or other judicial review has been taken or sought, the latest of: (i) the date the Final Judgment is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review therefrom; or (ii) the date the appeal(s) or other judicial review therefrom are finally dismissed with no possibility of subsequent appeal or other judicial review; or (iii) if remanded to the District Court following an appeal or other review, the date the Final Judgment

is entered by the District Court after remand and the time to appeal or seek permission to appeal or seek other judicial review of the entry of that Final Judgment has expired with no further appeal or other judicial review having been taken or sought. If further appeal is sought after a remand, the time periods in this Sub-Section shall apply.

2.36    The term "Settlement Website" as used herein means an Internet website maintained by the Claims Administrator containing the Notice, Claim Form, Opt-Out Request Form, Settlement Class Member information about their individual allocation of the Settlement, instructions on how to submit a Claim Form and/or additional receipts providing evidence of additional qualifying purchases, and where Store Credits may be obtained.

2.37    The term "Store Credit" as used herein means an electronic Store Credit redeemable for purchases at any JCPenney store or www.jcpenney.com. Each Store Credit shall be fully transferable, stackable and may be used in connection with any promotional discount(s).  Store Credits have no expiration date and need not be used in full at any time.  They will maintain a running balance that is depleted based on use until the balance is zero, but are not redeemable for cash.

2.38    The term "Store Credit Amount" as used herein means the initial value of each electronic Store Credit, which shall be determined in accordance with Section 6.1.2.1.4 of this Agreement.

2.39    The term "Verified Claims" as used herein means those Claims which are approved by the Claims Administrator for payment after the deadline for audits allowable under Section 8.6 has expired, or, if an audit or objection is made, after all audits or objections have been resolved in accordance with Section 8.6 of this Agreement.

### 3.    RECITALS

3.1    On February 8, 2012, Plaintiff Cynthia Spann filed a class action complaint against JCPenney in the United States District Court for the Central District of California.

3.2    Plaintiff filed a first amended complaint on March 19, 2012, a second amended complaint on April 23, 2012, a third amended complaint on July 22, 2013, and a fourth amended complaint ("Complaint") on March 5, 2014.

3.3    Plaintiff's Complaint alleges that JCPenney engaged in a scheme of false price comparison advertising prior to February 2012 and then again starting in 2013 through 2014. Specifically, Plaintiff alleges that JCPenney advertised "sale" prices that were substantially lower than its advertised "regular" or "original" prices for its private and exclusive branded apparel and accessories, but used false regular and original prices at which it hardly, if ever, offered, sold or intended to sell its merchandise. Plaintiff's allegations included claims under California's (1) Unfair Competition Law, Cal. Bus. & Prof. Code §§17200 *et seq.*; (2) False Advertising Law, Cal. Bus. & Prof. Code §§17500 *et seq.*; and (3) Consumers Legal Remedies Act, Cal. Civ. Code §§1750 *et seq.* Plaintiff sued for restitution and injunctive relief.

3.4    On March 23, 2015, the Court entered an order in which it denied JCPenney's motion for summary judgment.

3.5    On May 18, 2015, the Court entered an order in which it certified the following class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All persons who, while in the State of California and between November 5, 2010 and January 31, 2012 purchased from JCPenney one or more private or exclusive branded items of apparel or accessories advertised at a discount of at least 30% off of the stated "original" or "regular" price, and who have not received a refund or credit for their purchases.

Excluded from the class are defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of JCPenney. Also excluded is any person who only received a discount of 30% or more as a result of using one or more coupons.

The Court also appointed Plaintiff as Class Representative and appointed The Stanley Law Group and The Emge Firm, LLP as Class Counsel.

3.6    Plaintiff and Class Counsel believe this Litigation is meritorious. They have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of JCPenney's price comparison advertising policies and practices, including, but not limited to; (i) researching the applicable law and the potential defenses; (ii) conducting numerous depositions in Washington D.C., Plano, Texas, Los Angeles and Palo Alto; (iii) reviewing and analyzing JCPenney's public filings and internal documents concerning its advertising, pricing and promotional practices, and reviewing and analyzing JCPenney's sales data for every private and exclusive branded product of apparel and accessory sold in California between November 5, 2010 and January 31, 2012; (iv) conducting in-store and online reviews to determine and document JCPenney's pricing practices throughout the Litigation; (v) hiring and consulting with experts; (vi) developing arguments for class certification; (vii) briefing numerous motions, including multiple motions to dismiss, three motions for class certification, two motions for summary judgment and various discovery related motions; (viii) obtaining class certification and defeating JCPenney's motion for summary judgment; (ix) attending four mediations; and (x) preparing for trial. Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members as well as future California consumers, in light of all

1  known facts and circumstances, including the risk of significant delay, the defenses

2  asserted by JCPenney, trial risk and appellate risk.

3       3.7    JCPenney denies liability and wrongdoing of any kind associated with

4  the claims alleged and contends that this Litigation is not appropriate for class

5  treatment.  JCPenney continues to assert that the Plaintiff will not be able to

6  establish any restitutionary remedy or injunctive relief at trial.  JCPenney continues

7  to assert that it has complied with all applicable provisions of California's price

8  comparison advertising laws.  JCPenney further states that despite its good faith

9  belief that it is not liable for any of the claims asserted, and despite its good faith

10  belief that certification was not appropriate, JCPenney will not oppose the District

11  Court's certification of the Settlement Class contemplated by this Agreement solely

12  for purposes of effectuating this Settlement.  JCPenney's agreement to certification

13  of the Settlement Class is without prejudice to JCPenney's rights to oppose

14  certification of a class or oppose any other claim in the Action, should the

15  Agreement not be approved or implemented for any reason.

16       3.8    In the event the Agreement is not approved or is otherwise terminated,

17  this Agreement shall be deemed null and void and be of no further force or effect

18  and may not be used by either Party for any purpose in this or any other Action.

19       3.9    The entry of Final Judgment in this Litigation shall dismiss with

20  prejudice all claims which were or which could have been alleged in the Litigation

21  by Settlement Class Members against JCPenney, with the exception of any claims

22  which might be retained by Settlement Class Members who exclude themselves

23  from the Settlement, if any.  The Parties agree to cooperate and take all steps

24  necessary and appropriate to obtain preliminary and final approval of this

25  Settlement, to effectuate its terms, and to dismiss this Litigation with prejudice.

26      **4.  CERTIFICATION OF THE SETTLEMENT CLASS**

27       4.1    The Parties and Class Counsel agree that, if approved, certification of

28  the Settlement Class is a conditional certification for settlement purposes only, and

if for any reason the District Court does not grant final approval of the Settlement, or if final approval is not granted following appeal of any order by the District Court, the certification of the Settlement Class shall be deemed null and void, and each Party shall retain all their respective rights as they existed prior to the execution of the Settlement Agreement, including maintenance of the original Class certified by the Court on May 18, 2015.

## 5.  SETTLEMENT CLASS

5.1     The Court has already certified a Class, but the Parties agree to request that the Court amend its certification order and certify for settlement purposes only the following Settlement Class:

5.1.1  All persons who, while in the State of California and between November 5, 2010 and January 31, 2012, and between January 1, 2013, and December 31, 2014, purchased from JCPenney one or more private or exclusive branded items of apparel or accessories advertised at a discount of at least 30% off the stated "original" or "regular" price, and who have not received a refund or credit for their purchase(s).

Excluded from the Settlement Class are defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of JCPenney.

5.2     The Settlement is conditioned on the Court certifying this Settlement Class.

5.3     JCPenney and Class Counsel may agree to request that the Court certify additional settlement subclasses as may be appropriate.

## 6.     TERMS OF SETTLEMENT

6.1     Subject to the other terms and conditions of this Agreement, and subject to Court approval, JCPenney agrees that the Class Settlement Amount shall be a fixed sum, not to exceed $50,000,000.00, to be composed of both a Cash Component and a Class Allocation as follows:

1          6.1.1  JCPenney agrees to pay a portion of the Class Settlement

2    Amount in cash. This cash payment, called the Cash Component, shall cover the

3    following:

4          6.1.1.1 <u>Reasonable Attorneys' Fees and Costs.</u> Class Counsel

5    shall apply to the Court for an award of reasonable Attorneys' Fees not to exceed

6    27% of the Class Settlement Amount and an award of their actual and reasonable

7    litigation expenses not to exceed $500,000.    JCPenney will not oppose an

8    application for a reasonable award of Attorneys' Fees and Costs sought in

9    accordance with this Agreement.  In the event that the Court does not approve the

10   Award of Attorneys' Fees and Costs requested by Class Counsel, or if the Court

11   awards Attorneys' Fees and Costs in an amount less than that requested by Class

12   Counsel, the amount that is not awarded will be available for distribution to the

13   Class and the Court's decision shall not affect the validity and enforceability of the

14   Settlement and shall not be a basis for anyone to seek to void the Settlement or for

15   rendering the entire Settlement null, void, or unenforceable.  Class Counsel retain

16   their right to appeal any decision by the Court regarding the Court's award of

17   Attorneys' Fees and Costs.

18         6.1.1.2 <u>Reasonable Class Representative Enhancement Payment.</u>

19   Class Counsel intends to seek $10,000.00 for the Class Representative.  JCPenney

20   will not oppose the application.  Any request made by Class Counsel in accordance

21   with this Section is without prejudice to the Class Representative's right to file a

22   Claim as a Settlement Class Member.  In the event that the Court does not approve

23   the Class Representative Enhancement Payment, or the Court awards an amount

24   that is less than sought, the amount that is not awarded will be available for

25   distribution to the Class and shall not affect the validity and enforceability of the

26   Settlement and shall not be a basis for anyone to seek to void the Settlement or for

27   rendering the entire Settlement null, void, or unenforceable.

28         6.1.1.3 The actual Notice and Administration Costs incurred in

accordance with this Agreement, in an amount not to exceed $2,667,000.

6.1.1.4 The payments identified in Sections 6.1.1.1- 6.1.1.3 of this Agreement shall be paid solely from the Cash Component of the Class Settlement Amount. Any portion of the Class Settlement Amount not used for the Cash Component shall comprise the Class Allocation.

6.1.2 Payments to Claimants shall be paid from the Class Allocation, which shall consist of the amount remaining after the aggregate amount required to be used for the Cash Component has been subtracted from the Class Settlement Amount. For example, if the amount used for the Cash Component equals Sixteen Million Dollars ($16,000,000), the Class Allocation will be Thirty Four Million Dollars ($34,000,000) or, alternatively, if the amount used for the Cash Component equals Ten Million Dollars ($10,000,000), the Class Allocation will be Forty Million Dollars ($40,000,000). The Class Allocation shall be payable by either a Store Credit or, at the Claimant's election, a cash payment of equal amount instead of a Store Credit to those Claimants who submit an approved Claim Form in accordance with Section 8. The value of each Store Credit or cash payment shall be determined in accordance with Section 6.1.2.1.

6.1.2.1 The Store Credit Amount or cash payment shall be determined as follows. Each Claimant will be assigned points (see Section 6.1.2.1.4) that will be divided by the total points of all Claimants who submit timely and valid Claim Forms. The quotient shall be the percentage of the Class Allocation which each such Claimant will receive.

6.1.2.1.1 Points will be determined by the purchase value, including tax, of all private and exclusive branded apparel and accessories purchased at a discount of at least 30% off the stated "original" or "regular" price by the Claimant during the Settlement Class Period. For purposes of determining the purchase value, all amounts shall be rounded up to whole dollars.

6.1.2.1.2 The sales and transaction data for all qualifying

1    purchases for all known and identifiable Settlement Class Members will be
2    supplied by JCPenney to the Claims Administrator who will determine the total
3    number of points per Claimant and who shall include on each known and
4    identifiable Settlement Class Member's on-line information, the date and purchase
5    amount of each transaction.

6           6.1.2.1.3  At their option, Claimants who believe that their
7    transaction data is missing, incomplete or inaccurate in any way may submit
8    receipts demonstrating qualifying purchases, which may increase their allocation
9    points.  The Claims Administrator will compare all SKU numbers submitted by
10   Claimants to determine whether or not they represent additional, qualified
11   purchases.

12          6.1.2.1.4  Claimants who certify under penalty of perjury
13   that they are members of the Settlement Class, but for which there is no information
14   in the sales and transaction data supplied by Defendant and no receipts from the
15   Claimant proving purchase, will receive one point.  Claimants with corresponding
16   sales and transaction data and/or receipts demonstrating total purchase amounts will
17   be assigned points as follows:

18              $1-100 = 2 points
19              $101-200 = 3 points
20              $201-300 = 4 points
21              $301-400 = 5 points
22              $401-500 = 6 points
23              $501-600 = 7 points
24              $601-700 = 8 points
25              $701-800 = 9 points
26              $801 + = 10 points

27          6.1.3  Claimants who select a Store Credit will be able to download the
28   Store Credit from the Settlement Website.  JCPenney will maintain appropriate

1   systems in order to track the available balance(s), if any, remaining on Store

2   Credits.

3         6.1.4 Claimants may elect to receive a cash payment instead of a Store

4   Credit. Cash payments shall be mailed to the Claimant at the address provided by

5   the Claimant in the Claim Form. The costs of mailing cash payments to Claimants

6   shall be part of the costs of Notice and Administration as set forth in this

7   Agreement, and shall be paid from the Cash Component. In the event such costs

8   become prohibitively expensive relative to the Class Allocation and would unduly

9   diminish the per Claimant recovery, the Parties agree to mediate with David

10  Rotman, at their own expense, to devise alternatives.

11        6.1.5 Each Claimant who receives any monies paid in accordance with

12  this Agreement is responsible for any taxes associated with the monies received by

13  that recipient. If required by applicable law, the QSF shall issue 1099s to Class

14  Counsel (for payments of Attorneys' Fees and Costs awarded by the District Court)

15  and to the Named Plaintiff for any Class Representative Enhancement Payment

16  authorized by the Court.

17        6.1.6 Cy Pres. To the extent that any settlement checks mailed to

18  Claimants are not cashed within one hundred eighty (180) days from the date of

19  issue, the amount represented by those uncashed checks shall be distributed to the

20  National Consumer Law Center ("NCLC"), or another Cy Pres recipient agreed to

21  by the Parties and approved by the Court.

22        6.1.7 <u>Injunctive Relief</u>. As a direct result of this Litigation, JCPenney

23  agrees that its advertising and pricing practices as of the date of this Settlement

24  Agreement, and continuing forward, will not violate Federal or California law,

25  including California's specific price-comparison advertising statutes. Specifically,

26  JCPenney agrees that any former price to which JCPenney refers in its price

27  comparison advertising will be the actual, bona fide price at which the item was

28  openly and actively offered for sale, for a reasonably substantial period of time, in

the recent, regular course of business, honestly and in good faith. As a further direct result of this Litigation, JCPenney shall implement a compliance program, which will consist of periodic (no less than once a year) monitoring, training and auditing to ensure compliance with California's price comparison laws.

## 7.    NOTICE TO THE CLASS

7.1 Given the expected size of the Settlement Class, the Parties agree that direct notice via email is the best practicable notice for those Settlement Class Members for which such information exists. Where only a mailing address is available for a Settlement Class Member, or for all Settlement Class Members whose E-Mailed Notice was not deliverable, a Post-Card Notice shall be mailed by first class mail. Recognizing that there are Settlement Class Members for whom neither e-mail nor mailing addresses are available, notice by print and internet publication as agreed to by the Parties and authorized by the Court will be used to supplement the E-Mailed and Post-Card Notices. Class Counsel agrees to use their best efforts to obtain Preliminary Approval of a notice plan to achieve the best practicable notice consistent with this section.

7.1.1 The E-Mailed Notice shall provide Settlement Class Members with an unique identification number that may be used on the Settlement Website to access their allocation points and submit additional receipts should they have any. The E-Mailed Notice shall also advise Settlement Class Members of the deadline for submitting Claim Forms, their right to opt out of the Settlement or to object to the Settlement, the process by which such opt-outs or objections must be made, and the date set by the District Court for a hearing on final approval of the Settlement. Subject to Court approval, the E-Mailed Notice shall be substantially in the form attached hereto as Exhibit 2.

7.1.2 In the event that e-mail notice is impossible, impractical, or otherwise not the best practicable notice, Post-Card Notice shall be utilized to direct Settlement Class Members to the Settlement Website where their unique

1    identification number will provide them access to their allocation points and direct

2    them on how to submit additional receipts should they have any. The Post-Card

3    Notice shall be substantially in the form attached hereto as Exhibit 3.

4         7.1.3 Because some of the sales data during the Settlement Class

5    Period do not have corresponding customer names or addresses, the Parties agree

6    that notice by publication would be the best practicable notice for the balance of the

7    Settlement Class. The Claims Administrator will utilize notice by publication in

8    addition to the E-Mailed Notice and Post-Card Notice. The Publication Notice

9    shall include instructions as to how to access the Settlement Website and how to

10   request a Claim Form and instructions on how to submit it. The Publication Notice

11   shall also advise Settlement Class Members of their right to opt out of the

12   Settlement or to object to the Settlement, the process and deadlines by which such

13   opt-outs or objection must be made and the date set by the District Court for a

14   hearing on final approval of the Settlement. Subject to Court approval, the

15   Publication Notice shall be substantially in the form attached hereto as Exhibit 4.

16        7.2   JCPenney will provide the Class List to the Claims Administrator in

17   sufficient time for Notice to go out. JCPenney and Plaintiff agree that all Class List

18   information shall be treated as confidential, and that the contents of the Class List

19   shall not be shared with third parties other than the Claims Administrator and that

20   the Claims Administrator shall be required to preserve the confidentially of the

21   Class List.

22        7.3 The E-Mailed Notice shall be sent to Settlement Class Members within

23   thirty (30) days following the District Court's Preliminary Approval of the

24   Settlement, provided that any challenges or other barriers to the use of E-Mailed

25   Notice have been resolved. The Post-Card Notice shall be sent to Settlement Class

26   Members within fifty (50) days following the District Court's Preliminary Approval

27   of the Settlement. The Publication Notice shall be published on the soonest

28   practicable date after the E-Mailed Notice and Post-Card Notice is sent, but in no

1    event shall it commence more than ten (10) days later.

2        7.4 The E-Mailed Notice, Claim Form, Opt-Out Request Form, Complaint,

3    Settlement Agreement and other materials as agreed to by the Parties shall be

4    available on the Settlement Website.  The Claims Administrator shall also establish

5    a toll-free phone line and an e-mail box to respond to inquiries from Settlement

6    Class Members. The Settlement Website address, toll-free phone number, and e-

7    mail box address will be included in the E-Mailed Notice, Post-card Notice and in

8    the Publication Notice.

9        7.5 Class Counsel shall obtain estimates from one (1) or more claims

10   administrators as to the estimated costs of notice as described in Sections 7.1 and

11   the estimated costs of administration of the Settlement.  Notice and Administration

12   Costs shall be capped at an amount equal to fifteen percent (15%) over the estimate

13   provided by the chosen Claims Administrator. If the actual Notice and

14   Administration Costs are less than the estimated Notice and Administration Costs,

15   the balance will become part of the Class Allocation.

16                    **8.    VERIFICATION PROCESS**

17       8.1 In order to be eligible to receive a share of the Class Settlement Amount,

18   a Settlement Class Member must submit a completed Claim Form within ninety

19   (90) days from the date notice is disseminated. Only those Settlement Class

20   Members who submit an approved Claim Form shall be eligible to receive an

21   electronic Store Credit or cash. In order for a Claim Form to be considered timely,

22   the Claims Administrator must receive the completed Claim Form by 11:59 p.m.

23   Pacific Time on the ninetieth (90th) day from the date notice is disseminated. These

24   deadlines shall be set forth clearly in the Notice.  The Claim Form agreed to by the

25   Parties subject to Court approval is attached hereto as Exhibit 1.

26       8.2 In order for a Claim Form to be approved, the Claimant must meet the

27   following criteria:

28            8.2.1 Claim Forms shall be executed under penalty of perjury, but need

1    not be notarized.

2        8.2.2 Claimants who wish to receive an Electronic Store Credit may

3    submit their Claim Forms electronically (on the Settlement Website) or by regular

4    mail. If a Claimant prefers to receive cash instead of an electronic Store Credit, in

5    order to minimize fraud risks, the Claimant may only submit the Claim Form by

6    regular mail, and must include the Claimant's social security number.

7        8.3 Claim Forms and Opt-Out Request Forms shall be available on the

8    Settlement Website. The E-Mailed Notice, the Post-Card Notice and notice by

9    publication shall direct Settlement Class Members to the Settlement Website which

10   shall contain the Claim Forms, Opt-Out Request Form and other documentation

11   concerning the Litigation and Settlement.

12       8.4 Submission of more than one Claim Form, or submission of an

13   incomplete Claim Form, may render the Claim Form submitted by that Settlement

14   Class Member invalid. The Claims Administrator shall send to all Settlement Class

15   Members who have submitted an incomplete or duplicative Claim Form a notice of

16   deficiency with instructions on how to cure the deficiency. Settlement Class

17   Members will have thirty (30) days to cure deficiencies.

18       8.5 Within twenty (20) days after the deadline to submit Claim Forms, the

19   Claims Administrator shall provide a spreadsheet to Class Counsel and to

20   JCPenney that contains sufficient information for the Parties to determine the

21   number of approved Claims made by the members of the Settlement Class. The

22   Claims Administrator shall also provide the total number of points calculated

23   pursuant to Section 6.1.2.1.4, as well as summary information (e.g., averages,

24   ranges, etc.) concerning the points and dollar amounts awarded to Claimants. The

25   Claims Administrator shall also provide information regarding rejected Claims, as

26   well as the reasons why each Claim was rejected. The Claims Administrator shall

27   retain the originals of all Claim Forms (including any envelopes with the

28   postmarks) received from Claimants, and shall make copies or the originals

available to JCPenney or Class Counsel within three (3) business days upon request.

8.6 <u>Audit and Challenges Procedure.</u>

8.6.1 Class Counsel and JCPenney shall each have the right to audit the information provided in any Claim Form, and to challenge the Claims Administrator's determinations regarding approval or denial of each Claim Form, in accordance with the following procedures.

8.6.2 Within fourteen (14) days of having received the information contemplated by Section 8.5 of this Agreement, Class Counsel and JCPenney's counsel shall meet and confer regarding any issues that either Class Counsel or JCPenney believes need to be raised with the Claims Administrator. Class Counsel and JCPenney agree to use their best efforts to resolve any disputes. If Class Counsel and JCPenney cannot resolve these issues within twenty-eight (28) days of having received the information contemplated by Section 8.5 of this Agreement, then Class Counsel or JCPenney may, within five (5) days of the expiration of the above twenty-eight (28) day period, provide written notice of their intent to audit the Claims Administrator's determinations with respect to a particular Claim or Claims.

8.6.3 If the audit is filed with the Claims Administrator, the decision of the Claims Administrator may be appealed, within fourteen (14) days of receipt of the Claims Administrator's decision. All decisions by the Court, or such person as the Court may direct, regarding audits shall be made expeditiously and are binding, final decisions which shall not be subject to appeal by any party. If a decision by the Claims Administrators is not presented to the Court, or to such person as the Court may direct, within fourteen (14) days of issuance, the decision of the Claims Administrator becomes a binding, final decision not subject to further appeal.

8.6.4 Class Counsel and JCPenney may invoke their rights under this Section by providing written notice to each other and to the Claims Administrator.

The notice shall identify the Claims that are the subject of the audit, and may be accompanied by supporting papers of no more than two (2) pages, double-spaced, 12-point type (excluding exhibits).

8.6.5 Within fourteen (14) days of receipt of the notice and supporting papers, the non-auditing party may submit a written response of no more than two (2) pages, double-spaced, 12-point type (excluding exhibits).

8.6.6 Given the cost of the audit process relative to the size of the individual claims, the Parties shall only appeal an audit decision to the Court, or to such person as the Court may direct, if the audit decision affects at least 10,000 claims. Audit decisions by the Claims Administrator affecting less than 10,000 claims shall be final and non-appealable.

8.6.7 Notice of audits, any paperwork submitted in support of, or in response to, any audit, and the decisions by the Claims Administrator may be served by e-mail or United States Mail.

## 9. OPT-OUT PROCESS

9.1 A Settlement Class Member who wishes to exclude himself or herself from this Settlement and from the release of claims pursuant to this Settlement shall submit a Request to Opt Out. For a Request to Opt Out to be accepted, it must be timely and valid. To be timely, it must be postmarked by the date which is ninety (90) days after the date notice is disseminated. To be valid, the Request to Opt Out must be signed and dated. Opt-Out Request Forms, substantially similar to the attached Exhibit 6, shall be available for download from the Settlement Website and, upon request by a Settlement Class Member, made available by the Claims Administrator through First Class Mail.

9.2 A Settlement Class Member who submits a Request to Opt Out is not eligible to recover a share of the Class Settlement Amount. No Settlement Class Member may submit both a Request to Opt Out and a Claim Form, and if a Settlement Class Member submits both a Request to Opt Out and a Claim Form, the

1   Request to Opt Out will govern.

2   9.3 The Claims Administrator shall maintain a list of persons who have
3   excluded themselves and shall provide such list to the Parties upon request.   The
4   Claims Administrator shall retain the originals of all Requests to Opt Out (including
5   the envelopes with the postmarks) received from Settlement Class Members, and
6   shall make copies or the originals available to JCPenney or Class Counsel within
7   three (3) business days upon request.

8   9.4 JCPenney, at its sole discretion, has the right to terminate this Settlement
9   pursuant to the terms of the confidential Supplemental Agreement Regarding Opt
10   Outs.

11   **10.    OBJECTION PROCESS**

12   10.1 A Settlement Class Member who wishes to object to the Settlement
13   must notify the District Court of his or her objection, in writing, within ninety (90)
14   days of notice being disseminated.

15   10.2 To be considered valid, an objection must be in writing, must include
16   the objector's name and address, and must include the basis for the objection
17   (including why the objector believes the Settlement is not in the best interests of the
18   Settlement Class), along with any and all documents that support the objection.
19   The objection must also indicate whether or not the objector intends to appear at the
20   hearing on the motion for final approval of the Settlement.   The objection must be
21   filed with the Court on or before the deadline.   Additional instructions regarding
22   how to object to the Settlement are contained in the Notices.

23   10.3 Settlement Class Members who do not file a timely written objection in
24   accordance with the procedures set forth in this Agreement and the Notices shall be
25   deemed to have waived any objections to the Settlement and shall forever be
26   foreclosed from making any objection (whether by appeal or otherwise) to the
27   Settlement, or any aspect of the Settlement, including, without limitation, the
28   fairness, reasonableness, or adequacy of the Settlement, or any award of Attorneys'

1  Fees and Costs, reimbursement of costs and expenses and/or the Class
2  Representative Enhancement Payment.

### 11.   DISTRIBUTION PROCESS

4      11.1 The Class Settlement Amount shall be funded through a QSF in
5  accordance with Section 12 of this Agreement. The timing of the payments by
6  JCPenney to the QSF shall be as follows:

7          11.1.1. Within ten (10) business days following the date on which the
8  District Court enters an order granting Preliminary Approval of the Settlement, or
9  within ten (10) business days of the date on which the District Court enters an order
10 approving the QSF, whichever is later, JCPenney shall transfer to the QSF the
11 estimated Notice and Administration Costs as determined in accordance with
12 Section 7.5. JCPenney shall continue to periodically fund the QSF to cover
13 additional Notice and Administration Costs, if required, in accordance with Section
14 7.5. In the event that the Settlement Effective Date does not occur, any amounts
15 actually used by the Claim Administrator for notice and administration shall not be
16 refundable to JCPenney.  If, however, JCPenney has paid into the QSF monies for
17 Notice and Administration, those amounts not used by the Claims Administrator
18 shall be refunded to JCPenney.

19         11.1.2. Within ten (10) business days following the Settlement
20 Effective Date, JCPenney shall transfer to the QSF amounts sufficient to cover the
21 remainder of the Cash Component, to include the Attorneys' Fees and Costs
22 awarded by the Court pursuant to Section 6.1.1.1, and the Class Representative
23 Enhancement Payment awarded by the Court pursuant to Section 6.1.1.2.  Class
24 Counsel shall provide the information as to where these payments should be made
25 and that information may be included in the District Court's Final Judgment, or in a
26 separate order to be entered by the District Court.

27         11.1.3 Within fifteen (15) business days after (i) the Settlement
28 Effective Date or (ii) the date on which the claims process, including all audits of

any Claims, has been concluded and the final dollar value of all Approved Claims is known, whichever is later, JCPenney shall transfer to the QSF additional amounts sufficient to cover the approved Claims requesting a cash payment, up to the Class Settlement Amount. During the same period, and with the assistance of the Claims Administrator, the Parties shall agree on a reasonable and cost effective process to provide Store Credits to Claimants who elect to receive them instead of cash.

11.2 Distributions from the QSF shall be handled as follows:

11.2.1 Other than for purposes of paying invoices submitted by the Claims Administrator, the QSF shall not distribute any payments required under this Agreement until after the Settlement Effective Date has occurred.

11.2.2 Attorneys' Fees and Costs awarded by the Court pursuant to Section 6.1.1.1 and the Class Representative Enhancement Payment awarded by the Court pursuant to Section 6.1.1.2 shall be paid to the individuals or entities specified in the Court order and Final Judgment to be obtained in accordance with Section 15.

11.2.4. Subject to the other provisions of this Section, the payments shall be made from the QSF to the appropriate recipients within a reasonable time after receipt of the funds from JCPenney, or receipt of a Court order or other authorization for the release of such funds, as appropriate.

## 12.    QUALIFIED SETTLEMENT FUND

12.1 At the times required by Section 11 of this Agreement, JCPenney shall transfer to a trustee selected jointly by Class Counsel and JCPenney (the "Trustee") the required portions of the Class Settlement Amount to be held in a separate trust constituting a QSF, as described in Treasury Regulation § 1.468B-1,26 C.F.R. § 1.468B-1. Class Counsel and JCPenney jointly shall cause the Trustee to take such steps as necessary to qualify the QSF under § 468B of the Internal Revenue Code, 26 U.S.C. § 468B, and the regulations promulgated pursuant thereto. JCPenney shall be considered the "transferor" within the meaning of Treasury

1 Regulation § 1.468B-1(d)(1).    The Claims Administrator shall be the
2 "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3).    The
3 Parties shall cooperate in securing an order of the Court to establish the QSF in
4 accordance with the terms hereof in conjunction with its Preliminary Approval of
5 the Settlement and Notice.    The Court shall retain jurisdiction over the
6 administration of the QSF.  JCPenney shall supply to the Claims Administrator and
7 to the Internal Revenue Service the statement described in Treasury Regulation
8 § 1.468B-3(e)(2) no later than February 15 of the year following each calendar year
9 in which JCPenney makes a transfer to the QSF.  It is intended that the transfers to
10 the QSF will satisfy the "all events test" and the "economic performance"
11 requirement of § 461(h)(1) of the Internal Revenue Code, and Treasury Regulation
12 § 1.461-1(a)(2).  Accordingly, JCPenney shall not include the income of the QSF in
13 its income.  Rather, the QSF shall be taxed on its modified gross income, excluding
14 the sums transferred to it, and shall make payment of resulting taxes from its own
15 funds.  In computing the QSF's modified gross income, deductions shall be allowed
16 for its administrative costs and other deductible expenses incurred in connection
17 with the operation of the QSF, including, without limitation, state and local taxes,
18 and legal, accounting, and other fees relating to the operation of the QSF.

19     12.2 Upon establishment of the QSF, the Trustee shall apply for an employer
20 identification number for the QSF utilizing Internal Revenue Service Form SS-4
21 and in accordance with Treasury Regulation § 1.468B-2(k)(4).

22     12.3 If requested by either JCPenney or the Claims Administrator, the Claims
23 Administrator, the Trustee and JCPenney shall fully cooperate in filing a relation-
24 back election under Treasury Regulation § 1.468B-1(j)(2) to treat the QSF as
25 coming into existence as a settlement fund as of the earliest possible date.

26     12.4 Following its deposits as described in Section 12.1 of this Agreement,
27 JCPenney shall have no responsibility, financial obligation, or liability whatsoever
28 with respect to the notifications to the Class required hereunder, the processing of

Verifications and Opt-Out Requests, the allowance or disallowance of claims by Claimants, payments to Class Counsel, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and other taxes imposed on the QSF or its disbursements, or payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, since it is agreed that such deposits shall fully discharge JCPenney's obligations to Claimants and Class Counsel and for expenses of administration in respect to the disposition of the Class Settlement Amount hereunder. Rather, the Claims Administrator shall have sole authority and responsibility for the administration of such funds and income thereon, disbursement to Claimants and Class Counsel, and payment of taxes and administrative costs in accordance with the provisions hereof, subject only to the rights of JCPenney or Class Counsel to audit determinations of the Claims Administrator in accordance with Section 8.6 of this Agreement or to seek redress for any breach of the terms hereof.

12.5 The Claims Administrator shall cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns and tax withholdings statements in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1) and Treasury Regulation § 1.468B-2(l)(2)(ii). The Claims Administrator may, at its own expense, retain legal counsel and an independent, certified public accountant to consult with and advise the Claims Administrator or the Trustee with respect to the preparation and filing of such materials and the federal, state and local tax compliance of the QSF. Either JCPenney or the Claims Administrator, independently or jointly, may, but are not required to, apply to the Internal Revenue Service and/or any applicable state taxing authority for an advance ruling as to any issue pertinent to the qualification of the QSF under Internal Revenue Code § 468B and Treasury Regulations promulgated thereunder, its tax status under applicable state law, and/or its tax payment, reporting and withholding duties. Settlement Class Members shall be responsible for payment of

appropriate federal, state, and local income taxes on any claim paid out pursuant to this Agreement.  If, in any such ruling or otherwise, it is determined that JCPenney has any responsibility whatsoever for payment of any federal, state or local tax on any claim paid out pursuant to this Agreement, then JCPenney shall have the right to terminate this Agreement.  The Parties agree that no portion of any distributions from the QSF to the Settlement Class Members is made in satisfaction of any excluded liability as described in Treasury Regulation § 1.468B-1(g) related to Qualified Settlement Funds.

12.6 The taxable year of the QSF shall be the calendar year in accordance with Treasury Regulation § 1.468B-2(j). The QSF shall utilize the accrual method of accounting within the meaning of § 446 (c) of the Internal Revenue Code.

12.7 The Claims Administrator may amend either in whole or in part, any administrative provision of this Section or the trust instrument through which the QSF is established to maintain the qualification of the QSF pursuant to the above described authorities provided that the rights and liabilities of the Parties hereto and the Class are not altered thereby in any material respect.

**13.    COMPREHENSIVE WAIVER, RELEASE, AND DISMISSAL**

13.1 <u>Settlement Class Member Released Claims</u> - Released by Settlement Class Members:

13.1.1 Subject to final approval by the Court of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, all Releasing Settlement Class Members, do hereby irrevocably release, acquit, and forever discharge JCPenney of and from any and all claims, rights, causes of action, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Agreement), liens, charges, complaints, causes of action, obligations, or liability of any and every kind that were asserted in the Litigation, or that could have been asserted but were not asserted in the Litigation or in any other

court or forum, whether known or unknown, on the basis of, connected with, arising out of, or related in whole or in part to any or all of the alleged acts, omissions, facts, matters, transactions, circumstances, and occurrences that were directly or indirectly alleged, asserted, described, set forth, or referred to in the Litigation whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local, including, without limitation, claims under federal or state unfair competition and false advertising laws.

13.1.2. The Settlement Class Member Released Claims also includes a release of all claims for Attorneys' Fees and Costs incurred by Releasing Settlement Class Members or by Class Counsel or any other attorney in connection with the Litigation and this Settlement.

13.1.3. Releasing Settlement Class Members understand and agree that the release of the Settlement Class Member Released Claims is a full and final general release applying to both those Settlement Class Member Released Claims that are currently known, anticipated, or disclosed to Releasing Settlement Class Members and to all those Settlement Class Member Released Claims that are presently unknown, unanticipated, or undisclosed to any Releasing Settlement Class Members arising out of the alleged facts, circumstances, and occurrences underlying: (i) the claims set forth in the Litigation; or (ii) JCPenney's conduct with respect to the Litigation. Releasing Settlement Class Members acknowledge that the facts could be different than they now know or suspect to be the case, but they are nonetheless releasing all such unknown claims. In exchange for the good and valuable consideration set forth herein, all Releasing Settlement Class Members further waive any and all rights or benefits that they as individuals or the class may now have as a result of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Litigation under the terms of § 1542 of the California Civil Code (or similar statute in effect in any other jurisdiction), which provides as

1  follows:

2  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE

3  CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT

4  THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM

5  MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH

6  DEBTOR.

7      13.2 <u>JCPenney Released Claims</u> - Release by JCPenney:

8          13.2.1. Subject to final approval by the Court of the Settlement, and

9  for good and valuable consideration set forth herein, the receipt and sufficiency of

10  which is hereby acknowledged, JCPenney does hereby irrevocably release, acquit,

11  and forever discharge all Releasing Settlement Class Members of and from any and

12  all claims, rights, penalties, demands, damages, debts, accounts, duties, attorneys'

13  fees, costs and expenses (other than those costs and expenses required to be paid

14  pursuant to this Agreement), liens, charges, complaints, causes of action,

15  obligations, or liability that could have been asserted but were not asserted as a

16  compulsory counterclaim against Releasing Settlement Class Members in this

17  Litigation.

18          13.2.2 JCPenney understands and agrees that the release of the

19  JCPenney Released Claims is a full and final general release applying to both those

20  JCPenney Released Claims that are currently known, anticipated, or disclosed to

21  JCPenney and to all those JCPenney Released Claims that are presently unknown,

22  unanticipated, or undisclosed to JCPenney arising out of the alleged facts,

23  circumstances, and occurrences, underlying any compulsory counterclaim that

24  could have been asserted in the Litigation.  JCPenney acknowledges that the facts

25  could be different than it now knows or suspects to be the case, but it is nonetheless

26  releasing all such unknown counterclaims.  In exchange for the good and valuable

27  consideration set forth herein, JCPenney further waives any and all rights or

28  benefits that it may now have as a result of the alleged facts, circumstances, and

occurrences underlying such a potential compulsory counterclaim under the terms of § 1542 (a) of the California Civil Code (or similar statute in effect in any other jurisdiction), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH DEBTOR.

13.3 The Parties acknowledge that this Settlement, including the releases provided in this section, reflects a compromise of disputed claims.

13.4 The Final Judgment shall dismiss the Litigation with prejudice as to JCPenney and shall incorporate the terms of this release.

## 14. DUTIES OF THE PARTIES WITH RESPECT TO OBTAINING PRELIMINARY COURT APPROVAL

14.1 On or before November 10, 2015, or such other date as the Court approves, Class Counsel shall apply to the District Court for the entry of an order granting Preliminary Approval of the Settlement substantially in the following form:

14.1.1 Conditionally Certifying the Settlement Class;

14.1.2. Preliminarily approving the Settlement;

14.1.3 Approving as to form and content the proposed notices and notice plan, including the E-Mailed Notice, Post-card Notice, Publication Notice, Claim Form and Opt-Out Request Form;

14.1.4 Scheduling a fairness hearing on the question of whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the Settlement Class;

14.1.5 Approving Cynthia Spann as Settlement Class Representative;

14.1.6 Approving Stanley Law Group and The Emge Firm, LLP as

Class Counsel for the Settlement Class; and

        14.1.7. Approving Heffler Claims Group as Claims Administrator.

    14.2 JCPenney shall cooperate with Class Counsel as necessary to obtain Preliminary Approval.

## 15. DUTIES OF THE PARTIES FOLLOWING PRELIMINARY COURT APPROVAL

    15.1 Following Preliminary Approval by th District Court of the Settlement, and prior to the final fairness hearing, Class Counsel will submit a proposed Final Judgment substantially in the form attached hereto as Exhibit 5.  The proposed Final Judgment shall:

        15.1.1 Approve the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

        15.1.2. Approve Class Counsel's application for an award of Attorneys' Fees and Costs;

        15.1.3. Approve the Class Representative Enhancement Payment;

        15.1.4. Certify the Settlement Class for Settlement purposes in accordance with applicable legal standards and Section 5 of this Agreement; and

        15.1.5 Dismiss this Litigation between the Named Plaintiff and the Settlement Class Members, on the one hand, and JCPenney on the other hand, on the merits and with prejudice and permanently bar the Named Plaintiff, and all Settlement Class Members (other than those who timely filed valid Opt-Out Requests) from further prosecuting any of the Settlement Class Member Released Claims against JCPenney.

    15.2 JCPenney shall cooperate with Class Counsel as necessary to obtain final approval and the dismissal of the Litigation as to JCPenney.

    15.3 The Final Judgment shall not be considered final until the occurrence of the Settlement Effective Date.

## 16.    MUTUAL FULL COOPERATION

16.1 The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to execution of all necessary documents, and to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court or otherwise, to effectuate the terms of this Settlement. As soon as practicable after execution of this Settlement, Class Counsel shall, with the assistance and cooperation of JCPenney and its counsel, take all necessary steps to secure the Court's Final Judgment.

## 17.    STATEMENT OF NO ADMISSION

17.1 Nothing contained in this Agreement shall be construed or deemed an admission of liability, culpability, or wrongdoing. JCPenney expressly denies liability for the claims asserted and specifically denies and does not admit any of the pleaded facts not admitted in its pleadings in the Litigation. Nor shall this Agreement constitute an admission by JCPenney as to any interpretation of laws or as to the merits, validity, or accuracy of any claims made against it in the Litigation. Likewise, nothing in this Agreement shall be construed or deemed an admission by Plaintiff or the Settlement Class with regards to the validity of any of JCPenney's defenses or affirmative defenses. Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

17.2 This Agreement, and all related documents, including the Memorandum of Settlement, the certification for settlement purposes entered pursuant to this Agreement, and any Claim Forms, Requests to Opt-Out or Objections submitted by Settlement Class Members and all other actions taken in implementation of the Settlement, including any statements, discussions, or communications, and any materials prepared, exchanged, issued, or used during the course of the negotiations leading to this Agreement, are settlement documents and shall be inadmissible in

evidence and shall not be used for any purpose in this Litigation or any other judicial, arbitral, administrative, investigative, or other court tribunal, forum, or proceeding, or any other litigation against JCPenney, for any purpose, except in an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

17.3 The Claim Forms, Opt-Out Requests or Objections, or other evidence produced or created by any Settlement Class Member in connection with the claims resolutions procedures pursuant to this Settlement, and any actions taken by JCPenney in response to such Claim Forms, Opt-Out Requests, Objections, or other evidence, do not constitute, and will not be deemed to constitute an admission by JCPenney of any violation of any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity.

## 18.    VOIDING THE AGREEMENT

18.1 Subject to Section 9.4, in the event that this Settlement is not approved, or if for any reason the Settlement Effective Date does not occur, the Settlement Agreement shall be deemed null, void, and unenforceable and shall not be used nor shall it be admissible in any subsequent proceedings either in this Court or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, or other litigation against JCPenney.

18.2 In the event that the Court does not approve the Attorneys' Fees and Costs in the amount request by Class Counsel, or in the event that the Attorneys' Fees and Costs requested by Class Counsel are reduced, that finding shall not be a basis for rendering the entire Settlement Agreement null, void, or unenforceable. Class Counsel retains their right to appeal any decision by the Court regarding the Attorneys' Fees and Costs or Enhancement Award.

## 19.    SIGNATORIES' AUTHORITIES

19.1 The respective signatories to this Agreement each represent that they are fully authorized to enter into this Settlement on behalf of the respective Parties for submission to the Court for preliminary and final approval.

## 20.   NO PRIOR ASSIGNMENTS

20.1 The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber, to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

## 21.   MISCELLANEOUS PROVISIONS

21.1 Construction. The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms-length negations between the Parties and that this Settlement shall not be construed in favor or of against any party by reason of the extent to which any party or her or his counsel participated in the drafting of this Settlement.

21.2 Captions and Interpretations. Paragraph tiles or captions contained in this Agreement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision of this Agreement.  Each term of this Agreement is contractual and not merely a recital.

21.3 Modification.   This Agreement may not be changed, altered, or modified, except in a writing signed by the Parties and approved by the Court. Notwithstanding the foregoing, the Parties agree that any dates contained in this Agreement may be modified by agreement of the Parties without Court approval if the Parties agree and cause exists for such modification. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

21.4 Integration Clause. This Agreement, the Exhibits hereto, the Supplemental Agreement Regarding Opt-Outs, and any other documents delivered pursuant hereto contain the entire agreement between the Parties relating to the resolution of the Litigation, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement. No

1   rights under this Settlement may be waived except in writing and signed by the

2   Party against whom such waiver is to be enforced.

3        21.5 <u>Binding on Assigns.</u> This Settlement shall be binding upon, and insure

4   to the benefit of, the Parties and their respective heirs, trustee, executors,

5   administrators, successors, and assigns.

6        21.6 <u>Class Counsel Signatories.</u> It is agreed that because the Settlement Class

7   Member are so numerous, it is impossible or impractical to have each Settlement

8   Class Member execute this Settlement. The E-Mailed Notice, Post-Card Notice and

9   Publication Notice will provide all Settlement Class Members with a summary of

10  the Settlement, and will advise all Settlement Class Members of the binding nature

11  of the release. Excepting only those Settlement Class Members who timely submit

12  an Opt-Out Request, the E-Mailed Notice, Post-Card Notice and Publication Notice

13  shall have the same force and effect as if this Settlement was executed by each

14  Settlement Class Member.

15       21.7 <u>Counterparts.</u> This Agreement may be executed by facsimile signature

16  and in any number of counterparts, and when each party has signed and delivered at

17  least one such counterpart, each counterpart shall be deemed an original, and, when

18  taken together with other signed counterparts, shall constitute one and the same

19  Agreement, which shall be binding upon and effective as to all Parties.

20       21.8 <u>Applicable Law.</u> This Agreement shall be governed by California law

21  without regard to its choice of law or conflicts of law principles or provisions.

22  **22.    DISPUTES**

23       22.1 <u>Mediation.</u>  The Parties agree that they will first attempt to resolve any

24  disagreements or disputes over the implementation of the terms of the Settlement,

25  this Agreement, or any other documents necessary to effectuate the Settlement

26  through mediation with David A. Rotman or, if Mr. Rotman is unavailable, through

27  another mediator that is mutually agreeable to the Parties. In the event that one or

28  more of the Parties institutes a legal action, arbitration or other proceeding against

1   any other party or parties to enforce the provisions of this Settlement or to declare

2   rights and/or obligations under this Settlement, they will bear their own costs,

3   expenses and attorney's fees.

## 23.    CONFIDENTIALITY

5   23.1 Subject to the provision of Section 24 any and all negotiations related to this

6   Agreement (including the negotiations related to the drafting of this Agreement,

7   and any negotiations prior to Preliminary Approval or between the time of

8   preliminary and final approval) will remain strictly confidential and shall not be

9   discussed with anyone other than the Named Plaintiff and JCPenney, their retained

10  attorneys, their accountants and financial or tax advisers, the retained consultants,

11  the Court, and the mediator David A. Rotman and his staff, unless otherwise agreed

12  to by Class Counsel and JCPenney or unless otherwise ordered by the Court.

13  Notwithstanding the other provisions of this Section, JCPenney may disclose the

14  Settlement in filings that JCPenney is required to make with the Securities and

15  Exchange Commission, including 10-Q and 10-K filings, or in other disclosures to

16  investors.  This provision does not prohibit the Parties from presenting to the Court

17  as much information about their settlement negotiations as they mutually agree is

18  necessary, or as the Court requires, to procure approval of this Settlement.

## 24.    PRESS RELEASE

20  24.1 The Parties will work together to prepare a joint press release regarding this

21  Settlement to be issued on a mutually agreeable date no later than ten (10) days

22  after the filing of the motion for Preliminary Approval.  Other than this press

23  release, and prior to such time as final approval has been granted by the Court,

24  neither side shall publish or make, in print, online or otherwise, including without

25  limitation, Class Counsel's websites, any statement concerning the Settlement.

26  Both sides shall decline to respond to media inquiries concerning the Settlement

27  other than to refer the media to the press release until such time as final approval

28  has been granted by the Court.  This Paragraph does not preclude appropriate notice

1  by publication.  This provision shall in no way limit JCPenney's statements in its

2  filings with the Securities and Exchange Commission or during its earnings

3  conference calls.  After dismissal, the Parties retain their right to speak with the

4  media and publish any appropriate statement concerning the Settlement as they

5  deem appropriate.

6              ## 25.    DOCUMENTS AND DISCOVERY

7  25.1  Within thirty (30) days after a final, non-appealable Judgment is entered

8  disposing of all claims in the Litigation, Class Counsel agrees to take steps

9  necessary to destroy or erase all documents and data produced by JCPenney in the

10 Litigation.  Upon request from JCPenney, Class Counsel shall certify in writing to

11 JCPenney their compliance with this provision.  Nothing in this provision or

12 Agreement shall prohibit Class Counsel from retaining a case file, including all

13 pleadings, motion papers, court filings, deposition transcripts, legal memoranda,

14 correspondence, notes, and work product, so long as any exhibits to such

15 documents which contain documents or data marked "CONFIDENTIAL" continue

16 to be treated as such under the Protective Order in this case.

17

18

19

20

21

22 ACCEPTED AND AGREED

23

24 By: _____              11/9/15

         For JCPenney                       Date

25

26 By: _____              _____

         Cynthia Spann                      Date

27

28

SMRH:473367441.2                    -36-

1    by publication.  This provision shall in no way limit JCPenney's statements in its

2    filings with the Securities and Exchange Commission or during its earnings

3    conference calls.  After dismissal, the Parties retain their right to speak with the

4    media and publish any appropriate statement concerning the Settlement as they

5    deem appropriate.

6              **25.    DOCUMENTS AND DISCOVERY**

7    25.1   Within thirty (30) days after a final, non-appealable Judgment is entered

8    disposing of all claims in the Litigation, Class Counsel agrees to take steps

9    necessary to destroy or erase all documents and data produced by JCPenney in the

10   Litigation.  Upon request from JCPenney, Class Counsel shall certify in writing to

11   JCPenney their compliance with this provision.   Nothing in this provision or

12   Agreement shall prohibit Class Counsel from retaining a case file, including all

13   pleadings, motion papers, court filings, deposition transcripts, legal memoranda,

14   correspondence, notes, and work product, so long as any exhibits to such

15   documents which contain documents or data marked "CONFIDENTIAL" continue

16   to be treated as such under the Protective Order in this case.

17

18

19

20

21

22   ACCEPTED AND AGREED

23

24   By: _____          _____
         For JCPenney                              Date

25   By: _____          11/9/15
         Cynthia Spann                            Date

26

27

28

SMRH:473367441.2                                -36-

Approved as to form:

By: _____          11/9/15
    Moe Keshavarzi                        _____
    JCPenney's Counsel                    Date

By: _____          _____
    Derek J. Emge                         Date
    Class Counsel

By: _____          _____
    Matthew J. Zevin                      Date
    Class Counsel

Approved as to form:

By: _____
Moe Keshavarzi
JCPenney's Counsel

By: _____      _____
Derek J. Emge                        11/9/15
Class Counsel                        Date

By: _____      _____
                                     11/9/15
Matthew J. Zevin                     Date
Class Counsel

# Exhibit 1

# JCPenney Settlement
## Claim Form

If you purchased one or more private or exclusive branded items of apparel or accessories from JCPenney while in California between November 5, 2010 and January 31, 2012, or between January 1, 2013 and December 31, 2014, that were advertised at a discount of at least 30% off the stated "original" or "regular" price, and you have not received a refund or credit for your purchase, you will be eligible to receive benefits from a Settlement with JC Penney. You need to submit this Claim Form if you want to receive a cash payment or a store credit. The deadline to file a claim is _____.

The amount of the cash payment or store credit will be determined based on a formula contained in the Settlement Agreement and in the notice you received. Additional information regarding the formula and the Settlement can be found at _____.

To claim a store credit you may submit the Claim Form by mail or online at _____. If submitting by U.S. Mail, print and complete this Claim Form and mail it to the following address postmarked on or before _____:

Claims Administrator

To claim a cash payment, you must complete this Claim Form and mail it to the following address postmarked on of before_____:

Claims Administrator

You cannot file an online claim for a cash payment.

**Please Complete Each Section On The Following Page In The Space Provided**

| SECTION I- CONTACT INFORMATION | |
|---|---|

| Name( First/Last) | |
|---|---|
| Name at the time of your purchase(s) | |
| Street Address | |
| City, State, Zip Code | |
| Phone Numbers (primary) | |
| Current E-Mail Address | |

## SECTION II: AWARD SELECTION

Please tell us whether you prefer to receive an electronic store credit or a cash payment. You may not request both. If you are requesting a cash payment, you must also provide the last four digits of your social security number. You can give your store credit to someone else but it cannot be resold.

☐ **Electronic Store credit**
☐ **Cash Payment**

Last Four Digits of your Social Security Number *(for cash payment only):* X X X – X X- _ _ _ _

## SECTION III: AFFIRMATION

I hereby affirm, under penalty of perjury, that the information I have provided in this Claim Form is true and correct to the best of my knowledge and this is the only JCPenney Claim Form that I have submitted. I further understand, acknowledge, and agree that I am eligible to receive only **ONE** payment from this Settlement based on all my purchases from JCPenney. I further understand, acknowledge, and agree that the amount I will receive shall be calculated according to the terms of the Settlement Agreement and subject to the terms of the Settlement Agreement, including the release of claims.

Date: ___ ___ / ___ ___ / ___ ___ ___ ___          Signature:_____

# Exhibit 2

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

# If You Purchased Private or Exclusive Branded Apparel or Accessories from JCPenney,
## You could receive money or a store credit from a class action settlement,

*A federal Court authorized this Notice. This is not a solicitation from a lawyer.*

A class action settlement has been reached concerning JCPenney's ("JCPenney") pricing practices. The lawsuit claims that JCPenney used false "regular" and "original" prices for its private and exclusive branded products. The lawsuit is known as *Spann v. JCPenney Corporation, Inc.*, Case No. 12-cv-0215FMO, pending in the U.S. District Court for the Central District of California. JCPenney believes that the lawsuit has no basis.

You may be an eligible class member if you purchased any JCPenney private or exclusive branded clothing or accessories in California at a discount of least 30 percent off of a "regular" or "original" price between November 5, 2010 and January 31, 2012, or between January 1, 2013 and December 31, 2014.

Your legal rights are affected whether you act or don't act. This Notice includes information on the Settlement. Please read the entire Notice carefully.

| | |
|---|---|
| You can file a claim for benefits from the Settlement. | *see* Question 7 |
| You can object or comment on the Settlement. | *see* Question 9 |
| You can go to a court hearing and ask to speak about the Settlement. | *see* Questions 12-13 |
| You may exclude yourself from the Settlement. | *see* Questions 9 & 10 |

- The Court in charge of the case still has to decide whether to approve the Settlement with JCPenney.

- YOU HAVE BEEN ASSIGNED THE FOLLOWING UNIQUE CUSTOMER ID NUMBER: _____. You may enter this number on the Settlement Website to review your qualifying purchases, upload evidence of additional purchases and submit a Claim Form.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION .................................................................................PAGE  2
     1.     Why is there a notice?
     2.     What is the lawsuit about?
     3.     Why are there class actions?

THE SETTLEMENT CLASS ...........................................................................PAGE 3
     4.     How do I know if I'm part of the Settlement Class?
     5.     Why is there a Settlement?
     6.     What does the Settlement provide?
     7.     How can I get benefits?
     8.     When can I get benefits?
     9.     What are my rights in the Settlement?
     10.    What am I giving up to stay in the Settlement Class?
     11.    When and where will the Court decide whether to approve the Settlement?
     12.    Do I have to come to the hearing?
     13.    May I speak at the hearing?

THE LAWYERS REPRESENTING YOU ...........................................................PAGE 6
     14.    Do I have a lawyer in the case?
     15.    How will the lawyers be paid?

GETTING MORE INFORMATION ...................................................................PAGE 6
     16.    How do I get more information?

## WHAT THIS NOTICE CONTAINS

For More Information: Call 1-800-000-0000 or
Visit www._____.com

### BASIC INFORMATION

| 1. | Why is there a notice? |

You have the right to know about the lawsuit and about your legal rights and options before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Central District of California, and the case is called *Cynthia E. Spann v. J.C. Penney Corporation, Inc.*, SACV12-0215 FMO (KESx). The person who sued is called the Plaintiff, and the company she sued, J.C. Penney Corporation, Inc. is called the Defendant.

| 2. | What is the lawsuit about? |

The lawsuit claims that JCPenney engaged in a scheme of false price comparison advertising prior to February 2012 and then again starting in 2013 through 2014. Plaintiff claims that JCPenney's conduct violated various California laws that prohibit false advertising and unfair competition. JCPenney

denies: (1) that it used false price comparison advertising, (2) that it has done anything wrong, and (3) that the Plaintiff or class has been harmed in any way. The Court has not decided who is right.

| 3. | Why are there class actions? |
|---|---|

In a class action, one or more people, called class representatives (in this case, Cynthia Spann) sue on behalf of people who have similar claims. All of the people with similar claims comprise the "class" and are referred to as "class members," except for those who exclude themselves from the class. U.S. District Judge Fernando Olguin in the United States District Court for the Central District of California is in charge of this class action.

## THE SETTLEMENT CLASS

| 4. | How do I know if I am part of the settlement class? |
|---|---|

The Settlement Class includes the following persons: All persons who, while in the State of California and between November 5, 2010 and January 31, 2012, or between January 1, 2013, and December 31, 2014, purchased from JCPenney one or more private or exclusive branded items of apparel or accessories advertised at a discount of at least 30% off the stated "original" or "regular" price, and who have not received a refund or credit for their purchase(s).

Excluded from the class are the Defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of JCPenney.

| 5. | Why is there a settlement? |
|---|---|

This case has been pending since February, 2012. JCPenney is not admitting that it did anything wrong, but both sides want to avoid the cost and risk of further litigation. The Court has not decided in favor of the Plaintiff or JCPenney. The Class Representative and her attorneys think the Settlement is best for everyone who is affected. The Settlement provides the opportunity for benefits to Class Members.

| 6. | What does the settlement provide? |
|---|---|

JCPenney has agreed to make available $50 million to compensate Class Members who file valid claims. The cash component of the Settlement will first pay notice and administrative costs in an amount not to exceed $2,667,000, plus attorneys' fees and costs and a payment to the Class Representative as approved by the Court (see Question 15). The remaining amount will be paid to Class Members. Class Members can decide whether they want to request a cash payment or a JCPenney store credit of equal value. The amount of the cash payment or store credit will be based on the amount of purchases you made of private and exclusive branded apparel and accessories during the class period and on the number of valid claims that are filed (see Question 7). Please note that you can give your store credit to someone else but it cannot be resold or exchanged for cash. Your store credit can be used for any on-line or in-store purchase, and it does not expire.

The Settlement Agreement describes more details about the Settlement.  You can find a copy of the Settlement Agreement at the Settlement Website: www._____.com.

| 7. | How can I get benefits? |
|---|---|

To ask for benefits, you need to complete and submit a Claim Form. Claim Forms are available at the Settlement Website or by calling 1-800-000-0000.  Please read the instructions carefully.  Claim Forms can be completed and submitted online (for store credits only) by Month Day, 2016 or mailed so that it is postmarked by that date, to:

> XXXX Settlement
> PO Box 0000
> City, ST 00000

| 8. | When will I get benefits? |
|---|---|

Benefits will be distributed to Class Members after the Court grants "final approval" of the Settlement and after any appeals are resolved.  The "final approval" hearing is scheduled to occur on Month 00, 2016.  If there are appeals to the final approval order, they can take time to resolve.

| 9. | What are my rights in the Settlement Class? |
|---|---|

**Remain in the Settlement Class**: If you wish to remain in the Settlement Class and get benefits from the Settlement, you need to file a Claim Form (*see* Question 7).

**Get out of the Settlement Class**: If you wish to keep your individual right to sue JCPenney about the claims in this case you must exclude yourself from the Settlement Class. However, you will lose the right to receive any benefits from the Settlement if you exclude yourself from the Settlement Class.

To exclude yourself from the Settlement Class, you must complete an Opt-Out Form, by filling out the following information:

- Your name, address, and telephone number,
- The name of the case (*Spann v. JCPenney*),
- A statement that you want to be excluded from this Settlement, and
- Your signature and date.

Opt-Out Forms are available at the Settlement Website or by calling 1-800-000-0000.  You must electronically submit or mail your exclusion request, postmarked no later than **Month 00, 2016**, to:

> JCPenney Settlement Exclusions
> P.O. 0000
> City, ST 00000

**Remain in the Settlement Class and Object**: If you disagree with any aspect of the Settlement, you may express your views to the Court. The written response needs to include:

- Your name and address,

- The name of the case (*Spann v. JCPenney*),
- The reasons you object to the Settlement,
- Copies of all documents that support your objection,
- Whether you intend to appear at the Fairness Hearing (*see* Question   ), and
- Your signature.

The response must be postmarked no later than **Month 00, 2016** and mailed to:

> The United States District Court for the Central District of California
> Courtroom 22-5th Floor
> 312 North Spring Street
> Los Angeles, CA 90012

You will have no right to object to the Settlement if you exclude yourself from the
Settlement Class.

## 10.    What am I giving up to stay in the Settlement Class?

Unless you exclude yourself from the Settlement Class, you can't separately sue JCPenney for
the claims and issues in this case. You also will be bound by any decisions by the Court
relating to the Settlement.  The "Release of Claims" is described more fully in the Settlement
Agreement and describes the legal claims that you give up if you get benefits from the
Settlement. The Settlement Agreement is available at www._____.com.

## 11.    When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at Time x.m. on Month 00, 2016, at the United States
District Court for the Central District of California, located at 312 North Spring Street, Los
Angeles, California, in Courtroom 22 on the 5th Floor. The hearing may be moved to a different
date, time or location without additional notice, so it is a good idea to check
www._____.com. At this hearing, the Court will consider whether the
Settlement is fair, reasonable and adequate. The Court will also consider how much to pay Class
Counsel and the Class Representative.  If there are objections, the Court will consider them at this
time. After the hearing, the Court will decide whether to approve the Settlement.  We do not know
how long these decisions will take.

## 12.    Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to come at
your own expense. If you send an objection or comment, you don't have to come to Court to talk
about it. As long as you mailed your written objection on time, the Court will consider it. You may
also pay another lawyer to attend, but it's not required.

## 13.    May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear." In your letter you must include the following:

17. Your name, address, and telephone number,
18. The name of the case (*Spann v. JCPenney*),
19. The name, address, and telephone number of any attorney(s) who will be appearing on your behalf at the Fairness Hearing,
20. A brief statement detailing what you will be presenting to the Court, and
21. Your signature.

You must mail your Notice of Intention to Appear which must be postmarked no later than **Month 00, 2016,** to:

The United States District Court for the Central District of California
Courtroom 22, 5th Floor
312 North Spring Street
Los Angeles, CA 90012

### THE LAWYERS REPRESENTING YOU

| 14. | Do I have a lawyer in this case? |
|---|---|

Yes.  Plaintiff was represented by three law firms, and the Court has appointed two of those firms as "Class Counsel" to represent you and all Class Members: Matthew J. Zevin of the Stanley Law Group and Derek J. Emge of The Emge Firm, LLP.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 15. | How will the lawyers get paid? |
|---|---|

The Court will decide how much the attorneys will be paid. Class Counsel have asked the Court to award a total of $13,500,000, (27% of the Settlement Fund), plus their out-of-pocket costs and expenses of $_____, all of which will be paid out of the cash part of the Settlement. In addition, they have requested an Enhancement Award of $10,000 for the Class Representative. Class Counsel's motion for Attorneys' Fees and Costs is available for viewing on the settlement website at www._____com.

### GETTING MORE INFORMATION

| 16. | How do I get more Information? |
|---|---|

The Notice summarizes the lawsuit and the proposed Settlement.  You can get more information about the lawsuit and Settlement at www._____com.   You may also write with questions to: _____, P.O. Box 0000, City, State 00000, or by email at _____.com.  You can also get a Claim Form or Opt-Out Request at the website, or by calling this toll free number, _____.

Page 6 of 6

# Exhibit 3

**If You Purchased Private or Exclusive Branded Apparel or Accessories from JCPenney, You could receive money or a store credit from a class action settlement**

*Para una notificación en Español, llamar [add phone number]o visitar nuestro website [add website address].*

A class action settlement has been reached concerning JCPenney's ("JCPenney") pricing practices prior to February 2012, and in 2013 and 2014. The lawsuit claims that JCPenney used false "regular" and "original" prices for its private and exclusive branded products. The lawsuit is known as *Spann v. JCPenney Corporation, Inc.*, Case No. 12-cv-0215FMO, pending in the U.S. District Court for the Central District of California. JCPenney denies that it used false price comparison advertising or that it has done anything wrong. The Court has not decided who is right.

**Who is a class member?**
You may be an eligible class member if you purchased any JCPenney private or exclusive branded clothing or accessories in California at a discount of least 30 percent off of a "regular" or "original" price between November 5, 2010 and January 31, 2012, or between January 1, 2013 and December 31, 2014. You have received this postcard because JCPenney identified you as a potential class member.  YOU HAVE BEEN ASSIGNED THE FOLLOWING UNIQUE CUSTOMER ID NUMBER: _____.  You may enter this number on the Settlement Website to review your qualifying purchases, upload evidence of additional purchases and submit a Claim Form.

**What does the Settlement provide?**
JCPenney has agreed to make available $50 million to settle the lawsuit. If you are eligible, you can choose either a cash payment or a store credit of equal value for use at any JCPenney store or on its website. The store credit will maintain a running balance, will not expire, and can be used to purchase any item(s) with or without discounts.  You can give your store credit to someone else but it  cannot be resold or exchanged for cash.

**What do I need to do?**
If you want to participate in the settlement, you must file a claim, by Month Day, 2016 to receive either cash or a store credit. If the Court approves the settlement, you will give up your right to sue JCPenney for any of the claims released in the settlement.  Therefore, it is very important that you read the settlement agreement.  If you don't want to participate, you may exclude yourself by Month Day, 2016. You will not receive cash or a store credit, but you will keep your right to sue JCPenney on your own for the same claims in this matter.  You may object and tell the court why you don't like the settlement, but you must do so by Month Day, 2016.   If you do nothing, you will NOT receive money or a store credit, and you **will** be bound by the decisions of the court.

The Court has appointed Class Counsel, who have requested attorneys' fees of $13,500,000 (27 percent of the Settlement Fund), plus reimbursement of $_____ in out of pocket expenses, and an Enhancement Award of $10,000 to the Representative Plaintiff. The Settlement Fund will also be used to pay up to $2,667,000 for the costs of a third-party notice and claim administrator.  The remainder will be distributed to class members who submit valid claims. The motion for attorneys' fees and costs is posted on www._____.com. The amount that you receive will depend on the number of claims submitted, the amount that you spent on qualifying purchases at JCPenney, and the amount of fees and costs awarded by the Court.

The Court will hold a hearing on Month Day, 2016 at 00:00 a/p.m. to determine whether to approve the settlement and how much to award in fees and costs. You or your attorney may attend, but you don't have to. The date of the hearing may change without further notice, so please check the Settlement Website for updates.

This   is   only   a   summary.   For   the   detailed   notice   and   claim   form,   please   visit www._____.com.   You may also call _____ or email _____.com with any questions.

# Exhibit 4

## If You Purchased Private or Exclusive Branded Apparel or Accessories from JCPenney, You could receive money or a store credit from a class action settlement

*Para una notificación en Español [add phone number], llamar o visitar nuestro website [add website address].*

A class action settlement has been reached concerning JCPenney's ("JCPenney") pricing practices. The lawsuit claims that JCPenney used false "regular" and "original" prices for its private and exclusive branded products. The lawsuit is known as *Spann v. JCPenney Corporation, Inc.*, Case No. 12-cv-0215FMO, pending in the U.S. District Court for the Central District of California. JCPenney denies that it used false price comparison advertising or that it has done anything wrong, and denies that the Plaintiff or the class has been harmed in any way. The Court has not decided who is right.

### Who is a class member?

You may be an eligible class member if you purchased any JCPenney private or exclusive branded clothing or accessories in California at a discount of least 30 percent off of a "regular" or "original" price between November 5, 2010 and January 31, 2012, or between January 1, 2013 and December 31, 2014.

### What does the Settlement provide?

JCPenney has agreed to make available $50 million to settle the lawsuit. If you are eligible, you can choose either a cash payment or a store credit of equal value for use at any JCPenney store or on its website. The store credit will maintain a running balance, will not expire, and can be used to purchase any item(s) with or without discounts. You can give your store credit to someone else but it cannot be resold or exchanged for cash.

### What do I need to do?

If you want to participate in the settlement, you must file a claim, by Month Day, 2016 to receive either cash or a store credit. If the Court approves the settlement, you will give up your right to sue JCPenney for any of the claims released in the settlement. If you don't want to participate, you may exclude yourself by Month Day, 2016. You will not receive cash or a store credit, but you will keep your right to sue JCPenney on your own for the same claims in this matter. You may object and tell the court why you don't like the settlement, but you must do so by Month Day, 2016. If you do nothing, you will NOT receive money or a store credit, and you **will** be bound by the decisions of the court.

The Court has appointed Class Counsel, who have requested attorneys' fees of $13,500,000 (27 percent of the Settlement Fund), plus reimbursement of $_____ in out of pocket expenses, and an Enhancement Award of $10,000 to the Representative Plaintiff. The Settlement Fund will also be used to pay up to $2,667,000 for the costs of a third-party notice and claim administrator. The remainder will be distributed to class members who submit valid claims. The motion for attorneys' fees and costs is posted on www._____.com. The amount that you receive will depend on the number of claims submitted, the amount that you spent on qualifying purchases at JCPenney, and the amount of fees and costs awarded by the Court.

The Court will hold a hearing on Month Day, 2016 at 00:00 a/p.m. to determine whether to approve the settlement and how much to award in attorneys' fees and costs. The date of the hearing may change without further notice, so please check the Settlement Website for updates.

This is only a summary. For the detailed notice and claim form, visit www._____.com. You may also call _____ or email _____.com with any questions.

# Exhibit 5

**United States District Court for the Central District of California**
*Cynthia E. Spann. v. J.C. Penney Corporation, Inc.*
**Case No. SACV12-0215 FMO (KESx)**

# OPT-OUT FORM

I WISH TO BE EXCLUDED FROM THE SETTLEMENT CLASS IN THE CASE OF CYNTHIA E. SPANN v. J.C. PENNEY CORPORATION, INC. CASE NO. SACV12-0215 FMO (KESx). I UNDERSTAND THAT BY REQUESTING EXCLUSION FROM THE SETTLEMENT CLASS, I WILL NOT RECEIVE ANY SHARE OF THE SETTLEMENT BENEFITS. I confirm that I have received written notice of the proposed settlement in this action. I have decided to exclude myself from the Settlement Class and not to participate in any portion of the proposed settlement.

Date: _____

Signature: _____

Printed Name: _____

Street Address: _____

City, State, Zip Code: _____

**THIS FORM MUST BE COMPLETED AND SENT VIA U.S. MAIL WITH A POSTMARK DATED NO LATER THAN _____ TO:**

**CLAIMS ADMINISTRATOR**
**ADDRESS**
**CITY, STATE ZIP**
**TOLL FREE TELEPHONE**

Exhibit 6

1
2
3
4
5
6
7
8
9
10

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA E. SPANN, on Behalf of Herself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC., a Delaware Corporation;,<br><br>    Defendant. | Case No. SA-CV-12-0215 FMO (KESx)<br>Complaint Filed: February 12, 2012<br><br>**CLASS ACTION**<br><br>PROPOSED ORDER AND FINAL JUDGMENT APPROVING SETTLEMENT BETWEEN SETTLEMENT CLASS PLAINTIFFS AND JCPENNEY CORPORATION, INC.<br><br>JUDGE: Honorable Fernando M. Olguin<br>CTRM: 22-5th Floor |

1    This matter came before the Honorable Fernando M. Olguin on Plaintiff's
2  Motion for Final Approval of Settlement ("Final Approval Motion").
3    WHEREAS, a class litigation is pending before the Court entitled <u>Cynthia E.</u>
4  <u>Spann v. J.C. Penney Corporation, Inc.</u>, Case No. SA-CV-12-0215 FMO (KESx)
5  (United States District Court for the Central District of California);
6    WHEREAS, the Court has received and reviewed the Settlement Agreement
7  entered into between the Named Plaintiff, the Settlement Class Representative and
8  the Settlement Class Members, on the one hand, and Defendant JCPenney on the
9  other hand, dated _____ (the "Agreement"), and has considered the
10 terms of the proposed settlement set forth therein (the "Settlement");
11   WHEREAS, all terms used herein shall have the same definitions and
12 meanings as set forth in the Agreement unless otherwise defined herein;
13   WHEREAS, on _____, _____, the Court entered its order
14 preliminary approving the Settlement of this class action as between the Named
15 Plaintiff, the Settlement Class Representative and the Settlement Class Members,
16 on the one hand, and JCPenney, on the other hand, and setting a date and time for a
17 final fairness hearing to consider whether the Settlement should be finally approved
18 by the Court pursuant to Rule 23(d) of the Federal Rules of Civil Procedure as fair,
19 adequate, and reasonable (the "Preliminary Approval Order");
20   WHEREAS, the Court directed that all Settlement Class Members be given
21 notice of the Settlement, and approved the form and method of notice, and of the
22 date for the final fairness hearing;
23   WHEREAS, the Court has received declarations of _____ attesting
24 to the e-mailing, mailing and publication of the Notice in substantial accordance
25 with the Preliminary Approval Order;
26   WHEREAS, the Court entered a Conditional Class Certification Order on
27 _____, _____, which reflects the Claims certified for Settlement purposes and
28 the scope of the Settlement Class;

WHEREAS, the Court having considered all timely filed objections to the Settlement; and

WHEREAS, the Court having conducted a final fairness hearing on _____, _____ (the "Settlement Approval Hearing"), and having considered the arguments presented, all papers filed, and all proceedings had therein;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action, all Settlement Class Members, and the Defendant.

2.     In accordance with Rule 23(d) of the Federal Rules of Civil Procedure and the requirements of due process, all members of the Settlement Class have been given proper and adequate notice of the Settlement. Based upon the evidence submitted by the parties to the Agreement, the Agreement, the arguments of counsel, and all the files, records, and proceedings in this case, the Court finds that the Notice and notice methodology implemented pursuant to the Agreement and the Court's Preliminary Approval Order (a) constituted the best practicable notice under the circumstances, (b) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Settlement Approval Hearing; (c)  were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law.

3.     The Agreement in this action warrants final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure because it is fair, adequate, and reasonable to those it affects; it resulted from vigorously contested litigation, discovery and motion practice and extensive good-faith, arm's length negotiations between the parties; and it is in the public interest. In making this determination, the Court has

considered and balanced several factors, including the following factors identified by the Ninth Circuit Court of Appeals:

(a)  The strength of the plaintiff's case

(b)  The risk, expense, complexity, and likely duration of further litigation;

(c)  The risk of maintaining class action status throughout the course of the litigation;

(d)  The amount offered in settlement;

(e)  The extent of discovery completed, and the stage of the proceedings;

(f)   The experience and views of counsel; and

(g)  The reaction of the class members to the proposed settlement.

*See Torrisi v. Tucson Elec. Power Co.,* 8 F. 3d 1370, 1375 (9th Cir. 1993). Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair. *Hanton v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

4.    The Final Approval Motion is hereby GRANTED, and the Agreement is hereby APPROVED as fair, reasonable, adequate, and in the public interest, and the terms of the Agreement are hereby determined to be fair, reasonable, adequate, and for the exclusive benefit of the Settlement Class Members. The Parties to the Agreement are directed to consummate the Agreement in accordance with its terms.

5.    The Court APPROVES payment of the Class Settlement Amount in accordance with the terms of the Agreement.

6.    The Court APPROVES payment of a Class Representative Incentive Payment to Cynthia E. Spann in the amount of $10,000.

7.    The Court APPROVES payment of Attorneys' Fees to Class Counsel in the amount of $_____ in accordance with the terms of the Agreement.

8.    The Court APPROVES payment of litigation expenses to Class Counsel in the amount of $_____ in accordance with the terms of the Agreement.

9.     The Allocation Plan is hereby APPROVED as fair, adequate, and reasonable. The Class Settlement Amount shall be distributed in accordance with the terms of the Agreement. Monies transferred to the QSF for purposes of paying Attorneys' Fees and Costs awarded in Paragraphs 7-8, shall be distributed to Class Counsel. Once JCPenney pays such monies into the QSF, JCPenney shall have no further liability as to the allocation of such funds. The Court further finds that no attorneys have asserted any attorney liens as to the attorneys' fees and costs awarded by the Court.

10.     The Litigation as between the Named Plaintiff, the Settlement Class Representative, and the Settlement Class Members on the one hand, and JCPenney on the other hand, is DISMISSED WITH PREJUDICE and without costs to any Party, other than as specified in the Agreement and this Order.

11.     In consideration of the Class Settlement Amount, and for other good and valuable consideration, each of the Releasing Settlement Class Members shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all Settlement Class Member Released Claims against JCPenney in accordance with Section _____ of the Agreement, the terms of which section are incorporated herein by reference; shall have covenanted not to sue JCPenney with respect to all such Settlement Class Member Released Claims; and shall be permanently barred and enjoined from instituting, commencing, prosecuting, or asserting any such Settlement Class Member Released Claim against JCPenney.

12.     For good and valuable consideration, JCPenney shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all JCPenney Released Claims against the Releasing Class Members in accordance with Section _____ of the Settlement Agreement, the terms of which section are incorporated herein by reference; shall have covenanted not to sue Releasing Class Members with respect to all such JCPenney Released Claims; and shall be

permanently barred and enjoined from instituting, commencing, prosecuting, or asserting any such JCPenney Released Claims against Releasing Class Members.

13.    This Judgment is the Final Judgment in the suit as to all Settlement Class Member Released Claims.

14.    Without affecting the finality of this Judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement and the terms of the Agreement; (b) distribution of the Class Settlement Amount, the Class Representative Incentive Payment, the Attorneys' Fees and Costs Amount; and (c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Agreement and the Settlement, and the administration of Claims submitted by Settlement Class Members.    The time to appeal from this Judgment shall commence upon its entry.

**IT IS SO ORDERED.**

_____, 2016

_____
The Honorable Fernando M. Olguin
Judge, United States District Court