STANLEY LAW GROUP
MATTHEW J. ZEVIN, SBN: 170736
10021 Willow Creek Rd. Suite 200
San Diego, CA 92131
Telephone:(619) 235-5306
Facsimile: (815) 377-8419
e-mail:mzevin@stanleylawgroup.com

THE EMGE FIRM, LLP
DEREK J. EMGE, SBN: 161105
501 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone:(619) 595-1400
Facsimile: (619) 595-1480
e-mail:    derek@emgelawfirm.com

Attorneys for Plaintiff Cynthia E. Spann
and the Settlement Class

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA E. SPANN, on Behalf of Herself and All Others Similarly Situated,<br><br>            Plaintiff,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC., a Delaware Corporation; and DOES 1 through 10, Inclusive,<br><br>            Defendant. | Case No. SACV12 0215 FMO (KESx)<br><br>**CLASS ACTION**<br><br>**DECLARATION OF JAMES R. PRUTSMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:  HON. FERNANDO M. OLGUIN<br>Ctrm:   22 – 5th Floor<br>Date:   August 25, 2016<br>Time:   10:00 a.m. |

I, JAMES R. PRUTSMAN declare as follows:

## INTRODUCTION

1.   I am a Partner of Heffler Claims Group LLC ("Heffler"), a company that provides class action notice, claims administration, and other significant data management processes services related to class actions and mass tort actions. The following statements are based on my personal knowledge and information provided by other Heffler employees working under my supervision, who provided information I believe to be accurate. If called upon to testify, I could and would testify competently about the facts contained in this declaration.

2.   Pursuant to the Court's January 25, 2016, Preliminary Approval Order, Heffler was appointed as Settlement Administrator. I am principally responsible for Heffler's activities in connection with the administration of the Settlement. Heffler's duties and responsibilities performed in connection with the administration of the Settlement have included: preparing, printing, and sending by mail and email Class Notices; locating and updating addresses for class members to receive Class Notices by mail; monitoring requests for exclusion from the Settlement Class; programming and hosting an informational website about the Settlement (www.jcpenneysettlement.com) capable of receiving online claims, documentation of additional purchases and opt-out requests; programming and hosting a toll-free telephone service where callers received recorded and live information about the Settlement; regularly communicating with counsel for the parties regarding the class notification and claims administration; receiving, processing and reviewing Claim Forms submitted and ascertaining which Claim Forms were valid, duplicative or

untimely; and performing other related tasks requested by counsel for the parties or as ordered by the Court.

3. Future activities of Heffler are anticipated to include: verifying and validating claims and documentation submitted by Claimants, continuing to respond to telephone calls, emails and other inquiries made by class members; continuing to report to counsel for the parties on the status of claims administration; continuing to receive, review and report on Claim Forms and proof of additional purchases submitted by Claimants; calculating distribution amounts and, if the settlement becomes final, issuing checks from the distribution account and distributing Store Credits to class members who submitted timely and valid claims; and reconciling the distribution account.

4. Heffler received documents from the parties including the Original Complaint, Stipulation of Settlement, Proposed Preliminary Approval of Settlement, Settlement Notice, Publication Notice and the Claim Form.

5. On November 23, 2015 pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715(b), and in compliance with the Court's Order Authorizing Notice, paragraph 14, Heffler on behalf of JC Penney served a CAFA Notice and accompanying enclosures by Federal Express Second Day or USPS Priority Mail Express delivery to the Attorney General of the United States, and the attorneys general of all states and territories, informing them of the proposed Settlement. Heffler received confirmation of delivery for each addressee to whom it sent the CAFA Notice. To date, Heffler has not received any objection to or comment on the Settlement by any of federal or state authority.

6. Pursuant to the Court's Order, beginning on March 25, 2016, banner ads directing potential Settlement Class Members to the Settlement website

appeared on three internet networks: Conversant, Pulpo Media (Hispanic/Spanish online), Xaxis and on the social platform Facebook. Attached as Exhibit A is are examples of the banner ads. The banner ad program completed on April 24, 2016

7. In compliance with the Court's Order Authorizing Notice, the combined online and social platform effort delivered over 47,320,000 impressions, or opportunities to see the ad.

8. Pursuant to the Order, the summary notice was published once in the California edition of *People Magazine,* on sale April 1, 2016, and once in the California edition of *Sunset Magazine,* on sale April 15, 2016. Attached as Exhibit B are tearsheet proofs of publication.

9. Additionally, the summary notice was published once in seven local Spanish newspapers in California between April 6 to April 10, 2016: *Hoy Los Angeles, Hoy Fin De Semana, La Opinion de la Bahia, Vida en el Valle – Sacramento, Enlace, E! (now Hoy San Diego), Popular-Bakersfield, Vida en el Valle-Fresno*. Attached as Exhibit C are tearsheet proofs of publication.

10. In compliance with the Order a press release was issued in English and Spanish on March 25, 2016 at 9:17 am ET over PR Newswire US1 full national wire. Attached, as Exhibit D is the clear time confirmation of the press release. PR Newswire has an average reach of 3,000,000 unique visitors per month including over 6,000 news outlets and digital publications. The press release resulted in 317 news mentions.

11. Heffler uses the mailing address of Spann v. JCPenney Corporation, Inc., Claims Administrator, P.O. Box 0509, Philadelphia, PA 19105-0509 to receive undeliverable Requests for Exclusion, Claim Forms, and other communications about the Settlement.

12. On or about October 27, 2015, as provided in paragraph 7.2 of the Settlement Agreement, Heffler received from JCPenney's counsel a spreadsheet in electronic format with the names, addressees, telephone numbers, email addresses when available, and qualifying transactions as gathered from JCPenney's records. There were 55,582,319 qualifying transactions contained in the data. Additionally, Heffler analyzed the data to create the Notice List. In total, Heffler was able to identify some form of contact information for 5,654,012 Settlement Class Members.

13. On or about February 26, 2016, using the Notice List, Heffler caused the sending of the Notice, via email, to 2,617,205 class members for whom JCPenney had email addresses. 1,346,184 email Notices were successfully delivered. 281,308 email Notices were returned as undeliverable hard bounce. A hard bounce is an e-mail message that has been returned to the sender because the recipient's address is invalid. A hard bounce might occur because the domain name doesn't exist or because the recipient is unknown. 976,791 email Notices were returned as undeliverable soft bounce. A soft bounce typically indicates a temporary delivery issue. The most common issue being that the recipient's email box is full. There were 12,922 invalid addresses where the email address did not have the proper elements for delivery such as a missing @ or domain name.

14. On or about February 29, 2016 Heffler was informed by JCPenney's counsel that records for JCPenney employees were inadvertently included in the data provided. JCPenny employees are specifically excluded from the Settlement Agreement section 5.1.1 paragraph 2.

15. On or about March 7, 2016, Heffler identified that some of the email notices had gone out without a subject in the subject line of the emailed

Notices.

16. Accordingly, on or about March 15, 2016, Heffler resent the email Notice with a subject in the subject line. This email was sent to a total of 2,583,238 potential Settlement Class Members. Excluded from this email Notice were JCPenney employees as identified by the Defendant, any class member who had already filed a claim, and the 4,480 Class Members who specifically requested to not receive any further emails regarding this case. The results of this second email notice effort were that 1,758,050 Notices were successfully delivered, 249,956 were returned as undeliverable hard bounce, 562,428 were returned as undeliverable soft bounce, and 12,804 were invalid.

17. A true and correct copy of the email Notice is attached as Exhibit E.

18. On or about March 15, 2016, Heffler mailed by First Class Mail the postcard Notice to Settlement Class Members for whom there was no email address or whose email notice was returned as undeliverable for any reason. Heffler excluded from this mailing any records for JCPenney employees as identified by the Defendant. Prior to mailing the 4,286,776 postcard Notices, Heffler ran the records through the U.S. Postal Service National Change of Address database to update the mailing addresses.

19. A true and correct copy of the postcard Notice is attached as Exhibit F.

20. Of the Postcard Notices, the U.S. Postal Service returned 259,021 postcards to Heffler as undeliverable as addressed and provided new mailing addresses for 4,922 class Notices. The addresses were updated and 4,922 postcard Notices were promptly re-mailed by Heffler.

21. In sum, Heffler successfully emailed 1,758,050 email Notices and mailed or re-mailed 4,034,025 postcard Notices to class members contained in

the Notice List. However, it is assumed that there was some number of Settlement Class Members who received both an email and postcard notice, such that the total number of Settlement Class Members who received Notice is less than the combined sum of those two numbers.

22. On February 24, 2016, Heffler established the toll-free number 1-855-731-7497 for class members to obtain additional information regarding the Settlement. Working with the parties, Heffler developed a script for recorded information and a script for live call center agents. The recorded script gave callers the option of reaching a live call center agent. Callers were able to request a claim form using either the recording or by speaking with a live agent. As of the execution of this declaration, Heffler has responded to 36,827 telephone calls inquiring about the case and/or Settlement. Of those calls, 13,962 callers spoke with a live agent.

23. Pursuant to paragraph 2.36 of the Settlement Agreement, Heffler developed a dedicated website for the settlement located at www.jcpenneysettlement.com. The website has been operational continuously since February 24, 2016.

24. The website contains, among other things, a "Long Form Notice" Notice of Class Action and Proposed Settlement (a true and correct copy of which is attached as Exhibit G); Claim Form (a true and correct copy of which is attached as Exhibit H); Opt-out Request (a true and correct copy of which is attached as Exhibit J); Settlement Agreement; Complaint; the Motion for Preliminary Approval; the Declarations and Exhibits submitted in the connection with the Motion for Preliminary Approval; the Preliminary Approval Order; and the Motion for Attorneys' Fees, Litigation Costs and Class Representative's Enhancement Payment, as well as all supporting

documents. Heffler will add to the website copies of additional documents as requested by the parties and/or the Court, including the Motion for Final Approval of Settlement filed by Plaintiff. All of the documents referenced in this paragraph are available for downloading by anyone visiting the website.

25. Additionally, the website includes a list of deadlines (set in the Court' Preliminary Approval Order) to submit Claim Forms (June 30, 2016) and request exclusion (June 30, 2016) and to make objections (June 30, 2016). This list also includes the date and time of the final approval hearing, currently set for August 25 2015, 10:00 a.m. The website also includes a section of Frequently Asked Questions ("FAQs"). A true and correct copy of the FAQs as contained on the website is attached hereto as Exhibit I.

26. The website allows Settlement Class Members to print claim forms, submit claim forms by Claimants who chose to receive Store Credits instead of cash, upload proof of additional qualifying purchases and submit Opt-Out Requests.

27. The website is able to count the number of visits to the website. As of the execution of this declaration, there were 363,946 visits to the website.

28. Heffler regularly provided counsel for the parties with status reports on the administration of the Settlement. These reports included, among other things, the number of Class Notices emailed, mailed or re-mailed; the number of Claim Forms submitted; the status of requests for exclusions and objections received by Heffler.

29. Under the Settlement Agreement, in order to be timely, Claim Forms needed to be received online, sent by fax, or mailed with a postmark to Heffler on or before June 30th, 2016. As of the execution of this declaration, Heffler

received 60,985 timely paper Claims,[1] and 98,037 electronic claims, for a total of 159,022 Claims. Of these, 102,502 Claimants have requested a Store Credit, 56,089 Claimants have requested a cash payment, and 431 continue to be processed.

30. At this time, Heffler is still in the process of reviewing the claims and is unable to calculate the specific dollar amount that each individual Claimant will receive if the Settlement is approved by the Court. It will take significant time to complete the claims verification process and assign points based on the point-based allocation plan. Moreover, it will take time to process documents submitted by Settlement Class Members seeking to demonstrate additional purchases. To date, 597 Class Members have submitted documents demonstrating additional purchases. Heffler has reviewed, and will continue to review the submissions for validity as they are processed.

31. Assuming the Court awards the full amount of requested attorneys' fees ($13,500,000), costs reimbursement ($191,080.91), Plaintiff enhancement payment ($10,000) and administrative fees ($2,667,000), the balance of the $50,000,000 settlement fund to be distributed to Claimants would be $33,631,919.09. As of the date of this declaration, 158,787 Claimants will share in the net settlement, so the average payout to each Claimant would be $211.81, although the actual amount that each Claimant will receive will vary depending on the total number of valid claims and the number of points assigned based on the allocation plan provided in the Settlement Agreement.

32. As of the date of declaration Heffler has received 620 exclusion requests from the settlement website and 198 mailed exclusion requests. After

---

[1] Due to delays with the U.S. postal service, Heffler continues to receive claim forms that are postmarked by the claim deadline of June 30, 2016.

reviewing the exclusion requests we determined that 4 of the requests were submitted after the exclusion deadline. The deadline for exclusion requests was June 30, 2016. Additionally, after reviewing for duplicates we determined that there were 6 duplicate exclusion requests. In total there are 809 timely unique exclusion requests. A detailed list of the class members requesting exclusion is attached as Exhibit J.

33. As of the date of this declaration, Heffler has received seven (7) total objections, six (6) of which were submitted by class members who were included in the data provided by the Defendant. The deadline for such objections was June 30, 2016.

34. As of the date of this declaration, Heffler has incurred administrative costs and fees of $2,425,267.68, which is just below the $2,425,274 that we estimated for all costs of notice and administration. However, we anticipate that we will incur an additional $374,732.32 in costs and fees for future work associated with this Settlement. Heffler therefore anticipates that the total amount of administration costs and fees for this matter will be $2,800,000, which is more than the $2,667,000 "cap" negotiated by the parties. The main causes of the additional costs include: The undeliverable mail count is 3 times higher than the original estimate therefore the address updating and notice remailing costs have increased, and the paper claim forms are approaching 9 times higher than anticipated.

35. I declare under penalty of perjury that the foregoing is true and correct. Executed July 27, 2016, in Edmond, Oklahoma.

James R. Prutsman